UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINFRED WAIRIMU WAMAI, et al.,

                Plaintiffs,

       -v.-

INDUSTRIAL BANK OF KOREA,

             Defendant.

Case No. 21-cv-325-DLC

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS
# ON THE GROUNDS OF *FORUM NON CONVENIENS*

MORRISON & FOERSTER LLP
Carl H. Loewenson, Jr.
J. Alexander Lawrence
250 West 55th Street
New York, New York 10019
(212) 468-8000

*Attorneys for Defendant*
*Industrial Bank of Korea*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 4

I.      THE LEGAL STANDARD ......................................................................... 4

II.    THE ACTION SHOULD BE DISMISSED ON THE GROUNDS OF *FORUM NON CONVENIENS*. ................................................................................... 5

      A.     Plaintiffs' Choice of Forum Is Not Entitled to Deference. .................... 5

             1.     New York Has No Significant Connection to This Action....................... 6

             2.     Litigating This Case in New York Would Be Highly Inconvenient for All Parties. .................................................................................... 8

             3.     Plaintiffs' Choice of Forum Was Likely Motivated by Forum-Shopping Considerations ............................................... 11

      B.     Korea Is an Adequate Forum for Plaintiffs to Pursue Their Claims. ................... 13

             1.     IBK Agrees to Submit to Jurisdiction in Korea. .................................. 13

             2.     Korea Provides Plaintiffs Ample Opportunity to Pursue Their Claims. ................................................................................... 14

      C.     Both the Private and the Public Factors Strongly Favor Dismissal of Plaintiffs' Claims. .......................................................................... 18

             1.     The Private Interests Favor Dismissal. ................................................ 18

             2.     The Public Interests Favor Dismissal ................................................. 18

                    a.     Korea possesses a stronger local interest than New York in adjudicating this case. ......................................... 19

                    b.     The Court will likely be required to apply Korean law to Plaintiffs' fraudulent conveyance claims. .................................... 21

CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguinda v. Texaco, Inc.*,
   303 F.3d 470 (2d Cir. 2002) ............................................................................. 13, 19

*Alcoa S.S. Co. v. M/V Nordic Regent*,
   654 F.2d 147 (2d Cir. 1980) (*en banc*) ................................................................ 5

*American Dredging Co. v. Miller*,
   510 U.S. 443 (1994) ............................................................................................ 20

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
   311 F.3d 488 (2d Cir. 2002) ............................................................................... 16

*Bandes v. Harlow & Jones, Inc.*,
   852 F.2d 661 (2d Cir. 1988) ............................................................................... 20

*Base Metal Trading Ltd. v. Russian Aluminum*,
   98 F. App'x 47 (2d Cir. 2004) ............................................................................ 14

*The Belgenland*,
   114 U.S. 355 (1885) ............................................................................................ 20

*Blanco v. Banco Indus. de Venezuela, S.A.*,
   997 F.2d 974 (2d Cir. 1993) ............................................................................... 16

*Carlström v. Livförsäkring*,
   No. 19CV11569 (DLC), 2020 WL 7342753 (S.D.N.Y. Dec. 14, 2020) ........................ *passim*

*Connolly v. Kinay*,
   No. 11 Civ. 606, 2012 U.S. Dist. LEXIS 42242 (S.D.N.Y. Mar. 27, 2012) ............................ 8

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992) ............................................................................... 22

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................ 20

*DiRienzo v. Philip Servs. Corp.*,
   232 F.3d 49 (2d Cir. 2000) ................................................................................. 15

*DiRienzo v. Philip Servs. Corp.*,
   294 F.3d 21 (2d Cir. 2002) ................................................................................. 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Fallman v. Hotel Insider, Ltd.*,
  No. 14-cv-10140, 2016 U.S. Dist. LEXIS 5895 (S.D.N.Y. Jan. 15, 2016) ............................22

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
  858 F. Supp. 2d 306 (S.D.N.Y. 2012) (Cote, J.), *aff'd*, 712 F.3d 136 (2d Cir.
  2013) ..................................................................................................................................22, 23

*FIMBank P.L.C. v. Woori Fin. Holdings Co. Ltd.*,
  962 N.Y.S.2d 114 (1st Dep't 2013) ......................................................................................17

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005).................................................................................................21

*Flores v. S. Peru Copper Corp.*,
  253 F. Supp. 2d 510 (S.D.N.Y. 2002)...................................................................................16

*Forest Park Pictures v. Universal Television Network, Inc.*,
  683 F.3d 424 (2d Cir. 2012).................................................................................................21

*Funk v. Belneftekhim*,
  861 F.3d 354 (2d Cir. 2017)...................................................................................................9

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*,
  449 F.3d 377 (2d. Cir. 2006).................................................................................................22

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947).........................................................................................1, 18, 19, 20

*Hanwa Life Ins. v. UBS AG*,
  43 Misc. 3d 1224(A), (N.Y. Sup. Ct. 2014), *aff'd*, 127 A.D.3d 618
  (1st Dep't 2015) ..................................................................................................................17

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) (*en banc*) ..........................................................................*passim*

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  153 F.3d 82 (2d Cir. 1998)...................................................................................................14

*Kashef v. BNP Paribas SA*,
  442 F. Supp. 3d 809 (S.D.N.Y. 2020)...................................................................................23

*Kingstown Capital Mgmt., L.P. v. Vitek*,
  No. 19CV3170 (DLC), 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)............................8, 9, 14

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Koehler v. Bank of Bermuda, Ltd.*,
    12 N.Y.3d 533 (2009) ............................................................................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL,
    672 F.3d 155 (2d Cir. 2012)...................................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL,
    739 F.3d 45 (2d Cir. 2013)....................................................................................22

*Lyman Com. Sols., Inc. v. Lung*,
    No. 12-cv-4398, 2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) ................................22

*Monsanto Int'l Sales Co. v. Hanjin Container Lines, Ltd.*,
    770 F. Supp. 832 (S.D.N.Y. 1991)........................................................................17

*Motorola Credit Corp. v. Standard Chartered Bank*,
    24 N.Y.3d 149 (2014) ............................................................................................12

*Nike, Inc. v. Wu*,
    No. 13-CIV-8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020) ...................12

*Niv v. Hilton Hotels Corp.*,
    710 F. Supp. 2d 328 (S.D.N.Y. 2008)...................................................................11

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)........................................................................ *passim*

*Oetjen v. Cent. Leather Co.*,
    246 U.S. 297 (1918)...............................................................................................20

*Owens v. Turkiye Halk Bankasi A.S.*,
    No. 1:20-cv-02648-DLC, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021).......... *passim*

*Pension Committee of the University of Montreal Pension Plan v. Banc of
    America Securities, LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)......................................................................8

*Peterson v. Islamic Republic of Iran*,
    876 F.3d 63 (2d Cir. 2017)....................................................................................12

*Peterson v. Islamic Republic of Iran*,
    963 F.3d 192 (2d Cir. 2020)..................................................................................12

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..................................................................................... *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003)..................................................................................5, 18, 19

*Primacy Eng'g, Inc. v. SAN Eng'g*,
   No. 1:18-CV-129-RP, 2019 WL 3412914 (W.D. Tex. July 29, 2019)....................................17

