# Exhibit A

KAREN L. LOEFFLER
United States Attorney

JAMES BARKELEY
STEVEN E. SKROCKI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-6011
Email: jim.barkeley@usdoj.gov


Counsel for the Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | |
| vs. | **AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA; | **UNDER SEAL** |
| REAL PROPERTY LOCATED AT UNITS 4, 5, 8, 14, 17, 20, 23, 24, 32, 36, 37, 40, 43, 44, 47, 48, 49, 54, 57, 59, 60, 63 AND 64 OF BRIARCLIFF TOWNHOMES, A CONDOMINIUM, ANCHORAGE, ALASKA; | |
| REAL PROPERTY LOCATED AT 17067 BOWEN CIRCLE, EAGLE RIVER, ALASKA (UNIT 91 DOVE TREE TOWNHOMES), ANCHORAGE, ALASKA; | |

REAL PROPERTY LOCATED AT
2138 WOOD DUCK WAY, EUGENE,
OREGON;

REAL PROPERTY LOCATED AT
7826 MORNING DEW ROAD,
COLORADO SPRINGS,
COLORADO;

REAL PROPERTY LOCATED AT
3379 MARIGOLD CIRCLE, COSTA
MESA, CALIFORNIA

Defendant(s).

I, Sue Chambers, being duly sworn, depose and state the following:

1.    I am a Special Agent with the United States Treasury Department, Internal Revenue Service - Criminal Investigation (IRS-CI), and have been so employed since December 1993. I am presently assigned to the Seattle Field Office, Anchorage, Alaska post of duty. My duties and responsibilities include the investigation of possible violations of the Internal Revenue laws, (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), and the Money Laundering Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957). I have bachelor degrees in Accounting and Business Administration from Carroll College. I received six months of intensive training at the Federal Law Enforcement Training Center in Glynco, Georgia, to become a Special Agent. This training emphasized the investigation of criminal offenses under

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

2

Titles 26, 18, and 31 of the United States Code. During my employment as a Special Agent, I have attended continuing educational classes and seminars in various aspects of criminal investigation, dealing specifically with money laundering, asset seizure and forfeiture, various financial investigative techniques, and related financial investigations. The facts outlined in this affidavit are from my personal knowledge of the investigation as well as information provided to me by other law enforcement officers. The facts sworn to in this affidavit support the filing of a civil forfeiture complaint against real property described herein. This affidavit does not address all facts known to me or others involved in this investigation.

2.      During my employment as a Special Agent, I have attended continuing educational classes and seminars in various aspects of criminal investigation, dealing specifically with money laundering, asset seizure and forfeiture, various financial investigative techniques, and related financial investigations.

3.      The facts outlined in this affidavit are from my personal knowledge of the investigation as well as information provided to me by other law enforcement officers. The facts sworn to in this affidavit support the filing of a civil forfeiture complaint against real property described herein. This affidavit does not address all facts known to me or others involved in this investigation.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

3

## I.  LEGAL AUTHORITY

4.      This affidavit is made in support of the filing of a civil action in rem brought to enforce the provisions of 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) and 985, for 28 parcels of real property, described below, which: (A) constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), namely Title 50 U.S.C. §§ 1701-1705 (International Emergency Economic Powers Act)  and  (B) because the real property was involved in a transaction in violation of 18 U.S.C. § 1957 (Money Laundering).

## II.  THE PROPERTY

5.      The 28 parcels of real property subject to forfeiture are described as follows:

      A.    11621 Alderwood Loop, Anchorage, Alaska.
Legal description: Lot Eighty-Nine (89), Block One (1), Meadow Wood Subdivision, according to the official plat thereof, filed under Plat No. 98-8, in the records of the Anchorage Recording District, Third Judicial District, State of Alaska.

      B.    2138 Wood Duck Way, Eugene, Oregon.
Legal description: Lot 17, Delta Meadows, recorded October 22, 2004, Reception No. 2004-081746, Lane County Deeds and Records, in Lane County, Oregon.

      C.    3379 Marigold Circle, Costa Mesa, California, in the amount of $250,000.
Legal description: Lot 143 of tract number 7718, as per map recorded in book 303, page 35 to 40 of miscellaneous maps, in the office of the county recorder of Orange, State of California.  Except all oil, gas

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

4

and hydrocarbon substances and other mineral rights, without however, the right to enter the surface of said land down to a distance of 500 feet from the surface thereof, as reserved in the deed recorded March 15, 1972, in book 10037, page 608, official records.

D.    7826 Morning Dew Road, Colorado Springs, Colorado, in the amount of $89,435.
Legal description: Lot 16, Block 1, Forest Meadows Filing No. 1-1, in the City of Colorado Springs, County of El Paso, State of Colorado.

E.    Briarcliff Townhome Condominiums - 23 units located in Anchorage, Alaska. See Exhibit A for a complete address list.
Legal description: Units 4, 5, 8, 14, 17, 20, 23, 24, 32, 36, 37, 40, 43, 44, 47, 48, 49, 54, 57, 59, 60, 63 and 64 of Briarcliff Townhomes, a Condominium, as shown on the Floor Plans filed in the office of the Recorder for the Anchorage Recording District, Third Judicial District, State of Alaska, under Plat No. 2007-31, and as identified in the Declaration recorded April 13, 2007, under Serial No. 2007-022406-0, and in any amendments thereof.

F.    17067 Bowen Circle, Eagle River, Alaska.
Legal description: Unit 91 of Dove Tree Townhomes, a Condominium, as shown on the Floor Plans filed in the office of the Recorder for the Anchorage Recording District, Third Judicial District, State of Alaska, under Plat No. 2009-94, and as identified in the Declaration recorded March 2, 2009, under Serial No. 2009-012428-0, and in any amendments thereof.

## III.    FACTS SUPPORTING PROBABLE CAUSE

### Introduction

6.    The United States is investigating a criminal conspiracy orchestrated by U.S. citizen Kenneth Zong to transfer the equivalent of approximately one billion U.S.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

5

dollars from the Government of Iran (GOI) to various persons and companies around the world in violation of, inter alia, U.S. Code Title 50 Section 1701-1706 (International Emergency Economic Powers Act) and U.S. Code Title 18 Section 1956-1957 (Laundering of Monetary Instruments). The International Emergency Economic Powers Act (IEEPA) authorizes the President of the United States to impose economic and trade sanctions against targeted foreign countries and regimes, as well as groups, entities, or individuals, where the President has determined there is a threat to the national security, foreign policy, or economy of the United States. As a result of Iranian support for international terrorism and Iran's active pursuit of weapons of mass destruction, U.S. Presidents since President Reagan have issued executive orders which have resulted in the prohibition of most U.S. trade with Iran. The Iranian Transactions and Sanctions Regulations (ITSR) (31 C.F.R Part 560) prohibit all unlicensed transactions with the GOI and most commercial dealing with persons or entities in Iran. The European Union and the United Nations have also imposed sanctions against the country of Iran.

7.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of U.S. Code Title 50 Section 1701-1706 (International Emergency Economic Powers Act) and U.S. Code Title 18 Section 1956-1957 (Laundering of Monetary Instruments) have been committed by Kenneth Keun Zong and Mitchell Sub Zong.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

6

8.    In 2011, Kenneth Zong created numerous and fictitious shell companies in the Republic of Korea (Hereinafter "Korea") which engaged in fraudulent business transactions with Iranian and other third country entities in order to transfer money from the Central Bank of Iran, convert those funds to U.S. dollars, and then transfer those converted funds to others outside Iran including individuals inside the United States. For his services to the GOI in facilitating these transactions. Kenneth Zong received the equivalent of approximately $10 million U.S. dollars in compensation, and engaged with his family in the U.S. to launder the proceeds and conceal the funds as payment for the conversion of Iranian funds into U.S. dollars. Collectively. the Zongs have profited from this criminal conspiracy to violate the IEEPA statutes and have invested the proceeds from the conspiracy into real estate and other property in the United States, including Alaska. in violation of the money laundering statute.

### Statutory Background

9.    The predicate for an exercise of executive authority under IEEPA is the declaration of a national emergency under the National Emergencies Act (NEA). *See* 50 U.S.C. §§ 1621, 1701(b). Under IEEPA. the emergency must stem from an "unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security. foreign policy, or economy of the United States." *Id.* at § 1701(a). After declaring such an emergency, the President may, through "regulations ... instructions, licenses. or otherwise,"

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

7

(A) investigate, regulate, or prohibit—

(i) any transactions in foreign exchange,

(ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or a national thereof,

(iii) the importing or exporting of currency or securities,

by any person, or with respect to any property, subject to the jurisdiction of the United States;

(B) investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States....

