# Exhibit E

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 97-523

---

## LAW ENFORCEMENT

## Mutual Legal Assistance

**Treaty Between the**

**UNITED STATES OF AMERICA**

**and the REPUBLIC OF KOREA**

Signed at Washington November 23, 1993

*with*

Annex and Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# REPUBLIC OF KOREA

## Law Enforcement:  Mutual Legal Assistance

*Treaty with annex and exchange of notes,*
*signed at Washington November 23, 1993;*
*Transmitted by the President of the United States of America*
*to the Senate January 12, 1995 (Treaty Doc. 104-1,*
*104th Congress, 1st Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*July 24, 1996 (Senate Executive Report No. 104-22,*
*104th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*August 2, 1996;*
*Ratified by the President November 4, 1996;*
*Ratifications exchanged at Washington May 23, 1997;*
*Entered into force May 23, 1997.*

TREATY
BETWEEN
THE UNITED STATES OF AMERICA AND
THE REPUBLIC OF KOREA
ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

The Government of the United States of America and the Government of the Republic of Korea,

Desiring to improve the effectiveness of both countries in the prevention, investigation, and prosecution of crime through cooperation and mutual legal assistance in criminal matters,

Have agreed as follows:

- 2 -

## Article 1

### Scope of Assistance

1.  The Contracting Parties shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the prevention, investigation, and prosecution of offenses, and in proceedings related to criminal matters.

2.  Assistance shall include:

    a.  taking the testimony or statements of persons;

    b.  providing documents, records, and articles of evidence;

    c.  serving documents;

    d.  locating or identifying persons or items;

    e.  transferring persons in custody for testimony or other purposes;

    f.  executing requests for searches and seizures;

    g.  assisting in forfeiture proceedings; and

    h.  any other form of assistance not prohibited by the laws of the Requested State.

3.  This Treaty is intended solely for mutual legal assistance between the Contracting Parties.  The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

- 3 -

## Article 2

### Central Authorities

1.  Each Contracting Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

2.  For the United States of America, the Central Authority shall be the Attorney General or such persons designated by him.  For the Republic of Korea, the Central Authority shall be the Minister of Justice or such persons designated by him.

3.  For the purposes of this Treaty, the Central Authorities shall communicate directly with one another, or through the diplomatic channel.

## Article 3

### Limitations on Assistance

1.  The Central Authority of the Requested State may deny assistance if:

> a.  the request relates to a political offense or to an offense under military law which would not be an offense under ordinary criminal law;
>
> b.  there are substantial grounds leading the Central Authority of the Requested State to believe that compliance would facilitate the prosecution or punishment of the person to whom the request refers on

- 4 -

account of his race, religion, nationality or political opinions;

c. the execution of the request would prejudice the security or similar essential interests of the Requested State; or

d. except as provided in paragraph 2 below, the conduct which is the subject of the investigation, prosecution, or proceeding in the Requesting State would not constitute an offense under the laws of the Requested State.

2. The Requested State shall, with respect to the categories of conduct described in the Annex to this Treaty, provide assistance without regard to whether the conduct which is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute an offense under the laws of the Requested State.

3. Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

4. If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

- 5 -

## Article 4

### Form and Content of Requests

1.   A request for assistance shall be in writing except that the Central Authority of the Requested State may accept a request in another form in urgent situations.  In any such situation, the request shall be confirmed in writing promptly thereafter unless the Central Authority of the Requested State agrees otherwise.  The request and any accompanying documents shall be in the language of the Requested State unless otherwise agreed.

2.   The request shall include the following:

a. the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

b.  a description of the subject matter and the nature of the investigation, prosecution, or proceeding, including the specific criminal offenses which relate to the matter;

c.  a description of the evidence, information, or other assistance sought; and

d.  a statement of the purpose for which the evidence, information, or other assistance is sought.

3.   To the extent necessary and possible, a request shall also include:

- 6 -

a.   information on the identity and location of any person from whom evidence is sought;

b.   information on the identity and location of a person to be served, that person's relationship to the proceedings, and the manner in which service is to be made;

c.   information on the identity and whereabouts of a person to be located;

d.   a precise description  of the place or person to be searched and of the items to be seized;

e.   a description of the manner in which any testimony or statement is to be taken and recorded;

f.   a list of questions to be asked of a witness;

g.   a description of any particular procedure to be followed in executing the request;

h.   information as to the allowances and expenses to which a person asked to appear in the Requesting State will be entitled; and

i.   any other information which may be brought to the attention of the Requested State to facilitate its execution of the request.


Article 5

Execution of Requests


1.   The Central Authority of the Requested State shall promptly execute the request or, when appropriate, transmit it

- 7 -

to the authority having jurisdiction to do so.  The competent authorities of the Requested State shall do everything in their power to execute the request.  The Courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.

2.  When necessary, the request shall be presented to the appropriate authority by the persons appointed by the Central Authority of the Requested State.

3.  Requests shall be executed in accordance with the laws of the Requested State except to the extent that this Treaty provides otherwise.  However, the method of execution specified in the request shall be followed except insofar as it is prohibited by the laws of the Requested State.

4.  If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal investigation or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State.  If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5.  The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State. If the request cannot be executed without breaching the requested confidentiality, the Central Authority of the

- 8 -

Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

6.   The Central Authority of the Requested State shall respond to reasonable inquiries by the Central Authority of the Requesting State concerning progress toward execution of the request.

7.   The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request.  If the requested assistance is not provided, the Central Authority of the Requested State shall supply the reasons for this outcome to the Central Authority of the Requesting State.


