UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINFRED WAIRIMU WAMAI, *et al*.,<br><br>                              Plaintiffs,<br><br>                -v-<br><br>INDUSTRIAL BANK OF KOREA,<br><br>                              Defendant. | Case No. 21-cv-325-DLC |

## **DECLARATION OF YOON-KEE KIM**

미국 뉴욕 연방남부지방법원

WINFRED WAIRIMU WAMAI 외,

원고

-v-

중소기업은행,

피고

사건번호: 21-cv-325-DLC

## 김윤기 진술서

본인 김윤기는 중소기업은행(이하 "기업은행")의 준법감시인으로 재직하고 있으며, 본인의 경험이나 은행의 자료 등에 기초하여 아래와 같이 진술합니다.

1. 본인은 현재 기업은행의 준법감시인으로 근무하고 있습니다. 준법감시인으로서 본인은 법률이 정하는 범위 내에서 본점 부서와 각 지점들에게 모든 은행활동과 관련하여 법률지원을 하고, 법규준수 및 선제적 법률 리스크 관리를 총괄하고 있습니다.

2. 본인은 1990년 기업은행에 입행하여 영업점 근무를 시작으로 여신, 수신부서를 거쳐, 비서실장, 검사부장을 역임하였습니다.

**A. 기업은행의 설립 배경 및 운영**

1

3. 기업은행은 중소기업자에 대한 효율적인 신용제도를 확립함으로써 중소기업자의 자주적인 경제활동을 원활하게 하고 그 경제적 지위 향상을 도모할 목적으로 중소기업은행법에 근거하여 1961년에 설립되었습니다.

4. 중소기업은행법에 따른 설립 목적을 달성할 수 있도록 기업은행 업무의 상당 부분은 각종 분야에서 사업을 영위하는 중소기업·소상공인에 대한 자금의 대출과 어음 할인이 차지하고 있습니다. 그 외 기업은행은 개인 고객들을 상대로 예금, 대출, 신용카드, 신탁, 자문 서비스 등도 제공하고 있습니다.

5. 한국 정부는 국유재산법 제2조 6항에 따라 기획재정부를 통해 출자했으며, 1994년까지 기업은행 출자 지분 전부를 소유하고 있었습니다. 1994년부터 정부의 지분보유율은 공모 방식에 의한 신주 발행과 우리사주조합의 지분 보유 등으로 인하여 점차 감소하였으나, 필요시 한국 정부는 유상증자에 참여하고 있으며 2020년에는 4차례 유상증자가 이루어졌습니다. 기획재정부는 2020년 12월 31일 기준 보통주의 63.5%, 보통주 및 우선주의 59.2%를 보유하고 있으며, 여전히 당행의 최대주주입니다.

6. 기업은행의 결산순손실금을 적립금으로 보전하고도 부족할 경우 중소기업은행법 제43조에 따라 한국 정부에 손실금 보전 의무가 있습니다.

7. 한국 정부는 중소기업은행법에 따라 기업은행의 경영, 업무에 대한 지도, 감독 권한을 가집니다. 기업은행의 이사회는 은행장, 전무이사, 이사로 구성되는데, 은행장은 대통령이 임면하고, 전무이사와 이사는 금융위원회가 임면합니다. 기업은행의 업무와 회계를 감사하는 직무를 담당하는 감사 역시 금융위원회가 임면합니다. 기업은행의 회계연도별 업무계획은 이사회 의결을 거친 후 금융위원회의 승인을 받아야 하고, 기업은행의 정관 변경 역시 금융위원회의 인가를 받아야 합니다. 기업은행은 국회 국정감사 대상 기관이며, 감사원 회계감사 대상 법인이기도 합니다.

8. 2020년 12월 31일 기준, 대한민국 및 전세계에 근무하고 있는 당행의 전체 임직원수는 13,930명이고, 국내 635개 지점, 해외 9개 지점, 그리고 해외사무소 2개를 운영 중에 있습니다. 미국에는 뉴욕지점 1개를 운영 중이며, 2020년 12월 31일 기준, 총 29명이 근무 중입니다.

