UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINFRED WAIRIMU WAMAI, *et al.*,<br><br>Plaintiffs,<br><br>-v-<br><br>INDUSTRIAL BANK OF KOREA,<br><br>Defendant. | Case No. 21-cv-325-DLC |

## EXPERT DECLARATION OF YOUNGJOON KWON

# 의 견 서

## I. 의견제출자의 경력

1. 본인은 대한민국 서울에 소재한 서울대학교에서 법학교수로 근무하고 있습니다. 본인은 법관 및 법학교수로 다양한 경력을 쌓아 왔습니다. 또한 본인은 2006년 9월 서울대학교 교수로 부임한 이래 주로 민법 분야에서 다수 단행본과 논문을 집필하였습니다. 본인의 상세한 이력서는 이 의견서의 참고 자료로 첨부하였습니다.

2. 본인은 미국 뉴욕주에 소재한 United States District Court for the Southern District of New York (SDNY)에 제기된 민사소송(Civil Action No. 21-CV-00325)(이하 '이 사건 소송'이라고 합니다)과 관련하여, 피고 대리인으로부터 원고들이 이 사건 소송에서 주장하는 내용에 기초할 때 한국법상 피고를 상대로 주장할 수 있는 권리 및 이를 한국에서 소송상 행사하는 방안과 미국 법원의 확정판결을 한국에서 집행하는 방안에 관하여 한국법에 기초한 전문가 의견 제출을 요청받았습니다.

3. 원고들이 이 사건 소송에서 주장하는 내용의 요지는 다음과 같습니다.
   (1) 이란 정부는 알 카에다에 의해 자행된 탄자니아 및 케냐 대사관 폭파 사건 배후에 있다고 지목되었고, 원고들은 그 테러 사건의 피해자이거나 피해자의 가족들임. 이와 관련하여 2014년 United States District Court for the District of Columbia는 이란 정부가 원고들에게 약 55억 달러의 손해배상을 해야 한다는 판결(이하 '미국 확정판결')을 선고하였음.
   (2) 이란 정부는 미국 법원이 명한 손해배상채무를 이행하지 않으면서 오히려 자신의 재산을 빼돌려 집행을 면탈하고자 하였음. 즉 이란 정부는 정교한 가장거래 구조를 설계한 뒤 자신 또는 그 대리인이 피고에 보유하던 계좌를 통해 재산을 미국 또는 그 외 지역으로 반출하였음.
   (3) 이러한 재산 반출 행위는 미국의 대 이란 금융규제 조치에 위반되는 것이었음. 피고는 이러한 사기적인 가장거래 및 집행면탈이 미국의 금융규제 조치에 반한다는 점을 알면서도 이를 미국 금융당국에 신고하지 않았음. 오히려 피고의 고위 경영진과 그 대리인들은 이러한 사기적인 가장거래 및 집행면탈의 실행에 적극 협력하고 이를 통해 이익을 얻었음.
   (4) 이러한 사실관계에 기초하여 원고들은 피고를 상대로 다음과 같은 청구원인을 주장함.

1) 뉴욕주 채무자 및 채권자에 관한 법률(New York Debtor and Creditor Law) § 273-a 위반을 이유로 한 사기적 거래(fraudulent conveyance) 취소 및 반환 (Count 1)

2) 뉴욕주 채무자 및 채권자에 관한 법률(New York Debtor and Creditor Law) § 276 위반을 이유로 한 사기적 거래(fraudulent conveyance) 취소 및 반환(Count 2)

3) 뉴욕주 민사소송법 제5225조에 따른 집행채무자(judgment debtor)의 재산 인도 청구(Count 3)

4) 테러리즘 위험 보험법(Terrorism Risk Insurance Act)에 따른 테러단체 동결재 산 인도 청구(Count 4)

4. 본인은 위와 같은 주장을 토대로 원고들이 한국법상 한국 법원에서 피고를 상대 로 주장할 수 있는 청구권과 그 소송상 행사 방안 및 미국 확정판결을 한국에서 집행하는 방안을 다루고자 합니다. 실제로 원고들의 청구권이 소송상 받아들여질 것인지는 원고들이 주장하는 사실관계가 모두 증거로 뒷받침되어 그 주장대로 인 정될 수 있는지, 또한 구체적으로 원고들이 청구권을 법률적으로 어떤 내용과 방 식으로 구성하여 주장할 것인지 등 여러 가지 변수들에 의해 좌우될 수 있습니 다. 본인의 의견은 이러한 소송이 제기된 경우 특정한 결과를 담보해 주려는 목 적하에 제시되는 것이 아니라, 원고들이 이 사건 소송을 통해 미국법하에 달성하 려는 목적이 한국법하에서도 유사하게 달성될 수 있는지를 일반적으로 설명하기 위해 제시되는 것입니다.

5. 본인은 원고들이 제출한 이 사건 소송의 소장, 원고들과 피고 사이에 체결된 Tolling Agreement, 미국 확정판결 판결문 및 Halkbank 소송에서 피고측 motion to dismiss와 관련하여 원, 피고 쌍방이 제출한 서면 및 전문가 의견서, 법원 결정 문 등을 검토하였습니다.

6. 본인은 본 의견서 작성에 대한 대가로 일반적으로 지급되는 수준에 상응하는 보 수를 받았습니다.

## II. 한국법하에서 원고들의 청구권 및 그 소송상 행사 방안

### A. 원고들의 청구권

### A.1. 불법행위로 인한 손해배상청구권

7. 본인이 이해하는 한, 원고들은 이 사건 소송을 통해 (i) 피고의 공모와 협조를 통해 이란 정부 재산이 유출되었다고 주장하며 이와 관련하여 해당 재산의 반환 또는 손해배상 및 (ii) 피고가 보유하고 있는 이란 정부 재산의 인도를 구하고 있습니다. 위 (i)과 관련하여, 한국법하에서 원고들이 활용할 수 있는 가장 광범위하고 효과적인 수단은 불법행위로 인한 손해배상청구권입니다.

8. 한국은 성문법 국가이므로 어떤 법적 문제에 대해 한국법이 취하는 입장을 알기 위해서는 우선 그 문제와 관련되는 법률의 조항들을 살펴보아야 합니다. 한편 불법행위에 관하여 다루는 법률들은 많지만 그중 가장 기본적이고 일반적인 규율을 제공하는 법은 민법입니다. 그러므로 아래에서는 민법상 불법행위의 일반 원칙에 관하여 살펴보고자 합니다.

9. 한국 민법 제750조는 불법행위의 일반적인 요건과 효과에 대해 규정하고 있습니다. 이 조항에 따르면 "고의 또는 과실로 인한 위법행위로 타인에게 손해를 가한 자는 그 손해를 배상할 책임"이 있습니다. 즉 ① 고의 또는 과실, ② 위법행위, ③ 손해, ④ 인과관계라는 네 가지 요건이 충족되면 불법행위로 인한 손해배상 책임이 발생합니다.

10. 한국 민법이 요구하는 성립 요건들은 포괄성과 유연성을 갖추고 있습니다. 가령 불법행위 성립요건 중 하나인 '위법행위'는 전체로서의 법질서에 위반되는 모든 행위를 총칭하는 개념입니다. 여기에서의 법질서에는 실정법의 형태로 존재하지는 않지만 법질서의 일부로 인식되는 사회질서까지 포함됩니다.[1] 또한 불법행위 성립요건 중 하나인 '손해'는 재산적 손해와 정신적 손해를 모두 포함합니다.

11. 이러한 민법 제750조는 불법행위에 관한 원칙적이고 일반적인 조항일 뿐이고, 이에 더하여 민법이나 그 외 법률에 불법행위에 관한 여러 가지 특칙들이 존재합니다. 민법만 예로 들어보면, 사용자책임(민법 제756조), 공작물의 점유자나 소유자의 책임(민법 제758조), 동물 점유자의 책임(민법 제759조) 등 다양한 형태의 특칙들이 마련되어 있습니다. 그런데 이러한 특칙들은 대부분 일반 불법행위의 성립 가능성을 배제하는 특칙이 아니라 그 불법행위 성립 요건을 피해자에게 유리하게 완화하거나 일반 불법행위에 더하여 추가적인 불법행위 책임을 물을 수 있도록 하는 특칙입니다. 그 점에서도 한국의 불법행위법은 매우 넓은 외연을 가지고 있습니다.

---

[1] 양창수·권영준, 민법 2, 권리의 변동과 구제, 박영사, 2017, 제3판, 614면.

12. 이처럼 한국의 불법행위법은 매우 포괄적이고 개방적인 성격을 가지고 있어 불법행위 성립요건이 충족되는 이상 피해자는 어떤 유형의 행위나 손해에 대해서도 가해자에게 손해배상책임을 물을 수 있습니다. 이는 불법행위의 유형 또는 소인(cause of action)이 개별적으로 정해져 있어 어떤 행위가 그 개별 유형에 속하지 않으면 원칙적으로 불법행위 책임을 물을 수 없는 일부 국가들과는 구별되는 특징입니다. 실제로 한국에서는 다양한 사건 유형들이 불법행위법의 영역에서 처리됩니다. 심지어 계약과 관련된 법적 분쟁들도 불법행위법으로 해결되는 경우가 많습니다. 계약교섭의 부당한 파기[2]나 계약 위반과 관련된 불법행위 책임[3]이 그러한 예입니다.

13. 이 사건에서 원고들이 문제삼고 있는 집행면탈의 경우도 한국법상 불법행위를 구성할 가능성이 높습니다. 원고들의 주장처럼 피고가 원고들에 대한 손해배상채무자인 이란 정부 또는 그 대리인과 공모 내지 협의하여 원고들의 집행재산을 외부로 빼돌렸다면 이는 고의에 기한 위법행위로서 원고들에게 손해를 입히는 행위이므로 한국법상 불법행위에 해당합니다. 따라서 원고들은 이로 인하여 입게 된 손해의 배상을 피고에게 청구할 수 있습니다. 좀더 구체적으로 살펴보면, 원고들의 주장에 따른 피고의 행위는 원고들의 이란 정부에 대한 손해배상채권을 침해하는 불법행위에 해당합니다.

14. 한국 대법원은 소유권과 같은 물권뿐만 아니라 특정 채무자에 대한 채권을 침해하는 행위도 불법행위를 구성할 수 있다는 법리를 확고하게 전개하여 왔습니다.[4] 이와 관련하여 대법원은 "제3자가 채권자를 해한다는 사정을 알면서도 법규에 위반하거나 선량한 풍속 또는 사회질서에 위반하는 등 위법한 행위를 함으로써 채권자의 이익을 침해하였다면 이로써 불법행위가 성립한다고 하지 않을 수 없고, 여기에서 채권침해의 위법성은 침해되는 채권의 내용, 침해행위의 태양, 침해자의 고의 내지 해의의 유무 등을 참작하여 구체적, 개별적으로 판단하되, 거래자유 보장의 필요성, 경제·사회정책적 요인을 포함한 공공의 이익, 당사자 사이의 이익균형 등을 종합적으로 고려하여야 한다."라는 판단 기준을 제시하였습니다.[5]

---

[2] 대법원 2003. 4. 11. 선고 2001다53059 판결; 대법원 2004. 5. 28. 선고 2002다32301 판결.

[3] 대법원 1983. 3. 22. 선고 82다카1533 전원합의체 판결

[4] 대법원 2003. 3. 14. 선고 2000다32437 판결; 대법원 2007. 5. 11. 선고 2004다11162 판결; 대법원 2007. 9. 6. 선고 2005다25021 판결; 대법원 2007. 9. 21. 선고 2006다9446 판결.

[5] 대법원 2003. 3. 14. 선고 2000다32437 판결.

15. 이러한 채권 침해에는 그 채권의 책임재산을 은닉, 처분 등의 방법으로 감소시켜 채권자에게 손해를 입히는 유형의 불법행위도 포함됩니다. 한국 대법원은 수차례에 걸쳐 "제3자가 채무자에 대한 채권자의 존재 및 그 채권의 침해사실을 알면서 채무자와 적극 공모하거나 채권행사를 방해할 의도로 사회상규에 반하는 부정한 수단을 사용하는 등으로 채무자의 책임재산을 감소시키는 행위를 함으로써 채권자로 하여금 채권의 실행과 만족을 불가능 내지 곤란하게 한 경우 채권자에 대한 불법행위를 구성할 수 있다."라고 판시한 바 있습니다.[6] 그런데 원고들의 주장에 따르면 피고의 행위는 한국 대법원이 불법행위로 인정하는 고의적인 책임재산 감소행위의 전형적인 예에 해당하는 것으로 보입니다.

16. 한국법에 따르면 이처럼 불법행위로 인한 손해배상책임이 발생하더라도 그것이 통상손해가 아닌 특별손해에 해당한다거나(민법 제393조, 제763조) 피해자에게도 과실이 있다는 이유를 들어 피해자가 입은 모든 손해를 배상받지 못할 가능성(민법 제396조, 제763조)이 있기는 합니다. 그런데 적어도 본인이 제공받은 사실관계에 기초하면 피고의 집행재산 유출 행위로 인해 원고들이 손해배상을 제대로 받지 못하게 된 손해는 통상손해에 해당하는 것으로 보입니다. 또한 이 과정에서 원고들에게 어떠한 과실은 없었던 것으로 보입니다. 그러므로 이러한 사유들을 들어 원고들의 손해배상청구권이 제한되거나 감경될 가능성은 높지 않아 보입니다.

17. 한편 불법행위에 가담한 가해자가 복수인 경우에 관하여 한국 민법 제760조 제1항은 "수인이 공동의 불법행위로 타인에게 손해를 가한 때에는 연대하여 그 손해를 배상할 책임이 있다."라고 규정하고 있습니다. 여기에서 "공동"의 의미에 관하여 한국 대법원은 불법행위자 사이에 반드시 공모나 협의가 있어야 하는 것은 아니고, 각 행위가 "객관적으로 관련"되기만 하면 충분하다는 입장을 취하고 있습니다.[7] 따라서 한국법상 공동불법행위의 인정 범위는 상당히 넓습니다.

18. 이처럼 공동불법행위가 성립하면 공동불법행위자는 공동불법행위에 관여한 비율에 따른 분할책임을 지는 것이 아니라 공동불법행위로 인해 발생한 손해 전체에 대해 연대책임을 지게 됩니다(민법 제760조 제1항). 이는 피해자를 두텁게 보호하기 위한 입법 정신에 기초한 것입니다. 따라서 어떤 공동불법행위자가 불법행위에 기여한 정도가 경미하더라도 그 공동불법행위자는 피해자에 대한 관계에서는 전체 손해를 배상할 의무를 부담합니다.[8] 피해자는 공동불법행위자 모두를 상

---

[6] 대법원 2007. 9. 6. 선고 2005다25021 판결; 대법원 2019. 5. 10. 선고 2017다239311 판결.

[7] 대법원 1998. 2. 13. 선고 96다7854 판결.

[8] 양창수·권영준, 민법 2, 권리의 변동과 구제, 박영사, 2017, 제3판. 695-696면.

대로 전액의 손해배상을 청구할 수도 있고, 그 중 일부 공동불법행위자를 상대로만 전액의 손해배상을 청구할 수도 있습니다(민법 제414조).

19. 원고들의 주장에 따르면, 집행 면탈에 관한 피고와 이란 정부(및/또는 그 대리인)의 각 불법행위는 객관적으로 관련된 것일 뿐만 아니라 더 나아가 양자의 공모 내지 협의에 기초한 것이기도 하므로 한국법상 공동불법행위의 요건을 갖추는데 문제가 없습니다. 그 결과 피고는 공동불법행위에 관여한 정도나 모습에 관계없이 원고들에 대해 전체 손해에 대한 배상책임을 부담하게 됩니다. 이를 통해 원고들은 가해자가 1명인 경우보다 더욱 두터운 보호를 받게 됩니다. 한편 피고는 원고들에게 이러한 배상책임을 이행한 후에 비로소 이란 정부(및/또는 그 대리인)에게 책임 분담을 위한 구상권 행사를 할 수 있을 뿐이고,[9] 피해자인 원고들과의 관계에서는 자신의 관여 정도가 낮다는 이유를 들어 그 관여 정도에 비례하는 책임 부분만 부담하겠다고 주장할 수 없습니다.

20. 한편 이러한 불법행위로 인한 손해배상청구권에는 소멸시효가 적용됩니다. 한국 민법 제766조에 따르면 불법행위의 손해배상청구권은 ① 피해자나 그 법정대리인이 그 손해 및 가해자를 안 날[10]로부터 3년(제1항), ② 불법행위를 한 날로부터 10년(제2항) 중 어느 것이라도 먼저 도래하는 시점에 소멸시효가 완성됩니다. 소멸시효가 완성되면 피해자는 더 이상 손해배상청구권을 행사할 수 없게 됩니다. 다만 피해자가 소멸시효 완성 전에 청구하거나 압류, 가압류 또는 가처분을 하거나 가해자가 이를 승인한 때에는 소멸시효가 중단됩니다(민법 제168조).[11] 이처럼 소멸시효가 중단되면 소멸시효 기간은 처음부터 다시 진행됩니다.

21. 이 사건 소장에 따르면 원고들이 주장하는 피고의 불법행위는 2011년 2월과 7월 사이에 이루어진 것으로 보입니다.[12] 한편 원고들이 이 사건 소송을 제기한 시점

---

[9] 대법원 2002. 9. 24. 선고 2000다69712 판결.

[10] 민법 제766조 제1항의 '손해 및 가해자를 안 날'이라고 함은 손해의 발생, 위법한 가해행위의 존재, 가해행위와 손해의 발생 사이에 상당인과관계가 있다는 사실 등 불법행위의 요건사실에 대하여 현실적·구체적으로 인식하였을 때를 의미하며, 한국 법원은 피해자가 언제 불법행위의 요건사실을 현실적·구체적으로 인식하였는지를 개별 사건에서 여러 객관적 사정을 참작하고 손해배상청구가 사실상 가능한 상황을 고려하여 합리적으로 판단하고 있습니다.

[11] 참고로 재판상 청구는 소송의 각하, 기각 또는 취하의 경우에는 시효중단의 효력이 없지만, 그로부터 6개월 내에 다시 재판상 청구, 파산절차참가, 압류 또는 가압류, 가처분을 한 때에는 최초의 재판상 청구를 한 때 시효가 중단된 것으로 봅니다(민법 제170조). 또한 재판외 청구, 즉 최고의 경우에도 6개월 내에 재판상 청구, 파산절차참가, 화해를 위한 소환, 임의출석, 압류 또는 가압류, 가처분을 하지 않으면 최고로 인한 시효중단의 효력이 없습니다(민법 제174조).

[12] Complaint, Para. 9.

은 2021년 1월 14일이므로 불법행위를 한 날로부터 10년 내에 소멸시효 중단사유인 재판상 청구가 이루어진 것은 명백합니다. 원고들은 피고와 Tolling Agreement를 체결하여 2020년 7월 23일부터 2021년 1월 23일까지의 기간 동안 소멸시효 정지 등에 대해 합의한 사실도 있습니다. 따라서 민법 제766조 제2항에 따른 소멸시효 기간은 완성되지 않은 것으로 보입니다. 다만 원고들의 재판상 청구가 한국이 아닌 외국에서 이루어졌다는 점이 어떻게 평가될 것인가의 문제는 남아 있습니다.

22. 원고들이 한국 법원이 아닌 미국 법원에서 소를 제기한 것도 소멸시효 중단 사유에 해당하는지에 대한 한국 대법원 판례는 발견되지 않습니다. 다만 한국 대법원은 "소멸시효제도 특히 시효중단제도는 그 제도의 취지에 비추어 볼 때 이에 관한 기산점이나 만료점은 원권리자를 위하여 너그럽게 해석하는 것이 상당하다"라고 하여 가급적 소멸시효 중단의 범위를 넓게 파악하는 태도를 보이고 있습니다.[13] 또한 한국 대법원은 어떤 형태의 재판상 청구라도 이를 통해 "권리 위에 잠자는 자"가 아님을 밝혔다면 시효가 완성되지 않았다고 보는 방향으로 해석하는 경향성도 있습니다.[14] 이러한 태도에 비추어 볼 때 미국 법원에 소를 제기한 것도 권리 행사의 일환으로 보아 한국법상 소멸시효 중단사유로 인정될 가능성이 높습니다.

23. 원고들이 그 손해 및 가해자를 안 날로부터 3년이 경과한 후에 이 사건 소송을 제기한 것이라면 한국 민법 제766조 제1항에 따라 손해배상청구권의 소멸시효가 완성되었을 가능성이 있습니다. 실제로 소멸시효가 완성되었는지는 ① 원고들이나 그 법정대리인이 손해 및 가해자를 안 날이 언제인지, ② 소멸시효 기간이 경과하기 전에 소멸시효 중단사유가 발생하였는지에 따라 달라지게 될 것입니다. 또한 소멸시효가 완성되었더라도 피고가 소송에서 소멸시효 항변을 하지 않으면 법원은 스스로 소멸시효 완성 여부를 고려하지는 않습니다.[15] 이는 한국 민사소송법상 변론주의 원칙에 따르면 법원은 당사자가 주장하거나 증명하지 않는 사항을 직권으로 판단할 수 없기 때문입니다.

24. 불법행위로 인한 손해배상청구에 관한 본인의 의견을 요약하면 다음과 같습니다. 원고들의 주장대로라면 피고의 행위는 고의에 의한 위법행위에 해당하고, 이로 인하여 원고들의 손해배상청구권의 만족이 불가능해지거나 곤란해지는 손해를 입었다면 피고는 원고들에게 한국 민법 제750조에 기한 손해배상책임을 부담

---

[13] 대법원 1975. 7. 8. 선고 74다178 판결.
[14] 대법원 1992. 3. 31. 선고 91다32053 전원합의체 판결.
[15] 대법원 1962. 10. 11. 선고 62다466 판결.

합니다. 한편 본인에게 제공된 사실관계만으로는 원고들의 피고에 대한 손해배상청구권의 소멸시효가 완성되었는지를 단정적으로 판단하기 어렵습니다. 한편 소멸시효가 완성되었더라도 피고가 소송에서 실제로 이를 주장하지 않으면 한국 법원은 소멸시효 완성 여부를 판단할 수 없습니다.

## A.2. 사해행위 취소 및 이에 따른 원상회복청구권

25. 원고들은 뉴욕주 채무자 및 채권자에 관한 법률(New York Debtor and Creditor Law)(이하 '뉴욕주법'이라고만 합니다) § 273-a 및 § 276 위반을 이유로 한 사기적 거래(fraudulent conveyance) 취소 및 반환(Count 1)을 구하고 있습니다. 이 사건 소송에 적용되는 뉴욕주법의 관련 조항들은 아래와 같습니다.[16]

---

### § 270. Definition of terms

In this article "assets" of a debtor means property not exempt from liability for his debts.  To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets.

"Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance.

"Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

"Debt" includes any legal liability, whether matured or unmatured, liquidated or

---

[16] 2014년 Uniform Law Commissioners에 의해 공포된 Uniform Voidable Transactions Act(UVTA)에 의거한 개정 뉴욕주법이 2019. 12. 6. 주지사의 서명을 받아 2020. 4. 4.부터 시행되었으나 원고들이 주장하는 피고의 행위는 개정 뉴욕주법 이전에 이루어졌으므로 이 의견서에서는 개정 전 뉴욕주법 조항들을 소개합니다. 개정 뉴욕주법에 대한 소개는 New York City Bar의 「Report in support of the enactment of the Uniform Voidable Transactions Act in New York」 참조 (https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/report-in-support-of-the-enactment-of-the-uniform-voidable-transactions-act-in-new-york).

unliquidated, absolute, fixed or contingent.

## § 272. Fair consideration

Fair consideration is given for property, or obligation,

a.   When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.   When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

## § 273-a. Conveyances by defendants

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

## § 276. Conveyance made with intent to defraud

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

26. 한국법에는 이에 비견할 만한 제도로 채권자취소권 제도가 있습니다. 채권자취소권은 채무자가 채권자를 해함을 알면서 자기의 재산을 감소시키는 사해행위를 한 경우 채권자가 그 사해행위를 취소하고 일탈된 재산을 원상회복하는 것을 내용으로 하는 권리입니다(민법 제406조 제1항). 채권자취소권은 책임재산(집행권원이 있는 경우에는 집행재산이라고도 표현할 수 있음)의 회복을 목적으로 하여

소 제기를 통해 행사되는 권리입니다. 이를 통해 채권자는 채무자의 책임재산에 대한 집행을 방해하는 장애물을 제거함으로써 자신의 권리 실현 가능성을 높이게 됩니다.

27. 한국에서 채권자취소권은 채권자들에 의해 널리 활용되고 있습니다. 대법원이 발간한 2020년 사법연감에 따르면 한국 전체 1심법원에 접수된 민사본안사건 중 채권자취소권 사건은 민사본안사건 전체 268,027건 중 7,453건으로 약 2.78%의 비중을 차지합니다.[17] 얼핏 보면 이는 그다지 높은 비중이 아닌 것으로 느껴질 수 있으나, 민사본안사건의 종류가 극히 다양하다는 점을 생각하면 결코 그렇지 않습니다.[18] 채권자취소권 사건은 부당이득금(7,529건), 임대차보증금(5,703건), 임금(5,308건), 자동차사고 손해배상(2,419건), 보증채무금(929건) 등 전형적이고 일상적으로 일어나는 민사본안사건보다도 더 많은 접수 건수를 기록하고 있습니다. 그러한 점에서 한국에서의 채권자취소권 제도는 실제로 실효성 있게 활용되는 제도라고 평가할 수 있습니다.

28. 채권자가 채권자취소권을 행사하기 위해서는 ① 채권자에게 피보전채권이 있어야 하고, ② 채무자의 사해행위가 있어야 하며, ③ 채무자 및 수익자(전득자를 피고로 삼는 경우에는 전득자)의 악의가 있어야 합니다(민법 제406조 제1항). 또한 채권자취소권은 취소원인을 안 날부터 1년, 사해행위가 있은 날로부터 5년 내에 소로써 행사되어야 합니다(민법 제406조 제2항). 아래에서는 각각의 항목에 대해 좀더 상세하게 살펴보겠습니다.

29. 첫째, 채권자에게 채권자취소권 행사를 통해 보전되는 채권, 즉 피보전채권이 있어야 합니다. 여기에서의 피보전채권에는 조건부 채권이나 기한부 채권,[19] 금액이 확정되지 않은 채권,[20] 이미 가압류가 행해진 채권,[21] 이혼 시의 재산분할청구권(민법 제839조의3)이 모두 포함됩니다. 채권자는 자신이 가지는 채권에 대해 확정판결 등 집행권원을 갖추어야 할 필요가 없습니다. 채권자는 채권자취소소송에서 자신의 채권이 존재한다는 점을 증명하면 충분합니다.

---

[17] 2020 사법연감, 법원행정처, 2020, 768면.

[18] 접수 건수 1위는 건물 명도 및 철거(36,709 건으로 전체 민사본안사건의 약 13.69%), 2위는 대여금(21,690건으로 전체 민사본안사건의 약 8.09%), 3위는 매매대금(13,528건으로 전체 민사본안사건의 약 5.04%)입니다.

[19] 대법원 2011. 12. 8. 선고 2011다55542 판결.

[20] 대법원 2015. 1. 29. 선고 2013다79870 판결; 대법원 2018. 6. 28. 선고 2016다1045 판결.

[21] 대법원 2010. 6. 24. 선고 2010다20617, 20624 판결.

30. 다만 저당권자처럼 채무자의 특정 재산에 관하여 다른 채권자보다 우선하여 변제받을 권리를 가진 자는 그 우선변제의 범위 내에서는 보전의 필요성이 인정되지 않으므로 채권자취소권이 인정되지 않습니다.[22] 그러나 그 우선변제가 확보된 범위를 넘어서는 채권 부분에 대해서는 저당권자라고 하더라도 일반적인 채권자와 마찬가지로 채권자취소권을 행사할 수 있습니다.[23]

31. 피보전채권은 사해행위 이전에 발생한 것이라야 함이 원칙입니다.[24] 다만 한국 대법원은 사해행위 당시에 채권이 없더라도, 채권의 성립 기초가 되는 법률관계가 발생되어 있고 가까운 장래에 그에 기하여 채권이 성립한다는 고도의 개연성이 있으면, 그러한 채권도 채권자취소권의 피보전채권이 될 수 있다고 보아 채권자취소권의 행사 가능성을 넓히고 있습니다.[25]

32. 채권자취소권을 행사하는 채권자가 반드시 사해행위 당시의 채권자라야 할 필요는 없습니다. 예컨대 사해행위 당시의 채권자가 자신의 채권을 제3자에게 양도하거나 그 채권자의 사망으로 상속인이 해당 채권을 상속하였다면, 그 제3자나 상속인이 새로운 채권자로서 채권자취소권을 행사할 수 있습니다.[26] 즉 채권자취소권은 채권의 이전에 수반되는 채권의 부속물입니다.

33. 둘째, 채무자의 사해행위가 있어야 합니다. 사해행위는 채권자를 해하는 결과를 가져오는 재산권 관련 행위입니다. 여기에서 채권자를 해한다는 것은 채무자가 자신의 재산으로 채권자에게 채권의 완전한 만족을 주지 못하는 상태를 초래하거나, 그러한 상태를 심화시키는 것을 의미합니다. 이러한 의미의 사해행위가 있는지는 단순히 채무자의 적극재산과 소극재산의 기계적인 비교만을 통해 판단하는 것이 아니라, 채권자의 현실적인 만족 가능성이 감소되는지를 고려하여 판단해야 합니다.

34. 예컨대 한국 대법원은 채무자가 자신의 유일한 재산인 부동산을 정당한 대가로 매매하여 이를 금전 형태로 변환시킨 경우에도 사해행위가 성립한다고 보았습니다.[27] 기계적으로만 본다면 채무자의 전체 재산 가치에는 변함이 없고 그 재산의 존재 형태에만 변화가 있었을 뿐입니다. 하지만 현실적으로 보면 채무자가 보유한 현금보다 부동산에 대한 집행이 더욱 용이합니다. 현금은 부동산보다 훨씬

---

[22] 대법원 2002. 11. 8. 선고 2002다41589 판결.

[23] 대법원 2002. 11. 8. 선고 2002다41589 판결.

[24] 대법원 1962. 2. 15. 선고 4294민상378 판결; 대법원 1995. 2. 10. 선고 94다2534 판결.

[25] 대법원 1995. 11. 28. 선고 95다27905 판결.

[26] 대법원 2012. 2. 9. 선고 2011다77146 판결.

[27] 대법원 1966. 10. 4. 선고 66다1535 판결.

유동성이 높고 은닉도 쉽기 때문입니다. 그 결과 채무자의 전체 재산 가치에는 변함이 없지만 채권자의 현실적인 채권 만족 가능성은 감소됩니다. 한국 대법원은 이러한 실질적인 잣대를 원용하여 이러한 부동산 매매 행위를 사해행위라고 판단한 것입니다.

35. 또한 한국 대법원은 채무자가 재산처분행위를 할 당시 채무자에게 부동산과 채권이 있어 그 재산의 합계가 채무액을 초과한다고 하더라도 그 적극재산을 산정함에 있어서는 다른 특별한 사정이 없는 한 실질적으로 재산적 가치가 없어 채권의 공동담보로서의 역할을 할 수 없는 재산은 적극재산에서 제외해야 한다고 판시하였습니다.[28] 이 역시 사해행위 성립 여부를 판단할 때에는 형식적인 잣대가 아니라 실질적인 잣대를 원용하여야 한다는 점을 밝힌 판결입니다.

36. 한편 한국 민법 제406조는 사해행위를 "채무자가 채권자를 해함을 알고 재산권을 목적으로 한 법률행위"라고 규정하고 있습니다. "법률행위"는 미국법상 존재하는 개념이 아닙니다. 간단히 설명하면 "법률행위"는 의사표시를 필수적 구성요소로 하고 그 의사표시를 통해 법률효과를 발생시키는 행위입니다. 청약과 승낙이라는 의사표시를 구성요소로 하여 그 의사표시의 내용에 따라 권리의무관계가 발생하는 계약이 법률행위의 전형적인 예입니다. 그 외에도 계약 해제나 취소처럼 계약은 아니지만 일방적인 의사표시를 통해 그 의사표시가 지향하는 법률효과(계약관계의 해소)가 발생하는 단독행위도 법률행위의 또다른 예입니다.

37. 사해행위로 문제되는 법률행위의 예로는 매대나 증여, 교환과 같은 양도, 담보제공, 부담하지 않아도 되는 채무의 부담,[29] 권리 포기나 채무 면제, 이혼 시 과도한 재산분할,[30] 상속재산분할,[31] 법인 설립 등이 있습니다. 이처럼 사해행위는 책임재산을 양도하거나 감추거나 그 외의 방법으로 찾아내기 어렵도록 하는 다양한 유형의 법률행위를 포괄하는 광범위한 개념입니다. 또한 한국 대법원은 이러한 고유한 의미의 법률행위뿐만 아니라 집행과 관련된 행위도 사해행위의 범주에 포함시킴으로써 사해행위의 범위를 더욱 넓게 파악하고 있습니다. 가령 무자력 상태의 채무자가 강제집행을 승낙하는 취지의 공정증서를 작성하여 준 행위는 집행 관련 행위로서 사해행위로 취소될 수 있습니다.[32]

---

[28] 대법원 2005. 1. 28. 선고 2004다58963 판결.

[29] 대법원 2013. 5. 31.자 2012마712 결정.

[30] 대법원 2005. 1. 28. 선고 2004다58963 판결.

[31] 대법원 2007. 7. 26. 선고 2007다29119 판결.

[32] 대법원 2010. 4. 29. 선고 2009다33884 판결.

38. 이처럼 사해행위의 외연을 넓혀나가는 한국 대법원의 태도는 사실적 행위로서의 성격이 강한 변제 자체도 취소 대상으로 삼는 데 이르렀습니다. 한국 대법원은 다른 채권자를 해할 의사를 가지고 특정 채권자에게 행한 금전 지급행위, 즉 변제를 취소 대상으로 삼은 바 있습니다.[33] 한국 대법원에 따르면, 변제가 사해행위에 해당하는지는 수익자의 채무자에 대한 채권이 실제로 존재하는지 여부, 수익자가 채무자로부터 변제를 받은 액수, 채무자와 수익자와의 관계, 채무자의 변제능력 및 이에 대한 수익자의 인식, 변제 전후의 수익자의 행위, 그 당시의 채무자 및 수익자의 사정 및 변제의 경위 등 제반 사정을 종합적으로 참작하여 판단하여야 합니다.

39. 또한 사해행위가 법률적으로 무효인 경우에도 그 무효인 사해행위를 취소할 수 있도록 허용하는 예가 있습니다. 가령 거래가 존재하지 않는데도 거래가 존재하는 것과 같은 외양을 취하면서 그 거래에 따른 채무 이행을 빙자하여 채무자의 책임재산을 유출하는 경우가 종종 있습니다. 이는 통정허위표시에 해당하는 행위입니다. 한국법상 통정허위표시는 법적으로는 아무런 효력을 가지지 않습니다 (민법 제108조). 하지만 한국 대법원은 이러한 통정허위표시도 사해행위에 해당한다면 사해행위 취소 대상이 된다는 입장을 취합니다.[34] 현실적으로는 통정허위표시가 무효인지를 증명하는 것이 어려울 수 있기 때문에, 통정허위표시가 사해행위에 해당하는 경우에 이를 사해행위로서 취소할 수 있도록 허용하는 것입니다.

40. 셋째, 채무자 및 수익자(전득자를 피고로 삼는 경우에는 전득자)가 악의라야 합니다. 여기에서의 악의는 채무자가 사해행위 당시 그 행위로 인해 채권자를 해하는 결과가 발생하게 됨을 알았던 심리적 상태를 의미합니다. 이러한 악의는 해당 행위를 통해 채무자의 책임재산이 부족하게 된다는 사실에 대한 단순한 인식으로 충분하고, 어느 채권자가 가지는 채권의 만족을 저해하려는 적극적 의욕까지 요구하는 것은 아닙니다.[35] 그러한 점에서 악의는 해의(intent to harm), 반신의(bad faith)의 의미가 아니라 채권 실현을 곤란하게 하는 책임재산 감소에 대한 인식에 가깝습니다.

41. 수익자 또는 전득자의 악의는 법률상 추정됩니다. 따라서 채무자의 어떤 행위가 사해행위임이 인정되면 수익자 또는 전득자는 자신이 악의가 아니라는 점을 증명해야 하고, 그 증명에 실패할 경우 그들은 사해행위 취소에 따른 원상회복 책

---

[33] 대법원 2005. 3. 25. 선고 2004다10985, 10992 판결.

[34] 대법원 1961. 11. 9. 선고 4293민상263 판결.

[35] 대법원 2009. 3. 26. 선고 2007다63102 판결.

임을 부담하게 됩니다. 반면 채무자의 악의는 법률상 추정되지 않습니다. 그러므로 채권자취소권을 행사하는 채권자는 채무자의 악의를 증명할 책임을 부담합니다. 다만 악의는 속성상 직접적으로 증명하기 어려우므로 대부분의 채권자취소권 사건에서는 여러 가지 정황들을 종합하여 채무자의 악의 여부를 추론하게 됩니다. 실제로는 채무자의 재산처분행위가 사해행위에 해당하는 것으로 객관적으로 증명되는 경우에는 특별한 사정이 없는 한 채무자의 악의도 사실상 추정된다고 보는 것이 한국 소송의 실무례입니다.[36]

42. 지금까지 살펴본 채권자취소권의 요건이 충족되면 채권자는 채권자취소소송을 제기하여 사해행위의 취소 및 그 사해행위로 인해 채무자로부터 일탈된 책임재산의 반환을 구할 수 있습니다. 책임재산의 반환은 해당 책임재산을 채무자에게 되돌리기에 가장 적합한 형태로 이루어집니다. 가령 책임재산이 금전이라면 그 금전의 반환, 부동산이라면 등기의 말소, 채권이라면 채권양도 등으로 반환이 이루어지게 됩니다. 또한 원물을 그대로 반환하는 것이 불가능하거나 현저히 곤란하다면 그 원물의 가액 상당의 금전을 지급하도록 할 수 있습니다.[37] 또한 이러한 책임재산의 반환은 채무자에게 이루어지는 것이 원칙이나, 그 책임재산이 부동산이 아니라 동산(금전 포함)이라면 채권자는 채무자가 아닌 자신에게 직접 인도하라고 청구할 수 있습니다.[38] 실제로 가액배상이 이루어지는 대부분의 경우 그 가액은 채권자에게 반환하는 것이 통례입니다.

43. 한편 이러한 채권자취소권은 "채권자가 취소원인을 안 날로부터 1년, 법률행위 있은 날로부터 5년 내에" 행사되어야 합니다(민법 제406조 제2항). 이 권리행사 기간은 소멸시효 기간이 아니라 제척기간, 즉 취소소송이 제기되어야 하는 기간으로 이해되고 있습니다.[39] 사해행위 취소는 일단 유효하게 성립한 법률행위를 공동담보 보전을 위해 취소하는 것인만큼 제3자에게 미치는 영향이 크므로 법률관계의 조속한 안정을 위하여 이러한 권리행사기간을 설정한 것입니다. 제척기간은 소멸시효와 달리 법원의 직권조사사항이므로 당사자가 제척기간 경과 사실을 주장하지 않더라도 법원은 제척기간 준수 여부에 대해 의심이 있는 경우 이에 대해 스스로 조사, 판단할 수 있습니다.[40]

---

[36] 편집대표 김용덕, 주석민법, 제5판, 한국사법행정학회, 2020, 437면(이백규 집필부분).

[37] 대법원 2006. 12. 7. 선고 2004다54978 판결.

[38] 대법원 1999. 8. 24. 선고 99다23468, 23475 판결.

[39] 대법원 1975. 4. 8. 선고 74다1700 판결.

[40] 대법원 2005. 4. 28. 선고 2004다71201 판결.

44. 지금까지 살펴본 한국법상 채권자취소권 제도는 본인이 이해하는 한 뉴욕주법의 사기적 거래의 취소 및 반환 제도와 대체로 유사합니다. 주요 유사점을 정리하면 아래와 같습니다.

(1) 뉴욕주법 § 270의 "assets", "conveyance", "creditor", "debt"는 한국 민법이 상정하는 책임재산, 사해행위, 채권자, 채무의 개념과 유사함.

(2) 뉴욕주법 § 273-a의 "conveyance made without fair consideration"은 채무자의 사해의사 유무를 따지지 않고 사해행위 성립이 가능하다는 점에서 한국 민법상 채권자취소권 제도와 다르나, 위와 같이 정당한 대가가 지급되지 않고 거래가 이루어진 경우에는 한국에서도 채무자의 사해의사가 인정될 가능성이 매우 높으므로 실질적으로는 큰 차이가 없음.[41]

(3) 뉴욕주법 § 276의 "Conveyance made with intent to defraud"는 한국 민법상 채권자취소권 제도와 유사함.

(4) 뉴욕주의 Civil Practice Law and Rules § 213(8)에 따르면 사기적 처분에 관한 소는 소인 발생 시로부터 6년 또는 그 사기적 처분을 알았거나 알 수 있었던 때로부터 2년 내에 제기하여야 하고[42], 이는 대처로 한국 민법상 채권자취소권의 제척기간인 5년 또는 1년과 유사함.

45. 한편 원고들의 주장은 한국법의 관점에서 보면 불분명한 부분들이 있습니다. 한국법에 따르면 사해행위는 채무자와 수익자 사이에 이루어집니다. 미국 확정판결상 원고들에 대한 손해배상채무자는 이란 정부입니다. 따라서 사해행위는 이란 정부와 수익자 사이에 이루어져야 합니다. 그런데 원고들이 주장하는 사해행위의 수익자가 피고인지, 아니면 피고에 개설된 계좌를 통해 자금을 수령한 제3의 개인 또는 업체들인지가 소장 기재만으로는 분명하지 않습니다.

46. 만약 전자라면 이란 정부와 피고 사이의 어떤 행위가 사해행위인지를 구체적으로 특정해야 합니다. 만약 후자라면 한국법 하에서는 피고가 아니라 실제로 그 자금을 수령한 제3의 개인 또는 업체들이 채권자취소소송의 피고가 되어야 할 것입니다. 본인으로서는 이러한 점들이 분명하지 않은 상황에서 원고들이 한국법상 채권자취소권 행사 요건을 갖추었는지를 판단하기 어렵습니다. 그런데 본인이 이해하는 한 한국법이 아닌 뉴욕주법에 따르더라도 원고들의 주장에는 마찬가지의 불분명함이 존재하는 것으로 보입니다. 중요한 것은 한국법과 뉴욕주법이 사해행위에 대해 대체로 비슷한 정도의 법적 규율을 제공하고 있으므로 원

---

[41] 더구나 원고들의 주장대로라면 피고는 이란 정부와 집행재산 면탈을 공모한 주체이므로 이 주장이 사실이라면 피고에게 사해의사가 인정되는 데에는 별 어려움이 없을 것으로 보입니다.

[42] 이 사건 소송에 적용되는 조항은 아니지만, 2020. 4. 4.부터 시행된 개정 뉴욕주법 § 278에 따르면 그 기간이 각각 4년 또는 1년으로 줄어들었습니다

고들이 한국법하에서 채권자취소권을 행사한다고 하여 현저히 불리한 지위에 놓이지는 않을 것이라는 점입니다.

47. 아울러 한국 민법에는 책임재산의 일탈에 대응하는 법적 수단으로 채권자취소권 제도 외에도 채권자대위권 제도가 있습니다. 채권자대위권은 채권자가 자기의 채권을 보전하기 위하여 채무자가 가지는 권리를 대신 행사할 수 있는 권리입니다(민법 제404조 제1항). 이러한 채권자대위권은 채무자가 무효인 가장거래를 통해 제3채무자에게 집행재산을 이전한 경우 채권자가 채무자를 대위하여 그 집행재산의 반환을 구할 수 있도록 허용합니다. 채권자대위권은 채권자취소권과 별도로, 또는 이와 함께 행사될 수 있습니다.

48. 사해행위로 일탈된 책임재산의 회복에 대한 본인의 의견을 요약하면, 한국법상 채권자취소권 제도와 채권자대위권 제도는 뉴욕주법의 사기적 거래의 취소 및 반환 제도와 완전히 동일한 내용을 가지고 있지는 않지만, 대체로 뉴욕주법이 제공하는 것과 유사한 정도의 권리구제 가능성을 제공하고 있다는 것입니다.

## B. 소송상 행사 방안

### B.1. 한국 민사소송 절차 개관

49. 위에서 살펴본 한국법상 원고들의 각종 권리는 한국의 민사소송절차를 통해 행사, 관철될 수 있습니다. 민사소송절차에 관하여는 한국 민사소송법이 규율하고 있습니다. 아래에서는 그 법에 기초하여 한국의 민사소송절차를 개관하고자 합니다.[43]

50. 민사소송법 제1조는 '민사소송의 이상과 신의성실의 원칙'이라는 표제하에 법원은 소송절차가 공정하고 신속하며 경제적으로 진행되도록 노력하여야 하며, 당사자와 소송관계인은 신의에 따라 성실하게 소송을 수행하여야 한다고 규정하고 있습니다. 이러한 대원칙에 따라 한국의 민사소송법은 공정성, 신속성, 효율성, 신의성이라는 가치에 입각한 제반 규정들을 두고 있습니다.

---

[43] 한국 민사소송절차를 개관한 본인의 영문 문헌으로 Youngjoon Kwon, Litigating in Korea: A General Overview of the Korean Civil Procedure, Journal of Korean Law, Vo. 7, No. 1. (2007) 109-144; Youngjoon Kwon, Civil Law and Civil Procedure Law, in Korean Legislation Research Institute ed., Introduction to Korean Law (Springer, 2012), 113-154 참조.