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*,
   448 F. Supp. 2d 520 (S.D.N.Y. 2006)........................................................................4

*Schultz v. Boy Scouts of Am., Inc.*,
   65 N.Y.2d 189 (1985) .........................................................................................22

*Simmtech Co. v. Citibank, N.A.*,
   No. 13-CV-6768 KBF, 2015 WL 542284 (S.D.N.Y. Feb. 10, 2015), *rev'd on
   other grounds*, 634 F. App'x 63 (2d Cir. 2016)........................................................16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..............................................................................................1

*In re Ski Train Fire in Kaprun Austria*,
   499 F. Supp. 2d 437 (S.D.N.Y. 2007), *aff'd sub nom.*, *Geier v. Omniglow
   Corp.*, 357 F. App'x 377 (2d Cir. 2009) .................................................................11

*Turedi v. Coca Cola Co.*,
   460 F. Supp. 2d 507 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x 623 (2d Cir. 2009).................7, 11

*Wilson v. ImageSat. Int'l N.V.*,
   No. 07 Civ. 6176 (DLC), 2008 U.S. Dist. LEXIS 57897 (S.D.N.Y. July 30,
   2008) (Cote, J.), *aff'd sub nom.*, *Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir.
   2009) ....................................................................................................................8

*Wultz v. Bank of China Ltd.*,
   865 F. Supp. 2d 425 (S.D.N.Y. 2012)......................................................................22

*Yoon v. Lee*,
   433 F. Supp. 3d 18 (D. Mass. 2019) .......................................................................17

**Statutes and Rules**

Foreign Sovereign Immunities Act.....................................................................................1, 9

Terrorism Risk Insurance Act............................................................................................4

New York Debt. & Cred. Law § 273-a..............................................................................21

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

C.P.L.R. § 5225 .................................................................................................................4

Fed. R. Civ. P. 12 ..............................................................................................................1

Fed. R. Civ. P. 44.1 .........................................................................................................14

Fed. R. Civ. P. 45 ...........................................................................................................10

Rule 13 of the Rules for the Division of Business Among District Judges
(S.D.N.Y.) .........................................................................................................................1

**Other Authorities**

William S. Dodge, *International Comity in American Law*, 115 COLUM. L. REV.
2071 (Dec. 2015) ..........................................................................................................20

David D. Siegel, Koehler: *Creating Mecca for Creditors or Anti-Mecca for
Garnishees?*, N.Y.L.J. (July 28, 2009) ........................................................................12

Damien H. Weinstein, *New York: The Next Mecca for Judgment Creditors — An
Analysis of* Koehler v. Bank of Bermuda Ltd., 78 FORDHAM L. REV. 3161
(2010) ............................................................................................................................12

Pursuant to the common law doctrine of *forum non conveniens*, Defendant Industrial Bank of Korea ("IBK") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint.  IBK expressly reserves all other grounds for dismissal.[1]

## INTRODUCTION

The maxim that "like cases should be treated alike" is at the core of the American legal tradition—cases which *are* the same must be *treated* the same.  On February 16, 2021, this Court dismissed *Owens v. Turkiye Halk Bankasi A.S.* for *forum non conveniens*.  *See Owens v. Turkiye Halk Bankasi A.S.*, No. 1:20-cv-02648-DLC, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ("*Halkbank*").  This case, in which a subset of the *Halkbank* plaintiffs assert the same four causes of action against IBK, presents the same considerations that made New York an inappropriate forum in *Halkbank*.[2]  This Court should treat like cases alike and dismiss this case for *forum non conveniens*.

Plaintiffs have suffered unspeakable horrors and anguish from terrorism; in moving to dismiss this action, IBK in no way seeks to minimize their suffering.  But their understandable efforts to seek compensation from Iran do not alter this Court's prerogative to "resist imposition upon its jurisdiction," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), when "a court abroad is the more appropriate and convenient forum for adjudicating the controversy."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

---

[1] Such grounds include lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), lack of personal jurisdiction, and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  This Court granted IBK's request to brief the *forum non conveniens* issue separately from its other threshold objections.  Order (ECF No. 11).

[2] Indeed, at IBK's suggestion and over Plaintiffs' objection, this Court deemed this case "related" to *Halkbank* under Rule 13 of the Rules for the Division of Business Among District Judges (S.D.N.Y.).  *See* IBK Letter (ECF No. 4); Plaintiffs' Letter (ECF No. 6); and Notice of Reassignment (entered Jan. 22, 2021).

This case presents a textbook example of litigation in an inconvenient and inappropriate forum.  The chosen forum has little connection to the case and would be inconvenient for both the parties and the court.  The Republic of Korea ("Korea") represents an adequate alternative forum where IBK is amenable to suit and where Plaintiffs will be able to pursue their claims.  And the balancing of private and public interests that has long guided the *forum non conveniens* analysis favors dismissal: the likely inconvenience of litigating in New York, Korea's especially strong interest in resolving this dispute, and the need for this Court to apply Korean law to Plaintiffs' fraudulent conveyance claims all point to dismissal being the proper outcome.  The principles of *forum non conveniens*, the Second Circuit's precedents, and this Court's own decision in a nearly identical case all favor dismissing this suit for *forum non conveniens*.

## FACTUAL BACKGROUND

In 1998, al Qaeda bombed the U.S. Embassies in Tanzania and Kenya with aid from Iran.  The plaintiffs in this action are 323 victims or family members of victims of these bombings.  Compl. ¶¶ 20–22.  In 2008, Plaintiffs sued Iran in the U.S. District Court for the District of Columbia regarding Iran's involvement in these acts of terrorism, and, in 2014, that court issued judgments entitling Plaintiffs to over $5.5 billion in damages.  *Id.* ¶¶ 23–28.  Iran, however, has not satisfied these judgments.  *Id.* ¶ 30.  In an attempt to recover on their judgments, Plaintiffs have brought this suit against IBK, a bank headquartered in Seoul and majority-owned by the Korean government.

Since 1979, the United States has maintained a complex system of economic sanctions against Iran, including against Iranian oil exports.  Declaration of J. Alexander Lawrence, dated April 13, 2021 ("Lawrence Decl."), Ex. D (Deferred Prosecution Agreement, *United States v. Industrial Bank of Korea*, 20-cr-00257-DLC (S.D.N.Y. Apr. 27, 2020) (ECF No. 5), Statement of

Facts ("DPA Statement of Facts")) ¶¶ 20–23.  Korea, however, relies on Iranian oil to meet its energy needs, so, in consultation with U.S. authorities, an arrangement was made to facilitate Korea's continued purchases of Iranian oil.  Lawrence Decl. Ex. B (Indictment, *United States v. Zong*, No. 3:16-cr-142 (D. Alaska Dec. 14, 2016) (ECF No. 2) ("Zong Indictment")) ¶ 14.  Korea designated two majority state-owned banks—including IBK—to maintain a Central Bank of Iran ("CBI") account for the deposit of Iranian funds (denominated in Korean Won) for the purchase of specified Iranian goods.  Lawrence Decl. Ex. D (DPA Statement of Facts) ¶ 25.  This account (the "CBI Won Account") could only be used for transactions involving certain types of goods, including crude oil exports.  *Id.* ¶¶ 25–26.  The CBI Won Account was closely monitored by the Korean government.  Compl. ¶ 49; Lawrence Decl. Ex. B (Zong Indictment) ¶ 14.  In addition to IBK's internal screening processes, transactions utilizing the CBI Won Account had to be certified by the Korea Strategic Trade Institute and be either reported to or explicitly approved by the Bank of Korea.  Declaration of Yoon-kee Kim, dated April 12, 2021 ("Kim Decl.") ¶¶ 11–12.