*Id.* § 1702(a)(1).

10.    On March 15, 1995, President William Clinton issued Executive Order 12957, which declared a national emergency to deal with the "unusual and extraordinary threat" posed to the national security, foreign policy and economy of the United States by "the actions and policies of the Government of Iran." 60 Fed.Reg. 14615 (Mar. 17, 1995). The national emergency with respect to Iran has been extended annually through presidential notices. See Executive Documents summarized in the annotations to 50 U.S.C. § 1701.

11.    On May 6, 1995, President Clinton signed Executive order 12959, which fortified the sanctions regime by banning U.S. firms from exporting to Iran, importing from Iran, or investing in Iran, subject to the exemptions provided in IEEPA. See 60 Fed.Reg. 24757 (May 9, 1995); see also Exec. Order No. 13059, 62 Fed.Reg. 44531

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

8

(Aug. 21, 1997) (clarifying the preceding Orders). The Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations ... as may be necessary to carry out the purposes" of the Orders. See, e.g., 60 Fed.Reg. 14615 at § 3. The Treasury Department subsequently issued what is now referred to as the ITSR. See generally 31C.F.R.Part 560.

12.     Subject to limited exemptions and to licenses issued by the Office of Foreign Assets Control (OFAC) - the arm of the U.S. Treasury Department responsible for administering the regulations - the ITSR prohibits, in part, the "exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran," 31 C.F.R. §560.204, and states persons may not "approve, finance, facilitate, or guarantee any transaction by a foreign person where the transaction by that foreign person would be prohibited...if performed by a [U.S.] person or within the United States.," id. §560.208.

13.     31 C.F.R. § 560.206 further prohibits any "United States person, wherever located, may engage in any transaction or dealing in or related to:

(1) Goods or services of Iranian origin or owned or controlled by the Government of Iran; or
(2) Goods, technology, or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

9

(b) For purposes of paragraph (a) of this section, the term transaction or dealing includes but is not limited to purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing."

14.    With respect to entities outside the U.S., 31 C.F.R. § 560.215 states.

"(a) Except as otherwise authorized pursuant to this part, an entity that is owned or controlled by a United States person and established or maintained outside the United States is prohibited from knowingly engaging in any transaction, directly or indirectly, with the Government of Iran or any person subject to the jurisdiction of the Government of Iran that would be prohibited pursuant to this part if engaged in by a United States person or in the United States."

15.    OFAC regulations did not authorize, and there was no applicable statutory exemption for, the transactional activities at issue in this case that are the subject of this affidavit.

16.    The ITSRs apply to Kenneth Zong because under 31 C.F.R. §560.314, Kenneth Zong is considered a U.S. person because he is a U.S. citizen, even if located abroad.

17.    Violations of the ITSR are subject to criminal penalties. See 50 U.S.C. § 1705. Criminal penalties under IEEPA apply to those who "willfully commit[ ], willfully attempt[ ] to commit, or willfully conspire[ ] to commit" a violation of any license, order or regulation issued pursuant to IEEPA. Id. § 1705(c). Further, pursuant to 31 C.F.R. 560.203(b), "Any conspiracy formed to violate any of the prohibitions set forth in this part is prohibited."

### Kenneth Zong Business and Zong Family Background

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

10

18.   Kenneth Keun Zong (Kenneth Zong), was born on March 26, 1939 and became a United States citizen in 1985.   From approximately 1980, he resided in Anchorage, Alaska and was a businessman who operated a number of companies.   In or about 2005, Kenneth Zong was President of Koskimo Construction Inc. in Anchorage, Alaska.   In or about 2001, Kenneth Zong moved to Korea and began setting up companies and bank accounts there.   Kenneth Zong has four sons and a spouse that reside in the United States.

19.   His eldest son, Won Sub Zong (Won Zong) was born on September 27, 1964. He resides in Anchorage, Alaska with his wife.

20.   His second son, Mitchell Sub Zong (Mitchell Zong), was born on January 9, 1973 and maintains residences in both Costa Mesa, California and Colorado Springs, Colorado.   Mitchell Zong is married to Erin Borini.   According to a statement made by Kenneth Zong to Korean prosecutors, Mitchell Zong was college classmates with Majid Fasoodeh of Fasoodeh & Partnership at Colorado State University 16 years ago.   This relationship enabled Kenneth Zong to start his business making exports to Iran.   Mitchell Zong also uses the name "Tae Zong" on accounts and records and is sometimes referred to as "Tong" in emails within the Zong family.

21.   The third son is Jason Sub Zong (Jason Zong) who was born on February 9, 1975 and resides in Eugene, Oregon.   In emails within the Zong family, Jason Zong is sometimes referred to as "Hee."

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

11

22.    The youngest son is Hyo Sub Zong (Hyo Zong) who was born in Anchorage, Alaska on June 10, 1982 and resides in Anchorage, Alaska with a woman named Jamie Ann Stusse. In emails within the Zong family, Hyo is sometimes referred to as "Joe" and Hyo Zong uses "Joe" on various accounts and correspondences.

23.    Kenneth Zong's wife is Kilja Zong who was born on November 11, 1941 and resides in both Anchorage, Alaska and Eugene, Oregon.

24.    Law enforcement authorities in Korea convicted Kenneth Zong for violations of the Koreain Foreign Exchange Transaction Act and their Customs law in association with the financial operation of one of his Korean companies, KSI Ejder/Anchore. On or about June 11, 2013, Kenneth Zong was sentenced to a two year prison term, fined approximately $20,000 U.S. dollars (USD) equivalent, and forfeited approximately $6 million USD equivalent.

## The Use of Front Companies to Recive Iranian Funds for Conversion Into U.S. Dollars Abroad in Violation of IEEPA

25.    On or about July 2009, Kenneth Zong registered the company KSI Ejder Korea Inc. (KSI) in Korea. In or about February 2011, Kenneth Zong changed the name of KSI to Anchore. As described in detail below, Kenneth Zong used KSI/Anchore to as a conduit to convert and thereafter distribute the value of approximately one billion (in U.S. dollars) of funds from the Government of Iran into United States currency throughout the world. As shown in this affidavit, there is probable cause to believe that

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

12

Kenneth Zong orchestrated this scheme thorough the use of various fictitious shell companies created and used to facilitate this specific purpose. For doing this work, Kenneth Zong received approximately $10 million USD as compensation which he distributed to his family members.

26.     In furthering this scheme, Kenneth Zong also created and operated the companies Dynamic First, AutoPex Corporation, Topex Corporation and Gem Art Corporation in the ROK. On or around May 2011, Topex Corporation was established. Topex's address was the same as Anchore, and Kenneth Zong was registered as a trustee. The name of Topex Corporation was subsequently changed to Gem Art Corporation.

### Kenneth Zong's Iranian Business Partners

27.     Beginning in at least January 2011 and continuing through at least August 2012, Kenneth Zong conspired with Iranian citizens Pourya Nayebi, Houshang Hosseinpour, and Houshang Farsoudeh (collectively, "the Iranians") to fabricate false business arrangements to transfer GOI funds from the Central Bank of Iran to persons and entities throughout the world.

28.     Nayebi was born on July 25, 1974 in Tehran, Iran and was issued an Iranian passport on April 3, 2012. Hosseinpour was born on March 21, 1967 in Tehran, Iran and was issued an Iranian passport on July 11, 2010. Farsoudeh was born on October 10, 1968 in Tehran, Iran and was issued an Iranian passport on December 27, 2010.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

13

29.    The U.S. Department of Treasury Office of Foreign Assets Control (OFAC) maintains the Foreign Sanctions Evaders List (FSE List) to identify foreign persons sanctioned under Executive Order (E.O.) 13608, "Prohibiting Certain Transactions With and Suspending Entry Into the United States of Foreign Sanctions Evaders With Respect to Iran and Syria." This Foreign Sanctions Evaders List ("FSE List") includes persons sanctioned pursuant to E.O. 13608 for engaging in conduct relating to the evasion of U.S. economic and financial sanctions with respect to Iran or Syria. On February 6, 2014, Pourya Nayebi, Houshang Hosseinpour, and Houshang Farsoudeh were added to OFAC's FSE List.