Article 6

Costs


The Requested State shall assume all costs relating to the execution of the request within its territory, except for the fees of expert witnesses, the costs of translation and transcription, and the allowances and expenses related to travel of persons pursuant to Articles 10 and 11, which fees, allowances, and expenses shall be paid by the Requesting State.

- 9 -

## Article 7

### Limitations on Use

1.  The Requesting State shall not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Requested State.

2.  The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential in accordance with conditions which it shall specify.  In that case, the Requesting State shall use its best efforts to comply with the conditions specified.

3.  Information or evidence which has been made public in the Requesting State in accordance with paragraph 1 or 2 may thereafter be used for any purpose.

## Article 8

### Testimony or Evidence in the Requested State

1.  A person in the Requested State from whom evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and testify or produce any item, including documents, records, and any other articles of evidence.

2.  Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article.

- 10 -

3.  The Requested State shall permit the presence of such persons as specified in the request during the execution of the request, and may allow such persons to question the person whose testimony or evidence is being taken. In the event that such direct questioning is not permitted, such persons shall be allowed to submit questions to be posed to the persons whose testimony or evidence is being taken.

4.  If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the testimony or evidence shall nonetheless be taken and the claim made known to the Central Authority of the Requesting State for resolution by the authorities of that State.

5. Documents, records, and any other articles of evidence produced in the Requested State pursuant to this Article or which are the subject of testimony taken under this Article shall be certified or authenticated in accordance with procedures specified in the request. If certified or authenticated in such manner, they shall be admissible in evidence as proof of the truth of the matters set forth therein in accordance with the laws of the Requesting State.

## Article 9

### Records of Government Agencies

1.  The Requested State shall provide the Requesting State with copies of publicly available documents, records, or

- 11 -

information in the possession of government departments and agencies in the Requested State.

2.   The Requested State may provide copies of any documents, records, or information which are in the possession of a government department or agency in that State but which are not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities.  The Requested State may in its discretion deny a request pursuant to this paragraph entirely or in part.

3. Documents, records and copies thereof produced pursuant to this Article shall be certified or authenticated in accordance with the procedures specified in the request. If certified or authenticated in such manner, they shall be admissible in evidence as proof of the truth of the matters set forth therein in accordance with the laws of the Requesting State.

### Article 10
#### Testimony in the Requesting State

The Requested State shall invite a person in that State to appear before the appropriate authority in the Requesting State.  The Requesting State shall indicate the extent to which the expenses will be paid.  The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the person's response.

- 12 -

## Article 11

### Transfer of Persons in Custody

1.  A person in the custody of the Requested State whose presence in the Requesting State is needed for purposes of assistance under this Treaty shall be transferred from the Requested State for that purpose if both the person and the Central Authority of the Requested State consent to the transfer.

2.  A person in the custody of the Requesting State whose presence in the Requested State is needed for purposes of assistance under this Treaty may be transferred to the Requested State if the person consents and if the Central Authorities of both States agree.

3.  For purposes of this Article:

    a.  the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

    b.  the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

    c.  the receiving State shall not require the sending State to initiate extradition proceedings for the return of the person transferred; and

- 13 -

d.  the person transferred shall receive credit for service of the sentence imposed in the sending State for time served in the custody of the receiving State.

Article 12

Safe Conduct

1.  A person present in the Requesting State pursuant to Articles 10 or 11 shall not be subject to service of process, or be detained, prosecuted or subjected to any restriction of personal liberty by reason of acts or convictions which preceded that person's departure from the Requested State.

2.  The safe conduct provided for by this Article shall cease fifteen days after the Central Authority of the Requesting State has notified the Central Authority of the Requested State that the person's presence is no longer required, or if the person has left the Requesting State and voluntarily returned to it.

Article 13

Location or Identification of Persons or Items

The Requested State shall use its best efforts to ascertain the location or identity of persons or items specified in the request and believed to be in the Requested State.

- 14 -

## Article 14

### Service of Documents

1.  The Requested State shall use its best efforts to effect service of any documents relating to or forming part of any request for assistance made by the Requesting State under the provisions of this Treaty.

2.  Unless otherwise agreed, any request for the service of a document inviting the appearance of a person before an authority in the Requesting State must be received by the Central Authority of the Requested State not later than thirty days before the date set for any appearance.

3.  The Requested State shall return a proof of service in the manner specified in the request.

## Article 15

### Search and Seizure

1.  The Requested State shall execute a request for the search, seizure, and delivery of any item, including documents, records, or other articles of evidence, to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.

2. Upon request, every official who has custody of a seized article shall certify, in accordance with procedures specified in the request, the continuity of custody, the

- 15 -

identity of the article, and the integrity of its condition. Such certification shall be admissible in evidence as proof of the truth of the matters set forth therein.

3.  The Central Authority of the Requested State may require that the Requesting State agree to terms and conditions deemed necessary to protect third party interests in the item to be transferred.

## Article 16
### Return of Items

If required by the Central Authority of the Requested State, the Central Authority of the Requesting State shall return as soon as possible any documents, records, or articles of evidence furnished to it in execution of a request under this Treaty.

## Article 17
### Assistance in Forfeiture Proceedings

1.  If the Central Authority of one Contracting Party becomes aware of fruits or instrumentalities of offenses which are located in the territory of the other Contracting Party and may be forfeitable or otherwise subject to seizure under the laws of that Contracting Party, it may so inform the Central Authority of the other Contracting Party.  If that other

- 16 -

Contracting Party has jurisdiction in this regard, it may present this information to its authorities for a determination as to whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report to the other Contracting Party on the action taken.