9. 기업은행 뉴욕 지점은 기업은행의 미국 내 유일한 지점입니다. 뉴욕 지점은 (i) 한국 회사의 미국 자회사에 대한 기업 여신; (ii) 한-미 사업자에 대한 상업적 대출; (iii) 수출입 신용장 발행 및 확인; 상환 또는 미달러화 결제 업무 처리 등의 사업을 영위합니다.

**B. CBI 원화계좌 개설, 운영 및 뉴욕 지점의 역할**

10. 당행에는 2010년 10월경부터 이란중앙은행에 속하는 원화계좌(이하 "CBI 원화계좌")가 개설되어 있습니다.

11. 케네스 정 및 주로 이란인들로 구성된 여러 명의 공범자들이 허위 무역 거래를 하는 것처럼 가장하고, 위조된 서류를 한국은행, 전략물자관리원과 IBK에 제출했으며, 그 결과 2011. 2. 10.경부터 2011. 7. 20.까지 약 미달러화 10억불에 상당하는 자금이 CBI 원화계좌에서 인출되어 해외로 송금된 것으로 알고 있습니다.

12. 당시 CBI 원화계좌가 이용되는 거래는 한국은행의 허가 또는 한국은행에의 신고를 거쳐야 했고, 전략물자관리원에서 발급한 확인서를 받아야 했습니다.

13. 원고들이 문제삼고 있는 총 약 10억 달러의 이체 금액 중 뉴욕 지점이 처리한 금액은 1천만불 정도에 불과합니다. 이체된 10억 달러 상당액 중 거의 대부분은 다른 은행에 개설되어 있는 기업은행의 코레스 계좌를 통해서 처리되었습니다. 뉴욕 지점은 이러한 이체 거래와는 전혀 무관하며 어떠한 역할도 수행하지

3

않았습니다 – 위 이체 거래들은 모두 서울에 있는 기업은행 본점에서 시작되었고, 위 거래의 처리에 관련된 모든 의사결정 역시 그곳에서 이루어졌습니다. CBI 원화계좌 및 케네스 정 계좌에서의 인출은 한국에서 시작되었고, 뉴욕 은행들을 거쳐서 이체되었는데, 위 자금 중 뉴욕 수익자의 계좌로 지급된 것은 없습니다. 뉴욕 지점을 통해서 이체된, 전체 자금의 약 1%에 해당하는 자금 역시 뉴욕에 소재하지 않는 수익자들에게 전부 지급되었습니다.

14. 현재 뉴욕 지점에는 29명의 직원이 근무하고 있습니다. 이들은 (i) 뉴욕 지점이 직접 고용한 22명의 직원, (ii) 기업은행 본점에서 뉴욕 지점으로 파견된 6명의 직원, (iii) 기업은행 본점 검사부 소속이지만 현재 뉴욕 지점에서 근무하고 있는 1명의 직원으로 이루어져 있습니다. 반면, 2020년 12월 31일 현재, 기업은행은 한국에 총 13,000명이 넘는 임직원을 두고 있습니다.

15. 기업은행 기록에 의할 때, 현재 뉴욕 지점에서 근무하고 있는 29명의 직원 중 케네스 정에 의한 사기적 거래가 실행된 2011년 2월부터 2011년 7월까지의 기간 동안 뉴욕 지점에서 근무한 직원은 8명입니다.

16. 기업은행 기록에 의할 때, 원고들이 소장에서 언급한 뉴욕 지점 직원들 중 당시 뉴욕지점 지점장을 제외하고, 현재 기업은행에 재직하고 있는 직원은 없습니다. 또한, 기업은행이 아는 최대한의 범위에서, 위 직원들, 즉, 종전 지점장, 뉴욕 지점 Compliance Officer, 뉴욕 지점 내부감사인(internal auditor)은 현재 한국에 있거나 미국 노스캐롤라이나 또는 뉴욕 주 이타카에 소재하고 있습니다.