51. 원고들은 법원에 소장을 제출함으로써 소를 제기합니다(민사소송법 제248조). 소장에는 당사자와 법정대리인, 청구의 취지와 원인을 적어야 합니다(민사소송법 제249조 제1항). 외국인 또는 외국법인이 한국 법원에 소를 제기하는 것은 금지되거나 제한되지 않습니다. 한국 민사소송법에는 변호사 강제주의가 채택되어 있지 않습니다. 따라서 당사자들은 소를 제기하고 소송을 수행함에 있어서 변호사를 선임하여 그의 도움을 받을지 여부를 자유롭게 선택할 수 있습니다.

52. 법원은 해당 사건에 관한 관할을 직권으로 조사할 수 있습니다(민사소송법 제32조). 피고의 주된 사무소 또는 영업소가 있는 곳의 법원이 원칙적인 관할 법원입니다(민사소송법 제2조, 제5조). 그 외에도 민사소송법은 다양한 관할 법원 조항들을 두고 있는데 그 조항들에 따라 복수의 관할 법원이 존재하는 경우 원고들은 그 중 어떤 관할 법원에라도 제소할 수 있습니다.

53. 가령 의무이행지의 법원(민사소송법 제8조), 불법행위지의 법원(민사소송법 제18조)에 관한 조항들은 이 사건과 관련성이 있을 수 있습니다. 또한 당사자는 서면에 의한 합의로 제1심 관할법원을 정할 수 있고(민사소송법 제29조), 관할 법원이 아닌 곳에 소가 제기된 경우에도 피고가 관할 위반 항변을 하지 않고 본안에 대하여 변론하거나 변론준비기일에서 진술하면 그 법원은 관할권을 가집니다(민사소송법 제30조).

54. 법원은 소장 부본을 피고에게 송달하여야 합니다(민사소송법 제255조). 피고가 원고의 청구를 다투는 경우에는 소장의 부본을 송달받은 날부터 30일 이내에 답변서를 제출해야 합니다(민사소송법 제256조 제1항). 피고가 그 기간 내에 답변서를 제출하지 아니한 때에는 법원은 피고가 청구의 원인이 된 사실을 자백한 것으로 보고 변론 없이 판결할 수 있습니다. 다만 직권으로 조사할 사항이 있거나 판결이 선고되기까지 피고가 원고의 청구를 다투는 취지의 답변서를 제출한 경우에는 그러하지 않습니다(민사소송법 제257조).

55. 재판장은 위와 같이 변론 없이 판결하는 경우 외에는 바로 변론기일을 정하여야 하고, 변론준비절차를 거치는 경우에는 그 절차가 끝난 후 바로 변론기일을 정하여야 합니다(민사소송법 제258조). 변론준비절차는 변론이 효율적이고 집중적으로 실시될 수 있도록 당사자의 주장과 증거를 정리하는 절차입니다(민사소송법 제279조 제1항). 변론기일은 당사자의 주장을 듣고 증거조사를 실시하는 변론절차상의 심리기일입니다.

56. 변론절차는 재판장의 지휘 아래 이루어집니다(민사소송법 제135조 제1항). 재판장은 소송관계를 분명하게 하기 위해 당사자에게 사실상 또는 법률상 사항에 대

-17-

하여 질문할 수 있고, 증명하도록 촉구할 수 있습니다(민사소송법 제136조 제1항). 법원은 변론 전체의 취지와 증거조사 결과를 참작하여 자유로운 심증으로 당사자의 주장이 가지는 진실성을 판단합니다. 법원은 소송의 심리를 마치고 나면 변론을 종결하고 선고기일을 지정하여 판결을 선고합니다(민사소송법 제198조, 제207조).

57. 한국은 3심 제도를 원칙으로 하고 있습니다. 민사소송의 1심은 지방법원(지원 및 시군법원 포함)이 맡습니다. 1심판결에 대해서는 항소할 수 있는데(민사소송법 제390조 제1항), 항소하는 경우 2심은 고등법원(지방법원 합의부의 1심판결에 대한 항소사건 또는 지방법원 단독판사의 1심판결에 대한 항소사건 중 대법원 규칙으로 정하는 사건) 또는 지방법원 항소부[44](나머지 항소사건)가 맡습니다. 이 사건 소송상 주장되는 사실관계에 기초하여 원고들이 한국에서 피고를 상대로 소를 제기하는 경우 해당 소송(이하 "장래 한국소송")의 예상 청구금액에 비추어 볼 때, 지방법원 합의부가 1심, 고등법원이 2심을 맡게 될 것입니다. 2심판결에 불복하고자 하는 당사자는 다시 상고할 수 있습니다. 상고사건은 최고법원인 대법원이 맡습니다(법원조직법 제11조, 민사소송법 제422조).

58. 법원의 판결을 더 이상 다툴 수 없게 된 상태가 되면 그 판결이 확정된 것입니다. 가령 1심판결이 선고되었는데 항소기간 내에 항소가 이루어지지 않았다면 그 판결은 그 이후에는 더 이상 항소할 수 없는 상태가 되어 확정판결이 됩니다. 반면 항소와 상고를 거쳐 대법원에 이르러 판결이 확정될 수도 있습니다. 확정판결은 기판력을 가지게 됩니다(민사소송법 제216조). 또한 이러한 확정판결을 기초로 강제집행이 이루어질 수 있습니다(민사집행법 제24조).

59. 이러한 일련의 사법절차는 신속하고 효율적으로 진행되는 것으로 평가됩니다. 대법원이 발간한 2020년 사법연감에 따르면 한국 법원의 민사본안사건 평균처리기간(소장 접수로부터 판결 선고까지 소요되는 기간)은 1심의 경우 160.2일,[45] 항소심의 경우 245.4일,[46] 상고심의 경우 181.6일[47]입니다. 즉 민사본안사건이 접수된 후 항소, 상고되어 최종법원인 대법원까지 갈 경우 평균적으로 587.2일(약 1년 7개월여)이 걸린다는 것인데, 이는 국제적인 관점에서 볼 때 상당히 신속한 재판으로 평가받습니다. 이와 관련하여 한국은 World Bank가 발표한 Ease of

---

[44] 항소사건을 전담하기 위해 설치된 지방법원 합의부를 일컫습니다.

[45] 2020 사법연감, 법원행정처, 2020, 795면.

[46] 2020 사법연감, 법원행정처, 2020, 809면.

[47] 2020 사법연감, 법원행정처, 2020, 809면.

Doing Business Rankings의 Enforcing Contracts 분야에서 전 세계 2위를 차지하였습니다.[48]

## B.2. 소송 과정에서 등장할 수 있는 절차적 쟁점

60. 본인은 피고 대리인으로부터 원고들이 한국 법원에 소를 제기할 경우 문제될 수 있는 두 가지 절차적 쟁점들을 중심으로 의견을 제시하도록 요청받았습니다. 하나는 한국 법원이 장래 한국소송에 관한 재판관할을 가지는지 여부이고, 다른 하나는 주권면제(sovereign immunity)[49] 이론의 적용 가능성입니다.

### B.2.1. 한국 법원의 국제재판관할

61. 외국적 요소가 있는 사건에 관한 한국 법원의 재판관할(이하 "국제재판관할") 문제를 다루는 성문법은 국제사법입니다. 국제사법 제2조 제1항은 "법원은 당사자 또는 분쟁이 된 사안이 대한민국과 실질적 관련이 있는 경우에 국제재판관할권을 가진다. 이 경우 법원은 실질적 관련의 유무를 판단함에 있어 국제재판관할 배분의 이념에 부합하는 합리적인 원칙에 따라야 한다."라고 규정하고 있습니다. 여기에서 "실질적 관련"은 대한민국 법원이 재판관할권을 행사하는 것을 정당화할 정도로 당사자 또는 분쟁이 된 사안과 관련성이 있는 것을 뜻합니다. 이를 판단할 때에는 당사자의 공평, 재판의 적정, 신속과 경제 등 국제재판관할 배분의 이념에 부합하는 합리적인 원칙에 따라야 합니다. 구체적으로는 당사자의 공평, 편의, 예측가능성과 같은 개인적인 이익뿐만 아니라, 재판의 적정, 신속, 효율, 판결의 실효성과 같은 법원이나 국가의 이익도 함께 고려하여야 합니다.[50]

62. 한편 국제사법 제2조 제2항은 "법원은 국내법의 관할 규정을 참작하여 국제재판관할권의 유무를 판단하되, 제1항의 규정의 취지에 비추어 국제재판관할의 특수성을 충분히 고려하여야 한다."라고 규정함으로써 제1항에서 정한 실질적 관련성을 판단하는 구체적 기준 또는 방법으로 국내법의 관할 규정을 참작하도록 하고 있습니다. 따라서 민사소송법 관할 규정은 국제재판관할권을 판단하는 데 가장 중요한 판단 기준 또는 가장 기본적인 판단 기준으로 작용하나, 이러한 관할 규정은 국내적 관점에서 마련된 재판적에 관한 규정이므로 국제재판관할권을 판단할 때에는 해당 사건의 법적 성격이나 그 밖의 개별적, 구체적 사정 및 국제재

---

[48] https://www.doingbusiness.org/en/rankings. 참고로 1위는 싱가포르입니다.

[49] 이는 국가면제(state immunity)라고 불리기도 합니다.

[50] 대법원 2019. 6. 13. 선고 2016다33752 판결.

-19-

판관할의 특수성을 고려하여 국제재판관할 배분의 이념에 부합하도록 수정하여 적용됩니다.[51]

63. 민사소송법 제2조는 "소는 피고의 보통재판적이 있는 곳의 법원이 관할한다."라고 규정하고 있습니다. 또한 민사소송법 제3조 본문은 "사람의 보통재판적은 그의 주소에 따라 정한다."라고 규정하는 한편, 제5조 제1항은 "법인, 그 밖의 사단 또는 재단의 보통재판적은 이들의 주된 사무소 또는 영업소가 있는 곳에 따라 정하고, 사무소와 영업소가 없는 경우에는 주된 업무담당자의 주소에 따라 정한다."라고 규정하고 있습니다. 이처럼 원고에게 피고의 주소지 또는 주된 사무소나 영업소 소재지 법원에 소를 제기하도록 하는 것이 관할 배분에서 당사자의 공평에 부합하기 때문입니다. 따라서 당사자의 생활 근거가 되는 곳, 즉 생활관계의 중심적 장소가 토지관할권의 가장 일반적·보편적 발생근거라고 할 수 있습니다.[52]

64. 이 사건 소송의 피고는 한국에 주된 사무소 또는 영업소를 두고 있는 법인입니다. 앞서 살펴본 국제사법 및 민사소송법의 태도를 종합하여 보면 이처럼 피고의 보통재판적이 한국에 있다는 점은 한국 법원의 국제재판관할을 인정하는 강력한 근거가 될 수 있습니다. 아울러 한국 대법원은 국제재판관할권은 배타적인 것이 아니라 병존할 수도 있으므로, 지리, 언어, 통신의 편의 측면에서 다른 나라 법원이 한국 법원보다 더 편리하다는 것만으로 한국 법원의 재판관할권을 쉽게 부정할 수는 없다고 판시하였습니다.[53] 그러므로 미국 법원에 이 사건 소송에 대한 관할이 존재한다고 하더라도 곧바로 한국 법원의 국제재판관할권이 부정되지는 않습니다. 본인은 장래 한국소송에 관하여 한국 법원의 국제재판관할권을 인정하는 데 별 어려움이 없다고 생각합니다.

### B.2.2. 주권면제 이론의 적용 가능성

65. 다음으로 주권면제 이론에 관하여 살펴보겠습니다. 주권면제 이론은 국가를 상대방으로 하여 소송을 제기할 수 있는가와 관련하여 문제되므로, 피고가 국가가 아닌 장래 한국소송에 직접 문제되는 이론은 아닙니다. 다만 이 사건 소송의 기초가 되는 사실관계에서 이란 정부가 중요한 축을 이루고 있고, 장래 한국소송 피고의 최대주주가 한국 정부입니다. 본인은 피고 대리인이 이 점을 염두에 두고 관련 쟁점으로서 주권면제 이론에 대한 의견을 요청한 것으로 이해합니다.

---

[51] 대법원 2019. 6. 13. 선고 2016다33752 판결, 대법원 2021. 2. 4. 선고 2017므12552 판결
[52] 대법원 2019. 6. 13. 선고 2016다33752 판결.
[53] 대법원 2019. 6. 13. 선고 2016다33752 판결.

66. 한국에는 주권면제에 관한 성문법이 존재하지 않습니다. 다만 한국의 대법원과 하급심 법원은 주권면제에 관하여 입장을 표명한 바 있습니다. 우선 한국 대법원은 "국제관습법에 의하면 국가의 주권적 행위는 다른 국가의 재판권으로부터 면제되는 것이 원칙이라 할 것이나, 국가의 사법적(私法的) 행위까지 다른 국가의 재판권으로부터 면제된다는 것이 오늘날의 국제법이나 국제관례라고 할 수 없다."라는 법리를 선언한 바 있습니다.[54] 이는 주권면제 이론을 원칙적으로 인정하되 국가 행위의 성격에 따라서는 주권면제 대상에서 제외하는 이른바 제한적 주권면제 이론을 채택한 것으로 평가됩니다.[55]

67. 한편 2021. 1. 8. 한국의 서울중앙지방법원은 위안부 피해자 12명이 일본 정부를 상대로 제기한 손해배상청구 소송에서 원고 승소관결을 선고하였고, 그 승소판결은 그대로 확정되었습니다.[56] 법원은 "이 사건 행위는 일본제국에 의해 계획적, 조직적으로 광범위하게 자행된 반인도적 범죄행위로서 국제 강행규범을 위반한 것"이라고 전제한 뒤, "비록 이 사건 행위가 국가의 주권적 행위라고 할지라도 국가면제를 적용할 수 없고, 예외적으로 대한민국 법원에 피고에 대한 재판권이 있다."라고 판단하였습니다. 아울러 법원은 "국가면제 이론은 주권국가를 존중하고 함부로 타국의 재판권에 복종하지 않도록 하는 의미를 갖는 것이지, 국제 강행규범이라는 절대규범을 위반해 타국의 개인에게 큰 손해를 입힌 국가가 국가면제 이론 뒤에 숨어 배상과 보상을 회피할 수 있는 기회를 주기 위해 형성된 것이 아니다."라고 판단하였습니다.

68. 참고로 한국 헌법재판소는 "일본군에 의하여 자행된 반인도적 범죄행위에 대한 위안부 피해자들의 일본국을 상대로 한 배상청구권은 헌법상 보장된 재산권일 뿐만 아니라, 그 배상청구권의 실현은 인간으로서의 존엄과 가치 및 신체의 자유를 사후적으로 회복하는 의미를 갖는 것이고 그 배상청구권의 실현을 가로막는 것은 헌법상 근원적인 인간으로서의 존엄과 가치의 침해와 직접 관련이 있다."라고 판단한 바 있습니다.[57]

69. 이러한 한국 대법원과 하급심 법원, 헌법재판소의 태도를 종합하여 보면 한국 법원은 주권면제 이론을 일단 인정하되 문제되는 행위가 ① 국가의 사법적(私法

---

[54] 대법원 1998. 12. 17. 선고 97다39216 전원합의체 판결.

[55] 김태천, "외국국가의 재판권면제 - 그 법적 근거와 범위에 관하여 -", 저스티스 제34권 제3호(2001), 295면; 석광현, 국제민사소송법, 박영사, 2012, 39면.

[56] 서울중앙지방법원 2021. 1. 8. 선고 2016가합505092 판결.

[57] 헌법재판소 2011. 8. 30. 2006헌마788 결정.

的) 행위에 해당하거나, ② 국가의 주권적 형위에 해당하더라도 반인도적 범죄 행위에 해당하는 경우에는 주권면제 이론을 적용하지 않는 입장을 취하는 것으로 이해할 수 있습니다. 한편 외국 국가가 스스로 주권면제를 포기한 경우에는 주권면제 이론을 적용할 필요가 없습니다.[58]

70. 원고들이 이 사건 소송에서 주장한 이란 정부의 테러 관여 행위는 반인도적 범죄행위에 해당합니다. 이러한 반인도적 범죄행위를 저지른 국가는 그와 관련된 소송에서 주권면제의 혜택을 누릴 수 없다고 보아야 하고, 최근 한국 사법부의 일련의 결정례에 비추어 볼 때, 한국 법원은 그러한 반인도적 범죄행위에 관한 사건에서 재판권을 행사할 것으로 보입니다. 이 경우 장차 그 국가에 대한 집행이 법적으로 허용되는지, 또는 현실적으로 가능한지는 재판권 행사에 영향을 미치지 않습니다. 한국법상 소송과 집행의 문제는 구별되기 때문입니다.

71. 이 사건에서 원고들은 이란 정부가 아니라 중소기업은행을 상대로 소송을 제기하였고, 장래 한국소송의 피고 역시 중소기업은행이 될 것입니다. 피고가 국가가 아니라 기업이므로 애당초 주권면제의 대상이 아닙니다. 따라서 이러한 점에서 원고들이 피고에게 소송을 제기하는 데에는 아무런 문제가 없습니다. 이는 한국 정부가 피고의 최대주주라고 하여 달라지지 않습니다.[59] 주주와 회사는 엄연히 다른 법인격을 가지고 있는 별도의 주체이므로 주주가 국가라고 하여 회사까지 국가의 지위를 가지게 되는 것은 아니기 때문입니다. 이러한 이유 때문에 장래 한국소송에서 주권면제는 원고들의 소송 제기에 아무런 장애가 되지 않습니다.

## Ⅲ. 원고들의 이란 정부에 대한 미국 법원의 확정판결을 한국에서 집행하는 방안

### A. 외국 판결의 승인 및 집행

72. 다음으로 원고들의 이란 정부에 대한 미국 법원의 확정판결을 한국에서 집행하는 방안에 관하여 살펴보고자 합니다. 이 문제는 ① 미국 법원의 확정판결이 한국에서도 효력을 가지는가, ② 효력을 가진다면 그 확정판결에 기초해 어떻게 집행할 수 있는가로 나누어 볼 수 있습니다. ①은 승인, ②는 집행의 문제를 다루고 있습니다. 아래에서는 양자를 나누어서 설명하겠습니다.

---

[58] 석광현, 국제민사소송법, 박영사, 2012, 47면.

[59] 2020. 12. 31. 현재 한국 정부의 지분율은 63.5%입니다. 피고가 공시한 2020년도 사업보고서 해당 정보 참조.

## A.1. 외국 판결의 승인

73. 한국 민사소송법은 외국법원의 확정판결 또는 이와 동일한 효력이 인정되는 재판(이하 편의상 '확정판결'로만 칭합니다)이 일정한 요건을 갖춘 경우에 한국에서도 효력을 인정하고 있습니다(민사소송법 제217조 제1항). 즉 외국법원의 확정판결이 ① 대한민국의 법령 또는 조약에 따른 국제재판관할의 원칙상 그 외국법원의 국제재판관할이 인정될 것, ② 패소한 피고가 소장 또는 이에 준하는 서면 및 기일통지서나 명령을 적법한 방식에 따라 방어에 필요한 시간 여유를 두고 송달받았거나(공시송달이나 이와 비슷한 송달에 의한 경우는 제외) 송달받지 아니하였어도 소송에 응하였을 것, ③ 그 확정판결의 내용 및 소송절차에 비추어 그 확정재판 등의 효력을 인정하는 것이 대한민국의 선량한 풍속이나 그 밖의 사회질서에 어긋나지 아니할 것, ④ 상호보증이 있거나 대한민국과 그 외국법원이 속하는 국가에 있어 확정재판 등의 효력을 인정하는 요건이 현저히 균형을 상실하지 않고 중요한 점에서 실질적으로 차이가 없을 것의 요건을 모두 갖추면 효력이 인정됩니다.

74. 이처럼 외국법원의 확정판결의 효력이 국내에서 인정되는 것을 승인이라고 합니다.[60] 승인을 위한 특별한 절차나 재판은 필요하지 않습니다.[61] 즉 외국 판결이 민사소송법 제217조 제1항의 요건을 갖추면 자동적으로 한국에서도 효력을 가지는 자동승인제가 채택되어 있습니다.[62] 이 점에서 승인과 집행은 구별됩니다. 나중에 살펴보듯이 외국법원의 확정판결에 기초해 한국에서 집행하려면 별도의 집행판결이 필요하기 때문입니다.

75. 미국 법원의 확정판결은 한국 민사소송법 제217조 제1항 소정의 확정판결에 해당합니다. 미국의 연방법원뿐만 아니라 주법원의 확정판결도 여기에 해당합니다. 실제로 대법원은 뉴욕주 법원의 판결[63] 및 미네소타주 법원의 판결,[64] 오리건주 법원의 판결,[65] 켄터키주 법원의 판결,[66] 캘리포니아주 연방법원의 판결[67]들이 민사소송법 제217조 제1항의 요건을 갖추었으므로 한국에서도 효력이 인정된다고

---

[60] 석광현, 국제민사소송법, 박영사, 2012, 343면; 안춘수, 국제사법, 법문사, 2017, 372면.

[61] 민일영 편집대표, 민사집행법, 제4판, 한국사법행정학회, 2018, 85면(이원 집필부분).

[62] 석광현, 국제민사소송법, 박영사, 2012, 408면.

[63] 대법원 1989. 3. 14. 선고 88므184, 191 판결.

[64] 대법원 1997. 9. 9. 선고 96다47517 판결.

[65] 대법원 2013. 2. 15. 선고 2012므66, 73 판결.

[66] 대법원 2016. 1. 28. 선고 2015다207747 판결.

[67] 대법원 2017. 5. 30. 선고 2012다23832 판결.

판단한 바 있습니다. 미네소타주 법원 판결의 경우 해당 사건의 피고가 소환장을 송달받고도 아무런 응소를 하지 않아 결석판결(default judgment)의 형태로 판결이 선고되었으나, 여전히 그 판결의 효력이 인정되었습니다.

76. 이 사건에서 원고들의 이란 정부에 대한 미국 법원의 확정판결이 민사소송법 제217조 제1항의 요건을 모두 갖추었는지는 별도로 심사해 보아야 할 대상입니다. 다만 한국 대법원이 이미 미국 연방 또는 주 법원의 확정판결의 효력을 인정한 바 있는 점, 한쪽 당사자가 응소하지 않은 경우라도 그에게 방어의 기회가 부여되었던 경우에는 확정판결의 효력이 부정되지는 않는 점, 테러 사건의 피해자들에게 손해배상을 명한 판결이 한국의 선량한 풍속이나 그 밖의 사회질서에 어긋날 가능성이 희박한 점 등을 고려하면 원고들이 받은 확정판결은 한국에서 승인될 가능성이 높습니다.