The allegations here relate to the circumvention of this review process.  From January 2011 until July 2011, an Iranian agent named Kenneth Zong, along with several primarily Iranian co-conspirators, sought to transfer Iranian funds out of the CBI Won Account and into the accounts of Korean entities controlled by Zong and his co-conspirators.  Lawrence Decl. Ex. D (DPA Statement of Facts) ¶ 27.  To accomplish this, Zong engaged in sham trade transactions and submitted fictitious documentation to Korean banks, including IBK.  Kim Decl. ¶ 11.  The scheme was successful: Zong initiated 88 transactions via IBK accounts, transferring slightly more than one billion dollars' worth of Iranian funds out of the CBI Won Account.  These funds were then converted from won into dollars and transferred around the world at Zong's direction.  Lawrence Decl. Ex. D (DPA Statement of Facts) ¶¶ 27–28.  Of these transactions, approximately $10 million

(1% of the total) passed through IBK's New York branch ("IBKNY").  Kim Decl. ¶ 13.  Zong lived in Korea at all times during this conspiracy; he created the fraudulent documents there; and any contact between Zong and IBK employees or Korean government reviewers occurred in Korea.  *Id*. ¶¶ 13, 17; Lawrence Decl. Ex. B (Zong Indictment) ¶¶ 15, 18.

In January 2021, Plaintiffs filed this lawsuit, alleging four causes of action against IBK. First, they claim that, as a result of Zong's transfers from the CBI Won Account, IBK should be required under New York fraudulent conveyance law to pay to Plaintiffs the $1 billion transferred by Zong.  (Compl. ¶¶ 130, 140.)  Plaintiffs also move under New York C.P.L.R. § 5225 and the federal Terrorism Risk Insurance Act ("TRIA") to compel IBK to turn over all Iranian assets currently in IBK's possession.  Compl. ¶¶ 142–52.  IBK now moves to dismiss Plaintiffs' suit for *forum non conveniens*.

## ARGUMENT

## I.     THE LEGAL STANDARD

"The decision to dismiss a case on *forum non conveniens* grounds 'lies wholly within the broad discretion of the district court . . . .'"  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (*en banc*) (citation omitted).  The Second Circuit has laid out a three-step framework for making that decision: first, the Court determines the deference to be afforded the plaintiff's choice of forum; then, the Court decides if there is an "adequate alternative forum" for the dispute; finally, the Court "balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

In ruling on a *forum non conveniens* motion, the Court may "consider[] not only the allegations of the pleadings but all the evidence before it . . . ."  *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520, 522 (S.D.N.Y. 2006).  On such motions,

the court "does not presume the facts pleaded to be true." *Id.*; *see also Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (*en banc*) (holding that these practices have been "long recognized as acceptable and followed from time immemorial in . . . determining *forum non conveniens* motions.").

## II.      THE ACTION SHOULD BE DISMISSED ON THE GROUNDS OF *FORUM NON CONVENIENS.*

This suit fails at every step of the Second Circuit's *forum non conveniens* framework.  First, Plaintiffs' choice of forum is not entitled to deference: Plaintiffs overwhelmingly reside abroad, the conduct at issue occurred in Korea, and nearly all of the relevant witnesses and documents are located in Korea rather than New York.  Second, Korea is an adequate alternative forum: IBK is amenable to process there, and Korean law is just as, if not more, favorable to Plaintiffs' claims as New York law.  And finally, between the inconvenience for the parties and for the court, Korea's substantial interest in adjudicating this case, and the need for this Court to apply Korean law to Plaintiffs' fraudulent conveyance claims, the public and private interest factors favor dismissal.

### A.      Plaintiffs' Choice of Forum Is Not Entitled to Deference.

The first step in the *forum non conveniens* analysis is to "determine[] the degree of deference properly accorded the plaintiff's choice of forum."  *Halkbank*, 2021 WL 638975, at *3 (quoting *Norex*, 416 F.3d at 153).  A plaintiff's choice of forum "only merits heightened deference to the extent that the plaintiff[s] and the case possess *bona fide* connections" to the forum.  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003).  The Court should assess a variety of factors, including "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons

relating to convenience or expense." *Iragorri*, 274 F.3d at 72.  And "a court should give little deference when the plaintiff's choice of forum is motivated by 'attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . .'" *Halkbank*, 2021 WL 638975, at *3 (quoting *Iragorri*, 274 F.3d at 72).

### 1.     New York Has No Significant Connection to This Action.

As in *Halkbank*, there is "little, if any, connection between this action and this forum." *Halkbank*, 2021 WL 638975, at *4.  The judgments on which Plaintiffs seek to recover are against Iran, rest on injuries suffered in Tanzania and Kenya, and were entered by the U.S. District Court for the District of Columbia.  Compl. ¶¶ 4–6.  And the allegations underlying Plaintiffs' fraudulent conveyance claims focus on conduct that occurred overwhelmingly in Korea.  All of the transfers at issue were initiated in Korea by persons located in Korea; all of the allegedly fraudulent documents were created in Korea; and the process by which Korean government officials reviewed transactions with Iran or transfers from the CBI Won Account occurred in Korea.  *See id.* ¶¶ 49, 52–74; *see also* Lawrence Decl. Ex. B (Zong Indictment) ¶¶ 1–3, 17–19.  The alleged scheme was "orchestrated primarily" in Korea.  *See Halkbank*, 2021 WL 638975, at *4.

To be sure, here as in *Halkbank*, New York has *some* connection to this case.  Zong's transfers transited through New York banks, though no funds actually came to rest in New York accounts.  Kim Decl. ¶ 13; Lawrence Decl. Ex. B (Zong Indictment) ¶ 34.  And 1% of Zong's transfers were processed by IBKNY, though none of that money was actually paid to New York beneficiaries.  Kim Decl. ¶ 13.  Plaintiffs also claim a "willful" failure by IBKNY employees to detect and remedy the alleged fraud (at least with respect to the fraction of transactions that went

through IBKNY).  But IBKNY is a minor component of the bank's Korea-focused operations:[3] IBK employs more than 13,000 people in Korea; it employs 29 in New York.  Kim Decl. ¶ 14.

The core factual allegations in this suit involve conduct occurring in Korea.  As this Court noted recently, a plaintiff's choice of forum is entitled to "very little deference" when "the genesis of this dispute is . . . a transaction that has no connection to this forum" and "[t]he misconduct that is alleged . . . involved defendants' plans that were devised and carried out" in a foreign country by foreign actors.  *Carlström v. Livförsäkring*, No. 19CV11569 (DLC), 2020 WL 7342753, at *5 (S.D.N.Y. Dec. 14, 2020) (Cote, J.).  Such is the case here.  "[W]here the circumstances indicate that . . . in relation to the core operative facts in dispute [the parties and events] at best may have only marginal links to the plaintiff[s'] choice of forum, that choice of venue is not entitled to special deference . . . ."  *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 522 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x 623 (2d Cir. 2009).