30.    The Iranians have set up multiple front companies in Iran, the U.A.E., Turkey, Georgia, Lichtenstein, New Zealand, and other countries to conduct business on behalf of the GOI. According to a document titled "COMPANY NAMES AND OWNERSHIP" found in an email dated June 8, 2013, Hosseinpour is listed as an owner of Merchant Savings and Loan Limited New Zealand and New York General Trading, as well as a joint owner with Farsoudeh for the following companies: MSL Hotel Holding Group, New York Fund Management Limited, and New York Shipping and Logistics International Limited. Farsoudeh is also listed as an owner of a company called FGA. Farsoudeh further is very similar to the name of KSI/Anchore's fraudulent Kish Island, Iran based trading partner, Farsoodeh and Partnership Co.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

14

31.     In that same document titled "COMPANY NAMES AND OWNERSHIP" found in an email dated June 8, 2013, Nayebi is listed as an owner of *Orchidea Gulf Trading*.  On August 28, 2013, United States Magistrate Judge John D. Roberts authorized a search and seizure warrant for the email account *orchideagulf@yahoo.com* used by the company Orchidea Gulf Trading Inc.  A review of the over 11,000 unique *orchideagulf@yahoo.com* emails reveals Orchidea is an established Iranian front company used to conduct transactions throughout the world in order to distribute GOI funds.  According to the emails, in or around 2007 Orchidea Gulf Trading changed its name from Selling Club Middle East Trading.  Listed on that change of name document were the owners of the company which included Nayebi, who is on the FSE list referenced above.

32.     MSL & Co Investment Trading (MSL Dubai) was a Dubai, U.A.E. based company, and public records listed Nayebi as Owner/President.  MSL Dubai documents obtained via the search of *the orchideagulf@yahoo.com* account referred to Orchidea Gulf Trading as a "sister company."  In one email to *orchideagulf@yahoo.com*, Kenneth Zong addresses "Messrs MSL & Co." indicating *orchideagulf@yahoo.com* is also used by individuals associated with MSL Dubai.  In an interview with ROK law enforcement personnel, Kenneth Zong identified Farsoudeh as the MSL Dubai Chairman.  Public records revealed that in April 2013, Nayebi changed the name of MSL & Co. to European Oil Traders, and relocated the business to Switzerland.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

15

33.     Based upon a review of the emails, the primary user of the email address *orchideagulf@yahoo.com* was an individual named Shahzad Mirza.   Mirza was an employee of Orchidea Gulf Trading, and worked for the Iranians on a variety of matters, to include helping arrange the transfer of GOI funds through Kenneth Zong and his businesses.   The review of the *orchideagulf@yahoo.com* emails also revealed another key facilitator of the Iranians' business, Muneer J. M. AlShaikh.  On or about February 1, 2011, AlShaikh sent Nayebi an email with two attachments, a "Prevention of Money Laundering Questionnaire" from AfrAsia Bank headquartered in Mauritius and an 81 page "U.S. Money Laundering Threat Assessment" dated December 2005.

34.     In various emails, Mirza and the Iranians were conducting business or contemplating business with entities located in China, Russia, Korea, Georgia and Turkey, among others.  Some of the business plans discussed resembled the schemes that were conducted with Kenneth Zong.

35.     In the same February 6, 2014 action that added Nayebi, Hosseinpour, and Farsoudeh, to OFAC's Foreign Sanctions Evaders List (FSE List), the U.S. Treasury also listed Nayebi owned companies Orchidea Gulf Trading and  European Oil Traders (formerly known as MSL Dubai) to the FSE List.

36.     The below table summarizes the above information about relevant individuals and companies described in the above paragraphs.

| Name | Summary |
|---|---|

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

16

| Zong Family and Associates | | |
|---|---|---|
| Kenneth Zong | Owner of Korean companies and bank accounts used in scheme to provide financial services to Iran. | |
| Kilja Zong | Kenneth Zong's wife. | |
| Won Zong | Kenneth Zong's first child. | |
| Mitchell Zong | Kenneth Zong's second child. | |
| Erin Borini | Mitchell Zong's wife. | |
| Jason Zong | Kenneth Zong's third child. | |
| Hyo Zong | Kenneth Zong's fourth child. | |
| Jamie Stusse | Hyo Zong's girlfriend. They live together and are raising children together. | |
| Zong Family Companies | | |
| KSI Ejder/Anchore (KSI) | Kenneth Zong owned and controlled. | ROK based |
| Dynamic First | Kenneth Zong owned and controlled. | |
| GEMART Incorporated (GEMART Korea) | Kenneth Zong owned and controlled. Named changed from Topex. | |
| Koskimo Construction Inc. (Koskimo) | President: Hyo Zong Treasurer: Jamie Stusse Vice President: Kenneth Zong | Alaska based |
| MSL Gulf Trading Inc. (MSL Inc.) | Registered Agent: Kenneth Zong Incorporator: Kenneth Zong Incorporator: Mitchell Zong Incorporator: Kilja Zong | |
| MSL Gulf Trading One Inc. (MSL One) | Manager: Mitchell Zong Member: Mitchell Zong | |
| MSL Gulf Trading Two Inc. (MSL Two) | Manager: Mitchell Zong Member: Mitchell Zong | |
| GEMART USA LLC (Gemart USA) | Manager: Mitchell Zong Member: Mitchell Zong | |

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.

Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

17

| Individuals Working for the Government of Iran | | |
|---|---|---|
| Pourya Nayebi | Iranian, U.S. Treasury designated "Foreign Sanction Evader." | Collectively, "the Iranians" |
| Houshang Hosseinpour | Iranian, U.S. Treasury designated "Foreign Sanction Evader." | |
| Houshang Farsoudeh | Iranian, U.S. Treasury designated "Foreign Sanction Evader." | |
| Majid Farsoudeh | Brother of Houshang Farsoudeh, knew Mitchell Zong at Colorado State University. | |
| Shahzad Mirza | Employee of Orchidea Gulf Trading. Worked for the Iranians. | |
| Muneer J. M. AlShaikh | Employee of Orchidea Gulf Trading. Worked for the Iranians. | |
| Companies Associated With Individuals Working for the Government of Iran | | |
| Farsoodeh and Partnership Co. | Based in Kish Island, Iran. | |
| Orchidea Gulf Trading | Dubai, U.A.E. based company owned by Nayebi. U.S. Treasury lists Orchidea as a "Foreign Sanction Evader." | |
| MSL & Co Investment Trading (MSL Dubai) | Dubai, U.A.E. based "sister company" to Orchidea Gulf Trading owned by Nayebi. Now known as "European Oil Traders." U.S. Treasury lists MSL&Co Investment as a "Foreign Sanction Evader." | |

**Email Communications Traffic Establishing Probable Cause
That Kenneth Zong's Accounts Were Being Utilized to Convert
Iranian Government Funds to U.S. Dollars**

37.    There are multiple emails from the *orchideagulf@yahoo.com* account

which demonstrate the Iranians' and their front companies' connections to Iran. In an

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

18

email to Kenneth Zong, copying *orchideagulf@yahoo.com*, *Hosseinpour (hrts_1990@yahoo.com)* writes, *"Iran now is bad situation. if any swift will come back to Iran.our road will be close."* In a later email, Hosseinpour states, *"we got green line from Iran."*[1] Your affiant believes, based on his experience and training, that the *"swift"* referred to in the email above stands for SWIFT, The Society for Worldwide Interbank Financial Telecommunication. SWIFT provides a network that enables financial institutions worldwide to send and receive information about financial transactions.

38.     In an email dated January 9, 2013, Mirza sent an email to Farsoudeh (*hf.mslco@gmail.com*), Hosseinpour (*chairman@nygt.co*) and Nayebi (*pa@msl-bank.com*) with the subject line "ENBD".[2] The email read,

> *"Bank told me all the T/T[3] we send from EURO before all were connected to i r a n , and they are getting complains from their corresponding banks that all T.T sent by MSL was i r a n connection. May be they will close MSL……there is red line on MSL now."*

39.     Public records revealed that four months later, in April 2013, Nayebi changed the name of MSL & Co. to European Oil Traders, and relocated the business to Switzerland. The email, and subsequent action, indicates to your affiant that the Iranians were moving money from Iran, and once the banking community became aware that MSL & Co was just a front company to serve that purpose, the Iranians changed the

---

[1] Throughout the Iranian emails, your affiant has observed many spelling and grammatical errors attributable to English not being their native language. I believe in this case, "green line" refers to "green light."