2. The Contracting Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the fruits and instrumentalities of offenses. This may include action to restrain temporarily the disposition of the fruits or instrumentalities of offenses pending further proceedings.

3. A Requested State in control of forfeited proceeds or instrumentalities shall dispose of them in accordance with its law. To the extent permitted by its laws and upon such terms as it deems appropriate, either Contracting Party may transfer forfeited assets or the proceeds of their sale to the other Contracting Party.

Article 18

Compatibility with Other Treaties,

Agreements or Arrangements

Assistance and procedures set forth in this Treaty shall not prevent either Contracting Party from granting assistance to the other Contracting Party through the provisions of other international agreements to which it may be a party, or through

- 17 -

the provisions of its national laws.  The Contracting Parties may also provide assistance pursuant to any bilateral agreement, arrangement, or practice which may be applicable.

Article 19

Consultation

The Central Authorities of the Contracting Parties shall consult, at times mutually agreed to by them, to enable the most effective use to be made of this Treaty.

Article 20

Ratification, Entry into Force, and

Termination

1.   This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Washington as soon as possible.

2.   This Treaty shall enter into force upon the exchange of instruments of ratification.

3.   This Treaty shall apply to any requests presented after its entry into force even if the relevant acts or omissions occurred before that date.

4.   Either Contracting Party may terminate this Treaty by means of written notice to the other Contracting Party. Termination shall take effect six months following the date of notification.

- 18 -

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE at Washington this twenty-third day of November 1993, in duplicate, in the English and Korean languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA        FOR THE REPUBLIC OF KOREA

- 19 -

ANNEX

Both Contracting Parties agree to provide assistance in investigations, prosecutions, and proceedings concerning the following categories of conduct without regard to whether the conduct which is the subject of the investigation, prosecution or proceeding would constitute an offense under the laws of the Requested State:

1. Illicit traffic in narcotic drugs and psychotropic substances, including but not limited to all offenses connected with, arising from, related to or resulting from any narcotics activity described in the 1961 Single Convention on Narcotic Drugs, the 1971 Convention on Psychotropic Substances, the 1972 Protocol Amending the Single Convention, or the 1988 United Nations Convention Against the Illicit Traffic in Narcotic Drugs and Psychotropic Substances;

2. Racketeering activity, including, in the case of a request from the United States: (a) using income derived from a pattern of criminal activity to establish, operate, or acquire an interest in an enterprise engaged in or affecting interstate commerce; (b) acquiring or maintaining control of or an interest in such an enterprise through a pattern of criminal activity or collection of illegal debt; or (c) conducting or participating in the conduct of such an enterprise's affairs through a pattern of criminal activity or collection of unlawful debt; or, in the case of

- 20 -

a request from Korea, organizing or joining a group the purpose of which is the commission of a crime;

3. Money laundering, including (a) failing to make or causing another to fail to make to the Government a report which is required by law to be made in respect of a transfer of currency or other financial transaction; (b) converting, transferring, or receiving property knowing that such property is derived from a criminal offense, for the purpose of concealing or disguising the illicit origin of such property or of assisting any person involved in the commission of such offense to evade the legal consequences of his actions; or (c) concealing or disguising the true nature, source, location, disposition, or movement or ownership of property knowing that such property is derived from a criminal offense;

4. Any violent criminal activity described in the Convention for the Suppression of Unlawful Seizure of Aircraft (Hijacking) done at the Hague December 16, 1970; the Convention on Offenses and Certain Other Acts Committed on Board Aircraft, done at Tokyo September 14, 1963; the Convention for the Suppression of Unlawful Acts against the Safety of Civil Aircraft (Sabotage), done at Montreal September 23, 1971; the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973; the International Convention Against the

- 21 -

Taking of Hostages, done at New York December 17, 1979; or in any other treaty or convention to which both States are parties and the purpose of which is to prevent or repress a specific category of offenses and which imposes an obligation to either extradite the offender or submit the matter to the competent authorities for decision as to prosecution;

5. Offense relating to the willful issuance of a bad (illicit) check, including the issuance of a check under a false name or without having made arrangements with a financial institution, or after transactions have been suspended by such an institution; and the willful failure to honor the check;

6. Fraud against the Government or against individuals, including behavior which has the effect of depriving the Government, its agencies, or its citizens of money, valuable property, or the ability to conduct their affairs free from false statements and deceit;

7. Fraudulent securities practices, including the use by any person of any means, directly or indirectly, in connection with the offer, purchase, or sale of any security: (a) to employ any device, scheme, or artifice to defraud; (b) to willfully make any misleading statement; or (c) to willfully engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;

- 22 -

8. Insider trading, including the offer, purchase, or sale of securities by any person while in possession of material non-public information directly or indirectly relating to the securities offered, purchased, or sold, in breach of a legally binding duty or trust or confidence;

9. Foreign Corrupt Practices, including the corrupt offering, paying, or making of inducements to any foreign official or foreign political party, official thereof, or candidate for foreign political office to assist such person in obtaining or retaining business for himself or in directing business to any other person;

10. Tax evasion or fiscal fraud, including making a false statement, whether written or oral, or intentionally failing to make a report or declaration as required by law, to government authorities in matters concerning customs duties or taxes;

11. Environmental crimes, including conduct directed at the destruction, defacing, deterioration, or harming of the earth's environment;