17. 마찬가지로, 기업은행이 아는 한, 케네스 정과 소통한 적이 있거나 문제되고 있는 거래의 개시에 어떤 식으로든 관여하였거나 한국 정부기관에 의한 검토, 심사 절차에 관여한 기업은행 직원들은 현재 한국에 거주하고 있으며, 그 모국어는 한국어입니다. CBI 원화계좌 개설 및 CBI 원화계좌의 운용 감독에 관여한 기업은행 임원 및 한국 정부 담당자들의 최종적으로 알려진 소재지는 한국입니다. 기업은행이 최대한 아는 한, 사기 범행의 주동자인 케네스 정 역시

4

한국에 있습니다. 본 진술서에 첨부된 첨부 A는 원고들의 청구와 관련성이 있을 수 있는 정보를 알고 있을 수 있는 사람들에 대해 기업은행이 최대한 아는 범위 내에서 그 최종 소재지를 기재한 목록입니다.

18. 케네스 정의 사기적 거래에 관한 서류, 그가 범행 계획에 따라 작성한 문서들, 기업은행, 한국은행 및 전략물자관리원의 심사, 검토 절차에 관련된 모든 기록들은 한국에 존재하며, 거의 대부분 한국어로 작성되어 있습니다. 기업은행이 최대한 아는 한, CBI 원화 계좌 관련 미국 검찰이 보관하고 있는 증거서류의 거의 대부분은 한미 사법공조조약에 따라 한국 정부에 의해 제공된 것일 것이며, 위 조약은 관련 서류를 원고들에게 공개하지 못하도록 하고 있습니다.

**C. 기업은행은 한국 사법제도의 지배를 받습니다**

19. 기업은행은 한국 법의 적용을 받으며, 관련 법령상 적절한 한국 법원에 제소될 수 있습니다. 한국에서 기업은행은 소송상 어떠한 면책특권을 누리지 않습니다. 법률적인 측면에서, 한국 정부의 지분 보유로 인하여 기업은행이 한국 내 사법절차에서 누리는 이익이나 특혜도 없습니다.

20. 만약 원고들이 이 사건에서 주장하고 있는 사실관계에 기초하여 적절한 한국 법원에서 소를 제기하고 유사한 내용의 청구를 한다면, 기업은행은 한국에서의 송달을 수령하고, 한국 법원의 관할권 행사에 이의를 제기하지 않을 것입니다.

21. 기업은행은 한국 법원이 선고하여 확정된 판결을 불이행한 적이 없습니다.

22. 만약 법원이 이 사건 소송을 *forum non conveniens* 법리를 근거로 각하 또는

기각하는 경우, 기업은행은 2020년 7월 23일[1]부터 원고들이 적절한 한국 법원에 소를 제기할 때까지의 기간 동안 소멸시효가 완성되었음을 이유로 하는 항변을 제출하지 않을 것이며, 위 기간 동안 소멸시효가 정지된다는 점에 동의합니다. 다만, 원고들이 (i) 이 사건 법원 결정에 대해 항소한 경우에는 항소법원의 결정일로부터 6개월이 되는 날, 또는 (ii) 이 사건 법원이 결정을 한 때로부터 9개월이 되는 날 중 늦게 도래하는 날 이내에 소를 제기할 것을 조건으로 합니다.

미국법상 위증의 벌을 받을 수 있음을 알면서, 이상 내용이 진실하고 정확함을 진술합니다.

서명: _____

날짜: 2021년 4월 12 일

장소: 대한민국 서울

---

[1] 이 사건 소장은 2021년 1월 14일에 제출되었으나, 이 사건 당사자들은 소장상 주장되는 청구원인에 관하여 tolling agreement를 체결하였으며 그 효력은 2020년 7월 23일부터 발효되었습니다.