77. 다만 한국 민사소송법 제217조의2 제1항은 "법원은 손해배상에 관한 확정재판 등이 대한민국의 법률 또는 대한민국이 체결한 극제조약의 기본질서에 현저히 반하는 결과를 초래할 경우에는 해당 확정재판 등의 전부 또는 일부를 승인할 수 없다."라고 규정하고 있습니다. 이는 징벌적 손해배상을 명한 외국법원의 확정재판의 승인을 적정한 범위로 제한하기 위해 2014년 민사소송법 개정 시 신설된 조항입니다.[68]

78. 이와 관련하여 한국 대법원은 "민사소송법 제217조의2 제1항은 징벌적 손해배상과 같이 손해전보의 범위를 초과하는 배상액의 지급을 명한 외국법원의 확정재판 등의 승인을 적정 범위로 제한하기 위하여 마련된 규정이다. 따라서 외국법원의 확정재판 등이 당사자가 실제로 입은 손해를 전보하는 손해배상을 명하는 경우에는 민사소송법 제217조의2 제1항을 근거로 그 승인을 제한할 수 없다."라고 판시한 바 있습니다.[69] 따라서 원고들의 이란 정부에 대한 미국 법원의 확정판결이 징벌적 손해배상도 포함하고 있다면 승인이 제한될 가능성이 있습니다. 전보배상의 경우에는 민사소송법 제217조의2에 근거하여 승인, 집행을 제한할 수 없다는 것이 대법원 판례의 입장이고, 위 판례의 취지 및 실질재심사금지의 원칙 등을 고려할 때 민사소송법 제217조 제1항 소정의 공서양속 위반을 이유로 그 승인, 집행을 제한하는 것은 허용되지 않을 것으로 생각됩니다.

---

[68] 석광현, "손해배상을 명한 외국재판의 승인 및 집행: 2014년 민사소송법 개정과 그에 따른 판례의 변화를 중심으로", 국제사법연구 제23권 제2호(2017. 12), 251면.

[69] 대법원 2015. 10. 15. 선고 2015다1284 판결; 대법원 2016. 1. 28. 선고 2015다207747 판결.

79. 한국 민법에는 징벌적 손해배상에 관한 일반 조항을 두고 있지 않습니다. 따라서 일반적으로 말하자면 징벌적 손해배상이 한국법에 전면적으로 받아들여졌다고 보기는 어렵습니다. 하지만 근래 다수의 특별법에서 고의 또는 중과실의 불법행위에 대해 징벌적 성격을 가지는 비전보적 손해배상을 도입하는 경향이 뚜렷하게 드러나고 있습니다. 이러한 법률들은 대체로 실손해액의 3배 또는 5배의 범위에서 손해배상을 명할 수 있도록 허용합니다. 이러한 손해배상 제도의 목적은 실손해액을 전보하는 전통적인 손해배상제도를 넘어서서 손해배상을 징벌, 제재 또는 예방의 수단으로 적극적으로 활용하기 위함에 있습니다.

80. 이러한 제도를 둔 법률로는 개인정보 보호법, 제조물책임법, 환경보건법, 공익신고자 보호법, 특허법, 상표법, 디자인보호법, 식물신품종보호법, 자동차관리법, 「산업기술의 유출방지 및 보호에 관한 법률」, 「하도급거래 공정화에 관한 법률」, 「신용정보의 이용 및 보호에 관한 법률」, 「가맹사업거래의 공정화에 관한 법률」, 「대리점거래의 공정화에 관한 법률」, 「기간제 및 단시간근로자 보호 등에 관한 법률」, 「대규모유통업에서의 거래 공정화에 관한 법률」, 「대‧중소기업 상생협력 촉진에 관한 법률」, 「독점규제 및 공정거래에 관한 법률」 등이 있습니다.

81. 또한 현재 한국 국회에는 타인의 권리나 이익을 침해할 의사를 가지고 의도적으로 그 결과 발생을 용인하거나 위법행위를 함으로써 다른 사람에게 손해를 가한 일반적인 경우에 징벌적 손해배상을 확장하는 「징벌배상법안」이 2020. 9. 15. 발의되어(의안번호 2103916) 심사 중에 있습니다. 한국 법무부는 2020. 9. 28. 상법 개정안을 입법예고하면서 징벌적 손해배상제도의 도입을 적극적으로 추진하겠다고 밝힌 바 있습니다.

82. 이처럼 수많은 분야에서 징벌적인 성격을 가지는 손해배상제도가 이미 도입되었고, 이제 이를 모든 영역에 확장하려는 입법적 시도가 지속적으로 이루어지고 있으므로 이제는 징벌적 손해배상이 한국 민사소송법 제217조의2 제1항의 "대한민국의 법률 또는 대한민국이 체결한 국제조약의 기본질서에 현저히 반하는 결과를 초래"한다고 단정할 수 없게 되었으며, 다양한 견해가 제기될 수 있는 상황이라고 할 수 있습니다.

83. 한국에서는 3배 배상 제도가 도입되기 시작한 초기 시점에 이미 3배 배상 등 비전보적 배상을 명한 외국법원의 확정판결은 민사소송법 제217조의2가 규정하는 '대한민국의 법률 또는 대한민국이 체결한 국제조약의 기본질서에 현저히 반하는 결과를 초래할 경우'에 해당하지 않는다는 견해가 유력하게 주장된 바 있습

-25-

니다.[70] 그런데 최근 이러한 제도가 더욱 광범위하게 적용되고, 배상 범위가 높아지며, 나아가 이를 특정 영역이 아닌 손해배상 일반에 확장하려는 입법적 움직임까지 있어 이러한 견해는 더욱 강한 설득력을 가지게 되었습니다.

84. 결론적으로 징벌적 손해배상을 명한 외국법원의 확정판결이 한국에서도 언제나 효력을 가진다고 단정할 수는 없으나, 최근 징벌적 손해배상을 둘러싼 한국의 제반 입법 상황에 비추어 볼 때 그러한 외국법원 확정판결의 전부 또는 일부가 승인될 가능성이 과거보다는 상당히 높아졌다는 것이 본인의 생각입니다.

## A.2. 외국 판결의 집행

85. 한국에서 승인된 외국법원의 확정판결을 기초로 강제집행을 하려면 한국 법원의 집행판결을 얻어야 합니다(민사집행법 제26조 제1항). 승인의 경우에는 일정한 요건을 갖추면 별도의 재판을 거치지 않고도 곧바로 이루어지나, 집행의 경우에는 재판을 거쳐 집행판결을 얻도록 하는 이유는 영토 내에서의 강제집행은 국가의 독점적이고 배타적인 권한이므로 외국법원의 확정판결에 기초한 집행에 좀더 신중을 기하기 위함입니다.

86. 집행판결을 청구하는 소는 ① 외국법원의 확정판결이 확정된 것을 증명하지 아니한 때, ② 외국법원의 확정판결이 민사소송법 제217조의 조건을 갖추지 아니한 때에는 각하됩니다(민사집행법 제27조 제2항). 집행판결은 외국법원 확정판결의 옳고 그름을 조사하지 않고 하여야 합니다(민사집행법 제27조 제1항).[71] 따라서 집행판결 사건을 담당하는 법원은 외국법원 확정판결이 다루었던 본안에 관한 재심사를 할 수 없습니다. 앞서 살펴본 민사소송법 제217조의 요건을 심사함으로써 외국법원의 확정판결이 한국에서 효력을 가지는지를 확인할 뿐입니다.[72]

87. 집행판결을 청구하는 소는 채무자의 보통재판적이 있는 곳의 지방법원이 관할하고, 보통재판적이 없는 때에는 민사소송법 제11조[73]의 규정에 따라 채무자에 대

---

[70] 이규호, "외국판결의 승인·집행에 관한 2014년 개정 민사소송법·민사집행법의 의의 및 향후 전망", 민사소송 제19권 제1호(2015), 132-133면; 석광현, "손해버상을 명한 외국재판의 승인 및 집행: 2014년 민사소송법 개정과 그에 따른 판례의 변화를 중심으로", 국제사법연구 제23권 제2호(2017), 277면.

[71] 대법원 2020. 7. 23. 선고 2017다224906 판결.

[72] 민일영 편집대표, 민사집행법, 제4판, 한국사법행정학회, 2018, 83-84면(이원 집필부분).

[73] 민사소송법 제11조(재산이 있는 곳의 특별재판적) 대한민국에 주소가 없는 사람 또는 주소를 알 수 없는 사람에 대하여 재산권에 관한 소를 제기하는 경우에는 청구의 목적 또는 담보의 목적이나 압류할 수 있는 피고의 재산이 있는 곳의 법원에 제기할 수 있다.

한 소를 관할하는 법원이 관할합니다(민사집행법 제26조 제2항). 집행판결을 구하는 소송의 절차에 대하여는 통상의 판결절차에 대한 원칙이 적용됩니다.[74] 또한 집행판결에 기한 집행절차에 대하여도 민사집행법에 따른 통상의 강제집행에 관한 원칙이 적용됩니다.[75] 예컨대 집행판결에 기하여 강제집행을 하는 경우에는 한국의 확정판결에 기해 강제집행을 하는 따처럼 집행문의 부여가 필요합니다 (민사집행법 제30조).

## B. 한국에 소재하는 이란 정부 재산에 대한 집행 가능성

88. 지금까지 살펴보았듯이 외국법원의 확정판결은 민사소송법 제217조의 조건을 갖추는 이상 한국에서도 효력을 가지고, 민사집행법 제26조에 따른 집행판결을 받음으로써 강제집행의 기초가 될 수 있습니다. 이 점에서는 원고들이 미국에서 받은 확정판결이 승인되거나 집행판결을 받는 데에는 일단 별다른 문제가 없습니다.

89. 그런데 원고들이 한국에 소재한 이란 정부의 재산에 실제로 강제집행을 할 수 있는가에 대해서는 좀더 살펴볼 필요가 있습니다. 강제집행의 국면에서도 주권면제의 문제가 발생할 수 있기 때문입니다. 강제집행은 민사소송과는 달리 현실적인 강제력이 행해지는 조치이므로, 재판권에 관하여 주권면제가 적용되지 않는다고 하여 당연히 강제집행에 관하여도 주권면제가 적용되지 않는다는 결론이 도출되지는 않습니다.

90. 한국에는 외국 국가 재산에 대한 강제집행이 허용되는지에 대한 별도의 법률을 가지고 있지 않습니다. 또한 재판권의 문제와는 달리 국내에 소재하는 외국 정부 재산에 대한 강제집행과 주권면제에 관한 대법원 판례도 존재하지 않습니다. 그러므로 이 점이 문제가 된다면 한국 법원은 현존하는 조약이나 국제관습법이나 관련 논의를 고려하여 강제집행 허용 여부를 결정할 것입니다.

91. 외교관계에 관한 비엔나협약(Vienna Convention on Diplomatic Relations) 제22조 제3항은 '공관지역과 그 지역 내에 있는 비품류 및 기타 재산과 공관의 수송수단은 수색, 징발, 가압류 또는 강제집행으로부터 면제된다'라고 규정하고 있습니다. 한국은 위 조약의 당사국이므로 한국 영트내에 있는 이란 정부의 공관 관련 재산은 강제집행의 대상이 될 수 없습니다.

---

[74] 석광현, 국제민사소송법, 박영사, 2012, 420면.
[75] 석광현, 국제민사소송법, 박영사, 2012, 422면.

92. 유엔해양법협약(UN Convention on the Law cf the Sea) 제28조 제2항은 연안국은 외국선박이 연안국 수역을 항행하는 동안이나 그 수역을 항행하기 위하여 선박 스스로 부담하거나 초래한 의무 또는 책임에 관한 경우를 제외하고는 민사소송절차를 위하여 그 선박에 대한 강제집행을 할 수 없다고 규정하고 있습니다. 한국은 위 조약의 당사국이므로 이란 정부의 선박에 대한 강제집행이 이 조약에 따라 제한됩니다.

93. 한편 국제적으로는 상업적 활동 또는 상업적 목적에 사용되는 국가 재산에 대해서는 주권면제 이론에도 불구하고 강제집행을 허용하는 경향성이 있습니다. 예컨대 UN국가면제협약(United Nations Convention on Jurisdictional Immunities of States and Their Property) 제19조(c)는 비상업적 공무 목적 이외의 용도로 사용되는 국가 재산에 대해서는 강제집행이 허용됨을 밝히고 있습니다. 이러한 취지는 영국의 국가면제법(State Immunity Act 1978) 제13조 제4항, 미국의 외국주권면제법(Foreign Sovereign Immunity Act) 제1610조(a)에도 규정되어 있습니다. 이러한 점들에 비추어 보면, 외국국가의 재산이라고 하여 당연히 강제집행 대상에서 제외되는 것은 아니고, 오히려 판결절차와 마찬가지로 강제집행절차에서도 제한적 주권면제론이 통용된다는 것이 국제관습법이라고 평가할 수 있습니다.[76]

94. 이 문제에 관한 한국법의 입장을 다룬 한 학술논문에서는 "집행국(법정지국) 내에 있는 외국국가의 재산이라고 하더라도 그 외국국가의 주권행위 또는 주권적 활동을 위하여 사용되는 재산은 국제관습법상 강제집행의 대상이 될 수 없다"고 일단 전제한 뒤, "우리나라에 있는 외국국가의 재산인 부동산, 선박(상선, 유람선 등), 비행기, 금융기관에 대한 예금채권, 현금, 유체동산 등이 주권행위를 위하여 사용되는 경우가 아닌 때에는 강제집행의 대상이 될 수 있다."라고 설명합니다.[77] 본인은 이러한 서술이 이 문제에 관하여 현존하는 한국법의 입장을 잘 설명한 것이라고 생각합니다.

95. 결국 원고들이 한국에 소재하는 이란 정부의 재산에 대해 강제집행을 할 수 있는지는 그 재산의 사용 목적에 따라 달라집니다. 만약 그 재산이 이란 정부의 공관이나 그 관련 재산과 같이 조약에 따라 강제집행이 금지되는 대상이거나, 그 외에 이란 정부의 주권행위를 위해 사용되는 재산이라면 원고들은 그 재산에 대해 강제집행할 수 없습니다. 반면 그 외의 재산이라면 원고들은 그 재산에 대

---

[76] 문영화, "외국국가의 재산에 대한 민사집행법에 의한 강제집행", 성균관법학 제27권 제2호(2015), 300면. 석광현, 국제민사소송법, 박영사, 2012, 52면도 유사한 취지입니다.

[77] 문영화, "외국국가의 재산에 대한 민사집행법에 의한 강제집행", 성균관법학 제27권 제2호(2015), 300면. 석광현, 국제민사소송법, 박영사, 2012, 52면도 유사한 취지입니다.

해 강제집행할 수 있습니다. 국내 금융기관에 예치되어 있는 이란 정부 재산의 경우, 대사관의 인적, 물적 시설을 유지하는 데에 지출할 목적으로 예치되어 있는 금원이라면 그 계좌의 예금채권 등은 외교적 업무수행에 사용되는 재산이므로 강제집행할 수 없을 것이나[78], 그 외 이란 정부의 상업적 활동을 결제하기 위해 개설, 유지되는 금원이라면 강제집행으로부터 면제되지 않을 것입니다.

이 법률전문가 의견서는 본인의 전문 지식에 기초하여 작성되었고, 본인은 미국법상 위증의 벌을 받을 수 있음을 알면서, 위 내용이 본인의 지식과 양심에 따른 본인의 견해와 결론을 진실하고 정확하게 반영하여 작성되었음을 확인합니다.

2021년 4월 12일

대한민국 서울에서,

권영준 _____

---

[78] 문영화, "외국국가의 재산에 대한 민사집행법에 의한 강제집행", 성균관법학 제27권 제2호(2015), 301면.

# 이력서

**기본사항**

성명 : 권영준                     직위 : 서울대학교 법학전문대학원 교수

생년월일 : 1970. 10. 14

주소 : 서울 관악구 신림동산 56-1 서울대 법대 17동 314호(02-880-4081)

이메일 : youngjoon@snu.ac.kr

**학력**

1994년 서울대학교 법과대학 졸업(최우등)

2000년 서울대학교 법학대학원 법학석사

2004년 하버드대 로스쿨 법학석사(LL.M.)

2006년 서울대학교 법학대학원 법학박사

**경력**

1993년 제35회 사법시험 합격

1996년 제25기 사법연수원 수료

1996년 해군법무관

1999년 서울지방법원 판사

2002년 서울지방법원 동부지원 판사

2003년 대구지방법원 판사

2006년 대법원 법원행정처 기획조정실 판사

2006년 서울대학교 법과대학 조교수

2010년 서울대학교 법학전문대학원 부교수

2010년 듀크대 로스쿨 및 함부르크 막스플랑크 비교사법 연구소 방문연구원

2011년 함부르크 막스플랑크 비교사법 연구소 방문연구원

2012년 서울대학교 법학전문대학원 기획부원장

2012년 서울대학교 기술과 법 센터장

2015년 서울대학교 법학전문대학원 교수

2017년 동경대 법대 방문연구원

2018년 하버드 로스쿨 방문교수(강의-영어)

2018년 서울대학교 법학전문대학원 교무부원장

2019년 동경대 특임교수(강의-일본어)

**단행본 및 논문**

**1) 단행본**

저작권침해판단론 (2007), 저작권법주해 (공저) (2008), 엔터테인먼트법 (공저) (2008), 저작권침해의 형사책임에 관한 비교법적 연구 (공저) (2009), Litigation in Korea (공저) (2010), Law and Legal Institutions of Asia (공저) (2011), 권리의 변동과 구제(공저) (2011), Law and Information in the Risk Society (공저) (2011), Legal Infrastructure for Foreign Investment (공저) (2012),

Introduction to Korean Law(공저) (2012), UNCITRAL 담보등기제도 실행에 관한 지침 연구 (2013), 개인정보 보호의 법과 정책 (공저) (2014). UNCITRAL 담보모델법에 관한 연구(2014), 민사법 – 사례형, 기록형 연습 -(공저) (2015). 정보법 판례백선 Ⅱ(공저) (2016), 데이터이코노미(공저) (2017), 보험금청구권과 소멸시효 (2017), Formation and Third Party Beneficiaries (Chapter Contributor) (2018), 2014년 법무부 민법 개정시안 해설(민법총칙·물권편) (2017), 담보거래에 관한 UNCITRAL 모델법 연구 (2018), 헌법과 사법(공저)(2018), 광고판례백선(2019), 민법판례연구 Ⅰ (2019), 민법개정안연구(공저)(2019), 민법과 도산법(공저)(2020), 주석민법(총칙 1) (2019), 민법학의 기본원리(2020), 가족관계의등록등에관한법률(로앤비 온주)(집필대표)(2020). Contents of Contracts and Unfair Terms (Chapter Contributor) (2020)

**2) 논문**

데이터 귀속·보호·거래에 관한 법리 체계와 방향, 비교사법 제28권 제1호(2021. 2)
국제 동향에 비추어 본 한국 동산채권담보법제, 법조 통권 제743호 (2020. 10)
약관 설명의무의 재조명, 사법 제53호 (2020. 9)
이행이익, 신뢰이익, 중복배상 - 지출비용과 일실이익의 배상청구와 관련하여 -, 인권과 정의 제491호 (2020. 8)
2019년 민법 판례 동향, 서울대학교 법학 제61권 제1호 (2020. 3)
2018년 민법 판례 동향, 서울대학교 법학 제60권 제1호 (2019. 3)
한국 민법과 사적 자치, 우리 법 70년 변화와 전망, 청헌 김증한 교수 추모논문집 (2018. 10)
대법원 판결서 개선의 당위성과 방향성, 사법 제44호 (2018. 6)
도산해지조항의 효력, 비교사법 제25권 제2호 (2018. 5)
2017년 민법 판례 동향, 서울대학교 법학 제59권 제1호 (2018. 3)
프라이버시 보호의 정당성, 범위, 방법, 사법 제41호 (2017. 9)
『담보거래에 관한 UNCITRAL 모델법』의 주요 내용과 시사점, 비교사법 제24권 제2호 (2017. 5)
세밀한 정의를 향한 여정-박병대 대법관의 민사판결 분석-, 박병대대법관퇴임기념논문집 (2017. 5)
2016년 민법 판례 동향, 민사법학 제78호 (2017. 2)
로스쿨 교육방법 개선에 관한 단상, 법교육연구 제11권 제3호 (2016. 12)
위약벌과 손해배상액 예정 - 직권감액 규정의 유추 적용 문제를 중심으로 -, 저스티스 통권 제155호 (2016. 8)
자율주행자동차 사고와 민사책임, 민사법학 제75호 (2016. 6) (이소은과 공저)
유치권에 관한 민법 개정안 소개와 분석, 서울대학교 법학 제57권 제2호 (2016. 6)
개인정보 자기결정권과 동의 제도에 대한 고찰, 법학논총(전남대학교) 제36권 제1호 (2016. 3)
민법학, 개인과 공동체, 그리고 법원, 비교사법 제22권 제4호 (2015. 11)
자살과 재해사망보험금 지급에 관한 보험약관의 해석, 재산법연구 제32권 제3호 (2015. 11)
불법행위의 과실 판단과 사회평균인, 비교사법 제22권 제1호 (2015. 2)
부당이득에 관한 민법개정안 연구, 서울대학교 법학 제55권 제4호 (2014. 12)
공정거래법상 가격담합사건에 있어서 손해배상액 산정, 경제규제와 법 제7권 제2호 (2014. 11)
법률행위로 인한 관습법상 법정지상권 폐지와 법정임대차 도입, 민사법학 제68호 (2014. 9)
최선노력조항(best efforts clause)의 해석, 서울대학교 법학 제55권 제3호 (2014. 9)
채권자취소권에 관한 민법 개정안 연구, 민사법학 제66호 (2014. 3) (윤진수와 공저)

계속적 계약에 있어서 재교섭조항의 해석, 민사판례연구 제36집 (2014. 2)

Recent Reform in Korean Legal Education, Journal of Korean Law Vol 13, No. 2 (2013. 12)

미국법상 공동불법행위자 상호간 구상관계, 민사법학 제63호 (2013. 9)

법정이율 변동제, 비교사법 제20권 1호 (2013. 2)

경제상황의 변동과 민법의 대응, 법과 정책연구 제12권 제4호 (2012. 12)

사실상 도로로 이용되는 사유토지 소유권의 문제, 민사재판의 제문제 21권 (2012. 12)

해킹(hacking) 사고에 대한 개인정보처리자의 과실판단기준, 저스티스 통권 제132호 (2012. 10)

Legal Analysis of Traditional Leasehold in Korea(Chonsegwon) from a Comparative Legal Perspective(Coauthored)(Arizona Journal of International and Comparative Law Vol 29. No. 2) (2012. 8)

미국법상 순수재산손해의 법리, 민사법학 제57호 (2012. 3)

프로젝트 파이낸스 대출에 관한 저축은행 이사의 손해배상책임, 비교사법 제19권 제1호 (2012. 2)

특허권 남용의 법리와 그 관련 문제, 산업재산권 제36호 (2011. 12)

계약관계에 있어서 신뢰보호, 서울대학교 법학 제52권 제4호 (2011. 12)

등기의 공신력 : 1957년, 그리고 2011년, 법조 통권 제661호 (2011. 10)

Pure Economic Loss: A Korean Perspective (Journal of Korean Law Vol 10, No 2 ) (2011. 6)

계약법의 사상적 기초와 그 시사점(저스티스 통권 제124호) (2011. 6)

유럽사법통합의 현황과 시사점 (비교사법 제18권 제1호) (2011. 3)

클라우드 컴퓨팅의 계약법적 쟁점 (Law & Technology 제7권 제2호) (2011. 3)