Plaintiffs themselves also lack any meaningful connection to this forum.  "[T]he plaintiffs' choice of forum . . . is entitled to less deference" when "U.S. resident plaintiffs are significantly outnumbered by foreign plaintiffs."  *Halkbank*, 2021 WL 638975, at *4; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("When the plaintiff is foreign, however, this assumption [that the forum is convenient] is much less reasonable . . . [and so] a foreign plaintiff's choice deserves less deference.").

In this case, only 54 of the 323 plaintiffs (16.7%) live in the United States, and only three of the plaintiffs live in New York State (and none live in New Jersey or Connecticut, which border

---

[3] IBKNY's function is limited to lending to U.S. subsidiaries of Korean corporations and to Korean-American businesses, handling export-import letters of credit, and facilitating transnational reimbursements and remittances. Kim Decl. ¶ 9; *see also* Compl. ¶ 17 (citing FDIC, Industrial Bank of Korea Resolution Plan for U.S. Operations Public Section at 1 (Dec. 31, 2018) (attached at Lawrence Decl. Ex. F)).

this district).  Lawrence Decl. ¶ 3.  By contrast, of the plaintiffs in *Halkbank* with known residences, 30% resided in the United States and nine lived in New York.  *Halkbank*, 2021 WL 638975, at *1.  Many other cases decided in this district have accorded reduced deference to the plaintiffs' choice of forum when far more than 17% of plaintiffs were American.[4]  By any measure, the foreign plaintiffs in this case "significantly outnumber[]" the plaintiffs residing in the U.S.

In sum, as this Court concluded in *Halkbank*, "th[e] lack of connection between the plaintiffs and the subject matter of the litigation on the one hand, and the forum on the other, weighs against deferring to plaintiffs' choice of forum."  *Halkbank*, 2021 WL 638975, at *4.

### 2.    Litigating This Case in New York Would Be Highly Inconvenient for All Parties.

In addition to the lack of connection between New York and this case, litigating this suit in New York "will be massively inconvenient and expensive for everyone." *Kingstown Capital Mgmt.*, *L.P. v. Vitek*, No. 19CV3170 (DLC), 2020 WL 5350492, at *9 (S.D.N.Y. Sept. 4, 2020) (Cote, J.).

First, IBK contends that it is not "amenabl[e] to suit in the forum district."  *Iragorri*, 274 F.3d at 72; *see also Halkbank*, 2021 WL 638975, at *4 ("It is unclear if Halkbank is even amenable to suit in the United States, as it has contested jurisdiction in both this case and the criminal case.").

---

[4] *See Wilson v. ImageSat. Int'l N.V.*, No. 07 Civ. 6176 (DLC), 2008 U.S. Dist. LEXIS 57897, at *11–13 (S.D.N.Y. July 30, 2008) (Cote, J.) (affording minimal deference because, *inter alia*, "only . . . half [of the plaintiffs] are United States residents or legally connected to United States residents"), *aff'd sub nom.*, *Wilson v. Eckhaus*, 349 F. App'x 649, 651 (2d Cir. 2009); *Connolly v. Kinay*, No. 11 Civ. 606, 2012 U.S. Dist. LEXIS 42242, at *14, *17 (S.D.N.Y. Mar. 27, 2012) (concluding that "Plaintiffs are not entitled to the great amount of deference reserved for United States citizens' choice of a United States forum" even though "seven of the eleven [i]ndividual [p]laintiffs have a connection to New York").  The rare occasions when courts *have* afforded deference to the forum choice of predominantly foreign plaintiffs are the exceptions that prove the rule. For instance, in *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006), only four of the eighty-seven plaintiffs were New Yorkers, but those four plaintiffs represented "the overwhelming majority of the Funds' net investment capital[]" that was the subject of the litigation; "the bulk of [the] relevant evidence and witnesses [were] located [in New York]"; and U.S. securities laws indisputably applied to the plaintiffs' allegations. *Id.* at 177–78.

IBK intends to raise the same jurisdictional objections as Halkbank: immunity under the FSIA and a lack of personal jurisdiction (in whole or in part). Going forward in New York will involve not only deciding those questions but also waiting for the disposition of any interlocutory appeals regarding FSIA immunity.[5] IBK's strong objections to this Court's jurisdiction significantly undermine the convenience of this forum.

Second, "[t]he difficulty of conducting discovery in this litigation if it continues in the United States weighs against deference to the plaintiff's choice." *Halkbank*, 2021 WL 638975, at *4. Here, as in *Halkbank*, almost all of the relevant witnesses will be located "outside the subpoena power of this Court." *See id.*; *Carlström*, 2020 WL 7342753, at *7; *Kingstown*, 2020 WL 5350492, at *9. Kenneth Zong and his co-conspirators are located either in Korea or in places unknown;[6] IBK employees who allegedly colluded with Zong reside in Korea; and any witnesses knowledgeable about the CBI Won Account or IBK's interactions with Zong will invariably be located in Korea. *See* Kim Decl. ¶ 17, Ex. A. To the best of IBK's knowledge, all Korean government officials involved in establishing and monitoring the operation of the CBI Won Account are also located in Korea. *Id.* And only one of the New York-based employees identified by Plaintiffs still works for IBK, and he resides in Korea;[7] only eight of IBKNY's twenty-nine current employees worked at the branch between February and July 2011. Kim Decl. ¶¶ 14–16 & Ex. A. To the extent such testimony could be obtained in connection with a U.S. civil case, pretrial

---

[5] Denial of a claim of FSIA immunity is grounds for an interlocutory appeal under the collateral order doctrine. *Funk v. Belneftekhim*, 861 F.3d 354, 363 (2d Cir. 2017).

[6] *See* Lawrence Decl. Ex. C (Status Report, *United States v. Zong*, No. 3:16-cr-142 (D. Alaska Mar. 11, 2021) (ECF No. 23)) ("As far as undersigned is aware, the Defendant remains in Korea. The Government has no new information to report in this matter.").

[7] *See* Compl. ¶¶ 76–79. To the best of IBK's knowledge, the individuals who served as Branch Manager, Compliance Officer, and IBKNY's internal auditor at the relevant time period now live in Korea, North Carolina, and Ithaca, New York, respectively. Kim Decl. ¶ 16 & Ex. A.

depositions of almost every witness would have to occur in Korea through Korean-English interpreters.

Even if Plaintiffs could identify some witnesses who may be within the subpoena power of this Court,[8] this would neither demonstrate the convenience of the forum nor require the Court to defer to Plaintiffs' choice.  In *Carlström*, this Court refused to defer to the plaintiffs' choice of forum despite the fact that both of the individual plaintiffs lived in New York.  *See Carlström*, 2020 WL 7342753, at *6.  The presence of relevant witnesses in the forum did not "alter[] the inescapable fact that this is essentially a dispute between foreigners about foreign commercial transactions." *Id*.  So too here.