[2] "ENBD" refers to the Emirates NBD, the largest banking group in the Middle East.

[3] "T/T" is another abbreviation for a wire transfer.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

19

name and relocated the business to another country to conceal the true nature of the business.

40.    As described in detail in paragraphs below, the money transferred to Anchore's account in ROK was from the Central Bank of Iran's sub-account in the Industrial Bank of Korea (IBK) in ROK. The transfers were based on payment requests made by Bank Maskan and Saman Bank in Iran. Both the Central Bank of Iran and Bank Maskan have been designated by the U.S. Department of Treasury as persons determined to be the Government of Iran.[4]

## Kenneth Zong and the Iranian's Fraudulent Business Scheme to Deposit Iranian Government Funds from the Central Bank of Iran into Korean Banks for Conversion into U.S. Dollars

41.    From January to July 2011, Kenneth Zong entered into fraudulent multi-million dollar contracts with Iranian controlled companies in Iran and U.A.E., opened a bank account with IBK in Korea, received payments from entities designated as part of the Iranian Government, and transferred approximately $1,004,000,000 USD and €1,198,139 Euros (EUR) (approximately $1,705,071 USD) to specific individuals and companies world-wide at the direction of his Iranian partners.

42.    Because of the existence of U.S. financial and trade sanctions against Iran in place, Kenneth Zong and his Iranian partners went to considerable lengths to create fraudulent business relationships and supporting documents such as contracts, invoices,

---

[4] As defined in the Iranian Transaction and Sanctions Regulations, 31 C.F.R §560.304.
U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

20

bills of lading, product documentation, and other written statements to effect their true objective of converting GOI funds to USD and transferring it throughout the world. In furtherance of the scheme, and in order to facilitate this operation, Zong submitted numerous fraudulent official documents to Korean export and banking regulators.

<b>The Fraudulent Business Transactions</b>

43.    Based on review of the over 11,000 emails contained in the search warrant returns for the email account *orchideagulf@yahoo.com* and information provided by the Korean government, the Iranians, with Mirza and AlShaikh, engaged in close coordination with Kenneth Zong to enable the transfer of GOI funds through KSI/Anchore. There are hundreds of emails contained in the search warrant returns involving Kenneth Zong and *orchideagulf@yahoo.com*. The emails detail the structuring of fraudulent business relationships, the creation of supporting false business documents, the importance of avoiding detection by Korean and U.S. authorities, the establishment of a commission and fee structure that compensated Kenneth Zong financially, and specific instructions for Kenneth Zong to wire GOI funds throughout the world.

44.    Beginning in at least January 2011, Kenneth Zong and the Iranians created an intermediary trade scheme that purported to have KSI/Anchore sell marble tiles and other construction supplies to Farsoodeh and Partnership. KSI/Anchore was to buy the marble tiles and other construction supplies from MSL Dubai and have them shipped directly to Farsoodeh and Partnership in Iran. Farsoodeh and Partnership was to pay

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

21

KSI/Anchore via the Central Bank of Iran's account in IBK. For this role and activity, MSL Dubai paid Kenneth Zong a commission and paid for fees associated with "doing business" with Farsoodeh and Company as payment for Zong acting as a hub for the illegal deposit and conversion of Iranian rials into U. S. dollars. Through these fees and commissions, Kenneth Zong made approximately $10 million USD in 2011. The below paragraphs contain some of the many specific details concerning Kenneth Zong's fraudulent business arrangements with the Iranians, all of which were designed to circumvent IEEPA.

45.     On or about January 27, 2011, AlShaikh emailed Kenneth Zong a document dated January 15, 2011 in which KSI entered into a written agreement to sell Iran based Farsoodeh and Partnership Co. marble tiles for delivery to Iran.

46.     On a document dated January 17, 2011, KSI contracted with U.A.E based MSL & Co Investment Trading for the purchase of approximately $2,277,102 USD worth of marble.

47.     On a commercial invoice dated January 21, 2011 for marble tiles worth ₩2,000,000,000 Korean won (KRW) (approximately $1,840,000 USD), KSI was designated as the shipper and "FARSOODEH KISH & PARTNERSHIP CO...3rd Flr, Sadaf Tower, Kish Island, Iran" as the consignee. Kenneth Zong signed for KSI Inc.

48.     Five days later, on a document dated January 22, 2011, Kenneth Zong signing for Anchore and Pourya Nayebi signing for "MSL & CO INVESTMENT

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

22

TRADING" entered into an agreement that "MSL Gulf Trading Inc" will receive payment for fees and costs associated with Anchore's transactions between "Farsoodeh & partnership Co in Iran" and "MSL Investment in Dubai." The subject line of the document was. "Export construction material to IRAN."

49.    On a commercial invoice dated January 24. 2011, KSI was designated as the shipper and "FARSOODEH KISH & PARTNERSHIP CO…3rd Flr, Sadaf Tower, Kish Island. Iran" as the consignee. Kenneth Zong signed for KSI. The invoice again was for marble tiles and this time for ₩650.000.000 KRW (approximately $598.000 USD).

50.    On January 25. 2011. Kenneth Zong opened an IBK account in the ROK in the name of KSI. Two days later, on January 27. 2011, Bank Maskan, a commercial bank in Iran. issued a payment order to the Central Bank of Iran's account at IBK to transfer ₩2.000,000,000 KRW into KSI's IBK account.

51.    A day later, on January 28, 2011, Bank Maskan issued another payment order to the Central Bank of Iran's account at IBK to transfer ₩650.000.000 KRW into KSI's IBK account (approximately $598,000 USD).

52.    On or about February 1. 2011. Kenneth Zong emailed AlShaikh with directions on how to document the fraudulent business between KSI/Anchore and Farsoodeh and Partnership,

*"Dear Muneer,*

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

23

*According to new regulation of Korea Central bank from Jan 01.2011. we need additional documents as follows,*
*1. Certificate of Incorporation (company registration) of Farsoodeh and partnership Co.*
*2. Commercial Invoice (Invoice # 2011/010. 2011/020. 2011/030. 2011/040. 2011/050.)*
*3. Bill of Lading.*
*Commercial Invoice issued by Italian Exporter must state that terms of payment is DP (Document against payment and partial shipment allowed) you can put any amount for future transfer.*
*B/L state that prepaid from Italian port to UAE port.*
*Just paper works, need to compose accurately. if you have any question, please call me.*
*I have received an approval for commodity (none-Sactioned & non-prohibited) and Farsoodeh and Partnership (no in black list company) too much works as first time but next one will be easier.*
*Regards/ken"*

53.    On or about February 1, 2011. AlShaikh replied to Kenneth Zong,

*"See comments I got by SMS*
*============*
*Please talk with mr zong*
*we will give invoice from our uae company to ksi*
*that it is investment trading company*
*that it has office in geneva*
*as u saw*
*the tiles is uae finished and we dont have italian invoice because it is the supplier seceret*
*what should i do*
*please call me*
———————————————

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP.
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

24

Given the context of the email discussion and AlShaikh's subordinate position to the Iranians. I believe this message came from one of the Iranians after AlShaikh consulted with him via mobile telephone call or sms message.5

54.    On or about February 1, 2011, Kenneth Zong replied to AlShaikh with further instruction on how to make KSI appear it was showing a profit so as to legitimize the business:

> "ok Muneer,
> Let's do this way.
> UAE company issues an OFFER SHEET to KSI EJDER KOREA INC then I will issue a
> Commercial INVOICE to Farsoodeh & Partnership Co. based on UAE Offer sheet.
> OFFER sheet must be back dated Jan 17, 2010 and description of commodity is various different kinds of Italian Marbel Tile, finished in UAE (which country ?) Offer sheet must be lower amount than INVOICE amount. Invoice amount shall be KRW2,650,000,000.- OFFER price should be USD2,303,347.80 (or
> similar). it shows KSI EJDER makes a little profit. Again this is just paper works for to get approval from Korea Central bank.
> Regards/ken"

55.    On February 28, 2011. Mirza, using the orchideagulf@yahoo.com. had to ensure the paperwork for the business matched Kenneth Zong's paperwork.

> "Dear Mr. Ken
>  Please tell me HS Code and also how many containers I should write in the BOL[6]
> S.Mirza"

---

[5] "Sms" refers to short message system. a mobile telephone protocol for exchanging text messages.