12. Export control offenses, including conduct tending to evade the laws controlling the export of goods or arms;

13. Criminal exploitation of children, whether for sexual or other purposes, including commercial dealing in child pornography;

14. Offenses against bankruptcy laws;

15. Offenses against the laws relating to corporations or

- 23 -

companies, including offenses committed by officers, directors, and promoters;

16. Any offense against the laws relating to firearms, weapons, or explosives of any type;

17. Offenses against the laws relating to protection of intellectual property, copyrights, patents, or trademarks;

18. Offenses against the laws relating to immigration and nationality (including fraudulent acquisition or use of a passport or visa) and alien smuggling;

19. Offenses against the laws relating to the control of exportation or importation of goods of any type, or the international transfer of funds;

20. Offenses against the laws relating to prohibition of private monopolies or unfair business transactions or practices;

21. Offenses against the laws relating to the protection of computers or computer systems, computer data, or computer security (to include passwords or other related devices);

22. Offenses under multilateral international conventions binding on both Parties for which offenders must be prosecuted or extradited;

23. Any offense derived from conduct described in this Annex or subject to mutual assistance in accordance with this Treaty where United States federal jurisdiction is based upon interstate transport or use of the mails, telecommunications, or other interstate facilities;

- 24 -

24. Any attempt or conspiracy to commit, aiding or abetting, or participation as accessory after the fact to any offense derived from conduct described in this Annex or subject to mutual assistance in accordance with this Treaty;

25. Any offense under the law in the Requesting State which is connected with the commission of one or more offenses derived from the conduct described in this Annex or subject to mutual assistance in accordance with this Treaty; or

26. Such further offenses as may from time to time be agreed upon by exchange of diplomatic notes between the Contracting Parties.

# 미합중국과 대한민국간의
# 형사사법공조조약

미합중국 정부와 대한민국 정부는,

형사사건에서의 협조와 사법공조를 통하여 범죄의 예방·수사 및 기소에 있어서 양국의 효율성을 증진하기를 희망하여,

다음과 같이 합의하였다.

### 제 1 조
### 공조의 범위

1.  체약당사국은 범죄의 예방·수사·기소 및 형사사건에서의 재판 절차와 관련하여, 이 조약의 규정에 따라 공조를 제공한다.

2.  공조는 다음 사항을 포함한다.
    가.  관계인의 증언 또는 진술의 취득
    나.  서류·기록 및 증거물의 제공
    다.  서류의 송달
    라.  사람 또는 물건의 소재 또는 동일성 파악
    마.  구금중인 자의 증언 또는 다른 목적을 위한 이송
    바.  수색 및 압수요청의 집행
    사.  몰수절차에서의 공조
    아.  피요청국의 법에 금지되어 있지 아니한 기타 공조

3.  이 조약은 체약당사국 사이의 사법공조만을 위한 것이다. 이 조약의 규정은 어떠한 사인에게도 증거를 취득·은닉·배제하게 하거나 요청의 이행을 방해할 수 있는 권리를 주지 아니한다.

제 2 조
중앙기관

1. 각 체약당사국은 이 조약에 따라 공조요청서를 발송·접수하는 중앙기관을 지정하여야 한다.

2. 미합중국의 중앙기관은 법무부장관 또는 그가 지명한 자가 된다. 대한민국의 중앙기관은 법무부장관 또는 그가 지명한 자가 된다.

3. 이 조약의 목적상, 양 중앙기관은 직접 접촉하거나 외교경로를 통하여 접촉한다.


제 3 조
공조의 제한

1. 피요청국의 중앙기관은 다음 각호의 1에 해당하는 경우에는 공조를 거절할 수 있다.

　　가. 정치적 범죄, 또는 일반형사법상 범죄는 아니나 군사법상 범죄에 해당하는 범죄에 관련된 요청의 경우

　　나. 공조에 응하는 것이 인종·종교·국적 또는 정치적 견해를 이유로 요청서에 언급된 자의 기소 또는 처벌을 용이하게 할 우려가 있다고 피요청국의 중앙기관이 믿을 만한 상당한 근거가 있는 경우

　　다. 공조요청의 이행이 피요청국의 안보 또는 이와 유사한 중대한 이익을 침해할 우려가 있는 경우

　　라. 이 조 제2항에 규정된 경우를 제외하고, 요청국에서 수사·기소 또는 재판절차의 대상이 된 행위가 피요청국의 법에 의하여는 범죄를 구성하지 아니하는 경우

2.  피요청국은 이 조약의 부속서에 규정된 행위 유형에 대하여는 요청국에서 수사·기소 또는 재판절차의 대상이 된 행위가 피요청국의 법에 의하여 범죄를 구성하는지 여부에 관계없이 공조를 제공하여야 한다.

3.  피요청국의 중앙기관은 이 조에 의한 공조를 거절하기 전에 요청국의 중앙기관과 협의하여 피요청국이 필요하다고 판단하는 조건하에서 공조를 제공할 수 있는지 여부를 검토하여야 한다. 요청국은 이러한 조건부 공조를 수락하는 경우 그 조건을 준수하여야 한다.

4.  피요청국의 중앙기관은 공조를 거절하는 경우 요청국의 중앙기관에 거절의 이유를 통보하여야 한다.