## 첨부 A

### 증인이 될 가능성이 있는 관련자들의 최종 소재지
*(Wamai et al v. Industrial Bank of Korea, 21-cv-325-DLC (S.D.N.Y.))*

| 증인이 될 가능성이 있는 사람들 | 직위/역할 | 소장¶ | 알려진 최종 소재지 |
|---|---|---|---|
| 케네스 정 | 앤코래㈜ 대표이사 | 여러 곳 | 한국 |
| 케네스 정 공범 | 케네스 정과 동행하여 IBK 지점 방문 | - | 한국 |
| Pourya Nayebi | 케네스 정의 이란인 공범 | 54, 59, 62, 65, 134 | 미상 |
| Houshang Hosseinpour | 케네스 정의 이란인 공범 | 54, 73, 134 | 미상 |
| Houshang Farsoudeh | 케네스 정의 이란인 공범 | 54, 59, 134 | 미상 |
| Muneer AlShaikh | 이란인 공범을 위해 행위함 | 65 | 미상 |
| Shahzad Mirza[1] | 이란인 공범을 위해 행위함 | - | 미상 |
| IBK 직원 | | | |
| 지점 대리 | 앤코래 거래 전부를 처리한 지점 | - | 한국 |
| 지점장 | 앤코래 거래 전부를 처리한 지점 | - | 한국 |
| 지점 팀장, 준법감시인 | 앤코래 거래 전부를 처리한 지점 | - | 한국 |
| 지점 차장 | 앤코래 거래 전부를 처리한 지점 | - | 한국 |
| "IBK 경영진" 또는 "본점" 직원 | IBK 본점 | 78, 96, 111, 113-115 | 한국 |
| 유석하 | 부행장, 글로벌 자금시장 본부장 | 72, 73, 98, 99 | 한국 |
| 전광욱 | 외환사업부 부장 | 72, 73, 98, 99 | 한국 |
| 기타 관련 직원 | 외환사업부 (CBI 원화계좌 인출 및 해외 자금이체 처리에 관여) | 여러 곳 | 한국 |
| 한국 정부 | | | |
| 한국은행 직원 | 한국은행 (앤코래 거래를 허가함) | 49 | 한국 |
| 전략물자관리원 직원 | 전략물자관리원 (앤코래 거래 관련 확인서를 발급함) | 49 | 한국 |
| 기획재정부 공무원 | 기획재정부 (CBI 원화계좌 운영 지도, 감독) | - | 한국 |
| IBK 뉴욕지점 | | | |
| 종전 직원 | Compliance Officer | 76-78, 111 | North Carolina |
| 직원 | 지점장 | 76, 78 | 한국 |

---

[1] 미국 연방 국세청 직원 Sue Chambers 의 진술서, *United States v. Real Property Located at 11621 Alderwood Loop, Anchorage, Alaska et al.*, No. 3:14-cv-00065-TMB (D. Alaska, 2014 년 5 월 2 일), ¶¶ 32 – 37 (ECF No. 3).

| 종전 직원 | 내부 감사인 | 79 | Ithaca, NY |
|---|---|---|---|
| 이란중앙은행 | | | |
| 담당자 | 담당자들 | 88-95 | 이란 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINFRED WAIRIMU WAMAI, et al.,<br><br>Plaintiffs,<br><br>-v.-<br><br>INDUSTRIAL BANK OF KOREA,<br><br>Defendant. | Case No. 21-cv-325-DLC |

### DECLARATION OF YOON-KEE KIM

I, Yoon-kee Kim, Chief Compliance Officer at Industrial Bank of Korea ("IBK"), upon personal knowledge or reference to IBK records, etc. state the following:

1.     I am currently the Chief Compliance Officer at IBK.  In my role as Chief Compliance Officer, I provide legal support relating to all IBK activities to the departments within IBK Head Office and each of the branches, and I oversee compliance with laws and preemptive management of legal risks, within the scope established under the law.