위험배분의 관점에서 본 사정변경의 원칙 (민사법학 제51권)(2010. 12)

저작권과 소유권의 상호관계 - 독점과 공유의 측면에서 - (경제규제와 법 제3권 제1호)(2010. 5)

소멸시효와 신의칙 (재산법연구 제26권 제1호) (2009. 6)

재건축에 관한 의사결정 (민사법학 제45권) (2009. 6)

개인정보의 보호와 민사적 구제수단 (법조 제630호) (2009. 3) (정상조와 공저)

초상권 및 사생활의 비밀과 자유, 그리고 이익형량을 통한 위법성 판단 (민사판례연구 제31집) (2009. 2)

불법행위법의 사상적 기초와 그 시사점 (저스티스 통권 제109호) (2009. 2)

민사재판에 있어서 이론, 법리, 실무 (서울대학교 법학 제48권 제3호) (2008. 9)

불법행위와 금지청구권 (Law & Technology 제4권 제2호) (2008. 3)

Litigating in Korea: A General Overview of the Korean Civil Procedure (Journal of Korean Law 제7권 제1호) (2007. 12)

인터넷상 정보에 대한 접근 및 취득행위의 위법성 (비교사법 제14권 제3호) (2007. 9)

미국 불법행위법상 동산침해법리적용에 관한 최근의 논의와 그 시사점(과학기술과 법) (2007. 8)

통정허위표시로 인한 법률관계에 있어서 파산관재인의 제3자성 (법조 제608권) (2007. 5)

배타적 사용수익권 포기 법리에 관한 비판적 검토 (서울대학교 법학 제47권 제4호) (2006. 12)

인터넷상 표현의 자유와 명예보호 (저스티스 제91호) (2006. 6)

Tortious Liability of Internet Service Provider for Defamation: A Korean Perspective (Journal of Korean Law 제5권 제2호) (2006. 6)

명예훼손에 대한 인터넷서비스제공자의 책임 (Law & Technology 제2권 제2호) (2006. 3)

실질적 유사성에 관한 연구 (서울대학교 박사학위논문) (2006. 2)

UCITA에 관한 소고 (소프트웨어와 법률 통권 제1호) (2002. 6) (강태욱과 공저)

의장권침해소송에 관한 고찰 : 의장의 유사개념을 중심으로 (심당 송상현교수 화갑기념논문집) (2002. 1)
도메인 네임에 관한 지적재산권법적 문제점 (사법논집 제31집) (2000. 12)
저작권침해에 대한 온라인서비스 제공자의 책임 (서울대학교 석사학위논문) (2000. 2)

## 수상
2007년 우수강의상 (서울대학교 법과대학)
2008년 우수강의상 (서울대학교 법과대학)
2008년 율촌학술상 (한국민사법학회)
2008년 우수학술도서 (대한민국 학술원) - 저작권침해판단론(단독)
2009년 법학논문상 (한국법학원)
2015년 서울대학교 법학지 논문상 (서울대학교 법학연구소)
2017년 청남 법교육논문상 (한국법교육학회)
2020년 우수학술도서 (대한민국 학술원) - 민법개정안연구(공저)

## 기타
국가지식재산위원휘 위원 (現)
법무부 국제거래연구단 위원 (現)
한국 데이터법정책학회 부회장 (現)
네이버 개인정보보호위원회 위원 (現)
서울대학교 정보화위원회 위원(現)
서울대학교 부설학교진흥위원회 위원 (現)
서울대학교 입시공정관리위원회 위원 (現)
서울대학교 법학전문대학원 학문후속세대 양성센터장 (現)
대한상사중재원 국제중재인 (現)
싱가포르 국제조정센터 조정인 (現)
국제연합 국제상거래위원회(UNCITRAL) 담보분야 실무작업반 한국정부대표
금융위원회 금융발전심의위원회 위원
대법원 법관임용절차개선자문 및 연구위원회 위원
서울대학교 법학전문대학원 교무부원장
서울대 법학대학원(법과대학) 기획부원장(기획부학장)
서울대학교 기술지주회사 감사
서울대 기술과 법 센터장
한국저작권위원회 위원
법무부 법무자문위원
법무부 민법개정위원회 위원
국토교통부 자율주행자동차 융·복합 미래포럼 위원
자동차융합 얼라이언스 법제도분과위원회 위원
한국민사법학회 국제분과 간사, 편집이사, 판례이사, 학술이사
한국민사법학회, 한국비교사법학회, 민사판례연구회, 민사실무연구회, 특별실무연구회, 재산법학회, 법경제학회, 법철학회 회원 (現)

재산법연구, BFL(Business/Finance/Law), Law & Technology, 한국비교사법학회 편집위원(이사)
서울대학교 기숙사 관리위원
서울대학교 법학연구소 연구간사
경력개발센터 운영위원
서울대 법인화실행추진위원회 위원
서울대학교 미래연구위원회 위원
서울대학교 기획위원회 위원

**Expert Opinion**

## I. Professional experience of the expert providing this opinion

1. I am a law professor at Seoul National University located in Seoul, South Korea. I have gained various experience as a judge and law professor. In addition, since my appointment as a professor at Seoul National University in September of 2006, I have published many books and articles, mainly in the area of civil law. A detailed curriculum vitae is attached to this opinion for reference.

2. In connection with Civil Action No. 21-CV-00325 ("lawsuit in this case") filed with the United States District Court for the Southern District of New York (SDNY) located in the state of New York, I received a request from Defendant's representative to submit an expert opinion regarding the rights that Plaintiffs may claim against Defendant and how the same may be exercised in litigation under Korean law, based on Plaintiffs' assertions in the lawsuit in this case as well as the way in which a final judgment rendered by a U.S. court may be enforced in Korea under Korean law.

3. The summary of Plaintiffs' assertions in the lawsuit in this case are as follows:
   1. The Iranian government has been accused of having supported Al-Qaeda's bombing of the embassies located in Tanzania and Kenya, and Plaintiffs are the victims of the said terrorist attacks or their family members. Regarding this matter, in 2014, the United States District Court for the District of Columbia rendered a judgment ("Final U.S. Judgment") in which the Iranian government was ordered to pay Plaintiffs USD 5.5 billion in compensation for damages.
   2. The Iranian government did not fulfill the liability for damages ordered by the U.S. court, and instead attempted to evade enforcement by relocating assets. In other words, the Iranian government structured elaborate fictitious transactions and transferred assets to the United States or other regions through the accounts it or its agent had with Defendant.
   3. Such transfer of assets violated the United States' Financial Sanctions against Iran. Even though Defendant was aware that such fraudulent fictitious transactions and evasion of enforcement violate the United States' Financial Sanctions against Iran, Defendant failed to report them to the financial authorities in the United States. Rather, Defendant's management and agents actively cooperated with and profited from such fraudulent fictitious transactions and evasion of enforcement.
   4. Based on these facts, Plaintiffs assert the following cause of actions against Defendant.

1) Rescission and turnover of fraudulent conveyances in violation of New York Debtor and Creditor Law § 273-a (Count 1)
2) Rescission and turnover of fraudulent conveyances in violation of New York Debtor and Creditor Law § 276 (Count 2)
3) Request for turnover of property of judgment debtor pursuant to New York Civil Practice Law & Rules § 5225 (Count 3)
4) Request for turnover of assets of terrorist organizations which were frozen pursuant to the Terrorism Risk Insurance Act (Count 4)

4. Based on the above assertions, I will examine claims that Plaintiffs may assert against Defendant in Korean courts under Korean law and how such claims may be exercised in litigation as well as the way in which a final judgment rendered by a U.S. court may be enforced in Korea. Whether Plaintiffs' claims will actually prevail in litigation will depend on various factors such as (i) whether all facts asserted by Plaintiffs are supported by evidence and accepted as asserted, and, (ii) the content and the method in which Plaintiffs formulate and assert their claims as a legal matter.    I do not provide my opinion for the purpose of guaranteeing any specific outcome should such lawsuit be filed, but rather, to provide a general explanation as to whether the objectives that Plaintiffs attempt to achieve through the lawsuit in this case under the U.S. law may be similarly achieved under Korea law.

5. I reviewed items including (i) the complaint that Plaintiffs filed in the lawsuit in this case, (ii) the Tolling Agreement entered into by and between Plaintiffs and Defendant, (iii) final judgments rendered by a U.S. court, (iv) the briefs and expert opinions submitted by both the plaintiffs and the defendant in relation to the defendant's motion to dismiss in the Halkbank case, and (v) the court's judgment in the Halkbank case.

6. For providing this expert opinion, I received payment in line with customary level of fees provided for such services.

## II. Plaintiffs' cause of action under Korean law and ways to pursue such claims through litigation

### A. Plaintiffs' cause of action

### A.1. Claim for compensation of damages resulting from tort

7. To my understanding, Plaintiffs seek to achieve the following through the lawsuit in this case: (i) in connection with disposal of Iranian government assets which occurred through Defendant's alleged collusion and cooperation, to receive the return of said

-2-

assets or compensation for losses, and (ii) a turnover of Iranian government assets in Defendant's possession.    In connection with (i), under Korean law, the broadest and most effective means Plaintiffs may utilize is a claim for compensation of damages resulting from tort.

8. Korea is a civil law country (the term "country" is hereinafter referred to as a "State"). Therefore, to understand the position Korean law takes concerning a given legal issue, it is necessary to examine the relevant legal provisions.    While a number of laws concern tort, the Civil Act is the law that provides the most basic and general rules. Therefore, below, I discuss the general principles concerning tort under the Civil Act.

9. Article 750 of the Civil Act governs the general requisite elements and effects of tort. Under this provision, "a party who causes losses to another through an unlawful act, whether intentionally or negligently, shall be responsible for compensating damages arising therefrom."    In other words, if the four requisite elements, i.e., (i) intent or negligence, (ii) unlawful act, (iii) loss, (iv) causal relationship, are met, liability for compensation of damages arises.

10. The requisite elements under the Korean Civil Act are inclusive and flexible.    For example, "unlawful act," which is one of the elements of tort, is a concept that refers to all acts that violate legal order.    "Legal order" includes social order that is deemed to be a part of legal order, even if it is not established as actual law.[1]    Also, "loss," which is another element of tort, includes both property loss and emotional harm.

11. Article 750 of the Civil Act is simply a general provision that provides the principles concerning tort, and there are other special provisions in the Civil Act as well as other laws that concern tort.    To take the Civil Act as an example, it contains a variety of special provisions such as those concerning employer liability (Article 756 of the Civil Act), liability of possessor or owner of a structure (Article 758 of the Civil Act), and liability of possessor of animals (Article 759 of the Civil Act).    In most cases, these special provisions do not exclude the application of general tort elements but rather, are aimed at relaxing the tort elements to make it more advantageous to the harmed party or to expand liability further to liability that arises for general tort.    In this sense, tort laws in Korea are quite expansively applied.

12. As seen above, tort laws in Korea are very expansive and open-ended.    As long as the elements of tort are satisfied, the harmed party can seek compensation from the

---

[1] Changsoo Yang & Youngjoon Kwon, Civil Law 2, Changes in Rights and Relief, Parkyoungsa, 2017, 3rd Edition, pg 614.

-3-

tortfeasor for any type of act or loss.    In this way, Korean tort law is distinguishable from laws of certain other countries which specify the types of tort or cause of action where it is not possible in principle to seek liability for tort if a given act does not fall under the specified type.    In fact, a variety of different cases are handled under the tort laws.    In some cases, even a legal dispute concerning a contract is resolved under the tort laws.    Tort liability that arises for unfair termination of contractual negotiation[2] or breach of contract[3] are some examples.

13. Evasion of execution that Plaintiffs claim in the current case is also likely to be regarded as tort under Korean law.    If, as Plaintiffs claim, Defendant colluded or cooperated with the Iranian government (i.e., the debtor responsible for compensating Plaintiffs) or its agent and helped conceal enforcement assets, this would constitute an intentional unlawful act that caused losses to Plaintiffs and would therefore fall under tort under Korean law.    Therefore, Plaintiffs would be able to seek compensation of losses they incurred from such act.    To look into this in more detail, Defendant's act according to Plaintiffs' claim would constitute tort that infringes on Plaintiffs' right to obtain compensation from the Iranian government.

14. The Korean Supreme Court has firmly upheld the legal principle that not only infringement of property rights (e.g., ownership rights) but also infringement of the right one has against a debtor constitute tort.[4]    The Supreme Court set the following standards in this connection: "It is difficult to conclude that it does not constitute tort when a third party commits an unlawful act that infringes on the right of a claimant through violating law or regulation, good custom, or social order, knowing that the third party is infringing on the rights of the claimant.    The unlawfulness of the infringement of a claim shall be determined on a case-by-case basis based on the specific facts such as the infringed claim, nature of infringement, intent of infringer or whether the harm was intended, considering together the need for guaranteeing the transactional freedom, public good including economic or social policy factors, and balancing of interests between the parties."[5]

15. Infringement of claim includes tort that causes losses to the claimant by reducing the non-exempt property through means such as concealing or disposing of such property. The Korean Supreme Court has held a number of times, "If a third party reduces the

---

[2]  Supreme Court Decision 2001*Da*53059 Decided April 11, 2003; Supreme Court Decision 2002*Da*32301 Decided May 28, 2004.
[3]  Supreme Court Decision 82*Daka*1533 Decided March 22, 1983 *en banc* judgment.
[4]  Supreme Court Decision 2000*Da*32437 Decided March 14, 2003; Supreme Court Decision 2004*Da*11162 Decided May 11, 2007; Supreme Court Decision 2005*Da*25021 Decided September 6, 2007; Supreme Court Decision 2006*Da*9446 Decided September 21, 2007.
[5]  Supreme Court Decision 2000*Da*32437 Decided March 14, 2003.

-4-

debtor's non-exempt property, knowing there is a claimant against the debtor and the fact that a claim is being infringed on, through actively conspiring with the debtor or through improper means that violate social custom with the intent of impeding the claimant's exercise of the claim, and makes it impossible or difficult for the creditor to enforce or satisfy the claim, this may constitute tort toward the claimant."[6] According to Plaintiffs' allegations, Defendant's act appears to constitute a classical example of an act that intentionally reduces the debtor's non-exempt property, which the Korean Supreme Court recognizes as tort.

16. Under Korean law, even when a tort gives rise to liability for compensation of damages, there is some possibility that the harmed party may be unable to obtain compensation for all of the losses for reasons such as the loss constituting special loss rather than ordinary loss (Articles 393, 763 of the Civil Act) or the harmed party was also at fault (Articles 396, 763 of the Civil Act). However, at least under the alleged facts that were provided to me, the losses Plaintiffs suffered by being unable to obtain proper compensation for losses due to the disposal of enforcement assets appear to constitute ordinary losses. Also, Plaintiffs do not appear to have committed any fault in this course. Therefore, there does not seem to be a high likelihood that Plaintiff's claim for compensation would be limited or reduced for the above reasons.

17. As for instances where multiple parties take part in a given tort, Article 760, Paragraph 1 of the Korean Civil Act provides as follows: "When multiple persons jointly committed a tort and caused losses to another party, they are jointly liable for compensating such losses." As to what constitutes "joint" commission of tort, the Korean Supreme Court has taken the position that the parties need not have conspired or conferred with each other, and that it is sufficient if each act was "objectively related."[7] As seen here, the scope of joint tort recognized under Korean law is considerably broad.

18. In the case of joint tort, joint tortfeasors are held jointly liable for the entire losses that were caused through the joint tort, rather than partially liable based on the degree of involvement in the joint tort (Article 760, Paragraph 1). This is based on the legislative intent which was to give strong protection to the aggrieved party. Even if a given tortfeasor's involvement in a given tort was minimal, the joint tortfeasor is held liable for compensation of entire losses vis-a-vis the aggrieved party.[8] The

[6] Supreme Court Decision 2005*Da*25021 Decided September 6, 2007; Supreme Court Decision 2017*Da*239311 Decided May 10, 2019.

[7] Supreme Court Decision 96*Da*7854 Decided February 13, 1998.

[8] Changsoo Yang & Youngjoon Kwon, Civil Law 2, Changes in Rights and Relief, Parkyoungsa, 2017, 3rd Edition, pg 695-696.

aggrieved party may seek compensation of entire losses from all of the joint tortfeasors or from some of the joint tortfeasors (Article 414 of the Civil Act).

19. According to Plaintiffs' claims, torts committed by Defendant and by the Iranian government (and/or its agent), respectively, with respect to evasion of enforcement, are objectively related and furthermore, arise from conspiracy or conference with each other, and therefore, there would not be any impediment to satisfying the element of joint tort under Korean law.   As a result, regardless of the degree or nature of involvement in the joint tort, Defendant bears liability for entire losses suffered by Plaintiffs, and accordingly, Plaintiffs are given stronger protection compared to instances where there is a single tortfeasor.   Defendant may seek reimbursement from the Iranian government (and/or its agent) to share liability only after Defendant fulfills its responsibility to compensate Plaintiffs' losses.[9] Defendant cannot assert vis-à-vis Plaintiffs that it will carry out its responsibility proportional to the degree of its involvement, asserting that its involvement was limited.

20. There is a statute of limitations that applies to a damage claim arising from tort. Under Article 766 of the Civil Act, the statute of limitations for a damage claim for tort expires when (i) three years have passed from the time the aggrieved party or its legal representative became aware of losses or the identity of the tortfeasor[10] (Paragraph 1), or (ii) 10 years from the time the tort was committed (Paragraph 2), whichever is earlier.   Once the statute of limitations expires, the aggrieved party is unable to exercise any claim for compensation of damages.   If the aggrieved party exercises a claim before the statute of limitation expires, or takes action such as attachment, provisional attachment, or injunction, or the infringer recognizes its obligation, the statute of limitation is tolled (Article 168 of the Civil Act).[11]   When

---

[9] Supreme Court Decision 2000*Da*69712 Decided September 24, 2002.

[10] "The date on which one became aware of the loss or the identity of the tortfeasor" under Article 766, Paragraph 1 of the Civil Act means the time when one obtained a practical and specific awareness that elements of tort have been constituted, such as the occurrence of loss, the existence of an unlawful act, and that there is a causal relationship between the unlawful act and loss. As to when the aggrieved party obtained a practical and specific awareness that the elements of tort have been constituted is reasonably determined taking into account various objective circumstances in a given case and the situation where a claim for damages becomes possible in practice.

[11] For reference, filing a request for for judicial proceeding does not have the effect of tolling the statute of limitations, if the lawsuit is dismissed (whether on procedural grounds or substantive grounds) or withdrawn, but if another request for judicial proceeding, intervention in bankruptcy proceeding, attachment or provisional attachment, or injunction is made within six months thereof, the statute of limitation is deemed to have been tolled as of the time the request for judicial proceeding was first made (Article 170 of the Civil Act). In addition, making a request for action outside a judicial proceeding, i.e., providing a peremptory notice, also does not have the effect of tolling the statute of limitations unless a request for judicial proceeding, intervention in bankruptcy proceeding, a summons for compromise or a voluntary appearance for the same purpose, an attachment, a provisional attachment, or an injunction is made within six months thereof. (Article 174 of the Civil Act).

-6-

the statute of limitations is tolled, the statute of limitations [newly] runs again [when the tolling expires].

21. According to the complaint in this case, Defendant's tort as alleged by Plaintiffs appears to have occurred between February and July 2011.[12]   Since Plaintiffs filed this lawsuit on January 14, 2021, it is clear that the request for court's adjudication, which constitutes a ground for tolling the statute of limitations was made within 10 years from the date the tort was committed. Furthermore, Plaintiffs and Defendant executed a Tolling Agreement and agreed to toll the statute of limitations from July 23, 2020 to January 23, 2021.   Therefore, the statute of limitations under Article 766, Paragraph 2 of the Civil Act does not appear to have expired, although there remains a question as to how the fact that Plaintiffs made the request overseas rather than in Korea would be evaluated.

22. There is no Korean Supreme Court ruling on whether the filing of a lawsuit in a U.S. court, as opposed to a Korean court, constitutes a ground for tolling the statute of limitations.   Having said that, the Korean Supreme Court has broadly interpreted the provisions concerning the tolling of statute of limitations to the extent possible, stating as follows: "In light of the intent behind the system for expiration of statute of limitations, in particular, the system for tolling of statute of limitations, it is reasonable to interpret the trigger or expiration of the statute of limitations broadly for the benefit of the right holder."[13]   Furthermore, if a party made any request for adjudication by the court and thus expressed that "it does not sleep on its rights," the Korean Supreme Court has tended to interpret that such act tolls the statute of limitations.[14]   In light of this stance, the fact that Plaintiffs filed a lawsuit with a U.S. court is likely to be recognized as an exercise of rights and thus a ground for tolling of the statute of limitations under Korean law.

23. If Plaintiffs filed the lawsuit in this case after three years passed from the time they learned of their losses and the identity of the tortfeasor, there is a possibility that statute of limitations for their damage claim may be deemed to have expired under Article 766, Paragraph 1 of the Korean Civil Act.   Whether the statute of limitations has actually expired would depend on (i) when Plaintiffs or their legal representative became aware of losses and the identity of the tortfeasor and (ii) whether a ground for tolling of the statute of limitations arose before the statute of limitations expired. Even in the instance the statute of limitations expired, if the defendant does not raise a defense based on the expiration of the statute of limitations, the court would not on

---

[12]  Complaint, Para. 9.
[13]  Supreme Court Decision 74*Da*178 Decided July 8, 1975.
[14]  Supreme Court Decision 91*Da*32053 Decided March 31, 1992 *en banc* judgment.

its own consider whether or not the statute of limitations has expired.[15]    This is because, in accordance with the principle under the Korean Civil Procedure Act that courts shall decide only based on the parties' arguments and evidence, courts do not have discretion to determine issues that parties do not assert or prove.

24. My view concerning the claim of damages arising from tort may be summarized as follows.    According to Plaintiffs' claims, Defendant's act would constitute an intentional unlawful act, and if, as a result, it became impossible or difficult for Plaintiffs to satisfy their claim for damage compensation and Plaintiffs thereby suffered losses, Defendant would be liable for compensation of losses under Article 750 of Korean Civil Act.    It is difficult to conclude simply based on the facts that were presented to me whether or not the statute of limitations has expired for Plaintiffs' claim for damages against Defendant.    Even if the statute of limitations has expired, if Defendant does not make this assertion in the course of litigation, Korean court would not be able to determine whether or not statute of limitations expired.

**A.2. Rescission of fraudulent act and restitution**

25. Plaintiffs seek rescission and turnover of fraudulent conveyances (Count 1) alleging the violation of § 273-a and §276 of New York Debtor and Creditor Law ("New York Law").    Below are relevant provisions under New York Law that apply to this case.[16]

---

**§ 270. Definition of terms**

In this article "assets" of a debtor means property not exempt from liability for his debts.    To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets.

"Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance.

"Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

---

[15]  Supreme Court Decision 62*Da*466 Decided October 11, 1962.