Furthermore, as in *Halkbank*, "[m]uch of the relevant documentary evidence is . . . stored in [Korea] and written in [Korean]." *Halkbank*, 2021 WL 638975, at *4.  Plaintiffs may argue that U.S. prosecutors possess documents relevant to their claims, but even if that is true, it would not help them.  To the best of IBK's knowledge, the vast majority of evidence relating to the CBI Won Account in the possession of U.S. prosecutors was provided via the Korean government pursuant to the U.S.-Korea Mutual Legal Assistance Treaty ("MLAT").  Kim Decl. ¶ 18.  The MLAT would not permit the disclosure of those materials to Plaintiffs.[9]  As this Court noted in *Halkbank*, possession of evidence by U.S. prosecutors "does not make such evidence accessible to civil litigants in the United States." *Halkbank*, 2021 WL 638975, at *6.

---

[8] *Cf.* Fed. R. Civ. P. 45(c)(1) (geographically defining the subpoena power of federal district courts).

[9] The treaty states that it "shall not give rise to a right on the part of any private person to obtain . . . any evidence . . . ." Lawrence Decl. Ex. E (Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters, S. Korea–U.S., art. 1, § 3, Nov. 23, 1993, TIAS No. 97-523).  The MLAT also specifically requires that the United States "not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request . . . ." *Id*. art. 7, § 1.

In short, this Court's disputed jurisdiction over IBK and the inaccessibility of relevant witnesses and documents would make litigating this case in New York exceedingly inconvenient both for the parties and for the Court.

### 3. Plaintiffs' Choice of Forum Was Likely Motivated by Forum-Shopping Considerations.

"[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . ." *Iragorri*, 274 F.3d at 72. Here, Plaintiffs likely chose New York as a forum for precisely those reasons, and the Court should accord it minimal deference.

The Second Circuit has held that, when foreign plaintiffs choose a U.S. forum, "a plausible likelihood exists that the selection was made for forum-shopping reasons . . . ." *Id*. at 71; *see also Turedi*, 460 F. Supp. 2d at 522; *In re Ski Train Fire in Kaprun Austria*, 499 F. Supp. 2d 437, 445 (S.D.N.Y. 2007), *aff'd sub nom.*, *Geier v. Omniglow Corp.*, 357 F. App'x 377 (2d Cir. 2009). Furthermore, "the fact that likely evidence and witnesses are not located or easily available in this forum undermines any argument that this Court was chosen because of convenience to the parties." *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 333 (S.D.N.Y. 2008); *accord Carlström*, 2020 WL 7342753, at *6 (concluding that "the choice of New York as the forum [was] tactical" because, *inter alia*, "witnesses are largely if not entirely beyond this Court's subpoena power" and discovery would be "immense and complex").

Plaintiffs also appear to believe that New York offers a "tactical advantage resulting from local laws that favor [their] case . . . ." *Iragorri*, 274 F.3d at 72. Multiple commentators have called New York a "mecca" for judgment creditors in light of the New York Court of Appeals'

decision in *Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y.3d 533 (2009),[10] and Plaintiffs seem to believe that *Koehler* would permit them, as judgment creditors of Iran, to obtain Iranian assets held by IBK in another jurisdiction.  This is wrong.[11]  But the combination of a *perceived* advantage under New York law, Plaintiffs' foreign residences, and the inconvenience of litigating in New York suggests that Plaintiffs' decision to sue in New York was motivated by forum-shopping. That is "not a legitimate reason for choosing this forum."  *Carlström*, 2020 WL 7342753, at *6.

In sum, just as in *Halkbank*, there is no significant connection between this action and the forum, and litigating this case in New York would be highly inconvenient for all parties and for the Court.  The conduct giving rise to Plaintiffs' claims occurred principally in Korea.  Plaintiffs overwhelmingly reside in foreign countries.  The vast majority of witnesses would be located in Korea, and relevant documentary evidence will likewise be inaccessible in the United States. Following this Court's determination in *Halkbank*, Plaintiffs' choice of forum is entitled to "minimal deference" at best.  *Halkbank*, 2021 WL 638975, at *4.

---

[10] *See* Damien H. Weinstein, *New York: The Next Mecca for Judgment Creditors — An Analysis of* Koehler v. Bank of Bermuda Ltd., 78 FORDHAM L. REV. 3161 (2010); David D. Siegel, Koehler: *Creating Mecca for Creditors or Anti-Mecca for Garnishees?*, N.Y.L.J. (July 28, 2009).

[11] Plaintiffs' view to the contrary would ignore the New York Court of Appeals' subsequent decision in *Motorola Credit Corp. v. Standard Chartered Bank*, which significantly cabined *Koehler*.  24 N.Y.3d 149 (2014).  *Motorola Credit* held that, under New York's "separate entity" doctrine, "a judgment creditor's service of a restraining notice on a garnishee bank's New York branch is ineffective . . . to freeze assets held in the bank's foreign branches." *Motorola Credit*, 24 N.Y.3d at 163; *see also Nike, Inc. v. Wu*, No. 13-CIV-8012 (CM), 2020 WL 257475, at *23 (S.D.N.Y. Jan. 17, 2020) ("[J]udgment creditors . . . run up against the [separate entity doctrine] when attempting to enforce turnover orders or asset restraints overseas . . . , 'particularly in situations involving attempts to restrain assets held in a garnishee bank's foreign branches.'" (quoting *Motorola Credit*, 24 N.Y.3d at 161)).  The precise nature of the relationship between *Koehler* and *Motorola Credit* is one issue currently pending before the Second Circuit in *Nike v. Wu*. *See Nike*, 2020 WL 257475, *appeal filed*, No. 20-602 (2d Cir. Feb. 14, 2020).

Plaintiffs' view may further be based on a misunderstanding of the Second Circuit's now-vacated opinion in *Peterson v. Islamic Republic of Iran*, which remanded, rather than resolving, the question of New York courts' jurisdiction to recall to New York a right to payment belonging to the CBI and held by the defendant bank in Luxembourg. *See* 876 F.3d 63, 94 (2d Cir. 2017); *see also Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020) ("We do not, at this time, reinstate our analysis as to whether the common law and *Koehler* provide the district court with jurisdiction over the extraterritorial asset.").  While Plaintiffs appear to hold a different view, foreign sovereign property held by a foreign financial institution in a foreign country may not, under any circumstances, be subject to execution in United States courts.

**B.      Korea Is an Adequate Forum for Plaintiffs to Pursue Their Claims.**

The second stage of the *forum non conveniens* analysis requires the Court to determine whether there is an "adequate alternative forum."  A forum is "adequate" if (1) "the defendant[] [is] amenable to service of process there" and (2) "it permits litigation of the subject matter of the dispute."  *Norex*, 416 F.3d at 157 (citation omitted).  Korea easily satisfies both of these requirements.

### 1.      IBK Agrees to Submit to Jurisdiction in Korea.

The Second Circuit has held that "[a]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy" the first prong of the adequacy test. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 477 (2d Cir. 2002) (citation omitted).  In *Halkbank*, this Court concluded that Halkbank was "amenable to service of process in Turkey" based on a declaration from Halkbank's Chief Legal Advisor promising to "accept service in Turkey and [to] accept an appropriate Turkish court's exercise of personal jurisdiction."  *Halkbank*, 2021 WL 638975, at *4.