[6] Given the reference to containers and common usage. I believe "BOL" refers to a bill of lading. Your affiant believes "containers" refers to standard cargo shipping containers.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

25

56.   On or about March 7, 2011, Kenneth Zong sent an email to the email address *orchideagulf@yahoo.com* in which he admitted the fraudulent nature of the business with the Iranians.

> *"To : Messrs MSL & Co and Muneer,*
> *Repeatedly your requesting me the bank statement in related to exchange rate*
> *and calculation, please keep in your mind the followings :*
> *1.   Korean government (KOSTI) and Korea central bank including IBK or*
> *Woori bank know well our transactions are based on fabricated &*
> *fake documents such as B/L, Proforma Invoice,Sell and purchase agreement..."*

57.   On or about March 9, 2011, Mirza, using the *orchideagulf@yahoo.com* account, sent Kenneth Zong the following email which explains how the Anchore/MSL Dubai/ Farsoodeh and Partnership Co. business deal was structured to provide the appearance of a legitimate, profit-making deal.

> *"Dear Mr.Ken*
> *...The current Proforma is for USD 4,962,100.00 but I made this only to show to*
> *the*
> *bank and Korean Govt. that you have profit in this deal...*
> *Thanks*
> *S.Mirza"*

58.   On or about May 18, 2011, Kenneth Zong submitted an application on behalf of Anchore Corporation to the Korean Government for a permit to ship "Heavy duty Galvazined Steel, Custom pre-colored Window & Dood (sic) frame" to Iran. The permit form signed by Kenneth Zong valued the goods at $15,605,704,000 USD[7] and

---

[7] Although the form reads, $15,605,704,000 USD, it is likely a mistake made by Kenneth Zong given the unlikely sum in the billions of dollars.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

26

listed the customer as Farsoodeh & Partnership Co., No. 301, 3rd Floor, Sadaf Tower, Kish Island, Iran. The permit application referenced a contract dated February 28, 2011.

59.    On or about June 6, 2011 an unidentified user of the *orchideagulf@yahoo.com* account emailed Kenneth Zong to modify the fraudulent business arrangement to avoid the scrutiny of bank officials responsible for compliance with Iranian sanctions.

> *"We can only make the cotract direct with Anchore and Orchidea. As if we involve*
> *any Irani company like Farsoodeh in our contract then our banks in UAE will creat problems for us. So isnt this possible that we do contracts same as before. One contract between Farsoodeh and Anchore , and second one between Orchidea*
> *and Anchore."*

60.    On or about June 28, 2011, an unidentified user of the *orchideagulf@yahoo.com* account emailed Kenneth Zong to propose a new arrangement to explain why Anchore would wire Orchidea money.

> *"Dear Mr.Ken*
> *Please find the new contract between Orchidea and Anchore for the transfers from Woori Bank. Please have a look and let me know if you want to change anything. If all is fine then kindly send me the contract back with stamp and sign*
> *Thanks"*

Later that day, Kenneth Zong replied that Orchidea's relationship with Anchore needed to be explained with respect to the original Anchore/Farsoodeh and Partnership business so that it appeared to be legitimate business.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

27

*"No, Mirza, we have to clarify for act & position of Orchidea based on
agreement between Farsoodeh and Anchore. What and why
Orchidea involve ?
" On behalf of and instruction of Anchore Corporation, Orchidea will
arrange for import and assembled of various construction
materials from Italy and other oversea country into UAE in order to deliver
to Farsoodeh based on Contract No. 7880 dated 28th Feb 2011.
The terms of payment will be made to exporter by T/T basis."
Something above showing relationship between Anchore.and Orchidea
Regards, "*

61.    After review of email accounts and financial documents including those not specifically mentioned. your affiant believes the ultimate purpose behind the extensive conspiracy to fabricate business relationships was to create a sanctions avoiding mechanism to convert Korean KRW denominated funds held in the Central Bank of Iran's IBK account in Seoul, Korea to either USD or EURO and then transfer them to individuals and companies throughout the world.  Between February 2011 and July 2011. KSI/Anchore received funds from the GOI's account, converted them to USD and EURO and transferred the equivalent of approximately one billion U.S. dollars to approximately 50 different persons and companies around the world as follows:

- $994,028,339 USD was transferred to five companies in the U.A.E.

- $10,564,572 USD was transferred to 20 individuals and four companies in the U.S.  -Approximately €469,978 EUR (approximately $668,825 USD equivalent) was transferred to three companies in Italy.

- €299,653 EUR (approximately $426,436 USD equivalent) was transferred to six companies in Germany.

- €233,580 EUR (approximately $332,407 USD equivalent was transferred to two companies in Switzerland.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP.
ANCHORAGE. ALASKA et al.. No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

28

- €97,000 EUR (approximately $138,040 USD equivalent was transferred to one company in Austria.

- €56,000 EUR (approximately $79,693 USD equivalent) was transferred to one individual and one company in France.

- €32,480 EUR (approximately $46,222 USD equivalent) was transferred to one company in the Netherlands.

- $40,000 USD was transferred to one individual and one company in Canada.

- $30,000 USD was transferred to two individuals in Bahrain.

62.    The main recipient of funds converted by Kenneth Zong was Nayebi owned Orchidea Gulf Trading.  Of the approximately one billion dollars remitted by companies controlled by Kenneth Zong, approximately $862 million USD was sent to Orchidea Gulf Trading.  As stated above, a review of the over 11,000 unique *orchideagulf@yahoo.com* emails reveals Orchidea as an established Iranian front company used to conduct transactions throughout the world in order to distribute GOI funds including, but not limited to the particular scheme involving Kenneth Zong.  Zong perpetrated the scheme described in this affidavit which was key to completing the Government of Iran process of converting Central Bank of Iran funds held in KRW in an account in the Industrial Bank of Korea to USD funds controlled by a non-sanctioned third party which may then distribute the funds to further Government of Iran objectives unimpeded by U.S., European, and U.N. sanctions.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

63.     With the exception of Kenneth Zong's wire transfers of his approximately ten million USD criminal proceeds to Zong controlled accounts in the U.S., the F.B.I.'s investigation to date has not found any logical business reason for the above transfers nor any connection between the Zongs and/or their companies to the above beneficiaries throughout the world. These transfers of GOI funds, at the direction of an Iranian front company appear designed to move GOI money to these companies and thus provide financial services and other financial opportunities to the GOI. Kenneth Zong was compensated $10 million U.S. dollars for providing these financial services through commission payments on the transactions.

64.     Your affiant is aware, through receipt of specific MLAT information from Korean government that Kenneth Zong was tried and convicted in Korea for providing false import/export documents related to the filing of fraudulent business contracts and invoices in furtherance of the scheme. In a written summary of the case following Kenneth Zong's conviction on or about June 11, 2013, the Seoul Central District Court wrote in a section titled, "Reasons for the Judgment,"

> "Despite this regulation, on 7 Feb. 2011, the suspect submitted a false Export-Import contract and invoice to the BOK[8] of Kangnam Branch, pretending that KSI EJDER Korea purchased Italian-Marble Tiles for about 2.4 million USD (2,650,000,000 KRW) from MSL &CO based in Dubai and then exported them to Farsoodeh and Partnership Co. in Iran."

---

[8] Bank of Korea

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

30

### Use of Bribery of IBK Officers to Secure IBK's Cooperation

65.     Emails from the *orchideagulf@yahoo.com* account reveal that Kenneth Zong and his Iranian partners conspired to bribe or provide kickbacks to multiple bank officials to permit their false business transactions.

66.     On or about March 7, 2011, Kenneth Zong sent an email to the email address *orchideagulf@yahoo.com* which discussed the kick-backs provided to multiple IBK officials .