### 제 4 조
### 공조요청서의 양식 및 내용

1.  공조요청은 피요청국의 중앙기관이 긴급한 상황에서 다른 양식의 공조요청을 받아들이는 경우를 제외하고는 서면으로 하여야 한다. 그러한 경우 그 요청은 피요청국의 중앙기관이 달리 합의하지 아니하는 한 그 후 즉시 서면으로 확인되어야 한다. 공조요청서 및 첨부서류는 달리 합의되지 아니하는 한 피요청국의 언어로 작성되어야 한다.

2.  공조요청서는 다음 사항을 포함하여야 한다.
    가.  요청과 관련된 수사·기소 및 재판절차를 행하는 기관의 명칭
    나.  사건과 관련된 특정 범죄를 포함하여 수사·기소 및 재판절차의 대상과 성격에 관한 기술
    다.  요청하는 증거·정보 또는 기타 공조사항에 관한 기술
    라.  증거·정보 또는 다른 공조요청의 목적에 관한 설명

3. 필요하고 가능한 범위 안에서 공조요청서는 다음 사항도 포함하여야 한다.

  가. 증거취득 대상자의 신원 및 소재에 관한 정보

  나. 송달대상자의 신원 및 소재, 대상자와 재판절차와의 관계 및 송달방법에 관한 정보

  다. 소재탐지 대상자의 신원 및 소재에 관한 정보

  라. 수색대상지 또는 대상자와 압수대상 물건에 관한 정확한 기술

  마. 증언·진술의 취득 및 기록방법에 관한 기술

  바. 증인에 대한 질문사항

  사. 공조요청을 이행하는 데 따라야 할 특별한 절차에 관한 기술

  아. 요청국에 출두하도록 요청받은 사람에게 지급할 수당 및 비용에 관한 정보

  자. 피요청국의 주의를 환기시켜 공조요청의 이행을 용이하게 할 수 있는 기타 정보

제 5 조
요청의 이행

1. 피요청국의 중앙기관은 요청을 즉시 집행하거나, 적절한 경우에는 집행의 관할권을 가진 기관에 이를 이첩하여야 한다. 피요청국의 권한있는 기관은 요청을 이행하기 위하여 그 권한범위 안의 모든 조치를 취하여야 한다. 피요청국의 법원은 공조요청을 이행하는 데 필요한 소환장, 수색영장 또는 기타 명령서를 발부할 권한을 갖는다.

2. 필요한 경우 요청서는 피요청국의 중앙기관이 지명한 사람에 의하여 적절한 기관에 제시되어야 한다.

3. 공조요청은 이 조약에서 달리 규정하는 경우를 제외하고는 피요청국의 법에 따라 집행되어야 한다. 다만, 피요청국의 법에 금지되어 있는 경우를 제외하고는 요청서에 특정된 이행방식에 따른다.

4. 피요청국의 중앙기관은 공조요청의 이행이 자국에서 진행중인 수사 또는 재판절차를 방해할 우려가 있다고 인정하는 경우에는 이행을 연기하거나 요청국의 중앙기관과 협의 후 필요하다고 인정되는 조건에 따라 이행할 수 있다. 요청국은 조건부 공조를 수락한 경우 그 조건을 준수하여야 한다.

5. 피요청국은 요청국의 중앙기관이 요청사실 및 그 내용을 비밀로 할 것을 요청하는 경우 비밀을 유지하기 위하여 최대한 노력하여야 한다. 만일 비밀을 누설하지 아니하고는 공조요청을 이행할 수 없는 경우, 피요청국의 중앙기관은 요청국의 중앙기관에 그 사실을 통보하여, 그럼에도 불구하고 요청이 이행되어야 할지 여부를 결정하도록 하여야 한다.

6. 피요청국의 중앙기관은 공조요청의 이행경과에 대한 요청국 중앙기관의 합당한 문의에 응하여야 한다.

7. 피요청국의 중앙기관은 공조요청 이행의 결과를 요청국의 중앙기관에 즉시 통보하여야 한다. 요청된 공조가 제공되지 아니한 경우, 피요청국의 중앙기관은 요청국의 중앙기관에 그에 대한 이유를 제시하여야 한다.

제 6 조
비    용

피요청국은 요청국이 부담하는 전문 감정인의 용역비, 번역비 및 등본비, 제10조 및 제11조에 의한 관계인의 여행과 관련된 수당 및 비용을 제외하고는 피요청국의 영역안에서 공조요청의 이행과 관련된 모든 비용을 부담한다.

제 7 조
사용의 제한

1.  요청국은 피요청국의 사전 동의 없이는 요청서에 기재된 이외의 수사, 기소 또는 재판절차에 있어서 이 조약에 따라 취득한 어떠한 정보 또는 증거도 사용할 수 없다.

2.  피요청국의 중앙기관은 이 조약에 따라 제공된 정보 또는 증거를 특정한 조건에 따라 비밀로 할 것을 요청할 수 있다.  이 경우 요청국은 특정된 조건을 준수하기 위하여 최대한 노력하여야 한다.

3.  이 조 제1항 및 제2항과 관련하여 요청국에서 공개된 정보 또는 증거는 그 이후에는 어떠한 목적으로도 사용될 수 있다.


제 8 조
피요청국에서의 증언 또는 증거

1.  이 조약에 따라 피요청국에서 증거를 제출하도록 요청받은 자는 필요한 경우에는 출두하여 증언하거나 문서, 기록 및 기타 증거물을 포함한 물건을 제출하여야 한다.

2.  피요청국의 중앙기관은 요청이 있는 경우 이 조에 따라 증언 또는 증거를 취득하는 일자 및 장소에 관한 정보를 미리 제공하여야 한다.