2.     I joined IBK in 1990, starting my work at a branch office.  Since then, I have worked in the credit business department, deposit business department, and have served as the Secretary and Head of Audit.

**A.     Background of Establishment of IBK and Its Operations**

3.     IBK was established in 1961 pursuant to the Industrial Bank of Korea Act (the "IBK Act") to promote independent economic activities and help enhance the economic status of small- and medium-sized enterprises ("SMEs") in Korea through establishing an effective credit system for SMEs.

1

4.      To achieve the purpose under the IBK Act, a substantial part of IBK's activities consists of discounting bills for, and making loans to, SMEs in a wide range of industries.  IBK also provides services to individual customers, including deposit taking, lending, credit card issuance and servicing, trust account management, and advisory services.

5.      The Korean government contributed capital to IBK through the Ministry of Economy and Finance under Article 2, Paragraph 6 of the State Property Act, and until 1994, IBK's entire issued share capital was held by the Korean government.  Since 1994, the government's share ownership has gradually decreased through reasons such as public offering of new shares and an increase in employee stock ownership.  However, the Korean government participates in issuance of new shares when deemed necessary, and there were four instances of issuance of new shares in 2020.  As of December 31, 2020, the Ministry of Economy and Finance owned 63.5% of IBK common stock and 59.2% of IBK stock of all classes (common and preferred), and continues to remain IBK's largest shareholder.

6.      Under Article 43 of the IBK Act, the Korean government is obligated to make up the remaining losses if IBK suffers net losses and its reserves are insufficient to make up such losses.

7.      The Korean government has authority to supervise and oversee matters relating to IBK's management and operations pursuant to the IBK Act.  IBK's board of directors (the "IBK Board") is composed of the chief executive officer, senior executive vice president, and directors. The President of Korea has the power to appoint or dismiss IBK's chief executive officer, and the Financial Supervisory Commission (the "FSC") has the power to appoint or dismiss IBK's senior executive vice president and directors. The FSC also has the power to appoint or dismiss IBK's statutory auditor who has the duty to audit IBK's operations and accounting matters.  IBK must

obtain the approval of the FSC on its business plan for each fiscal year after obtaining IBK Board approval, and IBK's Articles of Incorporation may only be amended with the approval of the FSC. IBK is subject to the national audit by the National Assembly, and is also subject to the accounting audit by the Board of Audit and Inspection.

8.    As of December 31, 2020, IBK employed a total of 13,930 executives and employees in Korea and overseas, and operated 635 branches in Korea, 9 overseas branches, and 2 overseas offices.  IBK has one New York branch in the United States ("IBKNY"), which had 29 employees as of December 31, 2020.

9.    IBKNY is the sole U.S. operation of IBK, and engages in the following businesses: (i) corporate lending to U.S. subsidiaries of Korean companies; (ii) commercial lending to Korean-American businesses; (iii) export-import letters of credit issuance and confirmation; and (iv) handling of reimbursements/USD clearing activities.

**B.    The Establishment and Operation of the CBI Won Account and Role of IBKNY**

10.    A Korean won ("KRW")-denominated account belonging to the Central Bank of Iran ("CBI Won Account") has been established at IBK since around October 2010.

11.    Kenneth Zong ("Zong") and several co-conspirators who are primarily Iranian engaged in sham trade transactions and submitted fictitious documentation to the Bank of Korea, the Korea Strategic Trade Institute ("KOSTI"), and IBK.  To my understanding, as a result of the above, between February 10, 2011 and July 20, 2011, approximately $1 billion worth of funds were withdrawn from the CBI Won Account and remitted overseas.

12.    At the time, to engage in transactions which utilize the CBI Won Account it was necessary to obtain the approval or reporting to the Bank of Korea and to obtain a certificate issued by the KOSTI.