[16]  The revised New York Law under the Uniform Voidable Transaction Act (UVTA) promulgated by the Uniform Law Commissioners in 2014 was signed by the Governor of New York on December 6, 2019 and became effective on April 4, 2020.    However, since Defendant's actions as alleged by Plaintiffs occurred before the revised New York Law came into effect, I discuss the previous version of New York Law in this opinion. For more detail on the revised New York Law, please refer to "Report in support of the enactment of the Uniform Voidable Transactions Act in New York" released by the New York City Bar Association (https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/report-in-support-of-the-enactment-of-the-uniform-voidable-transactions-act-in-new-york).

"Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

**§ 272. Fair consideration**

Fair consideration is given for property, or obligation,

a.    When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.    When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

**§ 273-a. Conveyances by defendants**

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

**§ 276. Conveyance made with intent to defraud**

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

26. Korean law has a comparable system which allows the creditor to seek revocation. Creditor's right of revocation is a right that allows the creditor to seek the cancellation of a fraudulent act and the return of the property the debtor disposed of when the debtor engages in an act that reduces his/her assets knowing that such act would harm the creditor (Article 406, Paragraph 1 of the Civil Act). Creditor's right of revocation is a right that is exercised by filing a lawsuit to obtain recovery of non-exempt property (if the creditor has an enforceable right, the property may be referred to as enforceable property). In this way, the creditor is able to remove the obstacle to enforcing against the debtor's non-exempt property and increase the possibility of obtaining satisfaction.

27. Creditor's right of revocation is widely utilized by creditors in Korea. According to the 2020 Judicial Yearbook published by the Supreme Court, 7,453 lawsuits involved

the creditor's right of revocation, constituting approximately 2.78% of a total of 268,027 civil lawsuits (main action excluding injunction) that were filed with the court of first instance in Korea.[17]    Although this percentage may not seem high, this is not at all the case considering the extremely diverse types of civil lawsuits.[18]    More civil lawsuits involve creditor's right of revocation than civil lawsuits involving other issues like unjust profits (7,529 lawsuits), lease security (5,703 lawsuits), wages (5,308 lawsuits), damage claim associated with car accident (2,419 lawsuits), and debt guarantees (929 lawsuits) which are more typical and which arise in the ordinary course.    In this sense, creditor's right of revocation may be regarded as a system that is effectively utilized in Korea.

28. For a creditor to exercise creditor's right of revocation, (i) the creditor must have a claim that is subject to preservation, (ii) the debtor must have engaged in a fraudulent act, and (iii) the debtor and the beneficiary (or the subsequent purchaser, in the case the subsequent purchaser is named a defendant) must have acted with malice (Article 406, Paragraph 1 of the Civil Act).    In addition, the creditor's right of revocation must be asserted through a lawsuit within one year from the time the creditor becomes aware of the cause for revocation, or within 5 years from the time the fraudulent act occurred (Article 406, Paragraph 2 of the Civil Act).    Below, I will discuss each of these elements in more detail.

29. First, the creditor must have a claim that would be preserved through the exercise of the creditor's right of revocation, i.e., a claim subject to preservation.    Claim subject to preservation in this context includes a conditional claim, claim with a time limit,[19] claim for which the amount has not yet been determined,[20] claim with respect to which provisional attachment was already made,[21] and right to demand division of property upon divorce (Article 839-3 of the Civil Act).    The creditor does not need to have an enforceable right with respect to the claim such as a final judgement.    It would be sufficient if the creditor proves the existence of the claim in the lawsuit concerning creditor's right of revocation.

30. Creditor's right of revocation is not recognized for a party who has a priority claim with respect to a specific asset of the debtor, such as a secured creditor, because there

---

[17]  2020 Judicial Yearbook, National Court Administration, 2020, pg 768.
[18]  Highest number of filings involves building evacuations and demolitions (36,709 cases, which constitutes 13.69% of all civil lawsuits), second highest number of filings involves loans (21,690 cases, which constitutes 8.09% of all civil lawsuits), third highest number of filings involves purchase prices (13,528 cases, which constitutes 5.04% of all civil lawsuits).
[19]  Supreme Court Decision 2011*Da*55542 Decided December 8, 2011.
[20]  Supreme Court Decision 2013*Da*79870 Decided January 29, 2015; Supreme Court Decision 2016*Da*1045 Decided June 28, 2018.
[21]  Supreme Court Decision 2010*Da*20617, 20624 Decided June 24, 2010.

is no need for preserving the creditor's right to the extent the claim entitles the creditor to recovery ahead of other creditors.[22]    However, for the portion of the claim that exceeds the priority for recovery, even secured creditors may exercise creditor's right of revocation like general creditors.[23]

31. In principle, the claim to be preserved must have arisen before the fraudulent act was committed.[24]    However, the Korean Supreme Court has taken the view that a claim may be regarded as entitled to preservation for the purpose of creditor's right of revocation even if the claim did not exist at the time of the fraudulent act if (i) the legal relationship that serves as a basis for the claim had arisen at the time and (ii) there was a high probability that the claim would arise in the near future based on such legal relationship.    In this way, the Korean Supreme Court has expanded the possibility of exercising creditor's right of revocation.[25]

32. The creditor exercising the creditor's right of revocation need not have been the creditor at the time of the fraudulent act.    For example, if the creditor at the time of the fraudulent act assigned his/her claim to a third party, or passed away and his/her heir inherited the claim, such third party or heir may exercise the creditor's right of revocation as a new creditor.[26]    In other words, creditor's right of revocation is appended to the claim that accompanies the transfer of the claim.

33. Second, the debtor must have engaged in a fraudulent act.    Fraudulent act means an act that concerns [the debtor's] property right which causes harm to the creditor. Causing harm to the creditor means the debtor causes a state using the debtor's property which prevents the full satisfaction of the creditor's claim or aggravates such state.    Whether a fraudulent act in this sense occurred must be determined taking into consideration whether the possibility of satisfying the creditor's claim was reduced in practice, rather than simply based on a mechanical comparison of the debtor's positive property and passive property.

34. For example, in a case where a debtor sold real estate which was his/her sole asset for fair consideration and turned it into cash, the Supreme Court took the position that such act was a fraudulent act.[27]    In a mechanical sense, there was no change to the value of the debtor's total asset, and only the form of the asset changed.    However,

---

[22]  Supreme Court Decision 2002*Da*41589 Decided November 8, 2002.
[23]  Supreme Court Decision 2002*Da*41589 Decided November 8, 2002.
[24]  Supreme Court Decision 4294*Minsang*378 Decided February 15, 1962; Supreme Court Decision 94*Da*2534 Decided February 10, 1995.
[25]  Supreme Court Decision 95*Da*27905 Decided November 28, 1995.
[26]  Supreme Court Decision 2011*Da*77146 Decided February 9, 2012.
[27]  Supreme Court Decision 66*Da*1535 Decided October 4, 1966.

in a practical sense, it is much easier to enforce against the debtor's real estate than cash in the debtor's possession.   Cash is much more liquid than real estate and also easier to conceal.   Therefore, although the value of the debtor's total asset did not change, the possibility of satisfying the creditor's claim was reduced in practice. Applying such practical standards, the Korean Supreme Court determined that the sale of real estate constituted a fraudulent act.

35. In addition, in a case where the debtor held both real estate and a bond at the time of disposal of assets such that his total assets exceeded the claim amount, the Korean Supreme Court ruled that, in calculating positive property, any property that lacks actual property value and cannot serve as joint collateral for the claim should be excluded from positive property, absent special circumstances.[28]   This is also an example of a case where the court decided that the practical standards should be applied rather than perfunctory standards in determining whether a given act constitutes a fraudulent act.

36. Article 406 of the Korean Civil Act defines a fraudulent act as "a juristic act committed by a debtor concerning a property right, with the knowledge that the act would harm the creditor."   A "juristic act" is not a concept that exists in U.S. law. To explain simply, a "juristic act" is an act that necessarily involves an expression of intent which gives rise to a legal effect through the expression of intent.   One classical example of a juristic act is entry into a contract, which act includes the expression of subscription and acceptance, and which gives rise to rights and obligations pursuant to the expression of intent.   Another example of a juristic act is an individual act where a legal effect (termination of a contractual relationship) arises through the unilateral expression of intent pursuant to such expression of intent as in the case of termination or revocation of a contract, although the act does not involve an agreement.

37. Examples of juristic act that become an issue as fraudulent act include transfer such as sale/purchase, gift, and exchange, granting a security interest, taking on obligations that are not required,[29] surrender of right or release of debt, excessive division of property upon divorce,[30] division of inherited property,[31] or establishment of corporation.   As seen in these examples, fraudulent act is a broad concept that includes diverse types of juristic acts that make it difficult to find non-exempt property through transfer, concealment, or other means.   The Korean Supreme Court

---

[28] Supreme Court Decision 2004*Da*58963 Decided January 28, 2005.
[29] Supreme Court Decision 2012*Ma*712 Decided May 31, 2013.
[30] Supreme Court Decision 2004*Da*58963 Decided January 28, 2005.
[31] Supreme Court Decision 2007*Da*29119 Decided July 26, 2007.

expanded the scope of fraudulent acts even further by not just including the above types of juristic acts but also acts that are related to enforcement.    For example, where a debtor whose positive property exceeds the amount of debt signs a deed that authorizes compulsory execution, such act may be revoked as a fraudulent act related to enforcement.[32]

38. The tendency of the Korean Supreme Court to expand the concept of fraudulent act has gone as far as to regard the act of making a payment, which has the strong characteristic of an act of fact, as a revocable act.    In a case where a debtor made a monetary payment to a specific creditor with the intent of harming another creditor, i.e., the debtor engaged in an act of making a payment, the Supreme Court regarded such act as revocable.[33]    According to the Korean Supreme Court, whether making a payment constitutes a fraudulent act should be determined taking into account the totality of circumstances such as whether the beneficiary had an actual claim against the debtor, the amount of payment the beneficiary received from the debtor, the relationship between the debtor and the beneficiary, the debtor's ability to make the payment and the beneficiary's understanding of such ability, beneficiary's actions before and after the payment was made, the circumstances that surrounded the debtor and the beneficiary at the time of the payment, and the background of the payment.

39. Furthermore, even in a case a fraudulent act is legally null and void, there are instances where revocation of the nullified fraudulent act is permitted.    For example, there are instances where the debtor transfers non-exempt property pursuant to a non-existing transaction, making it look as if the transaction existed, as if the transfer was made to perform an obligation pursuant to the transaction.    Such an act would be considered a fictitious declaration of intention in collusion with another party ("fictitious declaration of intention").    Under Korean law, fictitious declaration of intention has no legal effect (Article 108 of the Civil Act).    However, the Korean Supreme Court has taken the view that even such act may be revocable as a fraudulent act, if it constitutes a fraudulent act.[34]    It may be difficult to prove whether a given fictitious declaration of intention is null and void.    This is why the court permits the revocation of such act when the fictitious declaration of intention constitutes a fraudulent act.

40. Third, the debtor and the beneficiary (or the subsequent purchaser, in the case the subsequent purchaser is named a defendant) must have acted with malice.    Malice in this context refers to a mental state where the debtor was aware at the time of the

---

[32]  Supreme Court Decision 2009*Da*33884 Decided April 29, 2010.
[33]  Supreme Court Decision 2004*Da*10985, 10992 Decided March 25, 2005.
[34]  Supreme Court Decision 4293*Minsang*263 Decided November 9, 1961.

fraudulent act that such act would result in harm to the creditor.    A simple awareness that a given act would make the debtor's non-exempt property insufficient to satisfy the creditor's claim is sufficient to constitute malice.    It is not necessary to have acted with active intent to hinder the satisfaction of the creditor's claim.[35]   In this sense, malice is closer to awareness that an act would reduce the non-exempt property and would make it difficult for the creditor to satisfy his/her claim than "intent to harm" or "bad faith."

41. Malice of the beneficiary or the subsequent purchaser is presumed under law. Therefore, if the debtor's act is deemed a fraudulent act, the beneficiary or the subsequent purchaser must prove that they did not act with malice, and if they fail in such proof, they are held liable to make restitution following the revocation of the fraudulent act.    In contrast, the malice of the debtor is not presumed under law. Therefore, when exercising creditor's right of revocation, the creditor bears the burden of proving the debtor's malice.    However, since malice is difficult to prove directly due to its nature, in most cases that involve creditor's right of revocation, whether or not the debtor acted with malice is determined based on the overall circumstances. In practice, when the debtor's disposition of property is objectively proven to be a fraudulent act, the debtor's malice is essentially presumed in Korean litigation, absent special circumstances.[36]

42. When the elements of creditor's right of revocation discussed above are satisfied, the creditor can file a lawsuit to exercise the creditor's right of revocation, seeking the revocation of the fraudulent act and the return of debtor's non-exempt property that was disposed of through the fraudulent act.    Return of non-exempt property is made in the form that is deemed the most appropriate for returning the non-exempt property to the debtor.    For example, if the non-exempt property is monetary asset, the money would be returned; if the non-exempt property is real estate, the registration of real estate would be cancelled; or if the non-exempt property is a claim, the claim would be transferred.    If it is impossible or clearly difficult to return the original item, measures may be taken so that payment is made equivalent to the value of the original item.[37]    Although, in principle, non-exempt property should be returned to the debtor, if the non-exempt property is a movable good (including money) rather than real estate, the creditor may request the return to be made directly to the creditor rather than to the debtor.[38]    In fact, in most cases where money is paid equivalent to value of the original item, it is customary to make the return to the creditor.

---

[35] Supreme Court Decision 2007*Da*63102 Decided March 26, 2009.
[36] Editor in Chief Yong-Deok Kim, Commentary on Civil Code, 5th Edition, Korean Society for Judicial Administration, 2020, pg 437 (parts written by Baek-Gyu Lee)
[37] Supreme Court Decision 2004*Da*54978 Decided December 7, 2006.
[38] Supreme Court Decision 99*Da*23468, 23475 Decided August 24, 1999.

43. Creditor's right of revocation must be exercised "within one year from the time the creditor became aware of the cause for revocation, or within 5 years from the time the juristic act occurred" (Article 406, Paragraph 2 of the Civil Act). This period of exercise is understood not as statute of limitations, but as a cut-off period, i.e., the period within which the lawsuit seeking revocation must be filed.[39] Since revocation of a fraudulent act cancels a juristic act that was legally effective, in order to preserve joint collateral, this has considerable impact on third parties. This is why the period within which the right must be exercised was established so as to enable the legal relationship to be settled without delay. Unlike statute of limitations, the court may investigate *ex officio* whether a lawsuit was filed within the cut-off period. Therefore, even if a party does not assert that the cut-off period expired, the court may investigate and decide the matter if it has questions as to whether the cut-off period was complied with.[40]

44. To my understanding, creditor's right of revocation discussed above is largely similar to revocation of fraudulent conveyance and restitution. Below are key similarities.

(1) The concepts "assets," "conveyance," "creditor," and "debt" in § 270 of New York Law are similar to the concepts of "non-exempt property," "fraudulent act," "creditor," and "debt," respectively, under Korean Civil Act.

(2) The concept of "conveyance made without fair consideration" in § 273-a of New York Law is different from creditor's right of revocation under the Korean Civil Act in the sense that an act may be considered a fraudulent conveyance regardless of whether the creditor acted with intent to defraud. However, if a transaction was made without fair consideration, the debtor is highly likely to be deemed to have acted with intent to defraud in Korea, and therefore, there is not much difference in practice.[41]

(3) The concept of "conveyance made with intent to defraud" in § 276 of New York Law is similar to the system for creditor's right of revocation under the Korean Civil Act.

(4) Under § 213(8) of Civil Practice Law and Rules in the State of New York, a claim concerning fraudulent conveyance must be filed within six years of the occurrence or within two years from the time the creditor became aware of, could have become aware of, the fraudulent conveyance.[42] These periods are largely similar to the cut-

---

[39] Supreme Court Decision 74*Da*1700 Decided April 8, 1975.

[40] Supreme Court Decision 2004*Da*71201 Decided April 28, 2005.

[41] Moreover, according to Plaintiffs' assertions, since Defendant was the principal actor who colluded the evasion of enforceable property together with the Iranian government, if this allegation is true, it would not be difficult to establish Defendant's intent to defraud.

[42] Although this provision does not apply to the lawsuit in this case, under § 278 of New York Law which was newly implemented as of April 4, 2020, the above periods were reduced to four years and one year, respectively.

off period of five years or one year for creditor's right of revocation under the Korean Civil Act.

45. Some aspects of Plaintiffs' claims are unclear from the perspective of Korean law. Under Korean law, a fraudulent act occurs between the debtor and the beneficiary. Under the U.S. court judgment which is final and conclusive, the Iranian government is the debtor that is liable for compensating Plaintiffs' losses. Therefore, the fraudulent act must have occurred between the Iranian government and the beneficiary. From the complaint alone, it is not clear whether the alleged beneficiary of the fraudulent act is Defendant, or a third party individual or corporation that received funds from the account established at Defendant.

46. If the former, then Plaintiffs should specify which act between the Iranian government and Defendant is considered a fraudulent act. If the latter, then the third party individual or corporation that actually received funds, rather than Defendant, should be named as the defendant in the lawsuit for the exercise of creditor's right of revocation. As the above issue is not clear, it is difficult for me to determine whether or not Plaintiffs satisfied the requirements for exercising creditor's right of revocation under Korean law. However, this issue seems to be similarly unclear even under my understanding of New York Law, not just Korean law. Importantly, since Korean law and New York law provides a largely similar degree of legal constraints concerning fraudulent acts, even if Plaintiffs are to exercise creditor's right of revocation under Korean law, this would not subject them to a clear disadvantage [compared to the instance they pursue the lawsuit under New York Law].

47. Furthermore, under the Korean Civil Act, there is an additional legal means for addressing the disposal of non-exempt property, i.e., a system for creditor's subrogation rights, in addition to the system for creditor's right of revocation. Creditor's subrogation right is the creditor's right to exercise a right belonging to the debtor in order to preserve the creditor's claim (Article 404, Paragraph 1 of the Civil Act). In a case where the debtor transfers enforceable property to a third party creditor through a fictitious transaction that is null and void, creditor's subrogation right allows the creditor to exercise the debtor's right by subrogation and request the return of the enforceable property. Creditor's subrogation right may be exercised separately from, or together with, creditor's right of revocation.

48. My view on the recovery of non-exempt property that was disposed of through a fraudulent act is that, although the system for creditor's right of revocation and creditor's subrogation right under Korean law are not identical to the system for revocation of fraudulent conveyance and restitution under New York Law, they

provide a largely similar degree of possibility of remedy as that provided under New York Law.

## B. Means for exercise of right through litigation

### B.1. Overview of civil procedure in Korea

49. The various rights of Plaintiffs under Korean law discussed above may be exercised and enforced through civil litigation in Korea.   Korean Civil Procedure Act governs the procedures for conducting civil lawsuits.   Below, I provide an overview of the civil procedure under such law.[43]

50. Article 1 of the Civil Procedure Act states that in accordance with "the ideals of civil procedure and the principle of good faith," a court shall endeavor to have the litigation procedures conducted fairly, swiftly and economically, and the parties and participants of litigation shall perform the litigation in good faith.   In accordance with such general principle, the Korean Civil Procedure Act contains provisions that are in line with the values of fairness, swiftness, efficiency, and good faith.

51. A lawsuit is initiated by the plaintiff filing a complaint with a court (Article 248 of the Civil Procedure Act).   The parties and their legal representatives, as well as relief sought and cause of action must be indicated in the complaint (Article 249, Paragraph 1 of the Civil Procedure Act).   There are no prohibitions or limitations on foreign individuals or foreign corporations filing a lawsuit with a Korean court.   Engagement of an attorney is not mandatory under Korean Civil Procedure Act.   Therefore, the parties may freely decide whether or not to engage counsel and obtain counsel's assistance in filing a lawsuit and conducting litigation.

52. The court may investigate *ex officio* whether it has jurisdiction for a given case (Article 32 of the Civil Procedure Act).   In principle, the court where the defendant's principal place of business or office is located has jurisdiction (Articles 2 and 5 of the Civil Procedure Act).   The Civil Procedure Act contains a number of provisions concerning court's jurisdiction.   If multiple courts have jurisdiction pursuant to such provisions, the plaintiffs may file a lawsuit in any of these courts that have jurisdiction.

---

[43] For an overview of Korean Civil Procedure that I wrote in English, see Youngjoon Kwon, Litigating in Korea: A General Overview of the Korean Civil Procedure, Journal of Korean Law, Vo. 7, No. 1. (2007) 109-144; Youngjoon Kwon, Civil Law and Civil Procedure Law, in Korean Legislation Research Institute ed., Introduction to Korean Law (Springer, 2012), pg 113-154

53. For example, the provisions concerning the court with jurisdiction over the place of performance of obligation (Article 8 of the Civil Procedure Act) and the court with jurisdiction over the place tort occurred (Article 18 of the Civil Procedure Act) may have relevance in this case.   In addition, the parties may select the court of first instance through a written agreement (Article 29 of the Civil Procedure Act).   Even if a lawsuit is filed with a court that does not have jurisdiction, if the defendant makes arguments on the merits of the case before a court without asserting the court lacks jurisdiction, or makes statements at a preparatory hearing, the said court is given jurisdiction (Article 30 of the Civil Procedure Act).

54. The court must serve a copy of the complaint on the defendant (Article 255 of the Civil Procedure Act).   If the defendant disputes the plaintiff's claim, the defendant must submit a response within 30 days of receiving a copy of the complaint (Article 256, Paragraph 1 of the Civil Procedure Act).   If the defendant fails to submit a response within the above period, the court may regard this failure as admission of the underlying facts based on which the plaintiff made the claim and may render the verdict without a hearing; provided that this does not apply if there are matters to be investigated *ex officio* or where the defendant submits a response that he/she contests the plaintiff's claim before a judgment is rendered (Article 257 of the Civil Procedure Act).

55. Except in the instance the court renders the verdict without a hearing pursuant to the above, the presiding judge is required to set the hearing date without delay.   If a preparatory hearing procedure is conducted, the court must set the hearing date without delay after the completion of such procedure (Article 258 of the Civil Procedure Act).   Preparatory hearing procedure is a procedure through which the parties' assertions and evidence are organized to allow the hearings to be held efficiently and in a focused manner (Article 279, Paragraph 1 of the Civil Procedure Act).   Court hearing is a hearing held for examination of issues as part of the court proceeding procedure where the court listens to the parties' assertions and examines the evidence.

56. Court proceeding is conducted at the direction of the presiding judge (Article 135, Paragraph 1 of the Civil Procedure Act).   The presiding judge may ask questions to the parties on, or urge the parties to prove, factual or legal matters to clarify the issues in litigation (Article 136, Paragraph 1 of the Civil Procedure Act).   The court determines the veracity of the parties' assertions in its free exercise of judgment, taking into consideration the overall assertions and the findings from examination of evidence.   Once the examination is concluded, the court closes the hearings, sets the verdict date, and renders the verdict (Articles 198 and 207 of the Civil Procedure Act).