In this case, IBK has stated it would do the same.  Kim Decl. ¶ 20.  In addition, IBK enjoys no immunity from legal process in Korea, *see id.* ¶ 19; Declaration of Youngjoon Kwon, dated April 12, 2021 ("Kwon Decl.") ¶ 71, and it has been subjected to unfavorable judgments by Korean courts, *see* Declaration of Kwang Hyun Suk, dated April 12, 2021 ("Suk Decl.") ¶¶ 82–83.  IBK has never failed to satisfy any such final judgment issued by a Korean court.  Kim Decl. ¶ 21. Following Second Circuit precedent as well as this Court's own treatment of nearly identical facts in *Halkbank*, IBK is "amenable to service of process" in Korea.

### 2.     Korea Provides Plaintiffs Ample Opportunity to Pursue Their Claims.

The proposed alternate forum must also "permit[] litigation of the subject matter of the dispute" in order to be "adequate."  *Norex*, 416 F.3d at 157.  It need not "afford plaintiffs the identical causes of action or relief" but must simply offer a comparable opportunity for Plaintiffs to pursue their claims.  *Kingstown*, 2020 WL 5350492, at *9; *accord Norex*, 416 F.3d at 158.  And Plaintiffs are not guaranteed a *meritorious* claim in the alternate forum, merely the ability to pursue their suit—as the Supreme Court suggested in *Piper Aircraft*, "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery."  *Piper Aircraft*, 454 U.S. at 250; *accord Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47, 50 (2d Cir. 2004) ("Only where 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all' should a district court deny *forum non conveniens* dismissal on the ground that the alternative forum is inadequate." (quoting *Piper Aircraft*, 454 U.S. at 254)).

In resolving these questions, the Court "consider[s] any relevant material or source," including expert opinions submitted by the parties, and it resolves any conflicts by "weigh[ing] the relative 'persuasive force of the opinions' . . . ."  *See Halkbank*, 2021 WL 638975, at *4 n.3 (quoting first Fed. R. Civ. P. 44.1, then *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998)).  With this motion, IBK has submitted declarations from eminent Korean law experts demonstrating that Plaintiffs will be able to pursue their fraudulent conveyance allegations and seek to enforce their outstanding judgments against Iran in the Korean courts.

According to the experts, Plaintiffs have avenues open to them for pursuing their claims in Korea.  Korean law professor and former judge Youngjoon Kwon concludes that Plaintiffs likely

have a claim against IBK for tort under Article 750 of the Korean Civil Act.  *See* Kwon Decl. ¶ 7–24.  Korean tort law is in many respects broader than its U.S. equivalent, *see id.* ¶ 12, and the "requisite elements [for tort] are inclusive and flexible," *id.* ¶ 10.  As applied here, Professor Kwon opined that, if the Plaintiff's allegations are proved, they would "fall under tort under Korean law" and "Plaintiffs would be able to seek compensation of losses they incurred from such act."  *Id.* ¶ 13.  Indeed, according to Professor Kwon, "Defendant's act appears to constitute a classical example of an act . . . which the Korean Supreme Court recognizes as tort."  *Id.* ¶ 15.  Clearly, then, Korea "permits litigation of the subject matter of the dispute." *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002) (adopting the statement from a prior decision in the same case, 232 F.3d 49, 57 (2d Cir. 2000), that "[t]he mere fact that the foreign and home fora have different laws does not ordinarily make the foreign forum inadequate.").

Plaintiffs will also likely be able to seek to enforce their judgments against Iran in the Korean courts.  Final judgments from the United States are recognized by Korean courts, *see* Suk Decl. ¶¶ 7, 18; Kwon Decl. ¶¶ 73–74, and the holders of such judgments may bring a lawsuit in Korea to enforce those judgments.[12]  *See* Kwon Decl. ¶ 85; Suk Decl. ¶¶ 8–9.  A Korean court will enforce a final foreign judgment if (1) the jurisdiction of the issuing court complies with Korean principles of "international jurisdiction"; (2) the defendant received timely notice of the action; (3) recognizing the "judgment is not contrary to sound morals or other social order of Korea"; and (4) there is reciprocity of recognition with the issuing jurisdiction.  Kwon Decl. ¶ 73; Suk Decl. ¶¶ 19–20.  All four of these requirements are likely satisfied here.  *See* Kwon Decl. ¶ 76; Suk Decl.

---

[12] Such an enforcement suit is a lawsuit in its own right, so Korean principles of jurisdiction and foreign sovereign immunity apply. Neither of these principles, however, pose an obstacle to Plaintiffs seeking enforcement of their judgments against Iran: the Korean court where Iranian assets are located would likely possess jurisdiction, *see* Suk Decl. ¶ 69; Kwon Decl. ¶ 87, and Korean law does not afford sovereign immunity for commercial acts or for acts of terrorism, *see* Suk Decl. ¶¶ 15–16; Kwon Decl. ¶¶ 67–71.

¶¶ 29, 35, 40, 68.  And although it is an open question whether a Korean court would enforce Plaintiffs' award of punitive damages, *see* Suk Decl. ¶¶ 41–57; Kwon Decl. ¶¶ 77–84, the possible unavailability of punitive damages "does not demonstrate that the [Korean] courts are not an 'available' forum for purposes of *forum non conveniens* analysis." *Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510, 534 n.26 (S.D.N.Y. 2002); *accord Simmtech Co. v. Citibank*, *N.A.*, No. 13-CV-6768 KBF, 2015 WL 542284, at *4 (S.D.N.Y. Feb. 10, 2015) (finding that "Korea is plainly an adequate alternative forum" even though the plaintiffs had conceded that "punitive damages may be unavailable in Korea"), *rev'd on other grounds*, 634 F. App'x 63 (2d Cir. 2016); *see also Piper Aircraft*, 454 U.S. at 255 (approving a dismissal for *forum non conveniens* where, "although their potential damages award may be smaller, there is no danger that [the plaintiffs] will be deprived of any remedy or treated unfairly [in the alternative forum]").

Lastly, the Court should pay no heed to arguments that Korean courts will not give Plaintiffs' claims a fair hearing.  This Court should not "assume the responsibility for supervising the integrity of the judicial system of another sovereign nation," *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (citation omitted), and the Second Circuit has conclusively rejected the argument that a forum is inadequate "simply because a state-owned enterprise . . . is involved . . . ."  *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).  In any event, the independence of the Korean courts is guaranteed by various constitutional provisions, *see* Suk Decl. ¶¶ 77–81, and the Korean legal system enjoys a sterling international reputation.  In its "Rule of Law Index," the World Justice Project ranks Korea 13th in the world with respect to "civil justice," 24th in freedom

from "improper government influence," and 4th in terms of expeditious litigation.[13]  The Korean courts outrank U.S. courts in these categories,[14] not to mention those of Turkey.[15]  In addition, Korea and the United States are close trading partners that share strong military and diplomatic ties,[16] and Korean multinational corporations are often parties to litigation in the United States.[17]  The Korean courts thus have a strong incentive to treat U.S. judgment-holders fairly in the hope of reciprocal treatment by U.S. courts.