> *"To : Messrs MSL & Co and Muneer,*
> *...For pursuing our transaction continuously, I have agreed to give an*
> *allowance to bankers and authorities under the table KRW 3.- to 7.- per dollar*
> *depending on volume of transaction...Bankers are hesitating to issue a bank*
> *statement in English*
> *because promised allowance for them involved, all together 4 officers with me.*
> *if you still need a bank statement in any reason, I will discusse with my*
> *bankers to issue it but it's exchange rate will not be accurated due to*
> *involving $$$$ gift. Let me know.*
> *--*
> *Regards,*
> *\*Kenneth Zong\*\*\**
> *\*Anchore Corporation\**
> *Galleria palace 1215*
> *40 Jamsil-dong Sonpa-gu, Seoul, Korea."*

67.     On or about March 9, 2011, Mirza, using the *orchideagulf@yahoo.com* account, sent Kenneth Zong the following email,

> *"Dear Mr.Ken*
> *...Now the calculation I am gona do is as follows*
> *Last time the conversion rate was 1126 and its pretty much the same but I will*

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

31

*add 4 pips[9] to that for the bank people*
*Now*
*5,716,000,000 / 1130 = 5,058,407.00 USD*
*Less 1% Commission = 25,292.00 USD*
*Balance = 5,033,114.00 USD...*
*Thanks*
*S.Mirza"*

68.     On or about January 11, 2012, Kenneth Zong emailed Hosseinpour at Hosseinpour's personal account,

*"Dear Houshang,*
*I understand well what your mention. As I told you before we have done for executives of IBK more than enough. they want to help us but IBK told me at this moment need to be quite for a while. Woori is same situation accordingly.*
*I never give up just waiting for good timing.*
*Meantime if you agree, I can go to Hong Kong or Shanghai open up a new company and doing same business as we have done in Korea.*
*Why not we do business in both country.*
*Regards, Ken"*

69.     After the dissolution of the Anchore/MSL Dubai/Farsoodeh and Partnership scheme, the *orchideagulf@yahoo.com* account emails reveal that Kenneth Zong continued to attempt to conduct fraudulent business with the Iranians and continued to enlist bank officials to conspire with him.   On December 28, 2011, Kenneth Zong emailed Hosseinpour,

70.     "Dear Houshang.Sorry I was completely drunk with IBK people last night. same place we were there (Korean style Geisha house) arranged everything for

---

[9] Pips is a financial term used mostly in currency exchange that stands for percentage in point. A "pip" is most often equal to 1/100[th] of a percent (one basis point).

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.

Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

32

them.With me Mr. Seong-Ha Yoo. Senior Executive Vice president ( head of Global market) and Kwang- Wook Jeon. General manager of International Trade."

71.     On December 31, 2011, Kenneth Zong followed up with another email to Hosseinpour providing a status update on working with IBK to find the right banker to work with.

> "Dear Houshang,
> We are waiting for instruction of IBK main office to nominating one of branch and manager who will listen well, a good soldier of V. president Mr. Seog-Ha, yoo.   There are almost 100 branch but to open account with a branch to be
> cooperated us. I will let you know a new account number of Gem Art early next week as soon as nominating. This time I must be careful to follow up business because I don't want you losing more money for both of us.
> Regards, Ken.

### Laundering of the $10 Million Dollar Commission From Marble Sale Scheme in the United States

72.     In a contract dated January 22, 2011, and titled "Export construction material to IRAN", Anchore and MSL Dubai agreed *to "a payment of a fees, costing on each transaction with Farsoodeh & partnership Co in Iran and MSL Investment in Dubai."*   The commission contract was signed by Kenneth Zong.  Beginning in April 2011, several months after Kenneth Zong began working with the Iranians, and continuing until July 2011, Anchore sent over $9.8 million dollars from ROK to Alaska pursuant to the contract.   Kenneth Zong and his family utilized multiple companies and bank accounts to move money among accounts controlled by the Zong family in the

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

33

United States and Korea. The money was used for investments, luxury living expenses, jewelry, automobiles and real estate, among other uses.

## Kenneth Zong's Alaska Based Zong Companies Used to Launder the Criminal Proceeds from the Iranian Based Scheme

73. As described in detail in the paragraphs below, beginning in April 2011, various Zong family controlled companies were used to launder the criminal proceeds of Kenneth Zong's facilitation of GOI money movement.

74. Koskimo Construction Inc. (Koskimo) was formed on or about May 5, 2005. In its July 22, 2009 Biennial Report, Hyo Zong was listed as President and Secretary, Kenneth Zong as Vice-President, and Jamie Stusse as Treasurer. The only address associated on the Koskiomo's public filing with the State of Alaska was 7420 Grey Wolf Circle, Anchorage, Alaska. Based on physical surveillance, 7240 Grey Wolf Circle appears to be a family home. It is located in a housing subdivision in Anchorage and is a detached two-story residence with a garage and front and back yards. There are no signs indicating a business is operating on the premises. On an FNBA personal financial statement form dated June 6, 2011, Mitchell Zong listed 7240 Grey Wolf Circle as his mailing address. Alaska State Department of Motor Vehicle records indicate that 7240 Grey Wolf Circle is former address of Kenneth Zong, Mitchell Zong, and Hyo Zong.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

34

75.     On or about April 11. 2011, MSL Gulf Trading Inc. (MSL Inc.) was formed with Kenneth Zong as the registered agent and Kenneth Zong. Kilja Zong. and Mitchell Zong as Incorporators.  MSL Inc. is also registered at 7420 Grey Wolf Circle.  Since its creation date. there were no subsequent filings with the State of Alaska and on or about December 31. 2013, MSL Inc. was involuntarily dissolved by the State of Alaska. Biennial reports are required by the State of Alaska.

76.     On or about May 18. 2011. MSL Gulf Trading One Inc. (MSL One) was formed with Mitchell Zong as the Manager and sole Member.  In its May 23. 2011 Initial Report filed with the State of Alaska. MSL One lists 7420 Grey Wolf Circle. Anchorage. Alaska as the "Entity Mailing Address."  In its January 24. 2013 Biennial Report, MSL One lists 7420 Grey Wolf Circle as its "Entity Physical Address" and 3379 Marigold Circle. Costa Mesa. California as its "Entity Mailing Address."  3379 Marigold Circle. Costa Mesa. California is the present residence of Mitchell Zong and Erin Borini.  Based on physical surveillance, 3379 Marigold Circle appears to be a family home.  It is located in a housing subdivision in Costa Mesa, California and is a detached two-story residence with a garage and front and back yards.  There are no signs indicating a business is operating on the premises.  As further described in herein. property records show MSL One has 25 Anchorage based properties associated with it.

77.     On or about July 5. 2011, MSL Gulf Trading Two Inc. (MSL Two) was formed with Mitchell Zong as the Manager and sole Member.  In its August 8. 2011

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE. ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

35

Initial Report filed with the State of Alaska. MSL Two lists 7420 Grey Wolf Circle, Anchorage, Alaska as the "Entity Mailing Address." In its January 24, 2013 Biennial Report, MSL Two lists 7420 Grey Wolf Circle as its "Entity Physical Address" and 3379 Marigold Circle, Costa Mesa, California as its "Entity Mailing Address."

78.    The below table summarizes the U.S. based Zong companies as described in the above paragraphs.

| Zong Family U.S. Companies | | | |
|---|---|---|---|
| Company | Associated Individuals | Date Incorporated | Date Dissolved |
| Koskimo Construction Inc. (Koskimo) | President: Hyo Zong Treasurer: Jamie Stusse Vice President: Kenneth Zong | 5/5/2011 | 6/10/2013 |
| MSL Gulf Trading Inc. (MSL Inc.) | Registered Agent: Kenneth Zong Incorporator: Kenneth Zong Incorporator: Mitchell Zong Incorporator: Kilja Zong | 4/11/2011 | 12/31/2013 |
| MSL Gulf Trading One Inc. (MSL One) | Manager: Mitchell Zong Member: Mitchell Zong | 5/18/2011 | Good Standing |
| MSL Gulf | Manager: | 7/5/2011 | Good |

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.

Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

36

| Trading Two Inc. (MSL Two) | Mitchell Zong Member: Mitchell Zong | | Standing |
|---|---|---|---|
| GEMART USA LLC (Gemart USA) | Manager: Mitchell Zong Member: Mitchell Zong | 12/13/2011 | Good Standing |

## Use of Companies and Accounts in Alaska to Commit Money Laundering

79.    Between January 1, 2011 and this date, your affiant has identified over 12 financial accounts in the United States held in the name of the Zong family's MSL companies. Over $9.8 million dollars was transferred to one of these accounts from a Korean bank account controlled by Kenneth Zong. Transfers totaling tens of millions of dollars then further dispersed the funds among the MSL companies' accounts and other business and personal accounts controlled by the Zong family. Along with the transfer of these funds, your affiant has been able to document the purchase of 2 homes, 24 townhomes, 5 automobiles including a Bentley, a Mercedes, and a Porsche, a motorcycle, jewelry, a wine collection, and interests acquired in 2 additional homes and a yacht, among other purchases.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

37

## IV.   FINANCIAL INVESTIGATION
### Payment of Commission

80.     In a contract dated January 22, 2011, and titled "Export construction material to IRAN". Anchore and MSL Dubai agreed to "a payment of a fees, costing on each transaction with Farsoodeh & partnership Co in Iran and MSL Investment in Dubai." The commission contract was signed by Kenneth Zong. Beginning in April 2011, several months after Kenneth Zong began working with the Iranians, and continuing until July 2011, Anchore sent over $9.8 million dollars from ROK to Alaska pursuant to the contract. Kenneth Zong and his family utilized multiple companies and bank accounts to move money among accounts controlled by the Zong family in the United States and ROK. The money was used for investments, luxury living expenses, jewelry, automobiles and real estate, among other uses.