3.  피요청국은 공조요청을 이행하는 동안 요청서에 특정된 자의 출석을 허용하며, 그 자로 하여금 증언을 하거나 증거를 제출하는 자를 신문하도록 허용할 수 있다.  직접 신문이 허용되지 아니하는 경우 그 사람은 증언을 하거나 증거를 제출하는 자에 대하여 신문할 사항을 제출할 수 있도록 허용되어야 한다.

4.  제1항에 언급된 사람이 요청국의 법에 의한 면제, 무능력 또는 는
특권을 주장하는 경우에도 증언 또는 증거는 취득하여야 하고 그 주장은
요청국의 기관이 결정할 수 있도록 요청국의 중앙기관에 통보하여야 한다.

5.  이 조에 따라 피요청국에서 취득하거나 또는 이 조에 따라 행해진
증언의 대상으로서의 문서, 기록 및 기타 증거물은 요청서에 특정된 절차에
따라 인증되어야 한다.  그러한 방법으로 인증된 것은 요청국의 법에 따라
그 안에 적시된 사실을 증명하는 증거로 인정되어야 한다.


## 제 9 조
### 정부기관의 기록

1.  피요청국은 정부부처 또는 정부기관이 보유하는 일반에게 개방된
문서, 기록 또는 정보의 사본을 요청국에게 제공하여야 한다.

2.  피요청국은 자국의 법집행기관 또는 사법기관이 이용하는 것과 같은
범위 및 조건 안에서, 정부부처 또는 정부기관이 보유하나 일반에 개방되어
있지 아니한 문서, 기록 또는 정보의 사본을 제공할 수 있다.  피요청국은
그 재량에 따라 이 항에 따른 요청의 전부 또는 일부를 거절할 수 있다.

3.  이 조에 의하여 작성된 문서·기록 및 그 사본은 요청서에 특정된
절차에 따라 인증되어야 된다.  이러한 방법으로 인증된 경우 이들 서류는
요청국의 법에 따라 그 안에 적시된 사실을 증명하는 증거로 인정된다.


## 제 10 조
### 요청국에서의 증언

피요청국은 자국에 있는 관계인에게 요청국의 적절한 기관에 출두하도록
권유하여야 한다.

　　　　요청국은 지급될 비용의 범위를 명시하여야 한다.　피요청국의 중앙기관은 관계인의 응답내용을 요청국의 중앙기관에 즉시 통보하여야 한다.


### 제 11 조
### 구금중인 자의 이송

　　1.　이 조약에 따른 공조의 목적을 위하여 요청국에 출두할 필요가 있는 자가 피요청국에서 구금중인 경우, 그 자와 피요청국의 중앙기관 모두 이송에 동의하는 때에는 그 목적을 위하여 그 자를 피요청국으로부터 요청국으로 이송하여야 한다.

　　2.　이 조약에 따른 공조의 목적을 위하여 피요청국에 출두할 필요가 있는 자가 요청국에서 구금중인 경우, 그 자가 동의하고 양국의 중앙기관이 합의하는 때에는 그 목적을 위하여 그 자를 피요청국으로 이송할 수 있다.

　　3.　이 조의 목적상,

　　　　가.　인수국은 인계국이 달리 허가하지 아니하는 한 이송된 자를 구금상태에 둘 권한 및 의무를 가진다.

　　　　나.　인수국은 상황이 허용하는 즉시 또는 양 중앙기관의 합의에 따라, 이송된 자를 구금상태로 인계국에 송환하여야 한다.

　　　　다.　인수국은 이송된 자의 송환을 위하여 인계국으로 하여금 범죄인 인도절차를 취하도록 요구하지 못한다.

　　　　라.　이송된 자는 인수국에서 구금된 기간을 인계국에서 선고된 형기에 산입받는다.

제 12 조
신변안전

1.  제10조 및 제11조에 따라 요청국에 출두한 자는 피요청국을 출발하기 이전의 행위 또는 선고를 이유로 영장 등 서류송달의 대상이 되지 아니하고, 구금·기소되지 아니하며, 개인적 자유를 제한받지 아니한다.

2.  이 조에 규정된 신변안전은, 요청국의 중앙기관이 그 자의 출두가 더이상 필요하지 아니하다고 피요청국의 중앙기관에 통고한 후 15일이 경과하거나 그 자가 요청국을 떠났다가 자발적으로 돌아온 때에는 적용하지 아니한다.


제 13 조
사람 또는 물건의 소재, 신원파악

피요청국은 공조요청서에 특정되고 피요청국에 있다고 추정되는 사람 또는 물건의 소재, 신원을 파악하기 위하여 최대한 노력하여야 한다.


제 14 조
문서의 송달

1.  피요청국은 이 조약의 규정에 따라 요청국이 행한 공조요청에 관계되거나 그 일부를 구성하는 문서의 송달을 실시하기 위하여 최대한 노력하여야 한다.

2.  달리 합의하지 아니하는 한 요청국 기관에의 출두를 요구하는 문서의 송달에 대한 요청서는 출두일부터 30일 이전에 피요청국의 중앙기관에 접수되어야 한다.

3.  피요청국은 요청서에 특정된 방법에 따라 송달증명을 회송하여야 한다.

제 15 조
수색 및 압수

1. 공조요청서에 피요청국의 법에 의하여 수색, 압수 및 인도등을 시행함이 상당하다고 인정되는 정보가 포함되어 있는 경우, 피요청국은 문서·기록 또는 기타 증거물을 포함한 물건에 대한 수색·압수 및 인도에 관한 공조요청을 이행하여야 한다.