3

13.     Of the approximately $1 billion in transfers placed at issue by Plaintiffs, only around $10 million went through IBKNY.  The vast majority of the $1 billion in transfers went through IBK correspondent accounts at other banks.  IBKNY had no involvement whatsoever and no role in routing these other transactions—all of those transfers were initiated at the IBK Head Office in Seoul and all decisions pertaining to those transactions were made there as well.  Withdrawals from the CBI Won Account and then from Zong's account were initiated in Korea, and transfers were made through New York banks, with no funds coming to rest in accounts of New York beneficiaries.  The approximately 1% of the total funds that went through IBKNY were paid to beneficiaries but none in New York.

14.     There are currently twenty-nine employees at IBKNY.  This includes (a) twenty-two employees who were hired directly by IBKNY; (b) six employees who have been seconded to IBKNY from IBK Head Office; and (c) one employee who is a member of the Audit Department at IBK Head Office but who is currently working at IBKNY.  By way of comparison, as of December 31, 2020, IBK had well in excess of 13,000 executives and employees in Korea.

15.     According to IBK records, eight of the twenty-nine employees currently working at IBKNY were employed at IBKNY between February 2011 to July 2011, the period in which the Zong's fraudulent transactions took place.

16.     According to IBK records, other than the then Branch Manager of IBKNY, none of the New York-based employees identified by Plaintiffs in the Complaint still work for IBK.  Furthermore, to the best of IBK's knowledge, these former employees—the former Branch Manager, the IBKNY Compliance Officer, and the IBKNY internal auditor—now live in Korea, North Carolina, and Ithaca, New York, respectively.

17.     Likewise, to IBK's knowledge, all IBK employees who interacted with Zong, participated in any way with the initiation of the transfers in question, or assisted with the Korean government review process currently reside in Korea and their native language is Korean. The last known location of the IBK officials and the Korean government officials who were involved in establishing the CBI Won Account and monitoring the operation of the CBI Won Account system is Korea. To the best of IBK's knowledge, Zong, the perpetrator of the fraud, is also in Korea. Attached as Exhibit A hereto is a list of witnesses who may have information potentially relevant to Plaintiffs' claims, and their last-known locations, to the best of IBK's knowledge.

18.     The records relating to Zong's fraudulent transactions, the documents he created as part of his scheme, and all records relating to the IBK, Bank of Korea, and KOSTI review process are located in Korea and are written predominantly in Korean.  To the best of IBK's knowledge, the vast majority of evidence relating to the CBI Won Account in the possession of U.S. prosecutors would have been provided through the Korean government pursuant to the US-Korea mutual legal assistance treaty, which does not permit the disclosure of those materials to Plaintiffs.

### C.     IBK Is Subject to the Korean Legal System

19.     IBK is subject to Korean laws and may be sued in Korean courts that are recognized under the relevant laws as having jurisdiction.  IBK is not afforded any special immunity from lawsuits in Korea.  From a legal perspective, IBK also does not enjoy any special benefits or favors in any legal procedure in Korea arising from Korean government's ownership of the bank's shares.

20.     If Plaintiffs commence litigation based on the underlying facts asserted in this lawsuit in an appropriate Korean court and seek similar relief, IBK will accept service of process and will not object to Korean court's exercise of personal jurisdiction.

21.     IBK has never failed to satisfy a final judgment issued by a Korean court.

22.    If this matter is dismissed by this Court on the grounds of *forum non conveniens*, IBK would not file objections based on any statute of limitations that would expire during the period from July 23, 2020[1] to the date Plaintiffs file a complaint in a proper Korean court, and accepts that any applicable statute of limitations shall be tolled for that period, so long as Plaintiffs initiate an action within the later of (a) six months from the issuance of the mandate in any appeal initiated by Plaintiffs in this action or (b) nine months from the date the Court enters its judgment.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____

Date: April 12, 2021

Place: Seoul, Republic of Korea

---

[1] Although the Complaint in this action was filed on January 14, 2021, the parties entered into a tolling agreement effective as of July 23, 2020, concerning the causes of action alleged in the Complaint.