57. In principle, there are three levels of adjudication in Korea.   District courts (including district court branches and municipal courts) handle civil litigation at the first instance.   Decision by the court of first instance may be appealed (Article 390, Paragraph 1 of the Civil Procedure Act).   If appealed, the second instance of litigation is handled by the high court (for appeal of decision by the court of first instance that was rendered by a three-judge panel or by a single-judge court of a district court, which falls under the types of cases that are specified in the Supreme Court's rules) or by the appellate division of the district court[44] (for all other appellate cases). Should Plaintiffs file a lawsuit against Defendant in Korea based on the underlying facts that are alleged in the lawsuit in this case, considering the expected claim amount in such litigation (the "future Korean litigation"), the case would be handled by a three-judge panel of a district court at the first instance, and by a high court at the second instance.   If a party wishes to dispute the decision rendered at the appellate level, the party can file another appeal.   Such appeal would be handled by the Supreme Court, which is the highest court (Article 11 of the Law Governing Court Structure and Article 422 of the Civil Procedure Act).

58. A decision becomes final and conclusive when there does not remain any avenue for disputing the decision.   For example, if the court of first instance renders the decision, and an appeal is not made within the requisite period for filing an appeal, the decision is no longer appealable and becomes final and conclusive.   Or a decision may become final and conclusive at the Supreme Court level if appeal is made to the appellate level and then to the Supreme Court.   A final and conclusive judgment has the effect of *res judicata* with respect to the issues involved (Article 216 of the Civil Procedure Act).   Compulsory execution is possible based on a final and conclusive judgment (Article 24 of the Civil Execution Act).

59. These legal procedures are said to be conducted in a prompt and efficient manner. According to 2020 Judicial Yearbook published by the Supreme Court, on average, Korean courts take (i) 160.2 days at the court of first instance,[45] (ii) 245.4 days at the appellate level,[46] and (iii) 181.6 days at the Supreme Court level[47] in handling a civil lawsuit (main action, not injunction), calculated based on the number of days from the receipt of the complaint to the date the verdict is rendered.   This means that, if a civil lawsuit (main action, not injunction) is filed, and the decision is subsequently appealed

---

[44]  This refers to three-judge panels established within the district courts exclusively for handling appellate cases.

[45]  2020 Judicial Yearbook, National Court Administration, 2020, pg 795

[46]  2020 Judicial Yearbook, National Court Administration, 2020, pg 809

[47]  2020 Judicial Yearbook, National Court Administration, 2020, pg 809

to the appellate court and then to the Supreme Court (which is the highest court), adjudication would take an average of 587.2 days (approximately 1 year and 7 months).   From an international perspective, this is regarded as a considerably prompt proceeding.   In this connection, Korea ranked number 2 worldwide in the sector of "Enforcing Contracts" in the "Ease of Doing Business Rankings" released by the World Bank.[48]

## B.2. Procedural issues that may arise in the course of litigation

60. Defendant's counsel asked me to provide my view focusing on two procedural issues which may arise should Plaintiffs file a lawsuit in Korea.   One issue is whether Korean court would have jurisdiction over the future Korean litigation, and the other issue is whether sovereign immunity[49] may be applied in this case.

## B.2.1. International jurisdiction of Korean courts

61. Act on Private International Law ("APIL") is the law which addresses the issue of jurisdiction of Korean courts over cases that have a foreign element (hereafter, "international jurisdiction").   Article 2, Paragraph 1 of APIL provides as follows: "A court shall have the international jurisdiction where a party or a case in dispute is substantively related to Korea.   The court shall follow reasonable principles, consistent with the principles as to how international jurisdiction should be exercised, in determining whether there exists a substantial connection." A "substantial connection" in this context means that there is a connection between the party or the case in dispute and Korea which is sufficient to justify the exercise of jurisdiction by a Korean court.   A court should apply reasonable principles consistent with the principles as to how international jurisdiction should be exercised, such as fairness to the parties, appropriateness of trial, swiftness and economy, in determining whether there is a substantial connection.   To look at this in more detail, not only personal interests such as fairness to the parties, convenience, and predictability, but also the interests of the court or the country, such as appropriateness of trial, swiftness, efficiency, and effectiveness of the judgment should be considered together.[50]

62. Article 2, Paragraph 2 of APIL provides further, "A court shall determine whether or not it has international jurisdiction taking into consideration the jurisdictional provisions in Korean law and shall also sufficiently take into consideration the special nature of international jurisdiction in light of the purport of Paragraph 1."   This

---

[48] https://www.doingbusiness.org/en/rankings. For reference, Singapore is ranked number 1.
[49] This is also referred to as state immunity.
[50] Supreme Court Decision 2016*Da*33752 Decided June 13, 2019.

provision thus directs Korean courts to consider the jurisdictional provisions in Korean law when determining whether or not there is a substantial connection provided in Paragraph 1, and as such, the jurisdictional provisions in the Civil Procedure Act serve as the most important or the most basic standard in determining international jurisdiction.    However, since these jurisdictional provisions concerning venue were adopted from a Korean perspective, when determining    international jurisdiction,    Korean courts may modify these provisions as necessary consistent with the principles as to how international jurisdiction should be exercised, taking into account the legal nature of the given case, other individual and specific circumstances, and the special nature of international jurisdiction.[51]

63. Article 2 of the Civil Procedure Act provides, "A lawsuit is subject to the jurisdiction of a court at the place where a general jurisdiction over the defendant is located." While Article 3 of the Civil Procedure Act provides, "General jurisdiction in the case of an individual shall be determined based on his/her domicile," Article 5, Paragraph 1 of the Civil Procedure Act provides, "General jurisdiction in the case of a corporation, or other association or foundation, shall be determined based on the location of its principal place of business or office, or based on the address of the principal officer if there is no place of business or office."    The reason for requiring a plaintiff to file a lawsuit with a court located at the defendant's domicile, principal place of business or office, is because this is consistent with "convenience of the parties" in allocating jurisdiction.    Therefore, the place where a party's activities mainly take place, i.e., the center of one's life, may be regarded as the most general and universal basis for land-based jurisdiction.[52]

64. Defendant in this case is a corporation whose principal place of business or office is located in Korea.    Considering together the position taken by the APIL and the Civil Procedure Act, the fact that the general jurisdiction over Defendant is in Korea may serve as a strong basis for recognizing the international jurisdiction of a Korean court. Korean Supreme Court has held that, since Korean court's international jurisdiction is not exclusive jurisdiction but rather, can co-exist with another court's jurisdiction, the jurisdiction of a Korean court should not be denied simply based on the fact that a court in another State is more convenient than a Korean court from the perspective of geography, language, or communication.[53]    Therefore, even assuming the U.S. court has jurisdiction over the litigation in the current case, this would not immediately result in negating the international jurisdiction of a Korean court.    In my view, there

---

[51]  Supreme Court Decision 2016*Da*33752 Decided June 13, 2019; Supreme Court Decision 2017*Meu*12552 Decided February 4, 2021.
[52]  Supreme Court Decision 2016*Da*33752 Decided June 13, 2019.
[53]  Supreme Court Decision 2016*Da*33752 Decided June 13, 2019.

would not be much difficulty in recognizing that a Korean court has international jurisdiction over the future Korean litigation.

### B.2.2. Possibility of application of sovereign immunity

65. Next, I turn to the issue of sovereign immunity.   The sovereign immunity theory becomes an issue in connection with whether it is possible to bring a lawsuit against a State.   As such, this theory would not directly become an issue in the future Korean litigation where Defendant is not a State.   However, the Iranian government serves as an important axis in the underlying facts of this lawsuit, and the Korean government is the largest shareholder of Defendant in future Korean litigation.   I understand that Defendant's counsel asked me for my view on the sovereign immunity theory as an issue in this case from such perspective.

66. Korea does not have a statute that concerns the issue of sovereign immunity. However, the Korean Supreme Court and district courts have expressed their position on sovereign immunity.   The Supreme Court has declared the following jurisprudence: "Although, under the customary international law, in principle, one State's sovereign act may be said to be exempt from *facultas jurisdictionis* (national jurisdiction) of another State's court, it is difficult to say that even the private-law act of a State is exempt from *facultas jurisdictionis* of another State's court under today's international law or international custom."[54]   The Supreme Court is regarded to have adopted a so-called limited theory of sovereign immunity where it recognizes the sovereign immunity theory in principle but excludes certain acts of countries from sovereign immunity depending on the nature of the acts.[55]

67. In a case where 12 comfort women filed a lawsuit seeking damage compensation against the Japanese government, the Seoul Central District Court in Korea rendered the verdict on January 8, 2021 in favor of the plaintiffs, and the decision became final.[56]   Under the premise that "the act at issue in this case constitutes a crime against humanity which the Japanese Empire intentionally, systematically, and broadly committed in violation of international *jus cogens*" the court held, "although the act at issue in this case was a sovereign act by a State, sovereign immunity cannot be applied, and Korean court has *facultas jurisdictionis* over the defendant on an exceptional basis." The court stated further, "Sovereign immunity theory means showing respect to sovereign nations and not forcing them to obey *facultas*

---

[54] Supreme Court Decision 97*Da*39216 Decided December 17, 1998 *en banc* judgment.
[55] Tae-Chun Kim, "Exemption of Jurisdiction of Foreign Country − Regarding Legal Grounds and Scope −", Justice Vol. 34 No. 3 (2001), pg 295;Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 39.
[56] Seoul Central District Court Decision 2016*Gahap*505092 Decided January 8, 2021.

*jurisdictionis* of another State without reason; the theory was not established to give an opportunity to a State that caused extensive harm to individuals of another State in violation of international *jus cogens* which serves as the absolute norm, to hide behind sovereign immunity theory and avoid having to make compensation and restitution."

68. For reference, the Korean Constitutional Court held as follows: "The claim for damages that comfort women, who are victims of crime against humanity committed by the Japanese army, hold against the State of Japan is a property right that is guaranteed under the Constitution, and furthermore, effecting such damage claim has the meaning of retroactively recovering the dignity, value, and physical freedom as human beings.   Therefore, preventing the realization of such damage claim is directly related to the infringement of dignity and value as human beings which is fundamental under the Constitution."[57]

69. Taking together the above positions of the Korean Supreme Court, lower court, and the Constitutional Court, Korean courts' position may be understood as accepting the sovereign immunity theory generally but not applying it when the act at issue constitutes (i) a private-law act by a State, or (ii) a crime against humanity, even in the case the act falls under a sovereign act by the State.   Also, sovereign immunity theory need not be applied when a foreign State voluntarily waives sovereign immunity.[58]

70. Involvement in terrorism by the Iranian government as alleged by Plaintiffs in this case would fall under a crime against humanity. It can be said that a State that commits such a crime against humanity should not enjoy the benefits of sovereign immunity in a lawsuit related to such act, and in light of the recent decisions by the Korean courts, the Korean courts appear likely to exercise jurisdiction over a case that concerns such a crime against humanity.   In such instance, whether the enforcement against the State will be legally permitted or is realistically possible would not have any effect on the exercise of *facultas jurisdictionis*.   This is because the issue of litigation is distinguished from the issue of enforcement under Korean law.

71. In this case, Plaintiffs filed the lawsuit not against the Iranian government but against the Industrial Bank of Korea, and the defendant in future Korean litigation will also be the Industrial Bank of Korea. Since Defendant is a corporation, not a State, it is not subject to sovereign immunity in the first place.   In this respect, there is no issue at all in Plaintiffs filing a lawsuit against Defendant.   This does not change even though

---

[57] Constitutional Court of Korea Decision 2006*Hunma*788 Decided August 30, 2011.
[58] Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 47.

Defendant's largest shareholder is the Korean government.[59]    Shareholders and the corporation are wholly separate with different legal personalities, and therefore, even if the shareholder is a State, this does not give the corporation the status as a State. For this reason, sovereign immunity does not serve as an obstacle to future Korean litigation in any way.

### III. Enforcement of the final and conclusive U.S. court judgment Plaintiffs obtained against the Iranian government

### A. Recognition and enforcement of a foreign judgment

72. Next, I turn to the possibility of enforcing in Korea the final and conclusive U.S. court judgment Plaintiffs obtained against the Iranian government.    This issue may be divided into (i) whether the final and conclusive U.S. court judgment also has effect in Korea and (ii) if so, how Plaintiffs may be able to effect enforcement based on such final and conclusive U.S. court judgment.    The first issue deals with recognition and the second issue deals with enforcement, which I will discuss separately in the sections below.

### A.1. Recognition of a foreign judgment

73. Under the Korean Civil Procedure Act, if a judgment which was rendered by a foreign court that is final and conclusive or which is deemed to have the same effect as a final and conclusive judgment (hereinafter referred to as "final judgment" for convenience), satisfies certain prescribed requirements, it is recognized to have effect in Korea (Article 217, Paragraph 1 of the Civil Procedure Act).    To elaborate, if a final judgment from a foreign court satisfies all of the following four requirements, it would be recognized to have the same force in Korea: (i) the international jurisdiction of such foreign court is recognized under the principle of international jurisdiction pursuant to Korean laws or treaties, (ii) the defeated defendant was served the complaint or a similar document, and notification or order to attend the hearing, allowing him/her sufficient time for defense, by a lawful method, (except in cases where service was made by public notice or other similar means), or responded to the lawsuit without having been served such documents, (iii) the recognition of such final judgment is not contrary to sound morals or other social order of Korea considering the substance of such final judgment and the litigation procedures, and (iv) there is mutual guarantee (reciprocity), or the requirements for recognition of the final

---

[59]  For reference, the Korean government held 63.5% of Defendant's shares as of December 31, 2020. *See* relevant information in 2020 Business Report published by Defendant.

judgment in Korea and in the foreign State where the foreign court is located is not so different as to clearly lack balance, and there are no substantial differences between the two in important aspects.

74. Recognizing the effect of a foreign judgment in Korea is referred to as "recognition."[60] It is not necessary to undergo a special process or trial to obtain recognition.[61] In other words, as long as the foreign judgment satisfies the requirements under Article 217, Paragraph 1 of the Civil Procedure Act, the foreign judgment is automatically recognized to have the same force in Korea.[62] This is referred to as "automatic recognition system." In this aspect, recognition is distinguished from enforcement. As discussed below, it is necessary to separately obtain an enforcement decision in order to effect enforcement in Korea based on a final judgment rendered by a foreign court.

75. A final judgment by a U.S. court constitutes a final judgment under Article 217, Paragraph 1. There is no difference whether the judgment was rendered by a federal court or by a state court in the United States. In fact, the Korean Supreme Court previously determined with respect to a judgment by a New York state court[63], a judgment rendered by a Minnesota state court[64], a judgment rendered by an Oregon state court[65], a judgment rendered by a Kentucky state court[66], and a judgment rendered by a federal court in California[67] that these judgments are all satisfy the requirements under Article 217, Paragraph 1 of the Civil Procedure Act and are accordingly recognized to have effect in Korea. Although the Minnesota state court judgment mentioned above was in the form of a default judgment where the defendant received the complaint but did not respond, the judgment was nevertheless recognized to have effect [in Korea].

76. Whether the final U.S. court judgment Plaintiffs obtained against the Iranian government in this case satisfies all of the requirements under Article 217, Paragraph 1 of the Civil Procedure Act would need to be separately reviewed. However, I believe the final judgment Plaintiffs obtained is likely to be recognized in Korea considering the following factors, among others: (i) the Korean Supreme Court has

---

[60] Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 343; Chun Soo Ahn, Private International Law, Bobmunsa, 2017, pg 372.

[61] Editor in Chief Il-Young Min, Civil Execution Act, 4th Edition, Korean Society for Judicial Administration, 2018, pg 85 (parts written by Won Lee).

[62] Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 408.

[63] Supreme Court Decision 88*Meu*184, 191 Decided March 14, 1989.

[64] Supreme Court Decision 96*Da*47517 Decided September 9, 1997.

[65] Supreme Court Decision 2012*Meu*66, 73 Decided February 15, 2013.

[66] Supreme Court Decision 2015*Da*207747 Decided January 28, 2016.

[67] Supreme Court Decision 2012*Da*23832 Decided May 30, 2017.

-25-

already recognized the effect of final judgment rendered in the state and federal courts in the United States; (ii) even if a party did not respond to the complaint, as long as the party was given an opportunity for defense, the effect of the final judgment is not denied; and (iii) a judgment that ordered compensation for losses suffered by victims of terrorist attacks is unlikely to be regarded in Korea as being contrary to sound morals or other social order of Korea.

77. Notably, Article 217-2, Paragraph 1 of the Korean Civil Procedure Act provides, "Where a final judgment concerning compensation of damages gives rise to an outcome that is clearly contrary to the general order under Korean law or the international treaties that Korea has entered into, a court shall not recognize the final judgment in whole or in part." This provision was newly inserted when the Civil Procedure Act was amended in 2014 for the purpose of appropriately limiting the recognition of a final judgment rendered by a foreign court that awarded punitive damages.[68]

78. The Korean Supreme Court stated as follows concerning the above provision, "Article 217-2, Paragraph 1 of the Civil Procedure Act was adopted to limit to an appropriate degree the recognition of final judgment of a foreign court that awarded damages which exceed compensatory damages (e.g., which awarded punitive damages). Therefore, if the final judgment of a foreign court only ordered the damages that a party actually incurred to be compensated, the recognition of such judgment should not be limited based on Article 217-2, Paragraph 1 of the Civil Procedure Act."[69] Given this decision, if the final U.S. court judgment Plaintiffs obtained against the Iranian government includes punitive damages, there is a possibility that recognition may be limited. As for compensatory damages, it is the position of the Supreme Court that recognition and enforcement may not be limited based on Article 217-2 of the Civil Procedure Act. Considering the purport of this precedent and the principle that prohibits a review of the merits [of the foreign judgment], it is my view that limiting the recognition and enforcement of compensatory damages for violation of public policy prescribed under Article 217, Paragraph 1 of the Civil Procedure Act would not be permitted.

79. The Korean Civil Act does not contain any general provisions concerning punitive damages. Therefore, it is difficult to state as a general matter that punitive damage awards have been wholly accepted under Korean law. However, recently, there has

---

[68] Kwang Hyun Suk, "Recognition and Enforcement of Foreign Judgments Ordering Payment of Compensation for Damages: With a Focus on the Amendment of Civil Procedure Act in 2014 and Changes of Court Precedents thereafter," Study on Private International Law Vol. 23 No. 2 (December 2017), pg 251.
[69] Supreme Court Decision 2015*Da*1284 Decided October 15, 2015; Supreme Court Decision 2015*Da*207747 Decided January 28, 2016.

been a clear tendency of adopting non-compensatory damages for unlawful acts that are committed intentionally or through gross negligence in several specialized laws, which is punitive in nature.   For the most part, these laws permit the courts to order damages amounting to three to five times the actual loss.   The purpose behind adopting such compensatory system is to go beyond the traditional compensatory system which sought to compensate actual losses and to actively utilize damage compensation as a means to penalize, regulate or prevent wrongdoing.

80. Examples of laws which have adopted this system include the following: Personal Information Protection Act, Product Liability Act, Environmental Health Act, Public Interest Reporter Protection Act, Patent Act, Trademark Act, Design Protection Act, Plant Variety Protection Act, Motor Vehicle Management Act, Act on Prevention of Divulgence and Protection of Industrial Technology, Fair Transactions in Subcontracting Act, Credit Information Use and Protection Act, Fair Transactions in Franchise Business Act, Fair Agency Transaction Act, Act on the Protection of Fixed-Term and Part-Time Employees, Act on Fair Transactions in Large Retail Business, Act on the Fostering of Mutually Beneficial Cooperation between Large Enterprises and Small and Medium Enterprises, and Monopoly Regulation and Fair Trade Act.

81. In addition, a "Bill for Punitive Damages" (Bill no. 2103916) was proposed on September 15, 2020, which would expand the imposition of punitive damages to general cases where a party committed an unlawful act and caused losses to another, either with the intent of infringing on another party's rights or interests, or with knowledge that his/her action would infringe on another party's rights or interests. The bill is currently pending in the Korean National Assembly.   Furthermore, on September 28, 2020, in issuing a legislative notice concerning an upcoming amendment to the Commercial Code, the Korean Ministry of Justice stated that it plans to actively pursue the adoption of a punitive damage system.

82. As seen above, a compensation system which is punitive in nature has already been adopted in many areas, and there are continued legislative efforts to extend such system to all areas.   Therefore, it can no longer be definitively concluded that punitive damage awards "give rise to an outcome that is clearly contrary to the general order under Korean law or the international treaties that Korea has entered into" as prescribed under Article 217-2, Paragraph 1 of the Korean Civil Procedure Act, and it can be said that different views may be raised in this environment..

83. Even in the early stage when the treble damage system was just beginning be adopted in Korea, an assertion was made that a final judgment by a foreign court which ordered non-compensatory damages (e.g., treble damages) should not be regarded as "giving

rise to an outcome that is clearly contrary to the general order under Korean law or the international treaties that Korea has entered into" prescribed under Article 217-2 of the Civil Procedure Act.[70]   Such view has become all the more persuasive given the recent changes where [the non-compensatory damage] system is being increasingly applied in more sectors, scope of compensation is expanding, and furthermore, there is even a legislative movement to apply such system to damage compensation in general rather than only to certain individual sectors.

84. In conclusion, although I am unable to definitively state that a final judgment by a foreign court which awarded punitive damages would always have full force in Korea, considering the recent trend in Korean legislation surrounding punitive damages, it is my view that the possibility of Korean courts recognizing such final judgment by a foreign court in whole or in part has considerably increased compared to the past.

## A.2. Enforcement of a foreign judgment

85. An enforcement decision must be obtained from a Korean court to effect compulsory execution based on a final judgment rendered by a foreign court that was recognized in Korea (Article 26, Paragraph 1 of the Civil Execution Act).   Unlike recognition which is automatic without having to go through a separate trial process as long as the prescribed requirements are satisfied, one must through the trial process to obtain an enforcement decision in the case of enforcement.   This is because compulsory execution within a territory involves a unique and exclusive right of a State, and greater care should be taken in allowing enforcement based on a final judgment rendered by a foreign court.

86. A lawsuit seeking an enforcement decision would be dismissed if (i) the plaintiffs fail to prove that the final judgment by a foreign court is in fact final and/or (ii) the final judgment by a foreign court fails to meet the requirements under Article 217 of the Civil Procedure Act (Article 27, Paragraph 2 of the Civil Execution Act). Enforcement decisions are granted without a review as to whether or not the foreign judgment was properly rendered (Article 27, Paragraph 1 of the Civil Execution Act).[71]   Therefore, a court that hears a lawsuit seeking an enforcement decision may not review the merits of the claim regarding which a foreign court rendered a final

---

[70] Gyu-Ho Lee, "Analysis and Future Prospect of Recognition and Enforcement of Foreign Judgments under the Korean Civil Procedure Act and Civil Enforcement Act Revised in 2014," Civil Procedure Vol. 19 No. 1 (2015), pg 132-133; Kwang Hyun Suk, "Recognition and Enforcement of Foreign Judgments Ordering Payment of Compensation for Damages: With a Focus on the Amendment of Civil Procedure Act in 2014 and Changes of Court Precedents thereafter," Study on Private International Law Vol. 23 No. 2 (2017), pg 277.
[71] Supreme Court Decision 2017*Da*224906 Decided July 23, 2020.

judgment.    The court would simply review whether the requirements under Article 217 of the Civil Procedure Act discussed above were satisfied to confirm whether the final judgment by a foreign court has effect in Korea.[72]

87. In the case of a lawsuit seeking an enforcement decision, the district court where there is generally-affiliating basis for jurisdiction over the debtor would exercise jurisdiction. If there is no generally-affiliating basis for jurisdiction, then the district court that has jurisdiction over lawsuits against the debtor would exercise jurisdiction in accordance with Article 11 of the Civil Procedure Act[73] (Article 26, Paragraph 2 of the Civil Execution Act).    As for litigation procedures, the ordinary court adjudication procedures apply to lawsuits seeking an enforcement decision. [74] Similarly, ordinary procedures for compulsory execution under the Civil Execution Act apply to execution under an enforcement decision. [75]    For example, when effecting compulsory execution under an enforcement decision, it is necessary to obtain a title of execution similar to what would happen when effecting compulsory execution under a final judgment in Korea (Article 30 of the Civil Execution Act).