In sum, IBK is "amenable to process" in Korea, and Korean law "permits litigation of the subject matter of the dispute."  *See Norex*, 416 F.3d at 157 (citation omitted).  Plaintiffs will be able to pursue analogous claims under Korean law, and they may seek to enforce their judgments against Iran in Korean courts.  Based on binding Second Circuit precedent and this Court's own findings in the *Halkbank* case, Korea is an adequate alternative forum for this action.[18]

---

[13] *See* Lawrence Decl. Ex. G (World Justice Project, *WJP Rule of Law Index: Republic of Korea*).  Founded in 2006 as a presidential initiative of the American Bar Association, the WJP is an independent non-profit organization dedicated to education about the rule of law around the world. Its Rule of Law Index is a leading source for data on the rule of law, relying on surveys of over 130,000 households and 4,000 experts.  *See* Lawrence Decl. Ex. G (World Justice Project, *About Us*; World Justice Project, *Our Approach*).

[14] The United States ranks, respectively, 36th in civil justice, 34th in freedom from improper government influence, and 27th in expeditious litigation.  *See* Lawrence Decl. Ex. G (World Justice Project, *WJP Rule of Law Index: United States*).

[15] Turkey ranks, respectively, 103rd in civil justice, 124th (out of 128) in freedom from government influence, and 100th in expeditious litigation.  *See* Lawrence Decl. Ex. G (World Justice Project, *WJP Rule of Law Index: Turkey*).

[16] The United States was Korea's second-largest trade partner in 2018, *see* Lawrence Decl. Ex. H (Observatory of Economic Complexity, *South Korea*), while Korea was the United States' sixth-largest trade partner in 2020, *see* Lawrence Decl. Ex. I (U.S. Census Bureau, *Top Trading Partners*).

[17] Major Korean corporations that have been parties to litigation in the United States include the Samsung Group, Hyundai Motor Corporation, and LG Electronics.  *See* Lawrence Decl. Ex. J (Statista, *Leading South Korean Companies on the Fortune Global 500 Ranking in 2019* (Aug. 31, 2020)).

[18] In finding Korea to be an adequate alternate forum, this Court would be joining many other courts in New York and elsewhere making similar findings.  *See FIMBank P.L.C. v. Woori Fin. Holdings Co. Ltd.*, 962 N.Y.S.2d 114, 116 (1st Dep't 2013) (holding that, in a case which had "no substantial nexus with New York and . . . may require consideration of Korean law," "Korea is an adequate alternative forum for this dispute. There is no evidence to support plaintiff's allegations and speculation about bias in the Korean courts . . . ."); *see also, e.g., Hanwa Life Ins. v. UBS AG*, 43 Misc. 3d 1224(A), at *4-5 (N.Y. Sup. Ct. 2014), *aff'd*, 127 A.D.3d 618 (1st Dep't 2015); *Monsanto Int'l Sales Co. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 838 (S.D.N.Y. 1991); *Yoon v. Lee*, 433 F. Supp. 3d 18, 26 (D. Mass. 2019); *Primacy Eng'g, Inc. v. SAN Eng'g*, No. 1:18-CV-129-RP, 2019 WL 3412914, at *5 (W.D. Tex. July 29, 2019).

### C.      Both the Private and the Public Factors Strongly Favor Dismissal of Plaintiffs' Claims.

Finally, the Court must balance the private and public interest factors to determine if dismissal is the appropriate course.  *See Pollux Holding*, 329 F.3d at 74–75.  Both sets of factors favor dismissing this action.

### 1.      The Private Interests Favor Dismissal.

The longstanding private interest factors guiding the *forum non conveniens* analysis revolve around the convenience of the chosen forum.  These factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Iragorri*, 274 F.3d at 73–74 (quoting *Gilbert*, 330 U.S. at 508).

Litigating this case in New York will not be "easy, expeditious, or inexpensive."  As set forth above, nearly all of the relevant witnesses reside in Korea, outside of the subpoena power of the Court, and the relevant documentary evidence is likewise located abroad or otherwise inaccessible to civil plaintiffs.  *See supra* Section II.A.2.  As this Court found in *Halkbank*, "the private interest factors weigh strongly in favor of litigating this case in [Korea]."  *Halkbank*, 2021 WL 638975, at *6.

### 2.      The Public Interests Favor Dismissal

The public interest factors also favor dismissal of this case.  According to the Second Circuit, these public interest considerations include "administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult

problems in conflict of laws and the application of foreign law." *Aguinda*, 303 F.3d at 480; *see also Gilbert*, 330 U.S. at 508–09.  Here, New York has a minimal interest in adjudicating this case, Korea has a particularly strong interest in this suit, and the Court is likely required to apply Korean law to Plaintiffs' fraudulent conveyance claims.  The public interest factors also weigh strongly in favor of dismissal.

> a.      *Korea possesses a stronger local interest than New York in adjudicating this case.*

New York is an inappropriate forum for this litigation because of its minimal interest in the case compared to that of Korea.  "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," *Gilbert*, 330 U.S. at 508-09, and "[w]ith small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case." *Pollux Holding*, 329 F.3d at 76.  As described above, all of the relevant conduct allegedly giving rise to liability occurred in Korea, and New York's connection to the transactions is tenuous at best.  *See supra* Section II.A.1.

The Second Circuit's decision in *Pollux Holding* is instructive on this factor.  That case dealt with the allegedly fraudulent marketing and sale of certain "complex derivative instruments." *Pollux Holding*, 329 F.3d at 68–69.  The transactions at issue were conducted via the New York-based defendant's branch in London, but "New York officials were involved in various aspects of the sales."  *Id*. at 69.  Affirming the dismissal of the suit for *forum non conveniens*, the Second Circuit explicitly approved of the district court's conclusion that England, as the place where "the alleged fraud and misrepresentations primarily occurred," "possesse[d] the stronger local interest" despite the New York branch's involvement in the transactions *and* the fact that the defendant bank was headquartered in New York.  *Id*. at 76.  In the same way, "the alleged

fraud and misrepresentations" in this case "primarily occurred" in Korea, and New York has even less connection with that conduct than it did to the acts at issue in *Pollux Holding*.

In addition to being the location of the underlying conduct, other aspects of this case give Korea an especially strong interest in having this "localized controvers[y] decided at home." *Gilbert*, 330 U.S. at 509. IBK is not just a "significant [Korean] financial institution," *Halkbank*, 2021 WL 638975, at *6—it is also owned and controlled by the Korean government. Kim Decl. ¶¶ 5-7. Furthermore, Plaintiffs' allegations potentially implicate not just IBK employees but also the Korean government. Officials with both the Korea Strategic Trade Institute and the Bank of Korea monitored and/or reviewed all transactions utilizing the CBI Won Account, *id*. ¶ 12, and although Plaintiffs do not *allege* misconduct on their part, the Korean government's involvement with the CBI Won account is squarely at issue here.[19] Korea thus has a particularly strong interest in adjudicating these claims, and this Court should avoid impugning the conduct of a foreign government and "imperil[ing] the amicable relations between governments . . . ." *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666 (2d Cir. 1988) (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918)).[20]

---

[19] Plaintiffs' complaint states that transfers from the CBI Won Accounts were "controlled by the Korean government" and involved "a multi-step review process" requiring government officials, among others, to "examine the applicable business documentation . . . relating to the proposed transactions." Compl. ¶ 49.