81.     On or around April 19, 2011, FNBA 9877 was opened in the name of MSL Gulf Trading Inc. (MSL Inc.). Mitchell Zong and Kenneth Zong were authorized signers. On or about April 20, 2011, Anchore began transferring funds to MSL Inc.'s FNBA 9877 from its IBK account 8519. From April through July 2011, Anchore transferred approximately $ 9,812,717 to MSL Inc. pursuant to the contract for commission payments on transactions with Iran. Other than interest, funds traced to Anchore were the sole source of inflows to MSL Inc.'s account.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

38

Commission Payments to MSL Inc.'s FNBA 9877[10]

| From Bank | From Account | To Bank | To Account | Date | Amount |
|---|---|---|---|---|---|
| IBK | 8519 | FNBA | 9877 | 4/20/2011 | $ 284.477 |
| IBK | 8519 | FNBA | 9877 | 4/27/2011 | 494.980 |
| IBK | 8519 | FNBA | 9877 | 5/3/2011 | 905.480 |
| IBK | 8519 | FNBA | 9877 | 5/17/2011 | 604.980 |
| IBK | 8519 | FNBA | 9877 | 5/24/2011 | 499.980 |
| IBK | 8519 | FNBA | 9877 | 5/27/2011 | 499.980 |
| IBK | 8519 | FNBA | 9877 | 6/1/2011 | 1.879.940 |
| IBK | 8519 | FNBA | 9877 | 6/8/2011 | 844.980 |
| IBK | 8519 | FNBA | 9877 | 6/16/2011 | 1.799.980 |
| IBK | 8519 | FNBA | 9877 | 6/23/2011 | 399.980 |
| IBK | 8519 | FNBA | 9877 | 6/30/2011 | 777.980 |
| IBK | 8519 | FNBA | 9877 | 7/5/2011 | 819.980 |
| | | | | Total | $ 9,812,717 |

82.    On or around May 24. 2011. FNBA 8084 was opened in the name of MSL Gulf Trading One LLC (MSL One) with funds from MSL Inc.'s FNBA 9877. Mitchell Zong was the authorized signer. From approximately May through July 2011. approximately $9.619.723.70 was transferred from MSL Inc.'s FNBA 9877 to MSL One's FNBA 8084. Other than interest. the funds from MSL Inc. were the sole source of inflows to the MSL One account.

---

[10] For privacy reasons. only the last four digits of the bank account numbers are referred to in this affidavit.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE. ALASKA et al.. No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

39

83.    On or around June 17, 2011, Key 4262 was opened in the name of MSL One.  Mitchell Zong was the signer on the account.  Between June 17, 2011 and July 15, 2011, $4,554,177 was transferred to Key 4262 from FNBA 8084.

### Transfers to MSL One's FNBA 8084

| From Bank | From Account | To Bank | To Account | Date | Amount |
|---|---|---|---|---|---|
| FNBA | 9877 | FNBA | 8084 | 5/24/2011 | $ 2,656,902.86 |
| FNBA | 9877 | FNBA | 8084 | 5/31/2011 | 494,880.00 |
| FNBA | 9877 | FNBA | 8084 | 6/1/2011 | 1,885,030.00 |
| FNBA | 9877 | FNBA | 8084 | 6/9/2011 | 784,975.00 |
| FNBA | 9877 | FNBA | 8084 | 6/16/2011 | 1,799,975.00 |
| FNBA | 9877 | FNBA | 8084 | 6/27/2011 | 399,975.00 |
| FNBA | 9877 | FNBA | 8084 | 7/5/2011 | 778,010.84 |
| FNBA | 9877 | FNBA | 8084 | 7/5/2011 | 819,975.00 |
| | | | | **Total** | **$ 9,619,723.70** |

84.    The commission payments that flowed into FNBA 9877 from Korea and further transferred through FNBA 8084 and into Key 4262 constitutes the proceeds traceable to a specified unlawful activity, specifically Title 50 U.S.C. §§ 1701-1705 (International Emergency Economic Powers Act), herein after referred to as SUA proceeds .

85.    Kenneth Zong and Mitchell Zong used the SUA proceeds described above in FNBA 9877, FNBA 8084 and Key 4262 to open brokerage accounts, purchase vehicles, refinance and purchase homes and transfer large sums to other accounts controlled by Kenneth Zong, Mitchell Zong and their family members. The following

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

40

paragraphs detail the personal property, real property that Mitchell Zong, Kenneth Zong and other family members purchased using the SUA proceeds.

86.    Approximately $5 million in total from FNBA 9877, FNBA 8084 and Key 4262 was used to purchase the real property subject to forfeiture as in the following paragraphs.  The investigation has also identified personal property and bank accounts totaling approximately $2.5 million that is traceable to the SUA and constitutes property involved in a transaction greater than $10,000 in violation of the money laundering statutes.    Simultaneous with the filing of this complaint for civil forfeiture, the Government will be executing seizure warrants for the personal property and bank accounts.

## V.    REAL PROPERTY PURCHASES USING SUA PROCEEDS

### 11621 Alderwood Loop, Anchorage, Alaska

87.    State of Alaska Recorder's Office show MSL Gulf Trading One LLC as the current owner of property described as 11621 Alderwood Loop, Anchorage, Alaska.  On or about June 15, 2011, State of Alaska Recorder's Office has recorded a warranty deed granting MSL Gulf Trading One LLC the real property described as 11621 Alderwood Loop, Anchorage, Alaska.  On or about June 15, 2011, State of Alaska Recorder's Office has recorded a promissory note and deed of trust between MSL Gulf Trading One, LLC and Kenneth Zong and Kil Ja Zong for the amount of $375,000 dated June 14, 2011

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

41

signed by Mitchell Zong, Manager of MSL Gulf Trading One LLC for the described property of 11621 Alderwood Loop, Anchorage, Alaska.

88. Bank records for FNBA 9877 show on or about May 5, 2011, an official check # 00100172 of $100,000 made payable to REMAX from remitter MSL Gulf Trading Inc. Records for FNBA 8084 show that Mitchell Zong requested a withdrawal for official check #00096191 in the amount of $278,381.27, dated June 10, 2011, payable to United Title Guaranty Agency with remitter of MSL Gulf Trading One LLC.

89. United Title records show a commission letter dated June 13, 2011 with Hyo Sub Zong as the buyer. United Title records further show HUD-1 Settlement Statement dated June 14, 2011 for the purchase of 11621 Alderwood Loop Anchorage, Alaska with a buyer of MSL Gulf Trading One, LLC signed by Mitchell Zong, Managing Member. This statement showed the sales price of $378,381.27, a deposit of $100,000, and cash due from borrower of $278,381.27. United Title records show an escrow receipt dated June 14, 2011 with a copy of a REMAX check # 7002 payable to United Title for $88,750 ($100,000- $11,250 commission) dated June 14, 2011 with reference of 11621 Alderwood Loop. United Title records show an escrow receipt dated June 14, 2011 with a copy of official check #00096191of $278, 381.27 dated June 10, 2011 payable to United Title Guaranty Agency with remitter of MSL Gulf Trading One LLC.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

42

<u>7826 Morning Dew Road, Colorado Springs, CO 80908</u>

90.    On about November 16, 2012 and November 19, 2012, Mitchell Zong wired $80,435 and $9,000, respectively, to Empire Title from Key 4262 for the purchase of 7826 Morning Dew Road.  Documents from Empire Title of Colorado Springs show that Mitchell Zong's wife, Erin Borini as the purchaser of the property for $314,401.  The balance of the purchase price was paid as follows.

91.    On about May 24, 2012, a Wells Fargo official check #7340100163, in the amount of $2,000 was paid to Reunion Homes with Mitchell Zong as remitter.  The check was purchased from the Gemart USA Wells Fargo account 6538.

92.    On about November 16, 2012 Erin Borini wired $75,000 from her Wells Fargo account to Empire Title.

93.    Empire Title records and People's Mortgage records show that Erin Borini borrowed $150,401 from Peoples Mortgage to pay the balance due on the purchase of the property.