2. 압수물을 보관하고 있는 공무원은 요청이 있을 때에는 공조요청서에 특정된 절차에 따라 보관의 지속, 보관물의 동일성 및 유지상태에 대하여 보증한다. 이 보증서는 보증서상 적시된 사실을 증명하는 증거로 인정된다.

3. 피요청국의 중앙기관은 인도할 물건에 관한 제3자의 이익을 보호 하는 데 필요하다고 인정되는 조건에 대하여 요청국이 동의할 것을 요구할 수 있다.

제 16 조
물건의 반환

피요청국의 중앙기관이 요구하는 경우 요청국의 중앙기관은 이 조약에 따른 공조요청의 이행과정에서 요청국에 제공된 문서, 기록 또는 증거물을 가능한 한 빨리 반환하여야 한다.

제 17 조
몰수절차에서의 공조

1. 일방 체약당사국의 중앙기관은 범죄취득물이나 범죄도구가 타방 체약당사국의 영역 안에 있고 그 타방 체약당사국의 법에 의하여 몰수 또는 압수대상이 될 수 있다는 것을 알게 된 경우 타방 체약당사국의 중앙

기관에 그 사실을 통보하여야 한다.  그 타방 체약당사국은 이와 관련하여 관할권을 갖고 있는 경우, 어떤 조치가 적절한지 여부를 결정하도록 자국의 관계기관에 그러한 정보를 제시하여야 한다.  이 기관은 자국법에 따라 결정을 내리고, 시행한 조치를 중앙기관을 통하여 타방 체약당사국에 통고하여야 한다.

2.  체약당사국은 범죄취득물 및 범죄도구의 몰수와 관련된 절차에 있어서 각자의 법이 허용하는 범위 안에서 서로 협력하여야 한다.  이 협력은 계류중인 사건의 범죄취득물 또는 범죄도구의 일시적 처분제한을 포함할 수 있다.

3.  몰수된 범죄취득물 또는 범죄도구를 관리하고 있는 피요청국은 자국법에 따라 이를 처분하여야 한다.  각 체약당사국은 자국법이 허용하고 적절하다고 판단하는 범위 안에서 몰수물 또는 그 공매대금을 다른 체약 당사국에 양도할 수 있다.


제 18 조
다른조약, 협정 또는 약정과의 양립

이 조약에 규정된 공조 및 절차는 이 조약의 체약당사국이 당사국으로 되어 있는 다른 국제협정의 규정이나 그 국내법의 규정에 따라 협력을 제공하는 것을 방해하지 아니한다.  체약당사국은 또한 적용가능한 양자 협정, 약정 또는 관행에 따라 협력을 제공할 수 있다.


제 19 조
협      의

체약당사국의 중앙기관은 서로 합의한 때에, 이 조약을 가장 효과적으로 이용할 수 있도록 협의하여야 한다.

제 20 조
비준, 발효 및 종료

1.  이 조약은 비준되어야 한다.  비준서는 워싱턴에서 가능한 한 빨리 교환한다.

2.  이 조약은 비준서 교환시에 발효한다.

3.   이 조약은 관련 작위 또는 부작위가 조약발효 이전에 발생하였더라도 발효 이후에 제출된 요청애 적용된다.

4.  각 체약당사국은 타방 체약당사국에 서면 통고함으로써 이 조약을 종료시킬수 있다.  종료는 통고일부터 6월후에 발효한다.

이상의 증거로, 하기 서명자는 그들 각자의 정부로부터 정당하게 권한을 위임받아 이 조약에 서명하였다.

**위싱턴**에서 199**3** 년 **11** 월 **23** 일 동등하게 정본인 영어와 한국어로 2부씩 작성되었다.

미합중국을 위하여

*Warren Christopher*

대한민국을 위하여

한승주

# 부      속      서

양 체약당사국은 다음과 같은 유형의 행위와 관련된 수사, 기소 및 재판절차에 있어서 수사, 기소 또는 재판절차의 대상인 행위가 피요청국의 법상 범죄를 구성하는지 여부에 관계없이 공조를 제공하기로 합의한다.

1.  1961년 마약에 관한 단일협약, 1971년 향정신성물질에 관한 협약, 1972년 단일협약 개정 의정서 또는 1988년 마약 및 향정신성물질의 불법거래 방지협약에 규정된 모든 마약활동과 관련되고 이로부터 발생하며 이와 관계되거나 이로부터 초래된 모든 범죄행위를 포함한 마약 및 향정신성물질의 불법거래. 다만 위에 열거된 행위에 국한되지 아니함.

2.  조직적 갈취행위
    미국이 공조를 요청하는 경우에는 다음 각호를 포함한다.
    가.  각 주간의 교역에 종사하거나 영향을 미치는 기업에 대한 권리를 확립, 운영, 획득하기 위한 범죄행위의 한 유형으로부터 발생한 수입의 사용
    나.  범죄행위의 한 유형 또는 불법채무 회수행위를 통한 그러한 기업의 경영지배권 또는 기업에 대한 권리의 획득 또는 유지
    다.  범죄행위의 한 유형 또는 불법채무 회수행위를 통한 그러한 기업의 업무행위의 수행 또는 그에 대한 참여
    한국이 공조를 요청하는 경우에는 범죄를 목적으로 하는 집단의 조직 또는 그에 대한 참여.