6

Exhibit A

Last Known Location of Potentially Relevant Witnesses
(*Wamai et al v. Industrial Bank of Korea,* 21-cv-325-DLC (S.D.N.Y.))

| Potential Witness | Title/Role | Complaint ¶ | Last Known Location |
|---|---|---|---|
| Kenneth Zong | Owner of Anchore | passim | Korea |
| Zong associate | Accompanied Zong to IBK Branch | - | Korea |
| Pourya Nayebi | Zong's Iranian co-conspirator | 54, 59, 62, 65, 134 | Unknown |
| Houshang Hosseinpour | Zong's Iranian co-conspirator | 54, 73, 134 | Unknown |
| Houshang Farsoudeh | Zong's Iranian co-conspirator | 54, 59, 134 | Unknown |
| Muneer AlShaikh | Worked for Iranian co-conspirators | 65 | Unknown |
| Shahzad Mirza[1] | Worked for Iranian co-conspirators | | Unknown |
| IBK Employees | | | |
| Senior Clerk | Branch that handled all Anchore transactions | - | Korea |
| Branch Manager | Branch that handled all Anchore transactions | - | Korea |
| Team Head, Compliance Officer | Branch that handled all Anchore transactions | - | Korea |
| Deputy Team Head | Branch that handled all Anchore transactions | - | Korea |
| "IBK Management" or "Head Office" Employees | IBK Management | 78, 96, 111, 113-115 | Korea |
| Seog Ha Yoo | Sr. Executive Vice President, Head of Global Markets | 72, 73, 98, 99 | Korea |
| Kwang Wook Jeon | General Manager, Int'l Trade | 72, 73, 98, 99 | Korea |
| Other relevant employees | Int'l Trade Business Dep't (involved in transactions from CBI Won Account and overseas transactions) | Various | Korea |
| Korean Government | | | |
| Officials of Bank of Korea | Bank of Korea (approved Anchore transactions) | 49 | Korea |
| Officials of Korea Strategic Trade Institute (KOSTI) | KOSTI (issued certificates concerning Anchore transactions) | 49 | Korea |

---

[1] *See* Affidavit of IRS Agent Sue Chambers, *United States v. Real Property located at 11621 Alderwood Loop, Anchorage, Alaska et al*, No. 3:14-cv-00065-TMB (D. Alaska May 2, 2014), ¶¶ 32 – 37 (ECF No. 3).

| Potential Witness | Title/Role | Complaint ¶ | Last Known Location |
|---|---|---|---|
| Public Officials of Ministry of Economy and Finance | Ministry of Economy and Finance (general supervision of operation of CBI Won Account) | - | Korea |
| IBKNY | | | |
| Former Employee | Compliance Officer | 76-78, 111 | North Carolina |
| Employee | General Manager | 76, 78 | Korea |
| Former Employee | Internal Auditor | 79 | Ithaca, NY |
| Central Bank of Iran | | | |
| Officials | Various officials | 88-95 | Iran |

CERTIFICATION

  I, the undersigned, declare under penalty of perjury that I am a professional translator and I have received *Juris Doctor* from American University Washington College of Law and I am currently licensed to practice law in the State of Washington. I am over 18 years of age and not a party to the action *Winifred Wairimu Wamai, et al. v. Industrial Bank of Korea*, *Case No. 21-cv-325-DLC*, filed with the United States District Court for the Southern District of New York (SDNY) on January 14, 2021.    I am proficient in the Korean and English languages. I am retained by Tombali Inc. as a translator.    I have prepared and/or reviewed the following translations identified from Korean to English to the best of my ability and knowledge, and hereby declare that each is a true and correct translation of said document.

1. Declaration by Yoon-kee Kim of Industrial Bank of Korea
2. Exhibit A (Witness Table) to Declaration by Yoon-kee Kim

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 12, 2021 in Seoul, Korea

_____

By: Do Nam Choi