## B. Possibility of enforcing against the Iranian assets located in Korea

88. As seen above, a final judgment by a foreign court would also have effect in Korea as long as the requirements under Article 217 of the Civil Procedure Act are satisfied, and an enforcement decision obtained in accordance with Article 26 of the Civil Execution Act may serve as a basis for compulsory execution.    In this respect, Plaintiffs would not face any special difficulty in obtaining recognition of the final judgment rendered in the U.S. or in obtaining an enforcement decision.

89. However, whether Plaintiffs would be able to effect compulsory execution over Iranian assets located in Korea warrants a separate review.    This is because the issue of sovereign immunity may arise in respect of compulsory execution.    Compulsory execution involves actual compulsion, unlike in civil litigation.    Therefore, even if sovereign immunity does not apply to *facultas jurisdictionis*, this does not necessarily lead to the conclusion that sovereign immunity also should not apply to compulsory execution.

---

[72] Editor in Chief Il-Young Min, Civil Execution Act, 4th Edition, Korean Society for Judicial Administration, 2018, pg 83-84 (parts written by Won Lee).
[73] Civil Procedure Act, Article 11 (Special Forum of Location of Property): A lawsuit concerning a property right against a person who has no domicile in the Republic of Korea or against a person whose domicile is unknown, may be brought to the court located in the place of the objects of a claim or those of the security, or any seizable property of a defendant.
[74] Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 420.
[75] Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 422.

90. Korea does not have a separate law concerning whether compulsory execution is permitted over a foreign State's assets.   Also, unlike the issue of [application of sovereign immunity to] *facultas jurisdictionis*, there are no Supreme Court precedents concerning the application of sovereign immunity to compulsory execution over foreign government's assets located in Korea.   Therefore, if this is raised as an issue, Korean courts would determine whether or not to allow compulsory execution in light of existing treaties, customary international laws, or related discussion.

91.   Article 22, Paragraph 3 of Vienna Convention on Diplomatic Relations states that "The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution."   Since Korea is a party to this convention, property related to the mission of the Iranian government located in Korea would not be subject to compulsory execution.

92.   Article 28, Paragraph 2 of United Nations Convention on the Law of the Sea provides, "The coastal State may not levy execution against or arrest the ship for the purpose of any civil proceedings, save only in respect of obligations or liabilities assumed or incurred by the ship itself in the course or for the purpose of its voyage through the waters of the coastal State."   Since Korea is a party to this convention, compulsory execution of ships belonging to the Iranian government would be restricted under this treaty.

93. In contrast, there is a global tendency to allow compulsory execution of a State's assets which are utilized for commercial activities or commercial purposes despite the theory of sovereign immunity.   For example, Article 19, Paragraph (c) of United Nations Convention on Jurisdictional Immunities of States and Their Property states that property of a State that is used for a purpose other than non-commercial, government purposes may be subject to compulsory execution.   Article 13, Paragraph 4 of State Immunity Act 1978 of the United Kingdom and §1610(a) of the Foreign Sovereign Immunities Act of 1976 provide similarly.   In light of the above, it can be said that customary international laws do not provide a flat exemption from compulsory execution simply based on the fact that an asset belongs to a foreign State, but rather, a "limited" sovereign immunity theory applies to compulsory execution procedures, similar to the case of court adjudication procedures.[76]

---

[76]  Younghwa Moon, "Compulsory Execution of Foreign State's Assets based on the Civil Execution Act," SungKyunKwan Law Review Vol. 27 No. 2 (2015), pg 300; *See also* Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 52 which states similarly.

94. A treatise which discusses the position taken by Korean law on the above issue explains the principle, "Even in the case of foreign State assets that are located in the State where enforcement takes place (or State where litigation took place), if the assets are used for a sovereign act or sovereign activity by the foreign State, the assets may not be subject to compulsory execution under customary international law" and then explains further, "Compulsory execution may be possible for foreign State's assets located in Korea, such as real estate, ships (e.g., commercial ships, cruises), planes, rights to deposits placed in financial institutions, cash, movable goods, except in cases where such assets are utilized for sovereign acts."[77]   I believe the above statement accurately explains the position taken by existing Korean law on this issue.

95. In sum, whether Plaintiffs would be permitted to effect compulsory execution with respect to Iranian governments assets located in Korea would be determined based on how such assets are used.   Compulsory execution would not be possible for assets falling under types of assets for which compulsory execution is prohibited under treaties, such as the diplomatic offices of the Iranian government and related properties, or assets that are utilized in sovereign acts by the Iranian government.   However, Plaintiffs would be able to effect compulsory execution for assets that do not fall under the above categories.   In the case of Iranian government assets deposited in Korean financial institutions, compulsory execution would not be possible[78]   if funds have been deposited for the purpose of expending on maintaining embassy personnel or physical facilities since the bank account deposits in that case would be considered property used for diplomatic activities.   However, if the funds were deposited and maintained to settle commercial activities that the Iranian government engages in, such property would not be exempt from compulsory execution.

This legal expert opinion was prepared based on my professional knowledge, and I state under penalty of perjury under the laws of the United States of America that the foregoing truly and correctly reflects my views and conclusions in accordance with my knowledge and conscience.

April 12, 2021

Seoul, South Korea,
Youngjoon Kwon _____

---

[77]  Younghwa Moon, "Compulsory Execution of Foreign State's Assets based on the Civil Execution Act," SungKyunKwan Law Review Vol. 27 No. 2 (2015), pg 300; *See also* Kwang Hyun Suk, International Civil Procedure, Parkyoungsa, 2012, pg 52 which states similarly.

[78]  Younghwa Moon, "Compulsory Execution of Foreign State's Assets based on the Civil Execution Act," SungKyunKwan Law Review Vol. 27 No. 2 (2015), pg 301.

# Curriculum Vitae

**Basic Information**

Name: Youngjoon Kwon                Position: Professor, School of Law, Seoul National University

Date of Birth: October 14, 1970

Address: #314, Building 17, Seoul National University School of Law, 56-1, Shinlim-dong, Kwanak-Gu, Seoul (02-880-4081)

E-mail: youngjoon@snu.ac.kr

**Education**

1994 LL.B., College of Law, Seoul National University (with distinction: *summa cum laude*)

2000 LL.M., Graduate School of Law, Seoul National University

2004 LL.M., Harvard Law School

2006 SJD, Graduate School of Law, Seoul National University

**Experiences**

1993 Passed the National Judicial Examination

1996 Judicial Research and Training Institute

1996 Judge Advocate, Korean Navy

1999 Judge, Seoul District Court

2002 Presiding Judge, Eastern Branch Court of Seoul District Court

2003 Presiding Judge, Daegu District Court

2006 Judge of Planning and Coordination Office, Supreme Court of Korea, National Court Administration

2006 Assistant Professor, College of Law, Seoul National University

2010 Associate Professor, School of Law, Seoul National University

2010 Visiting Scholar, Duke University Law School and Max Planck Institute, Hamburg

2011 Visiting Scholar, Max Planck Institute, Hamburg

2012 Vice Dean for Planning and International Affairs, School of Law, Seoul National University

2012 Director, Law and Technology Center, Seoul National University

2015 Associate Professor, School of Law, Seoul National University

2017 Visiting Scholar, University of Tokyo

2018 Visiting Professor, Harvard Law School (Lecture-English)

2018 Vice Dean for Academic Affairs, School of Law, Seoul National University

2019 Visiting Professor, University of Tokyo (Lecture-Japanese)

**Books and Articles**

**1) Books**

Copyright Infringement: Substantial Similarity Standard (2007); Copyright Law Commentary (Coauthored) (2008); Entertainment Law (Coauthored) (2008); Comparative Legal Research on Criminal Liability of Copyright Infringement (Coauthored) (2009); Litigation in Korea (Coauthored) (2010); Law and Legal Institutions of Asia (Coauthored) (2011); Changes in Rights and Relief (Coauthored) (2011); Law and Information in the Risk Society (Coauthored) (2011); Legal Infrastructure for Foreign Investment (Coauthored) (2012); Introduction to Korean Law (Coauthored) (2012); Study on the UNCITRAL Guide on Implementation of a Security Rights Registry (2013); Law and Policy on Personal Information Protection (Coauthored) (2014); Study on UNCITRAL Model Law on Security (2014); Civil Law – Cases and Materials – (Coauthored) (2015); Selection of One Hundred Court Decisions on Information Law II (Coauthored) (2016); Data Economy (Coauthored) (2017); Insurance Claim and Prescription (2017); Formation and Third Party Beneficiaries (Chapter Contributor) (2018); Commentary on the Amendment Draft of the Civil Code (General Provisions & Law of the Rights in Rem) (2017); Study on the UNCITRAL Model Law on Secured Transactions (2018); Constitutional Law and Private Law (Coauthored) (2018); Selection of One Hundred Court Decisions on Advertisement Law (2019); Analysis on the Supreme Court Decisions on the Civil Code I (2019); Study on the Proposed Amendment of the Civil Code (Coauthored) (2019); Civil Law and Insolvency Law (Coauthored) (2020); Commentary on Civil Code (General Provisions 1) (2019); Fundamental Principles of Civil Law (2020); Online Commentary on Family Relation Registration Act (Lawnb Onju) (Editor In Chief) (2020); Contents of Contracts and Unfair Terms (Chapter Contributor) (2020).

**2) Articles**

*Doctrinal Framework and its Direction regarding Data Attribution, Protection, and Transaction,* Comparative Private Law, Vol. 28, No. 1. (Feb. 2021)

*A Review on Korean Legal Regime on Security Rights on Movable and Receivable in light of International Trend,* Bubjo, Vol 743. (Oct. 2020)

*A Review on the Duty of Explanation of Standard Form Contract,* Juris, Vol. 53. (Sep. 2020)

*Performance Interest, Reliance Interest, and Double Compensation: In Relation to Damages Claim on Expenditure of the Costs and Lost Profit,* human Rights and Justice, Vol 491 (Aug. 2020)

*General Review on the Supreme Court Decisions on Civil Cases in the Year 2019,* Seoul Law Journal, Vol 61. No. 1. (Mar. 2020)

*General Review on the Supreme Court Decisions on Civil Cases in the Year 2018,* Seoul Law Journal, Vol 60. No. 1. (Mar. 2019)

*Korean Civil Law and Private Autonomy, 70 Years of Korean Law, Changes and Prospects.* Collection of Articles in Commemoration of Cheonghun Professor Jeunghan Kim (Oct. 2018)

*Justification and Direction for Improvement regarding the Style and Structure of Written Judgments of the Korean Supreme Court,* Juris, Vol. 44 (Jun. 2018)

*The Validity of an Ipso Facto Clause,* Comparative Private Law, Vol 25. No. 2. (May 2018)

*General Review on the Supreme Court Decisions on Civil Cases in the Year 2017,* Seoul Law Journal, Vol 59. No. 1. (Mar. 2018)

*Justification, Scope, and Methodology of Privacy Protection,* Juris, Vol. 41 (Sep. 2017)

*An Overview on the UNCITRAL Model Law on Secured Transactions and its implication,* Comparative Private Law, Vol. 24, No. 2 (May 2017)

*A Journey to Elaborate Justice: Analysis of Civil Decisions by Supreme Court Justice Park, Byeongdae,* Collection of Articles in Commemoration of Supreme Court Justice Park, Byeongdae (May 2017)

*General Review on the Supreme Court Decisions on Civil Cases in the Year 2016,* Civil Law Journal, Vol 78 (Feb. 2017)

*On the Improvement of Law School Teaching,* Studies on Legal Education, Vol. 11, No. 3. (Dec. 2016)

*Reduction of Liquidated Damages ex officio and a Penalty Clause – The Issue of Analogical Application,* Justice Vol. 155 (Aug. 2016)

*Liability Concerning Autonomous Car Accident,* Civil Law Journal, Vol. 75 (Jun. 2016) (Coauthored with So Eun Lee)

*Introduction and Analysis of the Korean Civil Code Amendment Bill on the Right of Retention,* Seoul Law Journal Vol. 57, No. 2. (Jun. 2016)

*Thoughts on the Self-Determination Right to Personal Information and the Consent Regime,* Collection of Treaties (Jeonnam University) Vol. 36, No. 1. (Mar. 2016)

*Civil Law Jurisprudence, Individual and Community, and the Role of the Judiciary,* Comparative Private Law, Vol. 22, No. 4. (Nov. 2015)

*Interpretation of Insurance Clauses regarding Suicide and Disaster-related Compensation* Journal of Property Law, Vol. 32, No. 3. (Nov. 2015)

*Negligence in Tort Law and an 'Average Person',* Comparative Private Law, Vol. 22, No. 1 (Feb. 2015)

*Korean Civil Code Amendment Draft on Unjust Enrichment Law,* Seoul Law Journal, Vol. 55, No. 4 (Dec. 2014)

*Assessment of Damages in the Antitrust Case of Price Collusion,* Law and Economic Regulation, Vol. 7, No. 2 (Nov. 2014)

*The Abolition of the Customary Superficies and the Adoption of the Statutory Lease,* Civil Law Journal, Vol. 68 (Sep. 2014)

*Interpretation of a Best-Efforts Clause,* Seoul Law Journal Vol. 55, No. 3 (Sep. 2014)

*Study on the Draft of the Korean Civil Code Amendment on a Fraudulent Transfer,* Civil Law Journal, Vol. 66 (Mar. 2014) (Coauthored with Jin Soo Yun)

*Interpretation of a renegotiation clause in the long-term contract,* Study on Private Law Decisions, Vol. 36 (Feb. 2014)

*Recent Reform in Korean Legal Education,* Journal of Korean Law, Vol. 13, No. 2 (Dec. 2013)

*Contribution among Joint Tortfeasors under U.S. Law,* Civil Law Journal, Vol. 63 (Sep. 2013)

*A Study on Variable Statutory Interest Rate,* Comparative Private Law, Vol. 20, No. 1 (Feb. 2013)

*Changes in Economic Circumstances and the Response of the Civil Law,* Law & Policy, Vol. 12. No. 4. (Dec. 2012)

*Analysis on the Ownership of Private Land used as a Road,* Issues in the Civil Adjudication, Vol. 21 (Dec. 2012)

*Negligence Standard in Determining the Liability of the Personal Data Controller in case of Hacking,* Justice, Vol. 132 (Oct. 2012)

*Legal Analysis of Traditional Leasehold in Korea (Chonsegwon) from a Comparative Legal Perspective (*Arizona Journal of International and Comparative Law Vol 29. No. 2) (Aug. 2012) (Coauthored)

*Pure Economic Loss in American Law,* Civil Law Journal, Vol. 57 (Mar. 2012)

*Liability of Savings Bank Director in a Real Estate Project Finance,* Comparative Private Law Vol. 19, No. 1 (Feb. 2012)

*Patent Abuse and its Related Issues in Korea,* Industrial Property Law Journal Vol. 36 (Dec. 2011)

*Protecting Reliance in a Contractual Relationship,* Seoul Law Journal Vol. 52, No. 4 (Dec. 2011)

*The Indefeasibility of Real Estate Title,* Bupjo, Vol. 661 (Oct. 2011)

*Pure Economic Loss: A Korean Perspective* (Journal of Korean Law Vol 10, No. 2) (Jun. 2011)

*Theoretical Foundation of Contract Law and Its Implication* (Justice Vol. 124) (Jun. 2011)

*Harmonizing European Private Law* (Comparative Private Law, Vol. 18, No 1) (Mar. 2011)

*Contract-related issues concerning Cloud-computing* (Law & Technology Vol. 7, No. 2.) (Mar. 2011)

*The Doctrine of Changed Circumstance – From the Perspective of Risk-allocation,* (Civil Law Journal, Vol. 51) (Dec. 2010)

*Copyright and Ownership – From the Aspect of Monopoly and Public Domain –* (Economic Regulation and Law, Vol. 3, No. 1.) (May 2010)

*The Relationship between Prescription and Good Faith Doctrine* (Journal of Property Law, Vol. 26, No. 1.) (Jun. 2009)

*Decision-making Process of the Reconstruction of the Residence Complex – An Analysis of the Court Decisions* (Civil Law Journal, Vol. 45) (Jun. 2009)

*Protecting Personal Information and its Civil Remedy* (Bupjo, Vol. 630) (Mar. 2009) (Coauthored with Sangjo Jeong)

*Determining Unlawfulness through Balance of Interests Regarding the Right to One's Image and the Right of Privacy* (Study on Private Law Decisions, Vol. 31) (Feb. 2009)

*Theoretical Foundation of Tort Law and Its Implication – On the Paradigm of Prevention and Recovery –* (Justice Vol. 109) (Feb. 2009)

*Theory, Doctrine and Practice in the Civil Adjudication* (Seoul Law Journal Vol. 48, No. 3) (Sep. 2008)

*Torts and Injunction* (Law & Technology Vol. 4, No. 2.) (Mar. 2008)

*Litigating in Korea: A General Overview of the Korean Civil Procedure (*Journal of Korean Law Vol. 7, No. 1) (Dec. 2007)

*Accessing Information on the Internet: Shaping the Standard for Determining its Unlawfulness* (Comparative Private Law, Vol. 14, No 3) (Sep. 2007)

*Trespass to Chattel and its Modern Application in the U.S. Tort Law* (IT and Law) (Aug. 2007)

*Trustee in a Bankruptcy Procedure as a Bona Fide Purchaser* (Bupjo Vol. 608) (May 2007)

*Using Private Land as a De Facto Road: Critical Analysis of the Korean Supreme Court Decisions on Unjust Enrichment* (Seoul Law Journal Vol. 47, No. 4) (Dec. 2006)

*Freedom of Expression and Protection of Honor Online* (Justice Vol. 91) (Jun. 2006)

*Tortious Liability of Internet Service Provider for Defamation: A Korean Perspective* (Journal of Korean Law, Vol. 5, No. 2) (Jun. 2006)

*Liability of Internet Service Provider for Defamation* (Law & Technology, Vol. 2, No. 2) (Mar. 2006)

Study on Substantial Similarity (Seoul National University Ph.D Dissertation) (Feb. 2006)

*Some Thoughts on UCITA* (Software & Law, Vol. 1) (Jun. 2002) (Coauthored with Tae Uk Kang)

*Analysis on Design Patent Infringement Litigation: Centered on the Concept of Similarity of Designs* (Collection of Articles in Commemoration of Simdang Professor Sang Hyun Song) (Jan. 2002)

*Intellectual Property Related Issues concerning Domain Names* (Collection of Judicial Articles, Vol. 31) (Dec. 2000)

*Liability of Online Service Provider regarding Copyright Infringement* (Seoul National University Master's Degree Dissertation) (Feb. 2000)

**Awards**

2007 Teaching Award (School of Law, Seoul National University)

2008 Teaching Award (School of Law, Seoul National University)

2008 Yulchon Academic Award (Korean Civil Law Association)

2008 Outstanding Book (National Academy of Science) – A Review on Copyright Infringement (Independent)

2009 The Article of the Year (Korean Legal Center)

2015 The Best Article Award (Law Research Institute, Seoul National University)

2017 Excellent Article Award (Society for Legal Education)

2020 Outstanding Book (National Academy of Science) – Study on the Amendment of Civil Law (Coauthored)

**Other**

Committee Member, Presidential Council on Intellectual Property (Present)

Member, The International Trade Law Research Group, The Ministry of Justice (Present)

Vice President, The Data Law and Policy Association (Present)

Committee Member, Personal Information Protection Committee, Naver (Present)

Member, Information Technology Committee, Seoul National University (Present)

Member, Promotion of Affiliated School Committee, Seoul National University (Present)

Member, Entrance Exam Management Committee, Seoul National University (Present)

Director, Center for Future Scholars, Seoul National University School of Law (Present)

Arbitrator, Korean Commercial Arbitration Board (Present)

Mediator, Singapore International Mediation Centre (Present)

Representative of the Republic of Korea to The United Nations Commission for International Trade Law (UNCITRAL), Security Area Working Group

Committee Member, Financial Development Deliberation Commission, Financial Services Commission

Member, Supreme Court Judge Appointment Procedure Advisory and Research Committee

Director, Academic Affairs, Seoul National University School of Law

Director (Dean), Planning Department, Seoul National University School of Law (College of Law)

Auditor, Technology Holding Company, Seoul National University

Director, Technology and Law Center, Seoul National University

Committee Member, Korea Copyright Committee

Committee Member, National Legal Policy Advisory Committee, Ministry of Justice

Committee Member, The Korean Civil Code Amendment Committee, Ministry of Justice

Member, Autonomous Convergence Future Forum, Ministry of Land, Infrastructure, and Transport

Member, Legal System Subcommittee of the Automobile Convergence Alliance

Secretary, Editor, Case Director, Academic Director, International Division of the Korea Association of Civil Law

Member, The Korean Civil Law Association, The Comparative Private Law Association, The Civil Case Study Forum, Academy of Private Case Law Studies, Academy of Special Proceedings, The Korean Society of Property Law, The Law and Economics Association, The Law and Philosophy Association (Present)

Editor (Director), The Journal of Property Law, BFL (Business/Finance/Law), Law & Technology, The Comparative Private Law Association

Committee Member, Residence Management Committee, Seoul National University

Research Secretary, Law Research Institute, Seoul National University

Member, Career Development Center

Committee Member, Incorporation Implementation Committee, Seoul National University

Committee Member, Future Research Committee, Seoul National University

Committee Member, Planning Committee, Seoul National University

CERTIFICATION

I, the undersigned, declare under penalty of perjury that I am a professional translator and I have received *Juris Doctor* from American University Washington College of Law and I am currently licensed to practice law in the State of Washington.    I am over 18 years of age and not a party to the action *Winifred Wairimu Wamai, et al. v. Industrial Bank of Korea*, *Case No. 21-cv-325-DLC*, filed with the United States District Court for the Southern District of New York (SDNY) on January 14, 2021.    I am proficient in the Korean and English languages. I am retained by Tombali Inc. as a translator.    I have prepared and/or reviewed the following translations identified from Korean to English to the best of my ability and knowledge, and hereby declare that each is a true and correct translation of said document.

1.  Expert opinion by Professor Youngjoon Kwon
2.  Professor Youngjoon Kwon's CV and list of publications

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 12, 2021 in Seoul, Korea

_____

By: Do Nam Choi