[20] This suit thus implicates considerations of international comity and rapport. Although comity does not *require* the Court to dismiss this case, it is entirely proper to take such considerations into account even when they are not mandatory. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 142 (2014) ("Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would [violate due process].")*.* Indeed, *forum non conveniens* has long been one mechanism by which courts have declined jurisdiction for "motives of . . . international comity . . . ." *The Belgenland*, 114 U.S. 355, 363 (1885); *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 464–65 (1994) (Kennedy, J., dissenting) (collecting cases). Leading scholarly assessments still characterize *forum non conveniens* as a doctrine of international comity. *See* William S. Dodge, *International Comity in American Law*, 115 COLUM. L. REV. 2071, 2109–10 & n.237 (2015).

> b.    *The Court will likely be required to apply Korean law to Plaintiffs' fraudulent conveyance claims.*

Litigating this case in New York will require "the court . . . to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251 (citation omitted). In *Halkbank*, this Court found the very dispute over the applicable law to be a "further basis for dismissal." *Halkbank*, 2021 WL 638975, at *6. Here, as in *Halkbank*, New York's choice-of-law rules mandate that foreign law governs Plaintiffs' fraudulent conveyance claims.[21]

Under New York law, "the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). An actual conflict exists when "the applicable law from each jurisdiction provides different substantive rules," those differences are "relevant to the issue at hand," and they "have a significant possible effect on the outcome" of the suit. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (internal quotations and citations omitted) (emphasis omitted).

Such is the case here. The Korean tort which would govern Plaintiffs' allegations requires the defendant to "know[] that . . . [it] is infringing on the rights of the claimant." Kwon Decl. ¶ 14. Likewise, the Korean "[c]reditor's right of revocation," which allows a creditor to seek the cancellation of a fraudulent act and the recovery of any affected funds, requires that the debtor making the fraudulent transfer "know[] that such act would harm the creditor." *Id.* ¶ 26. In contrast, New York Debtor & Creditor Law § 273-a does not inquire into the mental state of the transferor, deeming *all* conveyances made by a defendant without fair consideration eligible for

---

[21] When a federal court adjudicates "state law claims that are pendent to a federal claim [it] must apply the choice of law rules of the forum state." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (citation omitted).

revocation. Korean law thus requires knowledge; New York law does not.  The two jurisdictions provide different, potentially outcome-dispositive rules of decision governing Plaintiffs' allegations: there is an actual conflict here.

Having found a conflict, the Court must then decide which jurisdiction's law to apply. Fraudulent conveyance is a tort for choice-of-law purposes, *see Cruden v. Bank of N.Y.*, 957 F.2d 961, 974 (2d Cir. 1992)), and for tort claims, New York courts engage in "interest analysis" to determine the applicable law.  *GlobalNet Financial.com*, *Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383–84 (2d. Cir. 2006) (citing *Schultz v. Boy Scouts of Am.*, *Inc.*, 65 N.Y.2d 189, 197 (1985)). Pursuant to the "interest analysis" inquiry, courts apply the law of the "jurisdiction having the greatest interest in the litigation," which varies depending on whether the relevant rule is "conduct-regulating" or "loss-allocating."  *Licci ex rel. Licci v. Lebanese Canadian Bank*, *SAL*, 739 F.3d 45, 48–49 (2d Cir. 2013) (citations omitted).  Because fraudulent conveyance laws are conduct-regulating rules, *e.g.*, *Fallman v. Hotel Insider*, *Ltd.*, No. 14-cv-10140, 2016 U.S. Dist. LEXIS 5895, at *21 (S.D.N.Y. Jan. 15, 2016), the "law of the jurisdiction where the [allegedly tortious acts] occurred will generally apply. . . ." *Licci*, 739 F.3d at 49 (citation omitted) (alteration in original).  In the "fraudulent conveyance context" in particular, it is "well-settled" that the "the location of the defendant's conduct . . . controls."  *Lyman Com. Sols.*, *Inc. v. Lung*, No. 12-cv-4398, 2014 WL 476307, at *3 (S.D.N.Y. Feb. 6, 2014) (quoting *Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 429 (S.D.N.Y. 2012)).

Thus, following New York's choice-of-law rules, the Court must apply the law of the jurisdiction where "the defendant engaged in the behavior that the conduct-regulating rule seeks to deter."  *Fed. Hous. Fin. Agency v. UBS Americas*, *Inc.*, 858 F. Supp. 2d 306, 335 (S.D.N.Y. 2012) (Cote, J.) ("*FHFA*"), *aff'd*, 712 F.3d 136 (2d Cir. 2013).  Here that jurisdiction is Korea.  As

discussed above, all of the conduct which allegedly gives rise to liability in this case occurred in Korea.  Fraudulent conveyance laws do not seek to deter the unknowing *receipt* of fraudulently transferred funds—they aim to deter the *initiation* of fraudulent transfers.  This case is thus analogous to this Court's decision in *FHFA*, in which the Court concluded that the alleged negligent misrepresentations "occurred" where "the defendants prepared and disseminated the allegedly misleading offering materials that are at the center of this litigation."  *FHFA*, 858 F. Supp. 2d at 335.  Korea is where the torts alleged in this case occurred, and it is accordingly Korean law that applies.[22]

"The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law."  *Piper Aircraft*, 454 U.S. at 251.  The foregoing discussion demonstrates that, at the very least, litigating this case in New York will require precisely the kind of "complex exercises" envisioned by the *Piper Aircraft* Court.  As such, this final public interest factor also favors dismissal.

## CONCLUSION

In this case, an overwhelmingly foreign group of plaintiffs are suing a Korean bank, alleging a fraudulent scheme conducted principally in Korea to benefit Iran.  They also seek to recover Iranian funds held in Korea based on judgments issued by the U.S. District Court for the District of Columbia arising from injuries suffered in Kenya and Tanzania.  To describe this case is to decide it: New York is not the appropriate forum for this action.  This Court correctly

---

[22] An analogous case recently decided in this district is instructive.  In *Kashef v. BNP Paribas SA*, victims of horrific human-rights abuses committed by the Sudanese government brought tort claims against BNP Paribas relating to its "illicit and fraudulent financial practices that allowed the Sudanese government to evade American sanctions."  442 F. Supp. 3d 809, 813 (S.D.N.Y. 2020).  Even though the defendant "clear[ed] money through New York" as a part of its allegedly tortious scheme, the court applied Swiss law because the defendant orchestrated the scheme from its Geneva branch.  *Id*. at 820.  The scheme's "minor connection to New York [was] insufficient for the state's law to apply."  *Id.*

dismissed the nearly identical *Halkbank* case for *forum non conveniens*.  It should treat like cases alike and do the same here.

Dated:  New York, New York   Respectfully submitted,
   April 13, 2021

           By: */s/ Carl H. Loewenson, Jr.*
           Carl H. Loewenson, Jr.
           CLoewenson@mofo.com
           J. Alexander Lawrence
           ALawrence@mofo.com
           MORRISON & FOERSTER LLP
           250 West 55th Street
           New York, NY 10019-9601
           Telephone:  (212) 468-8000
           Facsimile:  (212) 468-7900

           *Attorneys for Defendant*
           *Industrial Bank of Korea*