94.    The investigation has not determined that the $2,000 payment from the Gemart Wells Fargo Bank account and the $75,000 wire from Erin Borini's Wells Fargo account are derived from proceeds traceable to violations of the International Emergency Economic Powers Act (specified unlawful activity).

95.    The total amount of $89,435 wired by Mitchell Zong to Empire Title from Key 4262 constitute or are derived from proceeds traceable to violations of the <u>U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al.</u>, No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

43

International Emergency Economic Powers Act (specified unlawful activity). In addition, $89,435 of the value of the property at 7826 Morning Dew Road, Colorado Springs, CO constitutes property involved in a transaction in violation of Title 18, U.S.C. § 1957 (money laundering).

Briarcliff Townhome Condominiums, 23 Units and
17067 Bowen Circle, Eagle River, Alaska (Unit 91 Dove Tree Townhomes)

96.    See Attachment A for the complete listing of the 23 Units in Briarcliff Townhome Condominiums.

97.    On about June 13, 2011, MSL Gulf Trading One, LLC entered into a purchase and sale agreement as buyer to purchase 23 units of the Briarcliff Townhome Condominiums, and 17067 Bowen Circle, Eagle River, Alaska (Unit 91 Dove Tree Townhomes), herein after, Briarcliff and Dove Tree, for the purchase price of $4,180,000. Pacific Northwest Title of Alaska Inc. (Pacific Northwest Title) records show that Mitchell Zong is acting on behalf of MSL Gulf Trading One, LLC in the purchase of this real estate.

98.    Pacific Northwest Title settlement statement (amended) dated June 21, 2011 in the name of MSL Gulf Trading One, LLC shows receipt of $4,170,000 and $12,927.93 from MSL Gulf Trading One on June 13, 2011 and June 20, 2011, respectively.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

44

99.     Records for FNBA 8084 show on about June 13, 2011, Mitchell Zong authorized a withdrawal and purchase of an official check # 00113028 in the amount of $4,170,000 payable to Pacific Northwest Title with remitter MSL Gulf Trading One LLC. On or about June 20, 2011, MSL Gulf Trading One LLC FNBA account #8084 shows a wire of $12,927.93 to Pacific Northwest Title.

100.     State of Alaska Recorder's Office show MSL Gulf Trading One LLC as the current owner of properties described above. On or about June 21, 2011, State of Alaska Recorder's Office has recorded a warranty deed granting MSL Gulf Trading One LLC the real properties Briarcliff and Dove Tree. On or about July 11, 2011, State of Alaska Recorder's Office has recorded a promissory note and deed of trust between MSL Gulf Trading One, LLC and Anchore Corporation in the amount of $4,180,000 dated July 6, 2011 signed by Mitchell Zong, Manager of MSL Gulf Trading One LLC for the above described properties. As described earlier in paragraph 25, Anchore Corporation is the ROK based company owned by Kenneth Zong.

101.     The total amount of $4,182,927.93 withdrawn from FNBA 8084 and used to purchase the real property at the Briarcliff and Dove Tree Townhome locations constitute or are derived from proceeds traceable to violations of the International Emergency Economic Powers Act (specified unlawful activity). In addition, the property at Briarcliff Townhome Condominiums, 23 Units, Anchorage Alaska (See Exhibit A) and 17067 Bowen Circle, Eagle River, Alaska (Unit 91 Dove Tree Townhomes) constitutes

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

45

property involved in a transaction in violation of Title 18, U.S.C. § 1957 (money laundering).

### 3379 Marigold Circle, Costa Mesa, California

102.    Orange County, California property records show that as of June 22, 2007, Mitchell Zong's wife, Erin Borini (then a single woman) and another individual were the owners of 3379 Marigold Circle, Costa Mesa, CA (3379 Marigold).  A Quit Claim Deed was recorded in Orange County, CA on September 8, 2009, whereby the other owner "remises, releases, and quitclaims to Erin Borini" the property located at 3379 Marigold.

103.    On about December 23, 2011, Erin Borini refinanced 3379 Marigold through First American Title Company.  The First American Title records show Erin Borini as the sole buyer/borrower.  The settlement statement shows that as part of the refinance Borini had an amount due of $668,784.  The settlement statement also shows that Borini obtained a new mortgage for $417,000 and had earnest money of $251,442.76.

104.    Documents from Wells Fargo include a document with a title of Gift Letter signed by Mitchell Zong and Erin Borini dated November 4, 2011.  The letter indicated Mitchell Zong will give a gift of $260,000 to Erin Borini, Fiance with facsimile date of November 10, 2011. Another gift letter has a gift amount of $250,000 signed by Mitchell Zong and Erin Borini dated November 4, 2011 with facsimile date ranges from November 10, 2011 to December 20, 2011.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

46

105.   Bank records for Erin Borini's Wells Fargo 8946 show that on or about December 14, 2011, Borini withdrew $251,442.76 in the form of a cashier's check and submitted it to First American Title Company.

106.   Bank records for Erin Borini's Wells Fargo 8946 show that on about November 15, 2011, $250,000 was transferred to Erin Borini's account from MSL Gulf Trading One, LLC Wells Fargo 6496. Wells Fargo 6496 was funded with a transfer from Key 4262 on about September 28, 2011 in the amount of $1,247,000. Other than a $10 fee reversal, there were no other deposits except the $1,247,000 during this timeframe.

107.   The $250,000 transferred from Wells Fargo 6496 to Borini's Wells Fargo 8946 and used as a cash payment for the closing on 3379 Marigold constitute or are derived from proceeds traceable to violations of the International Emergency Economic Powers Act (specified unlawful activity). In addition, $250,000 of the value of the property at 3379 Marigold, Costa Mesa, CA constitutes property involved in a transaction in violation of Title 18, U.S.C. § 1957 (money laundering).

<u>2138 Wood Duck Way, Eugene, Oregon</u>

108.   First American Title records show that on about July 15, 2011, Mitchell Zong signed as Manager of MSL Gulf Trading Two, LLC as the buyer of real property located at 2138 Wood Duck Way, Eugene, OR (2138 Wood Duck) for a purchase price of $435,000.

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

47

109.    First American Title records show that on about July 6, 2011 and July 13, 2011, they received wire transfers of $10,000 and $425,551.57, respectively from FNBA 8084 for the purchase of 2138 Wood Duck.

110.    Records for FNBA 8084 show a wire of $10,000 on about July 6, 2011 to beneficiary "1ST AMERICAN TITLE INSURANCE COMPAN" from originator MSL Gulf Trading One LLC.   The originator bank information references Mitchell Zong.  On or about July 13, 2011, FNBA 8084 shows a wire of $425,551.57 to beneficiary "FIRST AMERICAN TITLE INSURANCE COMP" from originator MSL Gulf Trading One LLC.

111.    On or about July 18, 2011 a Statutory Warranty Deed was filed granting to MSL Gulf Trading Two, LLC, an Alaska limited liability company, Grantee, the property known as 2138 Wood Duck Way, Eugene, Oregon.

112.    The total $435,551.57 wired from FNBA #8084 to First American Title for the purchase of 2138 Wood Duck constitute or are derived from proceeds traceable to violations of the International Emergency Economic Powers Act (specified unlawful activity).   In addition, the property at 2138 Wood Duck Way, Eugene, OR constitutes property involved in a transaction in violation of Title 18, U.S.C. § 1957 (money laundering).

## Conclusion

113.    Based on my training and experience, and the investigative facts set forth in paragraphs 18-112, above, there is probable cause to believe that the above described asset(s)

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP,
ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint
UNDER SEAL

48

constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or property traceable thereto, and constitute property derived from proceeds traceable to SUA, or property traceable thereto, and therefore that any such property is forfeitable under 18 U.S.C. §§ 981(a)(1)(A), (C), 982, and 985.

I declare that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED on April __7th__, 2014 in Anchorage, Alaska.

Sue Chambers
Special Agent, IRS Criminal Investigation

SUBSCRIBED AND SWORN TO before me on April __1th__, 2014 in Anchorage, Alaska.

NOTARY PUBLIC, State of Alaska
My commission expires:

U.S. v. REAL PROPERTY LOCATED AT 11621 ALDERWOOD LOOP, ANCHORAGE, ALASKA et al., No.
Affidavit of Sue Chambers in support of Verified Complaint

UNDER SEAL

49