3.  다음 각호를 포함한 자금세정행위
    가.  통화의 유통 또는 기타 재정적 거래와 관련하여 정부에 대하여 법에 규정된 신고를 하지 아니하거나 타인으로 하여금 신고하게 하지 아니한 경우

나. 자산의 불법적 출처를 은닉 또는 위장하거나 그러한 범죄행위에 관련된 자를 그 행위에 대한 법적 제재로부터 회피하도록 도와줄 목적으로 그 자산이 범죄행위로부터 발생된 것이라는 사실을 알면서 이를 교환·양도 또는 양수한 경우

다. 그러한 자산이 범죄행위로부터 발생한 것이라는 사실을 알면서 이의 진정한 성격, 출처, 소재, 처분, 이동 또는 소유관계를 은닉 또는 위장한 경우

4. 항공기의 불법납치(공중납치) 억제를 위한 1970년 12월 16일 헤이그협약, 항공기내에서 행해진 범죄 및 기타 행위에 관한 1963년 9월 14일 도쿄협약, 민간항공의 안전에 대한 불법적 행위(파괴행위)의 억제를 위한 1971년 9월 23일 몬트리올협약, 외교관등 국제적 보호인물에 대한 범죄의 방지 및 처벌에 관한 1973년 12월 14일 뉴욕협약, 인질억류 방지에 관한 1979년 12월 17일 뉴욕국제협약 및 양국이 당사자인 다른 조약 또는 협약으로서 특정범죄유형을 방지 또는 억제하고 범죄인을 인도하거나 기소여부를 결정할 권한있는 기관에 이 사건의 제출의무를 부과하고 있는 조약 또는 협약등에 규정된 모든 폭력 범죄행위

5. 허무인 또는 타인명의의 수표발행 또는 금융기관과의 약정이 없거나 그러한 기관과의 거래가 정지된 후의 수표발행을 포함하여 부정(불법) 수표의 고의적 발행 및 고의적인 수표부도행위와 관련된 범죄

6. 정부, 정부기관 또는 국민으로부터 금전, 유가물을 박탈하거나 허위진술 이나 기만없는 정부의 업무수행능력을 박탈하는 효과를 가진 행위를 포함한 정부 또는 개인에 대한 사기

7. 유가증권의 청약, 매입 또는 매출과 관련하여 다음 각호의 어느 수단을 직·간접적으로 사용하는 것을 포함한 부정 유가증권 영업행위

가.  술수, 술책 또는 책략에 의한 기망

나.  고의로 착오를 일으키는 진술

다.  타인을 기망하거나 기망할 수 있는 모든 행동, 영업 또는 업무 과정에의 고의적 참여

8.  법적 구속력이 있는 의무나 위탁 또는 신뢰관계에 위배하여 청약, 매입 또는 매출된 유가증권과 직·간접적으로 관련된 중요한 비공개 정보 보유자의 유가증권 청약, 매입 또는 매출을 포함한 내부자 거래

9.  외국의 공무원, 정당, 그 관계자 또는 정무직 지망자로 하여금 직접 사업권을 획득 또는 보유토록 하거나 또는 이러한 자들이 제3자에게 사업권을 부여하는 것에 도움을 줄 목적의 뇌물을 약속, 공여, 권유하는 것을 포함한 외국에 대한 매수

10.  서면 또는 구두로 허위진술을 하거나 관세 또는 조세관계에 있어서 법률에 규정된 보고 또는 신고를 정부 당국에 고의적으로 하지 아니한 것을 포함한 세금포탈 또는 재정사기

11.  지구환경을 파괴, 손상, 악화 또는 훼손하는 행위를 포함한 환경범죄

12.  상품 또는 무기수출관리법 회피행위를 포함한 수출관리법 위반범죄

13.  아동을 게재한 음화의 상업적 거래를 포함한 성적 또는 기타 목적의 아동학대범죄

14.  파산법 위반범죄

15.  회사 임직원 및 발기인의 범죄를 포함한 기업 또는 회사관계법 위반범죄

16.  소화기, 무기 또는 각종 폭발물 관련법 위반범죄

17. 지적소유권, 저작권, 특허권 또는 상표권 보호 관계법 위반범죄

18. 여권 또는 비자의 사술에 의한 취득 또는 사용을 포함한 이민, 국적 및 밀입국관계법 위반범죄

19. 각종 상품 수출입통재 또는 국제적 자본이전 관계법 위반범죄

20. 민간 독점의 금지나 불공정 거래 또는 영업금지 관계법 위반범죄

21. 컴퓨터 또는 컴퓨터 체계·자료 또는 암호 기타 관련장치 등 안전장치의 보호 관계법 위반범죄

22. 양 체약당사국에 대하여 구속력이 있고 범죄인을 반드시 기소 또는 인도하도록 되어 있는 다자간 국제협약상의 범죄

23. 이 부속서에 규정된 행위로부터 파생된 모든 범죄 또는 각 주간의 운송이나 우편, 전신 기타 각 주간의 통신수단의 사용에 근거하여 미국연방의 관할권이 있는 경우에 이 조약에 따라 공조의 대상인 모든 범죄

24 이 부속서에 규정된 행위로부터 파생되거나 이 조약에 따라 공조의 대상인 모든 범죄에 대한 일체의 미수, 공모, 방조, 교사 및 사후종범

25. 이 부속서에 규정된 행위로부터 파생되거나 이 조약에 따라 공조의 대상인 하나 또는 그 이상의 범죄실행과 관련된 요청국 법상의 범죄

26. 체약당사국 사이에서 수시로 외교각서의 교환에 의하여 합의될 수 있는 그밖의 범죄