UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINFRED WAIRIMU WAMAI, *et al.*,

Plaintiffs,

-v-

INDUSTRIAL BANK OF KOREA,

Defendant.

Case No. 21-cv-325-DLC

## EXPERT DECLARATION OF KWANG HYUN SUK

# 전문가 의견서

## I. 질의의 배경

1.  본인은 대한민국 서울 소재 서울대학교 법학전문대학원에서 법학교수로 재직 중이며, 국제거래법, 국제사법과 국제민사소송법을 가르치고 있다. 본인의 경력 및 논문, 단행본 등 저술 목록 등은 본 의견서에 첨부된 이력서에 기재되어 있다.

2.  Wamai 등 323명의 원고들(이하 "원고들")은 케냐, 탄자니아 소재 미국 대사관에 대한 테러행위로 인하여 원고들이 입은 손해배상을 청구하기 위하여 이란 정부 등을 상대로 미국 Washington, District of Columbia (이하 "워싱턴, D.C.")를 관할하는 미국 연방법원(United States District Court for the District of Columbia)(이하 "D.C. 연방법원")에 소를 제기하여 일정한 금액의 지급을 명하는 승소판결(이하 "D.C. 연방법원 판결")을 받았고, 위 판결은 확정되었다.

3.  원고들은 2021. 1. 14.(미국 뉴욕 시간 기준) 미국 뉴욕 연방남부지방법원에 한국의 중소기업은행(이하 "IBK")을 상대로 민사소송(사건번호 1:21-cv-00325-DLC)을 제기하였다(Wamai et al v. Industrial Bank of Korea. 이하 "이 사건 소송"). 이 사건 소송에서 원고들은 IBK에 대해 (i) IBK가 이란 정부와 공모, 협의하여 이란 정부의 재산을 처분하였다고 주장하며 그러한 행위로 인하여 원고들이 입은 손해의 배상 및 (ii) IBK가 점유, 보관하고 있는 이란 정부 재산의 인도를 청구하고 있다.

4.  본인은 IBK로부터 원고들이 한국에서 D.C. 연방법원 판결에 근거하여 이란 정부 재산에 대해 강제집행을 실시할 수 있는지 여부 및 그 절차와 관련하여 외국재판의 승인 및 집행 등에 관한 대한민국 법(한국법)의 해석 및 적용에 관한 의견서 작성을 요청받았다. 또한, 대한민국 사법부의 독립 및 재판의 공정에 관한 의견 제공도 요청받았다.

5.  본 의견서에서 제시하는 의견은 한국 법, 판례, 학계에서의 논의에 기초한 것이다. 본인은 원고들이 제출한 이 사건 소송 소장, 원고들의 이란 정부에 대한 손해배상청구소송 판결문들 및 Halkbank 소송에서 피고측 motion to

dismiss와 관련하여 원, 피고 쌍방이 제출한 서면 및 전문가 의견서, 법원 결정문 등을 검토하였다.

6.   본인은 본 의견서 작성에 대한 대가로 통상적인 수준에 상응하는 보수를 지급받았다.

## II. D.C. 연방법원 판결의 한국에서의 집행

### A.   외국 법원 판결의 승인과 집행

7.   한국법상 외국 법원의 판결(이하 "외국판결")이 승인요건을 구비하면, 별도의 절차를 요하지 아니하고 자동적으로 기판력(*res judicata*)을 포함한 효력(집행력은 제외)이 한국에서 인정된다(민사소송법 제217조). 이를 "자등승인(automatic recognition)"이라고 한다. 한국에서 인정되는 기판력의 범위는 원칙적으로 재판국법에 따를 사항이나, 재판국법상의 효력이 한국에서 그대로 인정될지 아니면 한국법상 인정되는 기판력의 범위를 한도로 제한될지에 관하여는 아직 판례나 유권적인 견해가 없다.

8.   반면에 외국판결을 집행하자면 한국 법원으로부터 집행을 허가하는 집행판결을 받아야 한다. 이러한 체계와 승인요건 및 집행판결의 요건은 독일 민사소송법(Zivilprozessordnung)을 모델로 한 것이다.

9.   원고들은 한국 법원으로부터 D.C. 연방법원 판결의 집행을 허가하는 집행판결(*exequatur*)을 받은 뒤에 이를 집행권원(title of execution)으로 하여 한국에 소재하는 이란 정부 자산에 대해 강제집행을 실시할 수 있다(한국 민사집행법 제26조 1항). 관련 법 조항은 다음과 같다.

> 한국 민사집행법
> 제26조(외국재판의 강제집행)
> ① 외국법원의 확정판결 또는 이와 동일한 효력이 인정되는 재판(이하 "확정재판등"이라 한다)에 기초한 강제집행은 대한민국 법원에서 집행판결로 그 강제집행을 허가하여야 할 수 있다.
> ② 집행판결을 청구하는 소는 채무자의 보통재판적이 있는 곳의 지방법원이 관할하며, 보통재판적이 없는 때에는 민사소송법 제11조의 규정에 따라 채무자에 대한 소를 관할하는 법원이 관할한다.

B.    이란 정부의 주권면제 여부

10.  원고들이 한국에서 집행판결 청구의 소를 제기하는 경우 그 피고는 이란 정부(정확히는 국가로서의 이란이슬람공화국)이다. 집행판결청구의 소는 통상의 소송절차로서의 성질을 가지므로 한국 법원이 이란 정부를 상대로 하는 소송절차를 진행하자면 이란 정부의 주권면제가 부정되어야 한다.

11.  주권면제라 함은 '재판권($facultas\ jurisdictionis$, "$jaepankwon$" in Korean)' 면제의 문제이다. 통상의 민사소송절차는 재판절차와 집행절차(또는 강제집행절차)로 구분되므로 주권면제 역시 '재판절차상의 주권면제'와 '집행절차상의 주권면제'로 구분된다. 여기에서의 논의는 재판절차상의 주권면제이고 집행절차상의 주권면제는 아래 E.에서 논의한다.

12.  미국의 경우 주권면제를 규율하는 연방법률인 1976년 외국주권면제법(Foreign Sovereign Immunities Act of 1976. FSIA)(이하 "FSIA")을 가지고 있으나, 한국에는 미국 FSIA에 상응하는 법률이 없다. 또한 한국은 국제연합이 2004년 12월 채택한 국가와 그 재산의 국가관할권 면제에 관한 협약(United Nations Convention on Jurisdictional Immunities of States and Their Property)에 가입하지 않았다. 따라서 한국에서 주권면제가 인정되는 범위는 결국 사안별로 법원의 판단에 의하여 결정된다.

13.  과거 대법원은 절대적 주권면제론을 취하였다. 그러나 대법원 1998. 12. 17. 선고 97다39216 전원합의체 판결은 과거의 판례를 변경하고 국가의 주권적 행위가 다른 국가의 재판권으로부터 면제되는 것이 국제관습법의 원칙이나 국가의 사법적 행위까지 다른 국가의 재판권으로부터 면제된다는 것이 오늘날의 국제법이나 국제관례라고 할 수 없다고 판시하였고 그 후 이런 태도를 유지하고 있다. 하급심 판결들도 이를 따른다.

14.  이러한 제한적 주권면제론에 따르면 국가가 상업적 활동 기타 이와 유사한 행위를 하는 경우 주권면제가 인정되지 않는다. 이러한 행위를 "$acta\ jure\ gestionis$(비주권적 행위)"라고 한다. 그와 달리 주권면제가 인정되는 행위를 "$acta\ jure\ imperii$(주권적 행위)"라고 한다. 양자의 구별기준에 관하여는 다양한 견해가 있으나, 한국에서 널리 인정되는 것은 행위의 성질(nature)을 기준으로 하는 견해이다.

15.  2021년 한국에서는 국제인권법을 고려한 하급심 판결이 선고되어 확정되었

다. 과거 일제강점기에 일본군 위안부로 고통을 겪은 원고들이 일본 정부를 상대로 제기한 손해배상청구소송에서 국제법, 특히 '국제적 강행규범(*jus cogens*)' 위반행위의 경우에 일본 정부가 주권면제를 향유하는지가 쟁점이 되었고, 서울중앙지방법원은 Ferrini 사건에서 독일의 주권면제를 부정한 이탈리아 대법원의 2004. 3. 11. 판결과, 독일의 주권면제를 인정한 2012. 2. 3. 국제사법재판소(International Court of Justice. ICJ)의 판결[1]을 수용하기 위하여 이탈리아 의회가 제정한 법률이 이탈리아 헌법에 위반된다고 판단한 이탈리아 헌법재판소의 2014. 10. 22. 재판 등을 참조하여 일본 정부의 주권면제를 인정할 수 없다고 판단하였다.[2] 더 구체적으로 서울중앙지방법원은 위 사건은 피고인 일본 정부에 의해 계획·조직적으로 광범위하게 자행된 반인도적 행위로 국제법상 강행규범(*jus cogens*)을 위반한 것이므로 국가면제는 적용하기 어렵고 따라서 한국 법원은 피고인 일본 정부에 대하여 재판권(미국에서 말하는 국가관할권)을 행사할 수 있다는 결론을 도출하였다.[3] 이러한 제1심 법원의 견해는 전통적인 국제관습법에 따른 것은 아니고, 결과적으로는 미국 FSIA(§1605A)가 규정하는 테러의 예외(terrorism exception)를 수용하는 것이다.

16. 한국 법원은 이란 정부를 상대로 하는 집행판결 청구의 소에서 위와 같은 판례의 경향을 충분히 고려하여 이란 정부의 주권면제 여부를 판단할 것이다.

## C.    집행판결 청구가 인용되기 위한 요건

17. 집행판결을 하기 위해서는 외국판결이 확정된 것이 증명되어야 하고 민사소송법 제217조의 요건이 구비되어야 한다(민사집행법 제27조 제2항). 이는 법원의 직권조사사항이다. 관련 조항은 다음과 같다.

---

한국 민사집행법
제27조(집행판결) ① 집행판결은 재판의 옳고 그름을 조사하지 아니하고 하여야 한다.
② 집행판결을 청구하는 소는 다음 각호 가운데 어느 하나에 해당하면 각하하여야 한다.
1. 외국법원의 확정재판등이 확정된 것을 증명하지 아니한 때
2. 외국법원의 확정재판등이 민사소송법 제217조의 조건을 갖추지 아니한 때

---

[1] 독일 대 이탈리아 주권면제 사건(Jurisdictional Immunities of the State, Germany v. Italy: Greece intervening).
[2] 서울중앙지방법원 2021. 1. 8. 선고 2016가합505092 판결.
[3] 서울중앙지방법원 2021. 1. 8. 선고 2016가합505092 판결.

18. 집행판결 청구의 소를 심리하는 법원은 재판의 당부를 조사할 수 없다(민사 집행법 제27조 1항). 이것이 "실질재심사(*révision au fond*, review of the merits)" 금지의 원칙이다. 따라서 D.C. 연방법원이 원고들이 이란 정부의 행위로 인해 손해를 입었다는 사실을 인정한 이상, 그것이 비록 default judgment에 의한 것이더라도, 한국에서 집행판결을 하는 과정에서 한국 법원은 D.C. 연방법원이 증거를 제대로 조사하여 사실인정을 정확히 하였는지를 재심사할 수 없다. 즉 원고들은 집행판결 청구의 소에서 이란 정부에 대한 채권의 존재 자체를 다시 주장하고 입증할 필요가 없다. 다만 default judgment가 외국판결로서 승인되자면 법원 서기가 아니라 법관이 한 것이어야 한다. 위 실질재심사 금지의 원칙에 대한 예외로 한국 법원은 승인요건의 구비 여부를 판단하기 위하여 필요한 범위 내에서는 실질을 재심사할수 있다.[4]

19. 민사소송법 제217조 제1항은 외국판결을 승인하기 위한 5가지 요건을 명시하고 있다. 또한, 제217조에 명시되어 있지 않지만, 외국 법원이 재판권을 가져야 한다.[5] 바꾸어 말하면 당해 외국에서 피고인 국가가 주권면제를 향유하는 주체가 아니어야 한다. 관련 조항은 다음과 같다.

> **한국 민사소송법**
> **제217조(외국재판의 승인)**
> ① 외국법원의 확정판결 또는 이와 동일한 효력이 인정되는 재판(이하 "확정재판등"이라 한다)은 다음 각호의 요건을 모두 갖추어야 승인된다.
> 1. 대한민국의 법령 또는 조약에 따른 국제재판관할의 원칙상 그 외국법원의 국제재판관할권이 인정될 것
> 2. 패소한 피고가 소장 또는 이에 준하는 서면 및 기일통지서나 명령을 적법한 방식에 따라 방어에 필요한 시간여유를 두고 송달받았거나(공시송달이나 이와 비슷한 송달에 의한 경우를 제외한다) 송달받지 아니하였더라도 소송에 응하였을 것
> 3. 그 확정재판등의 내용 및 소송절차에 비추어 그 확정재판등의 승인이 대한민국의 선량한 풍속이나 그 밖의 사회질서에 어긋나지 아니할 것
> 4. 상호보증이 있거나 대한민국과 그 외국법원이 속하는 국가에 있어 확정재판등의 승인요건이 현저히 균형을 상실하지 아니하고 중요한 점에서 실질적으로 차이가 없을 것
> ② 법원은 제1항의 요건이 충족되었는지에 관하여 직권으로 조사하여야 한다.
> **제217조의2(손해배상에 관한 확정재판등의 승인)**
> ① 법원은 손해배상에 관한 확정재판등이 대한민국의 법률 또는 대한민국이 체결한 국

---

4 외국중재판정에 관한 대법원 1988. 2. 9. 선고 84다카1003 판결도 같은 취지로 판단하였다.
5 이는 학설상 인정된다. 석광현, 국제민사소송법(2012), 356면.

제조약의 기본질서에 현저히 반하는 결과를 초래할 경우에는 해당 확정재판등의 전부 또는 일부를 승인할 수 없다.

② 법원은 제1항의 요건을 심리할 때에는 외국법원이 인정한 손해배상의 범위에 변호사 보수를 비롯한 소송과 관련된 비용과 경비가 포함되는지와 그 범위를 고려하여야 한다.

## C. 1. 확정재판일 것

20. 민사소송법 제217조 제1항은 "외국법원의 확정판결 또는 이와 동일한 효력이 인정되는 재판"을 승인의 대상으로 규정하고 있다.

21. 이란 정부에 대한 D.C. 연방법원 판결은 이미 수 년 전에 확정되어 더 이상 다툴 수 없게 된 판결이므로 민사소송법 제217조 제1항 소정의 승인 대상에 해당한다고 보인다.

## C. 2. 국제재판관할권의 존재

22. 한국법은 미국에서 말하는 대인관할권(*in personam* jurisdiction), 대물관할권(*in rem* jurisdiction)과 준대물관할권(*quasi in rem* jurisdiction)의 개념을 사용하지 않는다. 한국법에서는 국내 법원들 간의 관할배분의 문제인 토지관할과 대비하여, 국제적인 맥락에서 국내외 법원들 간의 관할배분을 '국제재판관할권(international jurisdiction to adjudicate)'의 문제로 취급한다. 따라서 한국법에서 말하는 국제재판관할권은 미국에서 말하는 대인관할권에 상응하는 것이라고 할 수 있다.

23. 민사소송법 제217조 제1항 제1호는 한국의 법령 또는 조약에 따른 국제재판관할의 원칙상 그 외국법원의 국제재판관할권이 인정될 것이라고 규정한다. 따라서 외국법원이 국제재판관할을 가지는지는 만일 한국 법원이 당해 사건을 재판하였더라면 적용하였을 기준과 동일한 기준에 따라 판단한다.[6] 이 사건에서 D.C. 연방법원 판결이 민사소송법 제217조상 국제재판관할권 요건을 충족하자면, 한국 국제사법의 국제재판관할기준에 따라 판단할 때 D.C. 연방법원의 국제재판관할권이 인정되어야 한다.

24. 한국 국제사법 제2조는 국제재판관할에 관한 일반원칙을 다음과 같이 밝히고 있다.

---

[6] 명시적인 규정이 없던 과거에는 논란이 있었으나 위와 같은 견해가 다수설이고 주류적인 판례였다. 예컨대 대법원 1995. 11. 21. 선고 93다39607 판결 등.

-6-

제2조(국제재판관할) ① 법원은 당사자 또는 분쟁이 된 사안이 대한민국과 실질적 관련이 있는 경우에 국제재판관할권을 가진다. 이 경우 법원은 실질적 관련의 유무를 판단함에 있어 국제재판관할 배분의 이념에 부합하는 합리적인 원칙에 따라야 한다.
② 법원은 국내법의 관할 규정을 참작하여 국제재판관할권의 유무를 판단하되, 제1항의 규정의 취지에 비추어 국제재판관할의 특수성을 충분히 고려하여야 한다.

25. 국제사법 제2조 제1항에서 "실질적 관련"은 한국 법원이 재판관할권을 행사하는 것을 정당화할 정도로 당사자 또는 분쟁이 된 사안과 관련성이 있는 것을 뜻한다.

26. 대법원은 '실질적 관련'을 판단할 때 "당사자의 공평, 재판의 적정, 신속과 경제 등 국제재판관할 배분의 이념에 부합하는 합리적인 원칙에 따라야 한다"고 하고, "구체적으로는 당사자의 공평, 편의, 예측가능성과 같은 개인적인 이익뿐만 아니라, 재판의 적정, 신속, 효율, 판결의 실효성과 같은 법원이나 국가의 이익도 함께 고려해야 하는데, 다양한 국제재판관할의 이익 중 어떠한 이익을 보호할 필요가 있을지는 개별 사건에서 실질적 관련성 유무를 합리적으로 판단하여 결정하여야 한다"고 한다.

27. 국제사법 제2조 제2항은 실질적 관련성을 판단하는 구체적 기준 또는 방법으로 국내법의 관할 규정을 제시하고 있다. 이와 관련하여 대법원은 "국제재판관할권을 판단할 때 국내법의 관할 규정을 가장 기본적인 판단 기준으로 삼되, 해당 사건의 법적 성격이나 그 밖의 개별적·구체적 사정을 그려하여 국제재판관할 배분의 이념에 부합하도록 합리적으로 수정할 수 있다"고 판시하였다.[7]

28. 한국 법원 실무상 한국의 민사소송법이 정한 토지관할규정(venue provision)에 따라 어느 국가에 토지관할이 있으면 대체로 당해 국가가 국제재판관할권을 가지는 것으로 보는 경향이 있다. 물론 한국 법원은 국제재판관할 배분의 이념에 비추어 필요한 경우 토지관할규정을 적절히 수정하여 적용한다. 예를 들어, 한국 법원은 원, 피고의 국적과 주소지가 모두 캐나다여서 대한민국 법원에 국내법의 관할 규정에 따른 관할이 인정되기 어렵더라도 대한민국과 해당 사안간의 실질적 관련성을 인정할 여지가 크다는 이유로 대한민국 법원의 국제재판관할권을 인정하였다.[8]

---

[7] 대법원 2021. 2. 4. 선고 2017므12552 판결.
[8] 대법원 2021. 2. 4. 선고 2017므12552 판결.

29. 한국 법원이 이란 정부의 지원에 의한 케냐, 탄자니아 소재 미국 대사관 테러행위로 인한 손해배상청구소송에 관하여 D.C. 연방법원에 국제재판관할권이 인정된다고 판단할 것인지 여부는, 소송당사자들의 공평, 편의, 예측가능성과 같은 개인적인 이익 및 재판의 적정, 신속, 효율, 판결의 실효성과 같은 법원이나 국가의 이익을 고려할 때 워싱턴, D.C.와 분쟁이 된 사안 사이에 어느 정도의 실질적 관련성이 인정된다고 한국 법원이 판단할지에 따르게 될 것이다. 미국 대사관을 겨냥하여 기획, 실행된 테러행위였다는 점이 한국 법원이 워싱턴, D.C.와 해당 사건과의 실질적 관련성을 인정하는 데 있어서 긍정적 요소로 작용할 것이다.

## C. 3. 송달에 관한 요건

30. 민사소송법 제217조 제1항 제2호는 패소한 피고가 소장 또는 이에 준하는 서면 및 기일통지서나 명령을 적법한 방식에 따라 방어에 필요한 시간여유를 두고 송달받았거나(공시송달이나 이와 비슷한 송달에 의한 경우를 제외한다) 송달받지 아니하였더라도 소송에 응하였을 것을 요구한다.

31. 적법한 송달인지 여부를 판단하는 기준이 재판국법인지 승인국법인지에 관하여 견해가 나뉘나, 국제사법상 '절차는 법정지법에 따른다'는 원칙이 일반적으로 승인되고 있고, 송달 당시에는 어느 국가에서 승인을 구할 것인지 알 수 없기 때문에 재판국법을 기준으로 판단하여야 할 것으로 본다. 우리 판례도 재판국법에 따라 송달의 적법성을 판단한다.[9]

32. 송달의 적시성은 재판국법이 정한 송달기간의 준수 이외에 번역에 소요되는 시간, 외국 변호사를 접촉하기 위한 시간, 적절한 소송준비를 위하여 필요한 시간, 통상절차인지 보전절차인지 등 사안의 구체적인 사정을 고려하여 판단된다.

33. 외국판결의 승인, 집행과 관련하여 한국 법은 민사소송법 제217조 제1항 제2호 요건이 충족될 것을 요구하며, 외국 법원의 판결이 default judgment인지 아닌지를 구별하여 달리 취급하지 않는다.

34. 미국 법원의 default judgment가 한국에서 승인 및 집행된 사례들이 있다. 대표적인 것이 서울지방법원 동부지원 1995. 2. 10. 선고 93가합19069 판결(대법원 1997. 9. 9. 선고 96다47517 판결에 의하여 확정)이다. 이 판결

---

9 대법원 2010. 7. 22. 선고 2008다31089 판결.

의 경과는 아래와 같다.

a.  미국 미네소타주에 거주하던 재미교포인 원고는 한국 유학생인 피고를 상 대로, 1992. 4. 미네소타주 지방법원에 폭행, 강간 등을 이유로 하는 손해배상청구소송을 제기하였다.
b.  피고는 소장과 소환장을 송달받았으나 응소하지 않고 한국으로 귀국하였다.
c.  원고는 미네소타주 지방법원에 default judgment를 신청하였다. 1993. 1. 미네소타주 지방법원은 판정관(Referee)의 심리를 거쳐 피고의 불법행위를 인정하고 원고에게 정신적 손해, 과거 및 장래의 임금상실, 기왕 및 장래의 치료비와 기타 비용 등 합계 미화 50만불의 지급을 명하는 판결을 선고하였다.
d.  미네소타주 법은 판결의 송달을 요구하지 않으므로 위 판결문은 피고에게 송달되지 않았고, 피고는 항소하지 않았다.
e.  원고는 한국에서 피고를 상대로 미네소타주 판결의 강제집행을 위한 집행판결을 청구하였다.
f.  한국 법원은 원고의 집행판결 청구를 인용하였다.
g.  다만, 법원은 '미국 법원이 인정한 손해배상액 중 한국 손해배상법의 기준에 비추어 한국에서 인정될 만한 상당한 금액을 현저히 초과하는 부분에 한하여는 공서양속에 반하므로 승인을 제한할 수 있다'는 취지로 판시하고 미국 법원이 인정한 손해배상액의 50% 한도에서 집행판결 청구를 인용하였다.

35.  D.C. 연방법원 판결이 민사소송법 제217조 제1항 제2호 소정의 송달 요건을 구비하자면, 이란 정부가 소장 또는 이에 준하는 서면 및 기일통지서나 명령을 관련 미국법상 적법한 방식에 따라 방어에 필요한 시간여유를 두고 공시송달이나 이와 비슷한 방식에 의하지 아니하고 송달받았어야 한다. 이란 정부에 대한 송달이 미국 FSIA(§1608(a))를 준수하여 적법하게 이루어졌고, 이란 정부의 방어에 필요한 시간 여유를 두고 이루어진 것이라면 민사소송법 제217조 제1항 제2호 소정의 송달 요건은 충족되었다고 판단될 것이다.

## C. 4. 공서에 반하지 않을 것

## C. 4. 1. 공서의 개념

36.  민사소송법 제217조 제1항 제3호는 확정재판 등의 내용 및 소송절차에 비추어 그 확정재판 등의 승인이 대한민국의 선량한 풍속이나 그 밖의 사회질서에 어긋나지 아니할 것을 요건으로 한다. 즉, 외국재판이 승인되기 위해서는 외국재판의 효력을 인정하는 것이 대한민국의 선량한 풍속이나 그 밖

의 사회질서, 즉 공서에 반하지 않아야 한다.

37. 민사소송법 제217조 제1항 제3호가 규정하는 공서의 개념은 국내적 사정뿐만 아니라 국제적 거래질서의 안정이라는 측면까지 함께 고려한 "국제적 공서(international public policy)"로 이해된다. 국제적 공서에는 침략전쟁, 반인도적 범죄의 금지 등 개별 국가를 초월하여 국제적으로 타당한 보편적 공서뿐만 아니라 집행국의 입장에서 국제적 거래질서의 안정을 위하여 필요하다고 인정되는 공서도 포함된다.

38. 민사소송법 제217조 제1항 제3호 소정의 공서는 민법 제103조가 규정하는 "선량한 풍속 기타 사회질서", 즉, 국내적 공서(domestic public policy)보다 좁은 개념이다. 따라서 외국법원이 대한민국 법에서는 인정되지 아니하는 내용을 규정하고 있는 외국법을 준거법으로 하여 판결을 하였더라도 그러한 사정만으로 해당 외국판결의 승인이 공서에 위반되는 것은 아니다.

39. 대법원 2009. 6. 25. 선고 2009다22952 판결은 외국법원에서 확정된 이혼판결의 이혼사유가 우리 민법이 정한 이혼사유가 아닌 '혼인의 파탄'이고, 위 외국판결의 재산분할 방식이 우리나라와 차이가 있으며, 위 외국판결에서 지급을 명한 배우자 부양료가 우리나라에서는 인정되지 아니한다는 사정만으로는 위 외국판결의 승인이 민사소송법 제217조의 공서에 위반된다고 할 수 없다고 판시하였다.

40. 외국판결을 승인한 결과가 대한민국의 선량한 풍속이나 그 밖의 사회질서에 어긋나는지 여부는 그 승인 여부를 판단하는 시점에서 외국판결의 승인이 우리나라의 국내법 질서가 보호하려는 기본적인 도덕적 신념과 사회질서에 미치는 영향을 외국판결이 다룬 사안과 우리나라와의 관련성의 정도에 비추어 판단하여야 하고, 이때에는 그 외국판결의 주문뿐 아니라 이유 및 외국판결을 승인할 경우 발생할 결과까지 종합하여 검토한다.[10] D.C. 연방법원 판결의 경우, 아래에서 논의하는 부분을 제외한 다른 부분은 공서양속 위반 여지가 별로 없을 것으로 보인다.

## C. 4. 2. 징벌적 손해배상

41. 민사소송법 제217조 제1항 제3호가 규정하는 공서에는 '실체적 공서'와 '절차적 공서'가 있는데, 실체적 공서와 관련하여 특히 문제되는 것은 불법행

---

[10] 대법원 2012. 5. 24. 선고 2009다22549 판결.

위를 이유로 징벌적 손해배상(또는 징벌배상)의 지급을 명한 미국 법원 판결의 승인 및 집행이다.

42. 징벌적 손해배상이라 함은 가해자에게 특히 고의 등의 주관적인 사정이 있는 경우에 피해자가 입은 손해를 전보하는 기능을 하는 전보배상 또는 보상적 손해배상(compensatory damages)에 덧붙여 위법행위에 대한 제재와 동종행위의 억지를 주목적으로 하여 부과되는 손해배상으로서 보통법(common law)상 인정되고 있는 손해배상을 말한다.

43. 한국의 민사법체계는 불법행위의 효과로서 손해의 전보만을 인정하는 데 반하여, 징벌배상은 그와 다른 성질 내지 기능을 가진다는 점에서 징벌배상의 승인 및 집행이 문제되어 왔다.

44. 2014년 신설된 민사소송법 제217조의2 제1항은 손해배상에 관한 확정재판 등이 한국의 법률 또는 조약의 기본질서에 현저히 반하는 결과를 초래할 경우에는 그의 전부 또는 일부를 승인할 수 없다고 규정한다. 이는 징벌배상 또는 수배배상을 명한 외국재판의 승인 및 집행을 적정 범위로 제한하기 위한 것이다. 별도의 조문이 없어도 공서요건(특히 실체적 공서요건)으로 해결할 수 있는 문제이지만 민사소송법 제217조의2를 신설하여 그 취지를 명확히 함으로써 법적 안정성을 제고하기 위한 것으로 이해된다.

45. 과거 수원지방법원 평택지원 2009. 4. 24. 선고 2007가합1076 판결[11]은 3배배상(전보배상 및 그 2배에 상당하는 징벌적 손해배상)을 명한 외국재판의 승인 및 집행은 손해전보에 목적이 있는 한국의 손해배상제도와 근본이념이 다르다는 이유로 전보배상 부분의 승인 및 집행만을 허용하고, 징벌적 손해배상 부분의 승인 및 집행은 거부한 바 있다.

46. 당시 한국 법 제도상 3배배상제도가 인정되지 않고 있었으므로 위와 같은 판결에 대하여 큰 의문이 없었다. 그러나 근자에 한국이 다양한 법률을 통하여 3배배상제도를 도입한 이상 3배배상의 지급을 명한 외국재판의 승인 및 집행이 당연히 한국의 공서에 반한다고 할 수는 없다.

---

11 다만, 항소법원은 대법원 2010. 7. 22. 선고 2008다31089 판결을 따라 피고에 대한 송달이 미국 워싱턴 주법상 규정을 준수하지 못했다는 이유로 민사소송법 제217조 소정의 송달 요건이 충족되지 않았다고 판단하였으며(서울고등법원 2010. 8. 12. 선고 2009나45377 판결), 그에 따라 집행판결 청구는 각하되었고 상고가 없어 위 판결은 2010. 9. 14. 확정되었다.

47. 한국은 하도급거래 공정화에 관한 법률(제35조 제2항)을 통하여 2011년 6월 3배배상제도를 처음 도입하고, 이어서 개인정보보호법(제39조), 가맹사업거래의 공정화에 관한 법률(가맹사업법)(제37조의2)과 대리점거래의 공정화에 관한 법률(제34조 제2항) 등에 도입하였으며, 2018년 4월에는 제조업자가 제조물의 결함을 알면서도 그 결함에 대하여 필요한 조치를 취하지 아니한 결과로 소비자의 생명 또는 신체에 중대한 손해를 입힌 경우 최대 3배까지 손해배상책임을 부과하는 내용으로 제조물책임법(제3조 제2항)이 개정되었다. 이처럼 한국은 근자에 개별 입법에 의하여 징벌배상제도를 속속 도입하고 있는데 이런 경향은 당분간 지속될 것으로 예상된다. 2021년 2월에는 자동차 제작자가 결함을 알면서도 이를 은폐·축소 또는 거짓으로 공개하거나 지체 없이 시정하지 아니하여 자동차 소유자 등이 생명·신체 및 재산에 중대한 손해를 입은 경우에는 발생한 손해의 5배 이내에서 배상책임을 지도록 하는 제도가 도입되었다(자동차관리법 제74조의2 제2항).

48. 이처럼 한국법상 3배 또는 5배 배상제도가 적용되는 영역이 점차 확대되고 있으므로 3배 또는 5배 배상의 지급을 명한 외국재판의 승인이 당연히 '한국의 공서'에 반한다거나, '한국의 법률 또는 조약의 기본질서에 현저히 반하는 결과를 초래한다'고 단정할 수 없다. 이처럼 새로운 상황에서 3배 또는 5배 배상의 지급을 명한 미국 판결의 승인 및 집행을 어떻게 처리해야 하는지에 관하여 아직 정설은 없다. 본인은 아래와 같이 견해가 나뉠 수 있음을 지적한 바 있다.[12]

49. 1설은 이제는 3배배상을 명한 외국법원의 확정재판 등의 승인 및 집행을 거부할 수 없다는 견해이다. 한국이 3배배상을 도입한 이상 외국의 확정재판등이 가사 우리가 3배배상을 도입한 법영역이 아니더라도 그 승인은 한국 법률의 기본질서에 반하지 않고, 가사 반하더라도 현저히 반하는 것은 아니라는 것이다. 2설은 법영역을 비교하여 한국법이 3배배상제도를 도입한 법영역 외에서는 여전히 그(정확히는 전보배상을 넘는 부분)의 승인 및 집행을 거부할 수 있다는 견해이다. 이와 관련하여 서울고등법원은 2018년에 2설에 따른 것으로 보이는 판결을 선고하였고, 위 사건은 현재 대법원에 계속되어 있다.[13]

---

[12] 석광현, "손해배상을 명한 외국재판의 승인과 집행: 2014년 민사소송법 개정과 그에 따른 판례의 변화를 중심으로", 국제사법연구 제23권 제2호(2017. 12.), 284면 이하 참조.

[13] 서울고등법원 2018. 3. 23. 선고 2017나2057753 판결(대법원 2018다231550호로 대법원에 계속 중).

50. 2설에 따르는 경우, 한국법상 악의적 불법행위 일반에 대하여는 아직 징벌배상제도가 도입되지 않고 있다는 이유로 그런 영역에서는 전보배상의 범위를 넘는 징벌배상의 승인 및 집행이 여전히 허용되지 않는다는 결론이 현재까지는 유효할 수 있다.

51. 그런데, 현재 한국 국회에서는 일반적 징벌배상제도 도입이 구체적으로 추진되고 있다. 즉, 2020. 9. 15. 국회에 발의된 '징벌배상법안'은 악의적인 불법행위의 경우에 일반적으로 징벌적 손해배상을 인정한다. 위 법안의 제안이유에 따르면, 2011년에 3배배상제도가 도입된 이후 특정 사안이 사회적 논란이 될 때마다 다수의 개별법에 유사한 취지의 조항을 신설하여 왔으나 장래에 어떤 유형의 불법행위가 발생할지 미리 예측하기 어렵고 특정 분야에 한정하지 않고 일반적으로 불법행위를 억제할 필요가 있음을 고려하여 징벌적 배상책임을 부과하는 법안을 제안하였다고 한다.[14] 위 법률안(제4조 제2항)에 따르면 징벌배상액은 전보배상에 관한 손해배상액의 3배 또는 악의적 불법행위자가 얻은 이득액 중 더 큰 금액을 상한으로 한다. 또한 기업활동에 관한 기본 법률인 상법에 징벌적 손해배상제도를 도입하는 내용의 상법 개정법률안이 2020. 9. 28. 입법예고되었다. 법무부는 각 법률에 산재되어 있는 징벌적 손해배상제도 운용의 통일성을 확보하고 실효성을 제고하기 위해 기업활동에 관한 기본 법률인 상법에서 징벌적 손해배상제도를 도입할 필요가 있다고 설명한다.[15] 위 상법 개정법률안에 의하면, 상인은 고의 또는 중과실로 타인에게 손해를 가한 경우 손해의 5배를 넘지 않는 범위에서 배상할 책임이 있다.[16] 위와 같은 입법이 실현된다면 2설에 의하더라도 악의적 불법행위에 대한 징벌적 손해배상의 지급을 명한 외국판결의 승인 및 집행이 허용될 수 있을 것이다.

52. 한국 법원은 D.C. 연방법원 판결의 징벌적 손해배상액이 전보배상의 2배 또는 그 이상에 이르는 것이 아니라 전보배상과 동일한 금액이라는 점, 최근 한국에서는 고의적인 행위로 다수의 피해자가 발생하게 한 불법행위에 대하여 징벌적 손해배상을 인정하는 입법이 다수 통과되거나 제안되어 있는 점, 고의적인 테러행위로 인하여 다수의 피해자가 발생한 경우 피해자를 두텁게 보호하고 재발 가능성을 최대한 막기 위하여 징벌적 손해배상을 인정할 필요성이 큰 점 등을 참작하여 그 승인 및 집행 여부를 판단할 것이다.

---

14 오기형의원이 2020. 9. 15. 대표발의한 징벌배상법안(의안번호 3916), 제안이유 참조.
15 법무부의 2020. 9. 28. 「집단소송법안」 및 「상법 일부개정법률안」 입법예고 보도자료에 첨부된 "징벌적 손해배상제 도입 위한 「상법 일부개정법률안」 주요 내용", 1면 참조.
16 법무부의 2020. 9. 28. 「집단소송법안」 및 「상법 일부개정법률안」 입법예고 보도자료에 첨부된 「상법 일부개정법률안」 제66조의2(상인의 손해배상책임에 대한 특례) 참조.

또한, 2설에 의하더라도, 전보배상을 명한 부분과 징벌적 배상을 명한 부분을 구분할 수 있는 경우 전보배상을 명한 부분의 승인 및 집행은 허용된다.

## C. 4. 3. 과도한 전보배상

53. 과거 한국의 하급심 법원들은 지나치게 과도한 전보배상(grossly excessive compensatory damages)을 명한 외국재판의 승인 및 집행을 공서조항을 근거로 제한하였고(예컨대 50%만 승인 및 집행을 허용함) 대법원도 그런 결론을 수용하였다.

54. 그러나 민사소송법 제217조의2가 신설된 뒤에 대법원은 '민사소송법 제217조의2 제1항은 징벌적 손해배상과 같이 손해전보의 범위를 초과하는 배상액의 지급을 명한 외국법원의 확정재판 등의 승인을 적정 범위로 제한하기 위하여 마련된 규정이다. 따라서 외국법원의 확정재판 등이 당사자가 실제로 입은 손해를 전보하는 손해배상을 명하는 경우에는 민사소송법 제217조의2 제1항을 근거로 그 승인을 제한할 수 없다'고 판시하였다[17].

55. 지나치게 과도한 전보배상을 명한 외국재판에 민사소송법 제217조의2 제1항이 적용되지 않는다면, 그러한 외국재판의 승인 및 집행을 제217조 제1항 제3호(공서조항)을 근거로 제한할 수 있는지는 불분명하다.

## C. 4. 4. 소결론

56. D.C. 연방법원 판결은 이란 정부에게 전보배상 및 징벌적 손해배상의무를 부과하고 있다. 징벌적 손해배상을 명한 부분의 승인 및 집행을 제한할 것인지, 어느 정도 범위에서 그 승인 및 집행을 제한할 것인지는 집행판결 청구의 소를 담당하는 한국 법원이 D.C. 연방법원 판결의 주문, 이유, 위 판결을 그대로 승인할 경우의 결과를 종합하여 판단할 사항이다. 최근 입법례 및 입법 경향 등에 비추어 볼 때, 과거에 비하여 앞으로 한국 법원은 징벌적 손해배상의 지급을 명한 외국판결의 승인 및 집행에 대하여 좀 더 전향적인 태도를 취할 것으로 보인다. 이 사건의 경우에는 한국 법원이 특히 불특정 다수를 향한 고의적인 살상행위에 의하여 다수의 선량한 피해자가 발생하였다는 점을 충분히 고려할 것으로 생각된다.

---

17 대법원 2015. 10. 15. 선고 2015다1284 판결; 대법원 2016. 1. 28. 선고 2015다 207747 판결.

57. D.C. 연방법원 판결 중 징벌적 배상을 명한 부분의 승인, 집행이 제한되는 경우에도 전보배상을 명한 부분의 승인 및 집행은 허용된다.

## C. 5. 상호보증 요건

58. 민사소송법 제217조 제1항 제4호는 외국재판의 승인요건으로서 상호보증이 있거나 대한민국과 그 외국법원이 속하는 국가에 있어 확정재판 등의 승인 요건이 현저히 균형을 상실하지 아니하고 중요한 점에서 실질적으로 차이가 없을 것을 요구하고 있다. 상호보증은 우리 법원이 외국법원의 판결을 승인 하는 만큼 그 외국도 우리 판결을 승인하는 것이 인정되는 것을 말한다.

59. 상호보증은 외국의 법령, 판례 및 관례 등에 의하여 승인요건을 비교하여 인정되면 충분하고 반드시 당사국과의 조약이 체결되어 있을 필요는 없으 며, 당해 외국에서 구체적으로 우리나라의 동종 판결을 승인한 사례가 없더 라도 실제로 승인할 것이라고 기대할 수 있는 상태이면 충분하다.[18]

60. 상호보증의 유무는 한국 민사소송법과 재판국의 법률을 전체적으로 비교하 여 결정할 것이 아니라 상응하는 재판, 즉 동일한 종류 또는 내용의 재판 사이에 상호보증이 있는 것으로 충분하다. 따라서 신분판결 또는 재산판결 과 같은 일정한 종류의 판결에 관하여만 상호보증이 인정될 수 있다. 또한 재산판결이더라도 위 통일법이 적용되는 금전판결과 그렇지 않은 비금전판 결은 상호보증의 존재를 별도로 판단하여야 한다.

61. 미국에는 외국재판의 승인 및 집행을 규율하는 연방법이 존재하지 않는다. 미국은 외국재판의 승인 및 집행에 관한 양자조약을 체결하거나 다자조약에 가입한 바도 없다.

62. 미국 대다수 주들은 금전지급을 명하는 외국재판의 승인 및 집행에 관한 기 준으로 1962년 통일외국금전재판승인법(Uniform Foreign Money-Judgments Recognition Act)(이하 "UFMJRA") 또는 2005년 통일외국금전 재판승인법(Uniform Foreign-Country Money Judgments Recognition Act(이하 "UFCMJRA")을 채택하고 있다. UFMJRA와 UFCMJRA를 채택하 지 않은 주들은 보통법(common law)을 적용하는데, 대부분 대외관계법 제 3차 리스테이트먼트(Restatement 3rd of Foreign Relations Law) 및 극제 사법 제2차 리스테이트먼트(Restatement 2nd of Conflict of Laws)에 의하

---

18 대법원 2004. 10. 28. 선고 2002다74213 판결.

여 외국재판의 승인 및 집행을 규율하는 것으로 보인다.

63. 워싱턴, D.C.는 2012년에 UFCMJRA를 수용하였다.[19]

64. UFMJRA, UFCMJRA, 대외관계법 제3차 리스테이트먼트가 각 규정하고 있는 승인요건은 한국 민사소송법 제217조 제1항에서 정하고 있는 승인요건과 비교할 때 조금 더 상세할 뿐 큰 차이는 없다고 평가할 수 있다. 결국 금전지급을 명하는 외국재판의 경우, UFMJRA, UFCMJRA를 채택하거나 대외관계법 제3차 리스테이트먼트를 적용하는 미국의 각 주와 대한민국 사이에는 상호보증이 인정된다고 볼 것이다.[20]

65. UFMJRA를 채택한 미국의 주들과 한국간에 상호보증이 존재한다고 인정한 판례로는 서울지방법원 동부지원 1995. 2. 10. 선고 93가합19069 판결(미네소타주), 서울고등법원 1995. 3. 14. 선고 94나11868 판결(캘리포니아주), 서울중앙지방법원 2012. 6. 22. 선고 2012가합11773 판결(뉴욕주)과 서울중앙지방법원 2014. 11. 28. 선고 2014가합10835 판결(코네티컷주) 등이 있다.

66. UFCMJRA를 채택한 미국의 주들과 한국 사이에 상호보증의 존재를 인정한 판결에는 서울고등법원 2018. 3. 23. 선고 2017나2057753 판결(하와이주, 2018다231550호로 대법원에 계속 중), 서울중앙지방법원 2014. 5. 23. 선고 2013가합55640 판결(뉴저지주), 수원지방법원 2013. 11. 28. 선고 2013가합14630 판결(텍사스주), 수원지방법원 평택지원 2009. 4. 24. 선고 2007가합1076 판결(워싱턴주) 등이 있다.

67. 보통법을 적용하는 미국 켄터키주와 한국 사이에 상호보증의 존재를 인정한 판결로는 대법원 2016. 1. 28. 선고 2015다207747 판결이 있다.

68. D.C. 연방법원 판결의 집행이 청구되는 경우 한국 법원은 워싱턴, D.C.와 한국 사이에 상호보증이 존재한다고 판단할 것으로 보인다.

D.    집행판결의 절차

---

19  https://www.uniformlaws.org/committees/community-home?CommunityKey=ae280c30-094a-4d8f-b722-8dcd614a8f3e 참조 (2021. 4. 6. 최종 방문).

20  미국의 여러 주와 한국 사이에 상호보증을 인정한 판례의 소개는 사법정책연구원, 외국재판의 승인과 집행에 관한 연구(2020), 110면 이하 참조.

69. 집행판결을 청구하는 소는 원칙상 피고의 보통재판적 소재지(또는 피고에 대하여 일반관할을 가지는) 지방법원이 관할한다. 피고의 보통재판적이 없는 때에는 민사소송법(제11조)에 따라 재산소재지의 법원이 관할한다(민사집행법 제26조 제2항). 한국 민사소송법에 따르면 국가의 보통재판적은 그 소송에서 국가를 대표하는 관청 또는 대법원이 있는 곳이다(제6조). 이 사건에서 이란 정부는 한국에 보통재판적이 없으므로[21] 결국 이란 정부의 재산이 소재하는 한국 법원이 토지관할을 가지게 될 것이다.

70. 집행판결을 구하는 소송의 절차에 대하여는 통상의 판결절차에 관한 원칙이 적용된다. 집행판결에 대한 상소에 대하여도 마찬가지이다.

71. 원고들은 집행판결을 청구하는 소의 제기와 함께 또는 그에 앞서서, D.C. 연방법원 판결에 기한 장래의 강제집행을 보전하기 위하여 가압류명령을 신청할 수 있다. 다만 이 경우에도 강제집행에 있어서의 주권면제의 법리가 적용된다. 판결 후 강제집행과 비교하여 판결 전 가압류 등의 보전처분을 제한하는 국가도 있으나 한국은 보전처분절차에서의 주권면제와 집행권원에 기초한 본집행 절차에서의 주권면제를 구분하여 달리 취급하지 않는다. 따라서 아래 E.에서의 논의가 가압류에서도 타당하다.[22] 만일 이란 정부의 한국 내 자산이 산일될 가능성이 없다면 가압류명령을 신청할 현실적인 필요는 낮을 것이다.

E.    강제집행과 주권면제

72. 강제집행절차에서의 주권면제의 배제는 당해 국가의 동의가 없다면, 판결절차에서의 그것과는 별개로서 그보다 더 신중하게 판단해야 한다는 데 대하여 한국에서는 이론이 없다.[23] 강제집행은 외국에 대해 더 직접적인 영향을 미치기 때문이다.

73. 한국은 주권면제에 관한 입법을 하지 않았기에 이 쟁점을 직접 규율하는 법률은 없다. 따라서 이 쟁점은 조약, 국제관습법과 한국의 판례와 학설에 의하여 해결해야 한다.

---

21 다만 제6조의 목적상 주한 이란 대사관을 이란 정부를 대표하는 관청으로 볼 수 있다는 주장도 제기될 여지는 있다.

22 문영화, "외국국가의 재산에 대한 민사집행법에 의한 강제집행", 성균관법학 제27권 제2호(2015. 6.), 304면도 동지.

23 정인섭, 신국제법강의: 이론과 사례, 제8판(2018), 272면 이하; 석광현, 국제민사소송법(2012), 52면 이하.

74. 우선 주한 외국대사관 건물과 부지, 대사관 차량 등은 강제집행이 불가능하다. 한국도 당사국인 1961년 "외교관계에 관한 비엔나협약(Vienna Convention on Diplomatic Relations)"(제22조 제3항)은 "공관지역과 동 지역 내에 있는 비품류 및 기타 재산과 공관의 수송수단은 수색, 징발, 차압 또는 강제집행으로부터 면제된다(The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution.)"고 규정하기 때문이다. 따라서 한국내 이란 대사관 건물과 부지, 대사관 차량 등에 대하여는 강제집행을 할 수 없다.24

75. 이처럼 조약상의 규정이 있는 경우에는 그에 따르나, 기타 재산에 대하여는 한국에서는 아직 정설이 없고 한국 법원의 태도도 확립된 바 없다. 다만 유력한 견해는 국제관습법상 외국재산을 상업적 목적에 사용되는 것(상업용재산)과 비상업적, 주권적 또는 공적 목적에 사용되는 재산(비상업용재산)으로 구분하여, 전자에 대해서는 강제집행이 허용되나 후자에 대하여는 허용되지 않는다고 본다.25 이와 같이 강제집행절차에서의 주권면제의 경우 재산의 성격이 아니라 사용 목적이 중요한 기준이 된다는 점에서 판결절차에서의 그것과 다르다.

76. 원고들에 의한 한국 내 이란 정부의 재산에 대한 강제집행의 허용 여부는 그 재산의 사용 목적에 따라 판단될 것이다. 예컨대 이란 정부가 상업적 활동으로 인하여 한국의 제3자로부터 받을 채권은 강제집행이 대상이 될 수 있다.

## III. 한국에서의 사법부 독립

### A.    한국 헌법상 통치체제 개요 및 사법부의 독립

77. 한국의 통치체제 또는 정부조직은 한국 헌법이 규정한다. 입법권은 국회에 속하고(헌법 제40조) 행정권은 대통령을 수반으로 하는 정부에 속한다(제

---

24 실제로 위 조항이 적용되어 강제집행을 하지 못한 사례가 있다. 서울민사지방법원 92가합33089호로 자이레공화국 대사관을 피고로 하여 건물인도청구소송을 제기하여 원고승소판결을 받았다. 원고들은 집행관에게 주택인도의 집행을 의뢰하였는데, 집행관이 대사관저에 대하여 강제집행을 할 수 없다는 이유로 원고들의 강제집행신청의 접수를 거부함으로써 집행이 이루어지지 않았다.

25 문영화, "외국국가의 재산에 대한 민사집행법에 의한 강제집행", 성균관법학 제27권 제2호(2015. 6.), 300면. 미국의 1976년 Foreign Sovereign Immunities Act of 1976 (§§1609-1610); 영국의 1978년 State Immunity Act 1978 (제13조 제4항)도 참조.

66조 제4항). 사법권은 법관으로 구성된 법원에 속한다(제101조 제1항).

78. 사법권은 법원과 헌법재판소로 이원화되어 있다. 법원은 헌법에 특별한 규정이 있는 경우를 제외한 모든 법률상의 쟁송(爭訟)을 심판한다(법원조직법 제2조). 한국법상 법원에는 대법원, 고등법원, 특허법원, 지방법원, 가정법원, 행정법원과 회생법원이라는 7종류의 법원이 있다(법원조직법 제3조).

79. 헌법재판소는 헌법(제111조 제1항)이 명시하는 사항들, 즉 법원의 제청에 의한 법률의 위헌여부 심판, 탄핵의 심판, 정당의 해산 심판, 국가기관 상호간, 국가기관과 지방자치단체간 및 지방자치단체 상호간의 권한쟁의에 관한 심판과 법률이 정하는 헌법소원에 관한 심판을 관장한다.

80. 사법부의 독립에 관하여 한국 헌법 제103조는 제103조 법관은 헌법과 법률에 의하여 그 양심에 따라 독립하여 심판한다라고 규정함으로써 법관 득립의 원칙을 선언한다.

81. 헌법 제106조 제1항은 법관은 탄핵 또는 금고 이상의 형의 선고에 의하지 아니하고는 파면되지 아니하며, 징계처분에 의하지 아니하고는 정직·감봉 기타 불리한 처분을 받지 아니한다고 명시함으로써 법관의 신분을 보장하고 있다.

B. **한국 법원이 정부 기관 또는 기업은행에 대해 패소 판결을 내린 주요 판례**

82. 한국에서 국가가 소송의 피고라고 해서 우월적인 지위가 인정되는 것은 아니다. 법치주의 원칙에 따라 소송의 승패가 결정된다는 점에 대하여는 아무런 의문이 없다. 따라서 국가가 패소한 사례는 민사사건과 행정사건 등에서 무수히 많이 있다. 여기에서는 몇 개의 사례만 예시한다.

    a.    대법원 2011. 1. 13. 선고 2009다103950 판결: 국가의 소멸시효 항변을 불허하고, 국가 패소

        이 사건은 불법구금 상태에서 고문을 당한 후 간첩방조 등의 범죄사실로 유죄판결을 받고 형집행을 당한 피해자가 국가를 상대로 제기한 손해배상청구소송이다. 법원은 국가의 소멸시효 완성 항변이 신의성실의 원칙에 반하는 권리남용으로서 허용될 수 없다고 판단하였다.

b.   대법원 2020. 1. 30. 선고 2016두59188 판결: 역대 최대 규모 조세사건에서 국가 패소

이는 역대 최대 규모의 법인세 소송으로 알려진 사건이다. 대법원은 불복금액 약 1조 원(환급가산금 포함) 규모의 소송에서 원고인 한국철도공사(KORAIL)의 전부 승소 판결을 선고하였다.

c.   대법원 2015. 2. 12. 선고 2013두19387 판결: 공정거래위원회가 부과한 과징금 취소 소송

공정거래위원회는 2011년 정유사들이 주유소 유치 경쟁을 자제하자는 담합을 함으로써 공정한 거래 질서를 해쳤다며 GS칼텍스에 1772억원, SK이노베이션에 1337억원, 현대오일뱅크에 753억원, S-OIL에 438억원을 부과하였다. GS칼텍스는 담합을 자진신고해 과징금 전액을 면제 받았다.[26] 대법원은 SK이노베이션, 현대오일뱅크, S-Oil에 대한 공정위 과징금 합계 2548억원을 취소하였다.

83.   이 사건 소송의 피고인 기업은행의 최대 주주가 한국 정부이지만 그로 인하여 소송에서 우월적 지위가 인정되지 않는다. 기업은행의 2020년도 사업보고서(2021. 3. 17. 공시) 중 한국 법원이 기업은행에 불리한 판결을 선고한 주요 사례를 소개하면 다음과 같다.

a.   기업은행 근로자들이 은행을 상대로 제기한 통상임금청구소송: 소가 약 776억원, 기업은행이 제1심 패소, 항소심 승소하였고 현재 대법원 계속 중임.

b.   한국무역보험공사를 상대로 하는 보증금 및 보험금 청구소송: 소가 약 990억원(3심 소가 약 230억원), 기업은행이 제1심 일부 승소, 항소심 강제조정(패소) 후 현재 대법원 계속 중임.

c.   NH투자증권을 상대로 하는 손해배상청구소송: 소가 약 658억원, 기업은행이 제1심 패소 후 항소심 진행 중임.

---

[26] 본문에 적은 금액은 모두 법률신문의 보도에 따른 것이다. https://www.lawtimes.co.kr/Case-Curation/view?serial=91091 참조(2021. 3. 31. 최종 방문).

본인은 미국법상 위증의 벌을 받을 수 있음을 알면서, 이상 내용이 본인의 견해 및 결론을 진실하고 정확하게 반영함을 확인합니다.

2021. 4. 12.

교수 석광현(khsuk@snu.ac.kr)
서울대학교 법학전문대학원

# 석 광 현

1956년 9월 6일  서울 출생

변호사 자격취득 :  대한민국 (1981년 8월)

학            력
서울대학교 법과대학 (법학사 1979년)
대법원 사법연수원 수료 (1981년)
서울대학교 대학원 법학과 석사과정 수료 (1981년)
Albert-Ludwigs-Universtät Freiburg in Germany (LL.M. 1991년)
서울대학교 대학원 (법학박사 2000년)

경            력
해군 법무관 (1981년—1984년)
김·장법률사무소 변호사 (1984년 9월—1999년 2월)
영국 Linklaters & Paines 법률사무소 연수 (1991년 상반기)
한양대학교 법과대학 부교수/교수: 국제거래법/국제사법 담당 (1999년 3월—2007년 9월)
김·장법률사무소 Consultant (199년 9월—2007년 2월)
서울대학교 법과대학 교수: 국제거래법/국제사법 담당 (2007년 10월—2009년 2월)
서울대학교 법학전문대학원 교수: 국제거래법/국제사법 담당 (2009년 3월 이래)
헤이그국제사법회의(HCCH), UNCITRAL과 UNIDROIT Projects에 한국 대표단의 고문으로 다수
회의에 참석하였음(1997-2007)


학            회
국제거래법학회 회장 역임(2013년-2015년)
국제사법학회 회장(2018년-현재)

언            어
한국어, 영어, 독일어

# 석광현 저술 목록

Publications in Korean

Articles
국제사법(Private International Law) − 개관
개관
한국국제사법학의 과제, 국제사법연구 제22권 제2호(2016. 6.)
개정 국제사법의 총론적 문제, 법조 제50권 제5호(통권 536호)(2001. 5.)
국제거래를 취급하는 법률가들을 위한 개정 국제사법의 소개, 변호사―회원연구논문집―, 서울지방변호사회(2004)
서울법대 국제사법·국제거래법 연구 70년, 별책 서울대학교 법학 제58권 제1호(2017. 3.)
한국 국제사법 70년 변화와 전망, 청헌 김증한 교수 30주기 추모논문집(2018)
국제사법에 대한 헌법의 영향, 저스티스 통권 제170−3호(2019. 2. 한국법률가대회 특집호 Ⅱ)

**총칙**
편의치적에서 선박우선특권의 준거법 결정과 예외조항의 적용, 국제거래법연구 제24집 제1호(2015. 7.)
영국법이 준거법인 채권 간의 소송상 상계에 관한 국제사법의 제문제, 서울대학교 법학 제57권 제1호(2016. 3. 31.)

**협의의 국제사법(준거법)**
국제계약법
국제계약의 준거법에 관한 몇 가지 논점―섭외사법의 해석론을 중심으로―, 한양대학교, 법학논총 제16집(1999)
외환허가를 받지 아니한 국제보증과 관련한 국제사법상의 문제점, 법조 통권 제459호(1994. 12.)
섭외사법의 개정에 관한 립법론―국제계약법 분야 : 개정 국제사법의 소개를 포함하여―, 한국국제사법학회, 국제사법연구 제4호(1999)
국제거래에서의 소비자보호−개정 국제사법을 중심으로−, 심당송상현선생화갑기념론문집: 이십일세기 한국상사법학의 과제와 전망(2002)
국제사법상 소비자계약의 범위에 관한 판례의 소개와 검토: 제27조의 목적론적 축소와 관련하여, 국제사법 제22권 제1호(2016. 6.)
해외직구에서 발생하는 분쟁과 소비자의 보호: 국제사법, 약관규제법과 중재법을 중심으로, 서울대 법학 제57권 제3호(통권 제180호)(2016. 9.)
국제근로계약과 근로자보호― 개정 국제사법을 중심으로 ― 노동법학(제13호)(2001. 12.)
국제근로계약의 준거법에 관한 한국과 중국국제사법의 이동, 전북대학교 법학연구 통권 제31집(2010. 12.)
한국인 간에 일본에서 체결된 근로계약의 준거법, 민사판례연구 제31집(2009. 2.)

국제거래에서의 대리상의 보호—상법 제92조의2의 국제적 적용범위와 관련하여, 법조 통권 592호(2006. 1.)
국제적 채권양도의 준거법, 국제거래법연구 제15집 제1호(2006)
FIDIC 조건을 사용하는 국제건설계약의 준거법 결정과 그 실익, 사법 제29호(2014. 9.)
FIDIC 표준계약조건과 국내 민간건설공사 표준도급계약 일반조건의 비교, 국제거래법연구 제25집 제1호(2016. 7.)
국제적 기업인수계약의 준거법을 다룬 하급심 판결 평석: 주주총회의 특별결의를 요구하는 상법 규정은 국제적 강행규정인가, 경희법학 제53권 제2호(2018. 6.)
국제라이선스계약의 준거법 결정에서 당사자자치의 원칙과 그 한계: FRAND 선언을 통한 라이선스계약의 성립 여부를 포함하여, 국제사법연구 제24권 제1호(2018. 6.)

## 국제거래와 약관
국제거래와 약관규제에 관한 법률의 적용, 국제사법연구 제9호(2003. 12.)
영국법이 준거법인 한국 회사들 간의 선박보험계약과 약관규제법의 적용 여부, 저스티스 통권 제149호(2015. 8.)

## 국제회사법
국제회사법의 몇 가지 문제점—국제거래 실무상의 주요론점을 중심으로—, 서울지방변호사회, 변호사—회원연구논문집—제30집(2000)

## 국제지적재산권법
국제적인 지적재산권 분쟁 해결상의 문제점—국제사법적 론점을 중심으로—, 한양대학교 법학논총 제17집(2000)
외국저작권 침해의 준거법, 서울지방변호사회 판례연구 제23집(1)(2009. 9.)
국제지적재산권분쟁과 국제사법: ALI 원칙(2007)과 CLIP 원칙(2011)을 중심으로, 민사판례연구 제34집(2012)

## 국제법정채권법
가집행선고의 실효로 인한 가지급물 반환의무의 준거법, 전북대 법학연구 제51집(2017. 2.)
섭외불법행위의 준거법결정에 관한 소고 — 공통의 속인법에 관한 대법원판결을 계기로 본 섭외사법의 적용범위와 관련하여 —, 법조 1994. 9.(통권 제456호)
국제적인 제조물책임과 관련한 국제사법상의 문제점, 법무부, 통상법률 통권 제5호(1995. 10.)
강제징용배상 및 임금 청구의 준거법, 서울대 법학 제54권 제3호(2013. 9.)

## 국제전자상거래법
국제적인 전자거래와 분쟁해결—준거법을 중심으로—, 법무부, 인터넷법률 2호(2000. 9)
인터넷시대의 국제재판관할과 준거법, 남효순·정상조(공편), 인터넷과 법률(2002)

## 국제금융거래법
해외차입(현지금융 포함)의 실무와 법적인 문제점, 상사법학회, 상사법연구 제17권 제2호

(1998)

국제적인 신디케이티드 론 거래와 어느 대주은행의 파산, 민사판례연구 제25집(2003)

국내기업의 해외사채 발행의 실무와 법적인 문제점—유로채(Eurobond) 발행시 우리법의 적용범위에 관한 문제를 중심으로—, 국제거래법연구 제6집(1997)

우리 기업의 해외증권 발행과 관련한 법적인 미비점과 개선방안, 증권법연구 제3권 제2호(2002)

이동장비에 대한 국제적 단보권에 관한 UNIDROIT 협약안, 무역상무학회, 무역상무연구 제13권(둔남 량영환 박사 정년기념호)(2000)

항공기에 대한 국제적 담보거래—케이프타운협약과 항공기의정서를 중심으로—, 국제거래법연구 제12집(2004. 12.)

국제금융거래와 국제사법, BFL 제4호(2004. 3.)

국제금융에서의 신탁과 국제사법, BFL 제17호(2006. 5.)

UNCITRAL의 국제채권양도협약—협약의 소개와 민법 및 자산류동화에 관한 법률에의 시사점—, 통상법률 통권 제45호(2002. 6.)

스왑거래의 법적 문제점, 민사판례연구 제23집(2001)

파생금융상품거래에 있어서의 일괄청산의 문제점과 도산법의 개정, 국제거래법연구 제8집(1999)

동시상장 등 자본시장의 국제화에 따른 국제사법 문제의 서론적 고찰, 국제사법연구 제20권 제2호(2014)

국제금융거래에서 제3국의 외국환거래법과 국제적 강행규정의 적용: IMF 협정 제VIII조 2(b)를 포함하여, 국제사법연구 제26권 제1호(2020. 6.)

**국제무역거래**

수입화물의 소유권이전에 관한 연구, 통상법률 통권 제51호(2003. 6.)

국제무역거래에서 발행되는 환어음에 관한 몇 가지 문제점, 서울지방변호사회, 변호사—회원연구논문집—제33집(2003)

**국제물품매매협약(CISG)**

국제연합 국제물품매매협약(CISG)에의 가입과 관련한 몇 가지 문제점, 서울지방변호사회 변호사 제32집(2002. 1.)

국제물품매매협약 가입과 한국법에의 수용—, 상사법연구 제21권 제2호(2002. 6.)

국제물품매매계약에 관한 국제연합협약(CISG)상의 본질적 계약위반. 한양대 법학논총 제23집 제2호(2006. 10.)

국제물품매매협약(CISG)을 적용한 우리 판결의 소개와 검토, 국제거래법연구 제20집 제1호(2011. 7.)

국제물품매매협약(CISG)과 국제사법, 서울대 법학 제50권 제3호(통권 152호)(2009. 9.)

매매협약(CISG)이 적용되는 국제물품매매계약상 손해배상의 몇 가지 논점: 통화와 증명도로 본 통일 실질법의 사정범위(사정범위)와 흠결의 보충, 국제거래법연구 제27집 제1호(2018. 7.)

**국제신용상거래**

신용상거래상의 은행의 법적 지위—화환신용상거래의 법률관계—, 남효순·금재형(공편), 금융거래법강의 Ⅱ(2001)

연지급신용장의 만기전 매입 또는 지급, 판례연구 제17집(하)(서울지방변호사회, 2004. 1.)

신용장의 비서류적 조건의 유효성, 무역상무연구 제22권(2004. 2.)

국제신용상거래와 사기의 원칙에 관한 소고—한국법상의 법리를 중심으로—, 한양대 법학논총 제21집(2004. 10.)

신용상 개설은행인 외국은행을 상대로 한 소송과 국제재판관할—대법원 2000. 6. 9. 선고 98다35037 판결과 관련하여, 서울지방변호사회, 변호사—회원연구논문집—제31집(2001)

화환신용상거래에 따른 법률관계의 준거법, 대한변호사협회 인권과 정의 통권 제218호 (1994. 10.)

**국제공정거래법**

독점규제 및 공정거래에 관한 법률의 역외적용, 판례연구 제21집 제2권(2007)

경제법의 국제적 적용범위: 국제거래에서 소비자보호와 독점규제 및 공정거래에 관한 법률의 역외적용을 중심으로, 횡천리기수선생정년기념 논문집인 세계화시대의 기업법(2010)

**국제해상보험법**

해상적하보험계약에 있어 영국법 준거약관과 관련한 국제사법상의 문제점—대법원 1991. 5. 14. 선고 90다카25314 판결에 대한 평석: 대법원 1998. 7. 14. 선고 96다39707 판결의 소개를 포함하여—, 대한손해보험협회, 손해보험 1993년 12월호

해상적하보험증권상의 영국법 준거약관에 따라 영국법이 규율하는 사항의 범위—대법원 1998. 7. 14. 선고 96다39707 판결, 서울지방변호사회 판례연구 제15집(하)(2001)

**국제해상법**

선하증권의 준거법에 관한 몇 가지 문제점—국제해상물건운송계약법의 서론적 고찰—, 법조 1999년 4월호(통권 제511호)

선하증권에 의한 국제재판관할합의의 문제점—대법원 1997. 9. 9. 선고 96다20093 판결, 서울지방변호사회 판례연구 제16집(하)(2003)

용선계약상 중재조항의 선하증권에의 편입—대법원 2003. 1. 10. 선고 2000다70064 판결, 한양대학교 법학논총 제22집 제1호(2005. 6.)

해사국제사법의 몇 가지 문제점—준거법을 중심으로—, 한국해법학회지 제31권 제2호 (2009. 11.)

선박우선특권과 피담보채권(선원임금채권)의 준거법, 판례연구 제22집(1)(서울지방변호사회. 2008. 8.)

선박우선특권의 제척기간과 행사방법의 준거법과 성질결정, 국제사법연구 제25권 제2호 (2019. 12.)

**국제문화재법**

UNIDROIT 문화재환수협약 가입절차와 유의점, 국제사법연구 제15호(2009)

국제적 불법거래로부터 문화재를 보호하기 위한 우리 국제사법(국제사법)과 문화재보호법의 역할 및 개선방안, 서울대학교 법학 제56권 제3호(2015. 9.)

대마도에서 훔쳐 온 고려 불상의 부석사 반환을 명한 판결과 국제문화재법, 국제사법연구 제22권 제1호(2017. 6.)

문화재의 국제적 불법거래 방지를 위한 한국의 노력과 역할: 문화재 · 문화유산의 개념논의를 포함하여, 국제사법연구 제26권 제2호(2020. 12.)

## 국제민사소송법
### 재판권—국가면제—
외국국가에 대한 민사재판권의 행사와 주권면제—제한적 주권면제론을 취한 대법원 1998. 12. 17. 선고 97다39216 전원합의체 판결에 대한 평석—, 법조 통권 531호(2000. 12.)

### 국제재판관할
국제재판관할의 기초이론—도메인이름에 관한 대법원 2005. 1. 27. 선고 2002다59788 판결의 의의, 한양대 법학논총 제22집 제2호(2005. 12.)

국제적인 전자거래와 분쟁해결—국제재판관할을 중심으로—, 인터넷법률, 창간호(2000. 7)

인터넷과 국제재판관할, 인터넷법연구 제2호(2003. 4.)

인터넷거래의 국제재판관할과 지향된 활동, 인터넷과 법률(Ⅲ)(2010)

중간시안을 중심으로 본 국제재판관할에 관한 일본의 입법 현황과 한국의 입법 방향, 국제소송법무 제1호(한양대학교, 2010)

한국의 국제재판관할규칙의 입법에 관하여, 국제거래법연구 제21집 제2호(2012. 12.)

국제사법학회의 창립 20주년 회고와 전망; 국제재판관할과 외국판결의 승인 및 집행에 관한 입법과 판례, 국제사법연구 제20권 제1호(2014. 6.)

2018년 국제사법 전부개정법률안에 따른 국제재판관할규칙: 총칙을 중심으로, 동아대학교 국제거래와 법, 제21호(2018. 4.)

2018년 국제사법 전부개정법률안에 따른 국제재판관할규칙: 각칙을 중심으로 – 동아대 국제거래와 법, 제23호(2018. 10.)

2018년 국제사법 전부개정법률안에 따른 해사사건의 국제재판관할규칙, 한국해법학회지 제40권 제2호(2018. 11.)

2018년 국제사법 전부개정법률안[공청회안]에 따른 가사사건의 국제재판관할규칙, 국제사법연구 제24권 제2호(2018. 12.)

국제사법 제2조 제2항을 올바로 적용한 2019년 대법원 판결에 대한 평석: 일반관할과 재산소재지의 특별관할을 중심으로, 동아대 국제거래와 법 제29호(2020. 4.)

### 국제민사소송
국제소송에서의 외국인당사자, 서울지방변호사회 변호사—회원연구논문집 제36집(2006)

국제적 소송경합(*lis alibi pendens*), 서울지방변호사회 판례연구 제19집(2)(2006)

호주 법원 판결에 기한 집행판결 청구의 소에서 번호계인 원고의 당사자능력, 한양대 법학논총 제37집 제1호(2020. 3.)

한국에서 주된 사업을 하는 외국회사의 법인격과 당사자능력: 유동화전업 외국법인에 관한 대법원 판결과 관련하여, 선진상사법률연구 제90호(2020. 4.)

### 국제민사사법공조

헤이그송달협약에의 가입과 관련한 몇 가지 문제점, 세계국제법협회 한국본부, 국제법논총 제9권(2000)

한중일간의 민사사법공조조약의 체결을 제안하며, 아시아법제연구 제2호(2004. 9.)

한중 사법공조의 실천현황과 개선방안, 국제거래법학회지 제23집 제2호(2014. 12.)

**외국판결의 승인 및 집행**

외국금전이행판결의 승인 및 집행, 서울지방변호사회, 법조춘추 통권 제146호(1998. 1.)

외국판결 승인요건으로서의 송달—대법원 1992. 7. 14. 선고 92다2585 판결에 대한 평석을 겸하여—, 한국국제사법학회, 국제사법연구 제2호(1997)

손해배상을 명한 미국 미네소타주법원 판결의 승인 및 집행에 관한 문제점 특히 상호보증과 공서의 문제를 중심으로—서울지방법원동부지원 1995. 2. 10. 선고 93가합19069 판결에 대한 평석—, 국제사법연구 제2호(1997)

외국판결의 승인 및 집행—민사소송법 개정안과 민사집행법 초안에 대한 관견—, 인권과 정의 제271호(1999. 3.)

사기에 의한 외국판결승인의 공서위반여부와 상호보증, 민사판례연구 제ⅩⅩⅧ호(2006. 1.)

외국판결의 승인 및 집행: 2001년 이후의 판결을 중심으로, 진산 김문환 총장정년기념론문집 제1권: 국제관계법의 새로운 지평(2011)

강제징용배상에 관한 일본판결의 승인 가부, 국제사법연구 제19권 제1호(2013. 6.)

일제강점기 강제징용된 노동자들의 손해배상 및 임금 청구를 기각한 일본 법원 확정판결의 승인 여부, 판례실무연구 [XI](상)(사법발전재단, 2014. 11.)

식민지 불법행위에 대한 국제사법적 검토, 한일협정 50년사의 재조명 Ⅴ(역사공간, 2016)

손해배상을 명한 외국재판의 승인과 집행: 2014년 민사소송법 개정과 판례의 변화를 중심으로, 국제사법연구 제23권 제2호(2017. 12.)

**국제지적재산권법**

한국에 있어서 지적재산권분쟁의 국제재판관할, 변호사 제35집—회원연구논문집—(서울지방변호사회, 2005)

**국제가족법·국제가사소송법**

국제가사사건을 다루는 법률가들께 드리는 고언(苦言), 가족법연구 제30권 1호(2016. 3.)

국제입양에서 제기되는 국제사법의 제 문제: 입양특례법과 헤이그입양협약을 중심으로, 가족법연구 제26권 제3호(2012. 11.)

이혼 기타 혼인 관계 사건의 국제재판관할에 관한 입법론, 국제사법연구 19권 제2호(2013. 12.)

국제친권·후견법의 동향과 국내입법과제, 서울대학교 법학 제55권 제4호(2014. 12)

**국제도산법**

국제도산법의 몇 가지 문제점, 인권과 정의 통권 제241호(1996. 9.)

국제도산법에 관한 연구—립법론을 중심으로—, 통상법률 통권 제39호(2001. 6.)

미국 파산법원의 재판의 효력과 파산법의 속지주의, 서울지방변호사회 판례연구 제18집

(1)(2004. 8)

채무자회생 및 파산에 관한 법률(이른바 통합도산법)에 따른 국제도산법, 국제거래법연구 제15집 제2호(2006. 12.)

도산국제사법의 제문제: 우리 법의 해석론의 방향, 사법 제4호(2008. 6.)

외국도산절차의 승인에 관한 모델법과 EU규정의 비교: 한진해운 사건을 계기로, 국제거래법연구 제28집 제2호(2019. 12.)

## 국제상사중재법

개정중재법의 몇 가지 문제점—국제상사중재를 중심으로—, 한국국제사법학회, 국제사법연구 제5호(2000)

국제상사중재에서의 중재합의에 관한 법적 문제점—대법원 2004. 12. 10. 선고 2004다 20180 판결이 제기한 뉴욕협약상의 쟁점들을 중심으로, 중재연구 제15권 제2호(2005. 8.)

국제상사중재에서 중재합의의 준거법, 한양대학교 법학논총 제24집 제1호(2007. 6.)

국제상사중재에서 분쟁의 실체에 적용할 준거법—우리 중재법의 해석론을 중심으로, 한양대학교 법학논총 제23집 제1호(2006. 6.)

뉴욕협약에 따른 외국중재판정의 승인 및 집행. 국제상사중재법연구 제1권(박영사, 2007)

외국중재판정에 기초한 집행판결과 청구이의사유의 주장, 서울지방변호사회, 판례연구 제20집(1)(2006. 10.)

중재절차에서의 법원의 역할, 서울지방변호사회, 변호사—회원연구논문집—제37집(2007)

국제상사중재에서 중재판정의 취소—우리 중재법의 해석론을 중심으로—, 국제거래법연구 제16집 제1호(2007. 7.)

대한상사중재원의 2007년 국제중재규칙의 주요내용과 그에 대한 평가, 서울대학교 법학 제49권 제1호(통권 146호)(2008. 3.)

중재합의와 소송유지명령(anti-suit injunction), 선진상사법률연구 통권 제50호(2010. 4.)

사기에 의하여 획득된 외국중재판정의 승인과 공서위반 여부, 서울지방변호사회 판례연구 제24집(2)(2011)

외국중재판정의 승인·집행제도의 개선방안, 국제사법연구 제16호(2010)

중재법의 개정방향: 국제상사중재의 측면을 중심으로, 서울대학교 법학 통권 제164호(제53권 제3호)(2012. 9.)

한국에서 행해지는 ICC 중재에서 ICC 중재규칙과 한국 중재법의 상호작용, 한양대학교 국제소송법무 통권 제3호(2011. 11.)

국제분쟁해결의 맥락에서 본 국제상사중재, 서울대학교 법학 제55권 제2호(2014. 6.)

2016년 중재법 개정의 주요 내용과 그에 대한 평가, 전북대 법학연구 제53집(2017. 8.)

2016년 중재법에 따른 중재판정부의 임시적 처분: 민사집행법에 따른 보전처분과의 정합성에 대한 문제 제기를 포함하여, 국제거래법학회지 제26집 제1호(2017. 7.)

2016년 중재법에 따른 국내중재판정의 효력, 취소와 승인·집행에 관한 법리의 변화, 한양대 법학논총 제34집 제1호(2017. 3.)

캘리포니아주 법원의 확인명령을 받은 미국 중재판정의 승인·집행에서 그 대상, 중재합의의 성립과 임의대리의 준거법, 사법연구재단 사법, 2020년 가을호(53호)(2020. 9.)

## 대법원판례 정리 및 해설

2004년 국제사법 분야 대법원판례: 정리 및 해설, 국제사법연구 제10집(2004)
2005년 국제사법분야 대법원판례 : 정리 및 해설, 국제사법연구 제11호(2005. 12.)
2006년 국제사법분야 대법원판례 : 정리 및 해설, 국제사법연구 제12호(2006. 12.)

**유럽연합의 국제사법**
계약상 채무의 준거법에 관한 유럽공동체 협약(로마협약), 국제사법연구 제3호(1998)
계약외채무의 준거법에 관한 유럽연합 규정(로마Ⅱ), 서울대학교 법학 통권 제160호(제52권 제3호)(2011. 9.)
유럽연합의 국제도산법제, 국제사법연구 제7호(2002)
민사 및 상사사건의 재판관할과 재판의 집행에 관한 유럽공동체협약(브뤼셀협약), 국제사법연구 제2호(1997)
민사 및 상사사건의 재판관할과 재판의 집행에 관한 유럽연합규정(브뤼셀규정)—브뤼셀협약과의 차이를 중심으로—, 한양대학교 법학논총 제20집 제1호(2003. 6.)
개정루가노협약에 따른 계약사건의 국제재판관할, 서울대 법학 제49권 제4호(통권 149호)(2008. 12.)

**외국국제사법**
스위스 국제사법, 국제사법연구 제3호(1998)
스위스의 국제사법 재론, 국제사법연구 제26권 제2호(2020. 12.), 국제사법연구 제26권 제1호(2020. 6.)

**헤이그국제사법회의 협약**
민사 및 상사사건의 국제재판관할과 외국재판의 승인 및 집행에 관한 헤이그협약, 국제사법연구 제2호(1997)
민사 및 상사사건의 국제재판관할과 외국재판의 승인 및 집행에 관한 헤이그협약—1997년 6월 개최된 특별위원회 회의 참가보고를 겸하여—, 국제사법연구 제2권(1997. 12.)
민사 및 상사사건의 국제재판관할과 외국재판의 승인 및 집행에 관한 헤이그협약—1998년 3월 개최된 특별위원회 제2차 회의 참가보고서—, 저스티스 통권 제50호(1998. 12.)
헤이그국제사법회의 「민사 및 상사사건의 국제재판관할과 외국재판에 관한 협약」 예비초안, 한국국제사법학회, 국제사법연구 제5호(2000)
헤이그국제사법회의의 민사 및 상사사건의 국제재판관할과 외국재판에 관한 협약 2001년 초안, 한양대학교 법학논총 제20집 제1호(2003. 6.)
국제적인 증권단보거래의 준거법—PRIMA와 관련하여—, 증권법연구 제3권 제1호(2002. 6.)
국제적인 증권단보거래의 준거법—헤이그국제사법회의의 유가증권협약을 중심으로—, 증권법연구 제5권 제1호(2004)
2005년 헤이그 재판관할합의협약의 소개, 국제사법연구 제11호(2005)
1993년 헤이그국제입양협약(국제입양에 관한 아동보호 및 협력에 관한 헤이그협약), 국제사법연구 제15호(2009)
국제아동탈취의 민사적 측면에 관한 헤이그협약-서울대 법학 제54권 제2호(2013. 6.)
헤이그 국제상사계약 준거법원칙, 서헌제 교수 정년기념집(2015. 2.)

한국의 헤이그국제사법회의 가입 20주년을 기념하여: 회고, 현상과 전망, 동아대학교 국제 거래와 법 제19호(2017. 8.)

헤이그입양협약 비준을 위한 2018년 "국제입양에 관한 법률안"에 대한 검토, 가족법연구 제 33권 제1호(2019. 3.)

우리 법원의 IP 허브 추진과 헤이그 관할합의협약 가입의 쟁점, 국제사법연구 제25권 제1 호(2019. 6.)

우리 대법원 판결에 비추어 본 헤이그 관할합의협약의 몇 가지 논점, 국제사법연구 제25권 제1호(2019. 6.)

2019년 헤이그 재판협약의 주요 내용과 간접관할규정, 국제사법연구 제26권 제2호(2020. 12.)

### 외국법

한국법원에서 제기된 중국법의 쟁점—계약법, 불법행위법, 혼인법과 외국판결의 승인·집행을 중심으로, 서울대학교 법학 통권 156호(제51권 제3호)(2010. 9.)

### 기타

클라우드 컴퓨팅의 규제 및 관할권과 준거법, Law & Technology 제7권 제5호(2011. 9.)

UNCITRAL의 담보권 입법지침과 우리나라의 동산·채권담보법제, 통상법률 통권 제88호 (2009. 8.)

남북한 주민 간 법률관계의 올바른 규율: 광의의 준국제사법규칙과 실질법의 특례를 중심으로, 국제사법연구 제21권 제2호(2015. 12.)

한국 국제거래법학의 과제, 성균관법학 제28권 제3호(2016. 9.)

국제민·상사분쟁해결에 관한 동아시아법의 현황과 미래—조화와 통일의 관점에서—, 저스티스 통권 제158-2호(2017. 2. 한국법률가대회 특집호Ⅰ)

UNCITRAL이 한국법에 미친 영향과 우리의 과제, 비교사법 제25권 제4호(통권 제83호)(2018. 11.)

이호정 선생님의 국제사법학, 자유주의자 이호정의 삶과 학문, 이호정교수 추모문집(2019. 12.)

### 단행본

국제재판관할에 관한 연구(서울대출판부. 2001)

국제사법 해설(박영사. 2001, 2013)

국제물품매매계약의 법리(박영사. 2010)

국제민사소송법(박영사. 2012)

국제사법과 국제소송 제1권(박영사. 2001), 제2권(박영사. 2001), 제3권(박영사. 2004), 제4권(박영사. 2007), 제5권(박영사. 2012), 제6권(박영사. 2019)

국제상사중재법연구 제1권(박영사. 2007), 제2권(박영사. 2019)

## Publications in English
### English Articles

The New Conflict of Laws Act of the Republic of Korea, in Yearbook of Private

International Law, Volume 5(Swiss. 2003)

Some Observations on the Chinese Private International Law Act: Korean Law Perspective, Zeitschrift für Chinesisches Recht(Germany. 2011)

Comparative Analyses of the Chinese Private International Law Act and the Private International Law Act of Chinese Taipei: Korean Law Perspective, International Law Review(China University of Political Science and Law, 2013)

Recognition and Enforcement of Foreign Judgments in the Republic of Korea, Yearbook of Private International Law, Volume 15(Swiss. 2013/2014)

Korea's Accession to the Hague Child Abduction Convention, Family Law Quarterly, Volume 48, No. 2(U.S.A., 2014)

Harmonization of Private International Law Rules in Northeast Asia, Japanese Society of International Law, Journal of International Law and Diplomacy, Vol. 114(1), (Japan. 2015)

Introduction of Detailed Rules of International Adjudicatory Jurisdiction in Korea: Proposed Amendments of the Private International Law Act (Japan. 2018), Yearbook of Private International Law of Japan, Vol. 19 (Japan. 2017)

Recognition and Enforcement of Judgments between China, Japan, South Korea in the New Era: South Korean Law Perspective, Frontiers of Law in China, Vol. 13 No. 2 (2018. 6.)

Private International Law Issues on Cross-border Surrogacy Agreement under Korean Law, Nomos No. 43 (Japan. 2018)

**Korea Section in Books**

South Korea Section, in International Secured Transactions edited by Dennis Campbell, Binder 2 (Oceana Publications, Inc., Dobbs Ferry, NY, 2004)

South Korea Section, in Jürgen Basedow et al. (eds.), Encyclopedia of Private International Law Vols. 2 and 4 (Edward Elgar. 2017)

Country Report, in Adeline Chong (ed.), Recognition and Enforcement of Foreign Judgments in Asia (Asian Business Law Institute. 2017)

Law Applicable to Infringement of Foreign Copyright under the Berne Convention and the Korean Act on Private International Law, in LIU Kung-Chung (ed.), Annotated Leading Copyright Cases in Major Asian Jurisdictions (City University of Hong Kong Press. 2019)

**Expert Opinion**

**I. Background of the Inquiry**

1. I am a professor of law at School of Law, Seoul National University located in Seoul, South Korea and I teach International Business Transactions Law, Private International Law, and International Civil Procedure Law.   My experience and list of publications including papers and books are indicated in the curriculum vitae attached to this opinion.

2. Three hundred twenty-three plaintiffs including Wamai ("Plaintiffs") filed a lawsuit against the Iranian government and others in the United States District Court for the District of Columbia ("D.D.C.") which has jurisdiction over Washington, District of Columbia ("D.C.") seeking damages for the losses Plaintiffs suffered from terrorist attacks on U.S. embassies located in Kenya and Tanzania, and obtained judgments ordering the payment of a certain amount (the "D.D.C. Judgment"), which decision became final and conclusive.

3. On January 14, 2021 (time in New York, United States), Plaintiffs filed a civil lawsuit (Case no 1:21 – cv-00325-DLC) against the Industrial Bank of Korea ("IBK") of Korea in the United States District Court for the Southern District of New York (Wamai et al. vs. Industrial Bank of Korea; hereinafter "lawsuit in this case").   In the lawsuit in this case, Plaintiffs seek the following with respect to IBK: (i) compensation of losses Plaintiffs suffered from disposal of Iranian government assets through IBK's alleged collusion and consultation with the Iranian government and (ii) turnover of the Iranian government assets under IBK's control or possession.

4. IBK asked me to prepare an opinion regarding the interpretation and application of the law of Korea (Korean law) on the recognition and enforcement of foreign judgment in relation to whether Plaintiffs would be able to effect compulsory execution of Iranian government assets in Korea based on the D.D.C. Judgment and the procedures for doing so.   I was also requested to provide an opinion on the independence of the Korean judiciary and the fairness of court proceedings.

5. The views I present in this opinion are based on Korean law, precedents, and discussions in the academia.   I reviewed items including (i) the complaint that Plaintiffs filed in the lawsuit in this case, (ii) the judgments Plaintiffs obtained in the lawsuits for damages against the Iranian government, (iii) the briefs and expert opinions submitted by both the plaintiffs and the defendant in relation to the defendant's motion to dismiss in the Halkbank case, and (iv) the court's judgment in the Halkbank case.

6. For preparing this expert opinion, I received customary level of remuneration.

## II.  Enforcing the D.D.C. Judgment in Korea

### A.  Recognition and enforcement of a judgment rendered by a foreign court

7. Under Korean law, if a judgment rendered by a foreign court (a "foreign judgment") satisfies the requirements for recognition, it is automatically recognized to have force (excluding the authority to enforce) in Korea including the effect of *res judicata* without having to undergo a separate process (Article 217 of the Civil Procedure Act).   This is referred to as "automatic recognition."   In principle, the scope of the effect of *res judicata* recognized in Korea would depend on the laws of the country (hereinafter the "State") where the matter was adjudicated.   However, there is no precedent or authoritative interpretation as to whether the effect of *res judicata* would be recognized to the same degree in Korea as under the laws of the State where the matter was adjudicated, or only to the extent the effect of *res judicata* is recognized under Korean law.

8. In contrast, to enforce a foreign judgment, it is necessary to obtain an enforcement decision (*exequatur*) from a Korean court permitting the enforcement of such judgment. The Civil Procedure Act in Germany (*Zivilprozessordnung*) served as the model for the structure, requirements for recognition, and requirements for enforcement [in Korea].

9. After obtaining an enforcement decision from a Korean court permitting the enforcement of the D.D.C. Judgment, Plaintiffs would be able to utilize such enforcement decision as the title of execution to effect compulsory execution against the Iranian government assets located in Korea (Article 26, Paragraph 1 of Civil Execution Act).

**Korean Civil Execution Act**

**Article 26 (Compulsory execution of a foreign judgment)**

(1) Compulsory execution based on the final and conclusive judgment of a foreign court or adjudication which is recognized to have the same effect (hereinafter referred to as "final judgment, etc.") may be conducted only if a Korean court has permitted such compulsory execution by means of issuing an enforcement decision.

(2) A lawsuit seeking an enforcement decision shall be under the jurisdiction of the district court where there is generally-affiliating basis for jurisdiction over the debtor, and if there exists no generally-affiliating basis for jurisdiction, the court having jurisdiction over the lawsuit against the debtor under Article 11 of the Civil Procedure Act shall have jurisdiction.

**B. Whether sovereign immunity applies to the Iranian government**

10. In the event Plaintiffs file a lawsuit seeking an enforcement decision, the defendant would be the Iranian government (or to be more exact, the Islamic Republic of Iran). Since a lawsuit seeking an enforcement decision is subject to the general litigation procedures, for a Korean court to conduct the litigation against the Iranian government, the Iranian government must be denied the application of sovereign immunity.

11. Sovereign immunity is an issue of exemption from *facultas jurisdictionis* (*jaepankwon* in Korean).   Typically, civil litigation procedures are distinguished between court adjudication procedures and enforcement procedures (or compulsory execution procedures).   As such, "sovereign immunity" is also distinguished between "sovereign immunity in court adjudication process" and "sovereign immunity in enforcement process."   "Sovereign immunity in court adjudication process" is discussed in this section, and "sovereign immunity in enforcement process" is discussed in Section E below.

12. In the United States, there is a federal law concerning sovereign immunity, namely, the Foreign Sovereign Immunities Act of 1976 ("FSIA").   However, Korea does not have a corresponding law.   Also, Korea did not join the United Nations ("UN") Convention on Jurisdictional Immunities of States and Their Property that the UN adopted in December 2004.   Therefore, in Korea, the courts determine the scope of application of sovereign immunity on a case-by-case basis.

13. In the past, the Supreme Court took the position that sovereign immunity is absolute. However, in an *en banc* decision rendered on December 17, 1998 in Case no. 97*Da*39216, the Supreme Court took a different position from past precedents, finding, "Although, under the customary international law, in principle, one State's sovereign acts may be said to be exempt from *facultas jurisdictionis* of another State's court, it is difficult to conclude that even the private-law acts of a State are exempt from *facultas jurisdictionis* of another State's court under today's international law or international custom," and has continued to take such position afterwards.   Lower court decisions have followed this Supreme Court decision.

14. Under this theory of limited sovereign immunity, sovereign immunity is not recognized when a State engages in commercial or other similar activities. Such acts are referred to as "*acta jure gestionis*" (non-sovereign acts).   In contrast, acts regarding which sovereign immunity is recognized are referred to as "*acta jure imperii*" (sovereign acts). While there are differing views on how to distinguish between the two, it is widely accepted in Korea that the acts should be distinguished based on their nature.

15. In the case of Korea, in 2021, the lower court rendered a decision taking into consideration the international human rights law, which decision then became final and conclusive.   In this case where the plaintiffs who suffered as comfort women for the Japanese military during the Japanese occupation of Korea filed a lawsuit seeking damages against the Japanese government, one issue was whether the Japanese government is entitled to sovereign immunity although it violated international law, especially "*jus cogens*."   The Seoul Central District Court determined that sovereign immunity cannot be recognized for the Japanese government, taking into consideration the judgment rendered by the Italian Supreme Court on March 11, 2004 in the Ferrini case, and the ruling by the Italian Constitutional Court rendered on October 22, 2014, among others.[1]   In those decisions, the Italian Supreme Court denied Germany's sovereign immunity, and the Italian Constitutional Court determined that the law the Italian Congress enacted to embrace the judgment rendered by the International Court of Justice (ICJ) on February 3, 2012 which recognized Germany's sovereign immunity[2] violated the Italian Constitution. To explain in more detail, the Seoul Central District Court arrived at the conclusion that it is difficult to apply sovereign immunity in the aforementioned [comfort women] case because the defendant Japanese government intentionally, systematically, and widely committed inhumane acts which violated *jus cogens* under international law, and that therefore Korean courts may exercise *facultas jurisdictionis* (similar to State jurisdiction in the United States) over the defendant Japanese government.[3] Such view taken by the court of first instance does not follow the traditional international customary law, and in effect, accepts the terrorism exception under §1605A of the FSIA.

16. In a lawsuit that seeks an enforcement decision against the Iranian government, the Korean courts would determine whether sovereign immunity applies, taking into full consideration the tendency of court precedent like the above.

### C. Requirements for granting an enforcement decision

17. For an enforcement decision to be granted, the foreign judgment at issue must be shown to be final and conclusive, and the requirements under Article 217 of the Civil Procedure Act must be satisfied (Article 27, Paragraph 2 of the Civil Execution Act). The court may examine this issue *ex officio*.   Below are the relevant provisions.

| |
|---|
| **Korean Civil Execution Act** |
| **Article 27 (Enforcement decision)** |

---

[1] Seoul Central District Court Decision No. 2016*Kahap*505092 rendered on January 8, 2021.
[2] Jurisdictional Immunities of the State, Germany v. Italy: Greece intervening.
[3] Seoul Central District Court Decision No. 2016*Kahap*505092 rendered on January 8, 2021.

| | |
|---|---|
| (1) | An enforcement decision shall be rendered without examining whether or not the judgment is proper or improper. |
| (2) | A lawsuit seeking an enforcement decision shall be dismissed under any of the following circumstances: |
| 1. | When it has not been proven that the final judgment, etc. of a foreign court has become final and conclusive. |
| 2. | When the final judgment, etc. of a foreign court fails to satisfy the conditions in Article 217 of the Civil Procedure Act. |

18. The court that examines a lawsuit seeking an enforcement decision does not have the authority to examine whether or not the judgment was properly rendered (Article 27, Paragraph 1 of the Civil Execution Act).   This is referred to as a prohibition on *révision au fond* (review of the merits).   Therefore, as long as the D.D.C. has recognized that Plaintiffs suffered losses from the acts committed by the Iranian government, even if this was a default judgment, a Korean court, in determining whether or not to grant an enforcement decision, may not conduct a review as to whether the D.D.C. properly examined evidence and accurately determined the facts. In other words, Plaintiffs need not newly assert and prove the existence of their claim against the Iranian government in seeking an enforcement decision; provided that, in order for a default judgment to be recognized as a foreign judgment, it must have been rendered by a judge and not a court clerk.   Under an exception to the prohibition on *révision au fond,* Korean courts may conduct a review of the merits within the necessary scope to determine whether the requirements for recognition [of a foreign judgment] have been satisfied.[4]

19. Article 217, Paragraph 1 of the Civil Procedure Act sets forth five requirements for recognizing a foreign judgment.   Also, although this is not expressly stated in Article 217, the foreign court must have had *facultas jurisdictionis*.[5] To put it differently, the defendant State must not have been entitled to sovereign immunity in the foreign State [where the judgment was rendered].   Below are the relevant provisions.

| |
|---|
| **Korean Civil Procedure Act** |
| **Article 217 (Recognition of a foreign judgment)** |
| (1) A final and conclusive judgment rendered by a foreign court or a judgment which is recognized to have the same effect (hereinafter referred to as "final judgment, etc.") must satisfy all of the following requirements to be recognized. |

---

[4] In its decision rendered on February 9, 1988 in Case no. 84*Daka*1003 concerning foreign arbitral award, the Supreme Court ruled to the same effect.

[5] This is recognized as an academic theory. Kwang Hyun Suk, *International Civil Procedure Law* (2012), p. 356.

1. The international jurisdiction of such foreign court shall be recognized under the principle of international jurisdiction pursuant to Korean laws or treaties.
2. The defeated defendant shall have been served the complaint or a similar document, and notification or order concerning the hearing, allowing him/her sufficient time for defense, by a lawful method, (except in cases where service was made by public notice or other similar means), or shall have responded to the lawsuit without having been served such documents.
3. The recognition of such final judgment, etc. shall not be contrary to sound morals or other social order of Korea considering the substance of such final judgment, etc. and the litigation procedures.
4. There shall be mutual guarantee (reciprocity), or the requirements for recognition of the final judgment, etc. in Korea and in the foreign State where the foreign court is located shall not be so different as to clearly lack balance, and there shall not be substantial differences between the two in important aspects.

(2) A court shall investigate *ex officio* whether the requirements under Paragraph 1 have been satisfied.

**Article 217-2 (Recognition of a final judgment, etc. concerning damage compensation)**

(1) A court shall not recognize the final judgment, etc. in whole or in part where a final judgment, etc. concerning damage compensation gives rise to an outcome that is clearly contrary to the general order under Korean laws or the international treaties that Korea has entered into.

(2) In examining whether the requirements under Paragraph 1 have been met, a court shall take into consideration whether the litigation costs and expenses, including attorney fees, were included in the damages that the foreign court has recognized, and the amount of such expenses.

### C. 1. Requirement that the foreign judgment must be final

20. Under Article 217, Paragraph 1 of the Civil Procedure Act, one of the requirements for recognition of a foreign judgment is that the foreign judgment be final or be recognized to have the same effect as a final judgment.

21. Since the D.D.C. Judgment concerning the Iranian government became final many years ago and is not appealable, it appears to constitute a type of judgment that meets the requirement for recognition under Article 217, Paragraph 1 of the Civil Procedure Act.

### C. 2. Requirement of existence of international jurisdiction

22. Korean law does not utilize concepts of what is referred to as *in personam* jurisdiction, *in rem* jurisdiction and *quasi in rem* jurisdiction in the United States.   Under Korean law, the allocation of jurisdiction between Korean courts and foreign courts in an international context is dealt with as an issue of "international jurisdiction to adjudicate" (hereinafter "international jurisdiction"), as contrasted with land-based jurisdiction which involves the allocation of jurisdiction among the courts in Korea.   Therefore, the concept of international jurisdiction under Korean law may be regarded as corresponding to what is referred to as *in personam* jurisdiction in the United States.

23. Article 217, Paragraph 1, Item 1 of the Civil Procedure Act provides that "the international jurisdiction of the foreign court must be recognizable under the principle of international jurisdiction pursuant to Korean laws or treaties."   Therefore, whether a foreign court had international jurisdiction should be determined using the same standards that would have been applied had a Korean court heard the case.[6] In the current instance, for the D.D.C. Judgment to satisfy the requirements for international jurisdiction under Article 217 of the Civil Procedure Act, it must be recognized that D.D.C. had international jurisdiction under the standards for determining the existence of international jurisdiction provided in the Act on Private International Law in Korea ("APIL").

24. Article 2 of the APIL provides the general principle behind international jurisdiction as follows.

**APIL**

**Article 2 (International jurisdiction)**
(1) A court shall have the international jurisdiction where a party or a case in dispute has a substantial connection with Korea.   The court shall follow reasonable principles, consistent with the principles as to how international jurisdiction should be exercised, in determining whether there exists a substantial connection.
(2) A court shall determine whether or not it has international jurisdiction taking into consideration the jurisdictional provisions in Korean law and shall also sufficiently take into consideration the special nature of international jurisdiction in light of the purport of Paragraph 1.

25. A "substantial connection" in Article 2, Paragraph 1 of the APIL means that there is a connection between the party or the case in dispute and Korea which is sufficient to justify the exercise of jurisdiction by a Korean court.

---

[6] There was controversy in the past when there were no clear rules in place, but the above view was shared by majority and was mainstream jurisprudence. *See* for example, Supreme Court Decision No. 93*Da*39607 rendered on November 21, 1995, et al.

26. According to the Supreme Court, in determining whether a substantial connection exists, a court should apply the "reasonable principles consistent with the principles as to how international jurisdiction should be exercised, such as fairness to the parties, appropriateness of trial, swiftness, and economy." "To discuss this in more detail, not only personal interests such as fairness to the parties, convenience, and predictability, but also the interests of the court or the State, such as appropriateness of trial, swiftness, efficiency, and effectiveness of the judgment should be considered together, and which interest, among the various interests in exercising international jurisdiction, warrants protection should be determined reasonably based on whether a substantial connection exists in a given case."

27. Article 2, Paragraph 2 of APIL points to the venue provisions in Korean law as the standards or means through which the existence of a substantial connection should be determined.   In this connection, the Supreme Court has held that, "The jurisdictional provisions in Korean law shall serve as the basic standards in determining whether or not a court has international jurisdiction, but a court may reasonably modify these [provisions] to be consistent with the principles as to how international jurisdiction should be exercised, taking into consideration the legal nature of the given case and other individual and specific circumstances."[7]

28. Under Korean court practice, there is a tendency to conclude that a court in a State has international jurisdiction over a given matter if it has land-based jurisdiction in that State in accordance with the venue provisions in the Korean Civil Procedure Act.   Of course, Korean courts modify the venue provisions as appropriate, if this is necessary to conform to the principles as to how international jurisdiction should be exercised. For example, in a case where the plaintiff and the defendant were both Canadian citizens and were domiciled in Canada, the Korean Supreme Court recognized that a Korean court had international jurisdiction over the matter because there was a considerable basis to recognize a substantial connection between Korea and the given matter, although it was difficult to recognize the jurisdiction of a Korean court under the jurisdictional provisions in Korean law.[8]

29. Whether or not a Korean court would find that D.D.C. had international jurisdiction over a lawsuit for damages in connection with terrorist attacks on the U.S. embassies located in Kenya and Tanzania, which were carried out with the support of the Iranian government, depends on how a Korean court would rule on the degree of substantial connection between Washington, D.C. and the dispute at issue, taking into account the personal interests such as fairness to the parties, convenience, and predictability, as well

---

[7] Supreme Court Decision No. 2017*Meu*12552 rendered on February 4, 2021.
[8] Supreme Court Decision No. 2017*Meu*12552 rendered on February 4, 2021.

as the interests of the court or the State, such as appropriateness of trial, swiftness, efficiency, and effectiveness of the judgment. The fact that the acts at issue were terrorist attacks that were planned and executed aimed at U.S. embassies will serve as a favorable factor for Korean courts in recognizing a substantial connection between Washington D.C. and this case.

### C. 3. Requirement concerning proper service

30. Article 217, Paragraph 1, Item 2 of the Civil Procedure Act requires that "the defeated defendant shall have been served by a lawful method, the complaint or a similar document, and notification or order concerning the hearing, allowing him/her sufficient time for defense (except for cases where service was made by public notice or other similar means), or shall have responded to the lawsuit without having been served such documents."

31. Although there are differing views on which standards – the laws of the State where the court proceeding took place or the laws of the State where the judgment would be recognized - should apply in determining whether documents were properly served, it is generally recognized in the private international law that "procedures of the State where the court proceeding took place should apply."   Since it is not possible to know at the time of service in what State the plaintiffs would seek to enforce the judgment, it seems reasonable to determine the issue based on the laws of the State where the court proceeding took place.   Under Korean court precedents, Korean courts determine whether service was appropriate based on the laws of the State where the court proceeding took place.[9]

32. Whether service was timely is determined based on the overall circumstances, considering factors such as the following, not simply based on whether the period for service was complied with under the laws of the State where the court proceeding took place: (i) time needed for preparing a translation, (ii) time needed to contact foreign attorneys, (iii) time needed to properly prepare for litigation, and (iv) whether the matter involved ordinary litigation procedures or procedures for preservative measures.

33. Korean law requires the requirements under the Article 217, Paragraph 1, Item 2 of the Civil Procedure Act to be satisfied for the recognition and enforcement of a foreign judgment, and does not distinguish between whether the foreign judgment was or was not a default judgment.

---

[9] Supreme Court Decision No. 2008*Da*31089 rendered on July 22, 2010.

34. There have been cases where a default judgment rendered by a U.S. court was recognized and enforced in Korea.  One example is the decision rendered by the Eastern Branch of Seoul District Court on February 10, 1995 in Case no 93*Kahap*19069 (affirmed by the Supreme Court on September 9, 1997 in Case no. 96*Da*47517). Below is a summary of how this case proceeded.

> a. In April 1992, a Korean-American residing in Minnesota, United States filed a lawsuit seeking damages for assault and rape, etc. in a Minnesota district court against a Korean citizen studying in the United States.
> b. Although the complaint and summons were served on the defendant, the defendant returned to Korea without responding to the plaintiff's claims.
> c. The plaintiff sought a default judgment from the Minnesota district court. Following an examination by a referee, the Minnesota district court found in January 1993 that the defendant had committed a tort and rendered a judgment ordering the defendant to pay USD 500,000 to the plaintiff for pain and suffering, loss of past and future wages, past and future medical expenses, and other costs.
> d. Since Minnesota law does not require the judgment to be served on the defendant, the above judgment was not served on the defendant, and the defendant did not appeal.
> e. The plaintiff filed a lawsuit against the defendant in Korea seeking an enforcement decision for compulsory execution of the Minnesota court decision.
> f. The Korean court granted the plaintiff's request for an enforcement decision.
> g. However, in granting the plaintiff's request for an enforcement decision, the Korean court limited the damages to 50% of damages awarded by the U.S. court, stating that recognition may be limited for the damage award granted by a U.S. court which clearly exceeds the damages that would be recognizable in Korea under the Korean Act on the Compensation of Damages, since recognizing such [excess] portion would violate public order and sound morals.

35. For the D.D.C. Judgment to satisfy the service requirement under Article 217, Paragraph 1, Item 2 of the Civil Procedure Act, the Iranian government must have been served with the complaint or a similar document, and notification or order concerning the hearing, by a lawful method under U.S. laws, such that it was given sufficient time for defense, and the service must not have been made by public notice or other similar means.  If the service on the Iranian government was made in accordance with §1608(a) of FSIA and allowed the Iranian government sufficient time for defense, then the requirements concerning service under Article 217, Paragraphs 1 and 2 would be deemed to have been satisfied.

**C. 4. Requirement that recognition of the foreign judgment must not be contrary to public order**

**C. 4. 1. Concept of public policy**

36. Article 217, Paragraph 1, Item 3 of the Civil Procedure Act requires that "The recognition of a final judgment, etc. shall not be contrary to sound morals or other social order of Korea considering the substance of such final judgment, etc. and the litigation procedures."   In other words, for a foreign judgment to be recognized in Korea, the recognition of the effect of the foreign trial should not be contrary to sound morals or other social order, i.e., public policy.

37. The concept of public policy under Article 217, Paragraph 1, Item 3 of the Civil Procedure Act is understood to mean "international public policy," which takes into consideration not only the conditions in Korea but the need to foster the stability of the order in international transactions.   International public policy includes not only universal public policy, which is reasonable globally beyond individual States, such as the prohibition on invasive war and crimes against humanity, but also public policy, which is deemed necessary to foster the stability of order in international transactions from the perspective of the State where enforcement is made.

38. The concept of public policy under Article 217, Paragraph 1, Item 3 of the Civil Procedure Act is a narrower concept than "sound morals and other social order" in Article 103 of the Civil Act, i.e., domestic public policy.   Therefore, even if a foreign court rendered a judgment applying a foreign law, which contains provisions that are not accepted under Korean law, this fact alone does not lead to the conclusion that the recognition of the foreign decision is contrary to public policy.

39. In a decision rendered on June 25, 2009 in Case no. 2009*Da*22952 concerning a divorce judgment that became final in a foreign court, the Supreme Court held that it cannot conclude that the recognition of the foreign judgment violates public policy under Article 217 of the Civil Procedure Act simply because the foreign court recognized the divorce for "breakdown of marriage," which is not a ground for divorce under the Korean Civil Act, effected the division of property in a way that is different from how property is divided in Korea, and ordered the payment of spousal support which is not recognized in Korea.

40. Whether the recognition of a foreign judgment would lead to an outcome that violates sound morals or other social order in Korea should be determined at the time such determination is made, based on the effect the recognition of such foreign judgment

would have on the basic ethics and social order that Korean law seeks to protect, considering the connection between the matter that was dealt with in the foreign judgment and Korea.   In making such a determination, not only the order issued under the foreign judgment but also the reasons behind such order, and the likely effect of recognizing the foreign judgment should be considered together.[10] In the case of the D.D.C. Judgment, with the exception of the aspects of the decision, which are discussed below, there does not seem to be much risk of other aspects of the decision being regarded as violating public policy.

### C. 4. 2. Punitive damages

41. Public policy provided in Article 217, Paragraph 1, Item 3 of the Civil Procedure Act is divided into "substantive public policy" and "procedural public policy."   What often arises as an issue in connection with substantive public policy is whether a U.S. court judgment, which awarded punitive damages for tort, may be recognized and enforced.

42. Punitive damages mean damages that are awarded for the primary purpose of penalizing an illegal act and deterring similar illegal acts, which is recognized under common law, in addition to restitution or compensatory damages which serves the function of making the aggrieved party whole for the loss he/she suffered, particularly when there is a subjective circumstance attributable to the wrongdoer, such as intent.

43. Whether a punitive damage award may be recognized and enforced [in Korea] has often become an issue because punitive damages have a different nature or role from the civil law system in Korea which only recognizes restitution for loss resulting from tort.

44. Article 217-2, Paragraph 1 of the Civil Procedure Act, which was newly established in 2014, provides, "Where a final judgment, etc. concerning compensation of damages gives rise to an outcome that is clearly contrary to the general order under Korean law or the international treaties that Korea has entered into, a court shall not recognize the final judgment, etc. in whole or in part."   This provision was intended to appropriately limit the recognition and enforcement of a foreign judgment that awarded punitive damages or damages that amount to several times the loss.   This issue is resolvable under the public policy requirement (particularly that of substantial public policy) without adopting a separate legal provision, but Article 217-2 is understood to have been newly adopted to promote the stable application of law by clarifying the [legislative] intent.

---

[10] Supreme Court Decision No. 2009$Da$22549 rendered on May 24, 2012.

45. In a past decision rendered by Pyungtaek Branch of Suwon District Court on April 24, 2009 in Case no. 2007*Kahap*1076,[11] the court only recognized and permitted the enforcement of the part of the judgment that awarded compensatory damages, while refusing to recognize and permit the enforcement of the part of the judgment that awarded punitive damages.   The court explained that recognition and enforcement of a foreign judgment that awarded treble damages (consisting of compensatory damages, and also punitive damages which was double the actual loss) would follow the principles that is fundamentally different from the principles behind the compensatory system in Korea, which purports to effect restitution for loss.

46. The above decision did not raise much question since the Korean legal system at the time did not recognize treble damages.   However, given that Korea adopted the treble damage system in various laws, the recognition and enforcement of a foreign judgment that awarded treble damages cannot be said to violate Korean public policy as a matter of course.

47. Korea first adopted a treble damage system in June 2011 in the Fair Transactions in Subcontracting Act (Article 35, Paragraph 2), and subsequently adopted such system in the Personal Information Protection Act (Article 39), the Fair Transactions in Franchise Business Act (Franchise Business Act)(Article 37-2), and the Fair Agency Transaction Act (Article 34, Paragraph 2), among others.   In April 2018, Product Liability Act (Article 3, Paragraph 2) was amended to allow the court to impose up to three times the loss as damages if the manufacturer fails to take necessary measures despite knowledge of defects and as a result, causes loss of life or significant bodily injury to the consumer.   As seen here, Korea continues to adopt a punitive damage system in many individual laws, and this trend is expected to continue for some time. In February 2021, a system was adopted under which the automobile manufacturer may be held liable for up to five times the losses if the manufacturer conceals or downplays, falsely discloses, or fails to take corrective measures without delay with respect to a defect, despite knowledge of the defect, and causes loss of life or significant bodily injury or property losses to the automobile owner, etc. (Motor Vehicle Management Act, Article 74-2, Paragraph 2).

48. As seen above, a compensation system which allows the imposition of three or five times the loss as damages is being adopted in more and more sectors under Korean law. Therefore, we cannot jump to the conclusion that the recognition of a foreign judgment

---

[11] Following Supreme Court Decision No. 2008*Da*31089 rendered on July 22, 2010, the appellate court held that the requirements for service of process set forth in Article 217 of the Civil Procedure Act were not satisfied on the ground that the defendant was not served with process pursuant to the laws of the State of Washington (Seoul High Court Decision No. 2009*Na*45377 rendered on August 12, 2010); accordingly, the claim for enforcement decision was dismissed; and since this decision was not appealed to the Supreme Court, the above judgment became final on September 14, 2010.

that awarded three times or five times the loss as damages would be clearly contrary to public policy in Korea or would lead to an outcome that clearly violates the general order under Korean laws or treaties. In these changing times, there is no established theory on how to handle the recognition and enforcement of a U.S. court judgment that awarded three times or five times the loss as damages. I have pointed out in the past that there may be differing views on this issue as explained below.[12]

49. One view is that the recognition and enforcement of a final foreign court judgment that awarded treble damages should no longer be denied. Under this view, since Korea has adopted the treble damages system, even if a final foreign judgment has awarded treble damages in a legal sector where treble damages are not awarded in Korea, the recognition of such foreign judgment would not violate the general order under Korean law, and even if the foreign judgment was deemed to violate the general order, it at least would not violate the general order under Korean law to a substantial degree. Another view is that the recognition and enforcement [of a foreign judgment which awarded treble damages] (or to be more exact, the part of the foreign judgment that awarded damages which exceed compensatory damages) can be denied except in a legal sector where Korean law has adopted treble damages. In this connection, Seoul High Court rendered a decision in 2018 which appears to follow the second view, which case is currently pending at the Supreme Court.[13]

50. Under the second view, since a punitive damage system has not yet been adopted for malicious tort in general, it may be concluded that recognition and enforcement of a punitive damage award that exceeds the scope of compensatory damages should not be permitted in such sector.

51. However, efforts are currently being made in the Korean National Assembly to adopt a punitive award system in general cases. That is, a "Bill for Punitive Damages" was proposed in the National Assembly on September 15, 2020, which recognizes punitive damages generally for malicious torts. According to the reasons for this proposal, the bill proposing punitive liability was proposed taking into consideration (i) predicting what type of tort may be committed in the future is difficult, although provisions were newly established in several special laws each time a certain issue drew public controversy since the adoption of the treble damage system in 2011 and (ii) there is a need to limit tort generally rather than just in specific areas.[14] Under the aforementioned

---

[12] Kwang Hyun Suk, "Recognition and Enforcement of Foreign Judgments Ordering Payment of Compensation for Damages: With a Focus on the Amendment of Civil Procedure Act in 2014 and Changes of Court Precedents thereafter," *Korea Private International Journal* 23, no. 2 (December 2017), p. 284.

[13] Seoul High Court Decision No. 2017*Na*2057753 rendered on March 23, 2018 (currently pending at the Supreme Court as No. 2018*Da*231550).

[14] See the reasons for proposing the Bill for Punitive Damages (Bill No. 3916) sponsored by Rep. Ki

bill (Article 4, Paragraph 2), punitive damages would be capped at (i) three times the compensatory damages or (ii) the amount of gain the tortfeasor obtained through the malicious tort, whichever is greater.   In addition, on September 28, 2020, a legislative notice was issued concerning proposed amendments to the Commercial Code which would introduce a "punitive damage system" to the Commercial Code which is the basic legislation governing corporate activities.    According to the Ministry of Justice, there is a need to apply the punitive damage system to the Commercial Code, which is the basic legislation governing corporate activities, in order to operate the punitive damage system that is scattered in various laws in a uniform manner and to increase the effectiveness of such system.[15] According to the proposed amendment of the Commercial Code, a merchant who causes losses to another party intentionally or through gross negligence would face liability for up to five times the losses.[16] If such legislation is in fact adopted, even under the second view explained above, the recognition and enforcement of a foreign judgment that awarded punitive damages for malicious tort would be permitted.

52. Korean courts would determine whether to recognize and enforce punitive damages in the current case taking into consideration the following, among others: (i) the amount of punitive damage in the D.D.C. Judgment is the same amount as compensatory damage, rather than twice such amount or greater, (ii) several laws have been passed or proposed recently in Korea which recognize punitive damages for intentional tort that produces multiple victims, and (iii) in a case where intentional acts of terrorism produced multiple victims, there is a significant need to recognize punitive damages to strengthen the protection of the victims and to deter recurrence as far as possible. Furthermore, even under the second view explained above, if the part of the judgment that awarded compensatory damages can be distinguished from the part of the judgment that awarded punitive damages, the recognition and enforcement of the part which awarded compensatory damages would be permitted.

### C. 4. 3. Award of excessive compensatory damages

53.  In the past, lower courts in Korea have limited the recognition and enforcement of foreign judgments that awarded grossly excessive compensatory damages for violating

---

Hyung Oh on September 15, 2020.

[15] *See* p. 1 of "Key features of 'the proposed partial amendment of the Commercial Code' for adoption of the punitive damage system" attached to the Ministry of Justice's press release, dated September 28, 2020, on the legislative notices of 'Class Action Bill' and 'Proposed partial amendment of the Commercial Code.'

[16] *See* Article 66-2 (Special provision on merchants' liability for damages) of 'the proposed partial amendment of the Commercial Code' attached to the Ministry of Justice's press release, dated September 28, 2020, on the legislative notices of 'Class Action Bill' and 'Proposed partial amendment of the Commercial Code.'

public order (e.g., some courts have allowed the recognition and enforcement of only 50% of the awarded damages), and the Supreme Court affirmed such decisions.

54. However, after Article 217-2 of the Civil Procedure Act was newly adopted, the Supreme Court held as follows: "Article 217-2, Paragraph 1 of the Civil Procedure Act was adopted to limit to an appropriate degree the recognition of final judgment, etc. of a foreign court that awarded damages which exceed compensatory damages (e.g., awarded punitive damages).   Therefore, if the final judgment, etc. of a foreign court only ordered the damages that a party actually incurred to be compensated for, the recognition of such judgment should not be limited based on Article 217-2, Paragraph 1 of the Civil Procedure Act."[17]

55. If Article 217-2, Paragraph 1 of the Civil Procedure Act does not apply to a foreign judgment that awarded grossly excessive compensatory damages, it is not clear whether the recognition and enforcement of such foreign judgment may be limited based on Article 217, Paragraph 1, Item 3 (i.e., public policy provision).

### C. 4. 4. Sub-conclusion

56. The D.D.C. Judgment held the Iranian government liable for compensatory damages and punitive damages.   Whether or not the recognition and enforcement should be limited for the part of the judgment that awarded punitive damages, and if so the extent to which the recognition and judgment should be limited, are matters to be decided by the Korean court that examines Plaintiffs' request for an enforcement decision, taking into account the order imposed by the D.D.C. Judgment and the reasoning behind such order, together with what outcome may result if such judgment is recognized. Considering the recently adopted laws and the legislative trend, the Korean courts appear likely to take a more prospective view in the future with respect to the recognition and enforcement of a foreign judgment that awarded punitive damages compared to the past.   In particular, in the current case, I believe Korean courts would sufficiently take into consideration the fact that intentional acts of killing aimed at many unspecified persons produced numerous innocent victims.

57. Even in the case limitations are imposed on the recognition and enforcement of the part of the D.D.C. Judgment that awarded punitive damages, the recognition and enforcement would be permitted for the part of the judgment that awarded compensatory damages.

---

[17] Supreme Court Decision No. 2015*Da*1284 rendered on October 15, 2015; Supreme Court Decision No. 2015*Da*207747 rendered on January 28, 2016.

### C. 5. Requirement of mutual guarantee (reciprocity)

58. Under Article 217, Paragraph 1, Item 4 of the Civil Procedure Act, one requirement for the recognition of a foreign judgment is that "there shall be guarantee of reciprocity, or the requirements for recognition of a final judgment, etc. in Korea and in the foreign State where the foreign court is located shall not be so different as to clearly lack balance and there shall not be substantial differences between the two in important aspects."   Mutual guarantee means that to the extent Korean courts recognize a foreign judgment, that foreign State should also recognize Korean court judgments.

59. To find the existence of a mutual guarantee, it is sufficient if a comparison of the requirements for recognition under foreign laws, court precedents, and customs indicates a similarity.   There need not be a treaty between the two States, and even if there have not been actual instances where the State in question recognized Korean judgments of a similar type, it is sufficient if there is an expectation that Korean judgments would be recognized.[18]

60. Whether or not there is a mutual guarantee does not require a comparison of the entire Korean Civil Procedure Act and the laws of the State where the court proceeding occurred.     Rather, it is sufficient if there is a mutual guarantee between comparable court proceedings, i.e., between trials of similar types or content.   Therefore, a mutual guarantee may be recognized only with respect to certain specific types of judgments, such as judgments concerning status, or judgments concerning property.   Furthermore, for judgments concerning property, whether a mutual guarantee exists should be separately determined in the case of money judgments to which the aforementioned Uniform Acts apply and in the case of non-money judgments to which the aforementioned Uniform Acts do not apply.

61. There are no federal laws in the United States which govern the recognition and enforcement of foreign judgments, nor has United States executed any bilateral treaties or join multi-party treaties concerning the recognition and enforcement of foreign judgments.

62. Most states in the United States have adopted the 1962 Uniform Foreign Money-Judgments Recognition Act ("UFMJRA") or the 2005 Uniform Foreign-Country Money Judgments Recognition Act ("UFCMJRA") as the standard for determining whether or not to recognize and enforce a foreign judgment that orders payment of money.   Common law is applied in states that have not adopted either UFMJRA or UFCMJRA, and in most such cases, 3rd Restatement of Foreign Relations Law or

---

[18] Supreme Court Decision No. 2002*Da*74213 rendered on October 28, 2004.

Second Restatement of Conflict of Laws appear to govern the recognition and enforcement of foreign judgments.

63. Washington, D.C. adopted UFCMJRA in 2012.[19]

64. It may be said that the requirements for recognition of foreign judgments under the UFMJRA, UFCMJRA, or the 3rd Restatement of Foreign Relations Law are not substantially different from the requirements under Article 217, Paragraph 1 of the Korean Civil Procedure Act, although they are somewhat more detailed.   Therefore, in the case of a foreign judgment that orders payment of money, a mutual guarantee may be said to exist between Korea and any state in the United States that adopted UFMJRA or UFCMJRA or that applies the 3rd Restatement of Foreign Relations Law.[20]

65. The following are some examples of Korean court decisions that recognized the existence of a mutual guarantee between Korea and the states in the United States that adopted UFMJRA: (i) decision by Seoul District Court, Eastern Branch on February 10, 1995 in Case no. 93*Kahap*19069 (concerning the state of Minnesota), (ii) decision by Seoul High Court on March 14, 1995 in Case no. 94*Na*11868 (concerning the state of California), (iii) decision by Seoul Central District Court on June 22, 2012 in Case no. 2012*Kahap*11773 (concerning the state of New York), and (iv) decision by Seoul Central District Court on November 28, 2014 in Case no. 2014*Kahap*10835 (concerning the state of Connecticut).

66. The following are some examples of Korean court decisions that recognized the existence of a mutual guarantee between Korea and the states in the United States that adopted UFCMJRA: (i) decision by Seoul High Court on March 23, 2018 in Case no. 2017*Na*2057753 (concerning the state of Hawaii; an appeal is pending in the Supreme Court as Case no. 2018*Da*231550), (ii) decision by Seoul Central District Court on May 23, 2014 in Case no. 2013*Kahap*55640 (concerning the state of New Jersey), (iii) decision by Suwon District Court on November 28, 2013 in Case no. 2013*Kahap*14630 (concerning the state of Texas), and (iv) decision by Suwon District Court, Pyungtaek Branch on April 24, 2009 in Case no. 2007*Kahap*1076 (concerning the state of Washington).

---

[19] https://www.uniformlaws.org/committees/community-home?CommunityKey=ae280c30 -094a-4d8f-b722-8dcd614a8f3e (Last visited on April 6, 2021).

[20] For cases recognizing a mutual guarantee between many states of the United States and Korea, see Judicial Policy Research Institute, *A Study on Recognition and Enforcement of Foreign Judgments* (2020), p. 110.

67. An example of a Korean court decision that recognized the existence of a mutual guarantee between Korea and the state of Kentucky which applies common law is Supreme Court decision on January 28, 2016 in Case no. 2015*Da*207747.

68. Korean courts are likely to recognize the existence of a mutual guarantee between Washington, D.C. and Korea, should a request be made seeking the enforcement of the D.D.C. Judgment.

### D. Procedures for obtaining an enforcement decision

69. In principle, the district court where there is generally-affiliating basis for jurisdiction over the defendant (or general jurisdiction over the defendant) has jurisdiction for a lawsuit seeking an enforcement decision.   If no court has generally-affiliating basis for jurisdiction over the defendant, then under Article 11 of the Civil Procedure Act the court where defendant's property is located would have jurisdiction (Article 26, Paragraph 2 of the Civil Execution Act).   According to the Korean Civil Procedure Act, when the defendant is a State, the generally-affiliating basis for jurisdiction exists where the government entity that represents the State or the Supreme Court is located (Article 6 of the Civil Procedure Act). In the current instance, since there is no generally-affiliating basis for jurisdiction over the Iranian government in Korea[21], the court in Korea where Iranian government assets are located would have land-based jurisdiction.

70. The principles behind ordinary court adjudication procedures are applied to a lawsuit seeking an enforcement decision, and also to any appeal concerning an enforcement decision.

71. Together or before filing a lawsuit seeking an enforcement decision, Plaintiffs may apply to the court for provisional attachment of [the defendant's] assets to ensure the effectiveness of compulsory execution in the future pursuant to the D.D.C. Judgment. However, even in such instance, compulsory execution is subject to sovereign immunity theory.   While some States limit preservative measures (e.g., attachment of assets before a decision is rendered) as contrasted with compulsory execution after a decision is rendered, Korea does not distinguish between sovereign immunity applied to preservative procedures and sovereign immunity applied to execution procedures based on a title of execution.   Therefore, the discussion in Section E also applies to provisional attachments as well.[22] If the Iranian government assets located in Korea are

---

[21] However, there is room for argument that the Iranian Embassy in Korea may be regarded as a government agency representing the Iranian government for the purpose of Article 6.

[22] Young Hwa Moon, "Compulsory Execution of Foreign State's Assets under the Civil Execution Act," *SungKyunKwan Law Review* 27, no. 2 (June 2015), p. 304 states similarly.

unlikely to be disposed of, there would not be much practical need to apply to the court for provisional attachment of such assets.

### E. Compulsory execution and sovereign immunity

72. There is not much disagreement in Korea that a more careful review is warranted in determining whether to deny sovereign immunity in compulsory execution procedures unless the relevant State has provided consent, separate from the issue of sovereign immunity in court adjudication procedures.[23] This is because compulsory execution has a more direct impact on a foreign State.

73. Since no law has been legislated in Korea concerning sovereign immunity, there is no law which directly governs this issue.    Therefore, this issue would need to be resolved in reference to the treaties, customary international laws, Korean court precedents, and academic theories.

74. First, compulsory execution is not possible for property such as the premises of a foreign embassy, other property thereon, and the means of transport belonging to the embassy.    This is because Vienna Convention on Diplomatic Relations of 1961 (Article 22, Paragraph 3), to which Korea is a party, states that "The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution." Consequently, property such as the Iranian embassy building, other property thereon, and vehicle belonging to such embassy located in Korea would not be subject to compulsory execution.[24]

75. When treaties contain provisions as in the above instance, such provisions would apply. However, there is no established view in Korea concerning other types of property, and the Korean court's position on this issue has not yet been firmly established. Under one authoritative view, however, foreign State's assets should be distinguished between property used for commercial purposes (i.e., commercial property) and property used for non-commercial, sovereign, or official purposes (i.e., non-commercial property) under the customary international laws, and compulsory execution should be permitted

---

[23] In Seob Jung, *Lectures on New International Law: Principles and Cases*, 8th ed. (2018), p. 272; Kwang Hyun Suk, *International Civil Procedure Law* (2012), p. 52.

[24] There, in fact, is a case where the compulsory execution could not be effected because the above provision was applied. This is Seoul Civil District Court case 92*Kahap*33089. The plaintiff filed an action against the Embassy of the Republic of Zaire for the delivery of the building and obtained a favorable judgment. The plaintiff requested that an enforcement officer enforce the court order to turn the building over to the plaintiffs, but the compulsory execution did not take place as the enforcement officer rejected the request on the ground that the enforcement officer could not enforce the compulsory execution on the Embassy residence.

for the former although not for the latter.[25] As seen here, sovereign immunity in the case of compulsory execution procedures is different from sovereign immunity in the case of court adjudication procedures in that the use of the property rather than the nature of the property serves as an important standard [in determining whether or not sovereign immunity applies].

76. Whether Plaintiffs would be permitted to effect compulsory execution with respect to Iranian governments assets located in Korea would be determined based on how such assets are used.   For example, claims that Iranian government has against third parties in Korea arising from commercial activities may be subject to compulsory execution.

## III. Independence of the Judiciary

### A. Overview of the governance system under the Korean Constitution and the independence of the judiciary

77. The Korean Constitution prescribes for the governance system or government structure in Korea.   The legislative authority is vested in the National Assembly (Article 40 of the Constitution), and the administrative authority is vested in the government headed by the President (Article 66, Paragraph 4 of the Constitution).   Judicial authority is vested in the courts composed of judges (Article 101, Paragraph 1 of the Constitution).

78. Judicial authority is divided between the courts and the Constitutional Court.   Courts adjudicate all legal disputes and litigation except as otherwise prescribed by the Constitution (Article 2 of the Court Organization Act).   There are seven different types of courts under Korean law, namely the Supreme Court, high court, patent court, district court, family court, administrative court, and bankruptcy court (Article 3 of the Court Organization Act).

79. The Constitutional Court has jurisdiction over matters that are specified in the Constitution, namely, (i) constitutionality of a law which is reviewed upon the court's request, (ii) impeachment, (iii) dissolution of a political party, (iv) disputes concerning competing authority between State agencies, between State agencies and local governments, and between local governments, and (v) Constitutional complaint as prescribed by the Constitution (Article 111, Paragraph 1 of the Constitution).

80. Article 103 of the Constitution sets forth the following principle of independence of judges with respect to the independence of the judiciary: "Judges shall rule

---

[25] Young Hwa Moon, "Compulsory Execution of Foreign State's Assets under the Civil Execution Act," *SungKyunKwan Law Review* 27, no. 2 (June 2015), p. 300. *See* also the U.S. Foreign Sovereign Immunities Act of 1976 (§§ 1609-1610); the U.K. State Immunity Act 1978 (Article 13, Paragraph 4).

independently according to their conscience and in conformity with the Constitution and laws."

81. Article 106, Paragraph 1 of the Constitution guarantees the position of judges as follows: "No judge shall be removed from office except by impeachment or a sentence of imprisonment without labor or a heavier punishment, nor shall he/she be suspended from office, have his/her salary reduced or suffer any other unfavorable treatment except by disciplinary action."

## B. Significant cases where the Korean courts found against a government entity or IBK

82. In Korea, no preferential treatment is given to a defendant just because it is a State. There is no question that rule of law applies to all cases.   There have been numerous instances, both civil cases and administrative cases, where the court found against the State.   Below are some examples.

  a. Supreme Court decision rendered on January 13, 2011 in Case no. 2009*Da*103950: court did not accept Korea's statute of limitations defense and found against Korea

    In this case, the aggrieved individual who was illegally detained, tortured, convicted, and imprisoned for [allegedly] aiding and abetting espionage sought damage compensation from Korea.   Although Korea argued that the statute of limitations has expired, the court rejected such defense as abuse of right in violation of the principle of good faith.

  b. Supreme Court decision rendered on January 30, 2020 in Case no. 2016*Doo*59188: Korea lost in the largest tax dispute case historically

    This case involving a dispute over corporate taxes is known to be the largest tax dispute case [in Korea] historically.   The Supreme Court found in favor of the plaintiff KORAIL on all counts when KORAIL appealed the imposition of approximately KRW 1 trillion of taxes (including additional dues on tax refund).

  c. Supreme Court decision rendered on February 12, 2015 in Case no. 2013*Doo*19387: Fair Trade Commission lost in the lawsuit where plaintiffs sought to revoke the imposition of penalties

    In 2011, the Korea Fair Trade Commission imposed the following penalties on oil refinery companies for impeding fair competition by colluding to limit

-22-

competition in partnering with gas stations: (i) KRW 177.2 billion imposed on GS Caltex, (ii) KRW 133.7 billion imposed on SK Innovation, (iii) KRW 75.3 billion imposed on Hyundai Oil Bank, and (iv) KRW 43.8 billion imposed on S-OIL.   GS Caltex voluntarily reported the collusion and received leniency for the entire penalty amount.[26] The Supreme Court cancelled the imposition of penalty by the Korea Fair Trade Commission on SK Innovation, Hyundai Oil Bank, and S-Oil which totaled KRW 254.8 billion.

83. Although the Korean government is IBK's largest shareholder which is the defendant in the current matter, this does not entitle IBK to preferential treatment in any litigation. Below are some cases listed in IBK's 2020 business report (which was publicly disclosed on March 17, 2021) where the Korean courts rendered a judgment unfavorable to IBK.

   a. Certain IBK employees filed a lawsuit against IBK concerning ordinary wage: Total claim amount was around KRW 77.6 billion.   IBK lost at the district court level but prevailed at the appellate level.   Appeal is currently pending at the Supreme Court level.

   b. IBK filed a lawsuit against the Korea Trade Insurance Corporation concerning certain deposits and insurance proceeds: Total claim amount was around KRW 99 billion (which was reduced to around KRW 23 billion in the appeal to the Supreme Court).   IBK prevailed in part at the district court level, but the matter was referred to mandatory mediation at the appellate level, and IBK lost.   Appeal is currently pending at the Supreme Court level.

   c. IBK filed a lawsuit seeking damages against NH Investment & Securities: Total claim amount was around KRW 65.8 billion.   IBK lost at the district court level, and an appeal is currently pending at the high court level.

I state under penalty of perjury under the laws of the United States of America that the foregoing truly and correctly reflects my views and conclusions.

April 12, 2021
By: _____
Professor Kwang Hyun Suk (khsuk@snu.ac.kr)
School of Law, Seoul National University

---

[26] The amounts cited in the text are all from The Law Times reports. https://www.lawtimes.co.kr/Case-Curation/view?serial=91091 (Last visited on March 31, 2021).

-23-

**Kwang Hyun SUK**

born Seoul, Korea, September 6, 1956

admitted to bar, Korea, August 1981

**Legal Education**

College of Law, Seoul National University (B. Jur., 1979)

Judicial Research and Training Institute of the Supreme Court of Korea (Completed, 1981)

Master of Laws, Seoul National University (Completed, 1981)

Albert-Ludwigs-Universtät Freiburg in Germany (LL.M. 1991)

Graduate School of Law, Seoul National University (Doctor Jur., 2000)

**Career**

Military judicial officer in the Navy (1981–1984)

Member of Kim & Chang, law firm in Korea (Sep. 1984–Feb. 1999)

Trained at the Linklaters & Paines law firm, UK (First half of 1991)

Professor/Associate Professor of Hanyang University, College of Law for International Business Transactions Law and Private International Law (Mar. 1999–Sep. 2007)

Consultant of Kim & Chang (Sep. 1999–Feb. 2007)

Professor of Seoul National University, College of Law for International Business Transactions Law and Private International Law (Oct. 2007–Feb. 2009)

Professor of School of Law, Seoul National University for International Business Transactions Law, Private International Law and International Civil Procedure Law (Since Mar. 2009)

Member of the Korean Delegations to various Hague Conference on Private International Law, UNCITRAL and UNIDROIT Projects (1997–2007)

Association

President of the Korea International Trade Law Association (2013–2015)

President of the Korea Private International Law Association (Since Mar. 2018)

**Languages**

Korean, English, and German

**Kwang Hyun SUK – List of Publications**

**Publications in Korean**

**Articles**

**Private International Law – Overview**

**Overview**

The Task of the Study of Private International Act in Korea, Korea Private International Law Journal, Vol. 22, No. 2 (Jun. 2016)

General Problem of Revised Private International Act, Korean Lawyers Association, Vol. 50, No. 5 (Total Vol. 536) (May 2001)

Overview of Private International Act for Jurists handling International Transactions, Lawyers—Collection of Research Papers of Members collection of dissertations, Seoul Bar Association (2004)

70 Years of Research on International Business Transactions Law and Private International Act by College of Law, Seoul National University, Independent Volume, Seoul Law Journal, Vol. 58, No. 1 (Mar. 2017)

Changes and Prospects in 70 Years of Private International Act in Korea, Collection of Commemorative Papers to Mark Late Professor Jeung Han KIM's 30th Anniversary (2018)

The Influence of the Constitution on Private International Act, The Justice, (Total Vol. 170-3) (Feb. 2019, Special Edition II of International Association of Korean Lawyers)

**General Provisions**

Law Applicable to Maritime Lien on Ships with a Flag of Convenience and Application of the Exception Clause, Korean Journal of International Trade and Business Law, Vol 24, No. 1 (Jul. 2015)

Private International Act Issues concerning Set-off in Judicial Proceedings between Claims Governed by English Law, Seoul Law Journal, Vol. 57, No. 1 (Mar. 31, 2016)

**Private International Act in a Narrow Sense (Applicable Law)**

**International Business Law**

Several Issues on Applicable laws of International Contract—with a Focus on Theory of Analysis of Private International Act, Hanyang Law Review, Vol. 16 (1999)

Issues on Private International Act relating to International Assurance without Obtaining Approval for Foreign Exchange, Korean Lawyers Association (Total Vol. 459) (Dec. 1994)

Legal Theory on Revision of Private International Act—Including Field of International Business Law: Overview of Revised Private International Act, Korea Private International Law Association, Korea Private International

Law Journal, No. 4 (1999)

Consumer Protection in International Trade—with a Focus on Revised Private International Act, Collection of Commemorative Papers to Mark 60 years Birthday for Sang Hyun SONG: Task and Prospect of 21st-century Korean Commercial Law (2002)

Overview and Review on Court Cases on the Scope of Consumer Contracts under the Private International Act of Korea: With Reference to the Teleological Reduction of Article 27, Korea Private International Law Journal, Vol. 22, No. 1 (Jun. 2016)

Protection of Consumers in Disputes Arising from Internet Purchases (so-called Overseas Direct Purchase): With a Focus on the Private International Act, the Arbitration Act and the Standard Terms and Conditions Regulation Act, Seoul Law Journal, Vol. 57. No. 3 (Total Vol. 180) (Sep. 2016)

International Employment Contract and Protection of Workers—with a Focus on Revised Private International Act, Journal of Labour Law, No. 13 (Dec. 2001)

The Similarities and Differences of KPILA and CPILA, Legal Research Institute Chonbuk National University, (Total Vol. 31) (Dec. 2010)

Law Applicable to Employment Contract between Two Koreans Entered into in Japan, Study on the Civil Law Cases, Vol. 31 (Feb. 2009)

Protection of Commercial Agents in International Transactions—Scope of Application of Article 92-2 of the Commercial Code, Korean Lawyers Association Journal, (Total Vol. 592) (Jan. 2006)

Law Applicable to International Assignment of Claims, Korean Journal of International Trade and Business Law, Vol. 15, No. 1 (2006)

Laws Applicable to International Construction Contracts Using FIDIC Conditions and their Practical Consequences, JURIS, No. 29 (Sep. 2014)

Comparison between the FIDIC Conditions and the "General Conditions of the Standard Construction Contracts between Civil Parties" used in Korea, Korean Journal of International Trade and Business Law, Vol. 25, No. 1 (Jul. 2016)

Comment on a Lower Court Judgment Dealing with Law Applicable to International Acquisition Agreement — Are the Provisions of the Korean Commercial Code Requiring Resolution of Special Shareholders' Meeting Internationally Mandatory Rules?, Kyung Hee Law Journal, Vol. 53, No. 2 (Jun. 2018)

The Principle of Party Autonomy and its Limits in Determining the Law Applicable to an International License Agreement: including the Issue of Formation of a License Agreement through a FRAND Declaration, Korea Private International Law Journal, Vol. 24, No. 1 (Jun. 2018)


**International Trade and Terms and Conditions**

Application of the Act on International Trade and Regulation of Terms and Conditions, Korea Private International Law Journal, No. 9 (Dec. 2003)

The General Contract Terms Control Act of Korea and Its Application to Hull Insurance Contract between Two Korean Companies Governed by English Law, Justice, (Total Vol. 149) (Aug. 2015)

**International Corporate Law**

Several Issues on International Corporate Law—with a Focus on Major Issues on the Practice of International Trade, Seoul Bar Association, Lawyers—Collection of Research Papers of Members—Vol. 30 (2000)

**International Law on Intellectual Properties**

Issues on Resolving Disputes over International Intellectual Properties—with a Focus on Private International Act Issues, Hanyang Law Review, Vol. 17 (2000)

Law Applicable to Infringement of Foreign Intellectual Properties, Case Study of Seoul Bar Association, Vol. 23 (1) (Sep. 2009)

Disputes on Intellectual Property Rights and Private International Act: with a Focus on ALI Principles (2007) and CLIP Principles (2011), Study on the Civil Law Cases, Vol. 34 (2012)

**International Law of Non-Contractual Obligations**

The Law Applicable to Obligations to Return Provisional Payments Resulting from Termination of Declaration of Provisional Execution, Legal Research Institute Chonbuk National University, Vol. 51(Feb. 2017)

A Brief Study on Decision on Applicable Law of Illegal Action of Private International Act—Relating to the Scope of Application of Private International Act on the Occasion of the Supreme Court Judgment on Common Personal Law, Korean Lawyers Association Journal, Sep. 1994 (Total Vol. 456)

Issues on International Law relating to International Product liability, Ministry of Justice, International Trade Law, (Total Vol. 5) (Oct. 1995)

Compensation of Damage resulting from Forced Labor during Japanese Colonial Era and the Law Applicable to Wages Claim, Seoul Law Journal, Vol. 54, No. 3 (Sep. 2013)

**E-Commerce & International Trade Law**

International E-Commerce and Dispute Resolution— with a Focus on Applicable Law, Ministry of Justice, Internet Law Journal, No. 2 (Sep. 2000)

International Adjudicatory Jurisdiction and Applicable Law in the Internet Era, Hyo Sun NAM & Sang Jo Jeong (co-authors), Internet Law Journal (2002)

**Law for International Financial Transactions**

Practical and legal problems of overseas borrowing (including local finance), Korean Commercial Law Association, Commercial Law Review, Vol. 17, No. 2 (1998)

International syndicated loan transaction and bankruptcy of a major bank, in Study on the Civil Law Cases, Vol. 25 (2003)

Practical and Legal Problems of issuing Foreign Bonds by Korean Companies—with a Focus on the Problem of the Scope of Applying Korean Laws when issuing Eurobonds, Korean Journal of International Trade and Business

Law, Vol. 6 (1997)

Some Legal Uncertainties Concerning Overseas Issuance of Securities by Korean Companies and Proposal for Improvement, Korean Journal of Securities Law, Vol. 3, No. 2 (2002)

Convention on International Interests in Mobile Equipment, Korean Research Institute of International Commerce & Law, International Commerce & Law Review, Vol. 13 (Commemorative edition to Mark the Retirement of Dr. Young Hwan Liang) (2000)

Convention on International Interests in Mobile Equipment and Protocol on Matters specific to Aircraft Equipment, Korean Journal of International Trade and Business Law, Vol. 12 (Dec. 2004)

International Financial Transactions and Private International Act, BFL, No. 4 (Mar. 2004)

Trusts of International Finance and Private International Act, BFL, No. 17 (May 2006)

UNCITRAL's Convention on the Assignment of Receivables in International Trade—Overview of Convention and Implications of Civil Law and Act on Asset Securitization, International Trade Law, (Total Vol. 45) (Jun. 2002)

Legal Issues on Swap, in Study on the Civil Law Cases, Vol. 23 (2001)

Issues on Clean Cut System of Financial Derivatives Transactions and Amendment of Insolvency Law, Korean Journal of International Trade and Business Law, Vol. 8 (1999)

An Introductory Study on Issue of Private International Act caused by Internationalization of Capital Markets such as Dual Listing, Korea Private International Law Journal, Vol. 20, No. 2 (2014)

The Application of Foreign Exchange Control Law and Other Internationally Mandatory Rules of Third Countries in International Financial Transactions: including Article VIII 2(b) of the Articles of Agreement of the International Monetary Fund, Korea Private International Law Journal, Vol. 26, No. 1 (Jun. 2020)


**International Trade**

A Study on the Passing of Property in an Import Cargo, International Trade Law (Total Vol. 51) (Jun. 2003)

Several Issues regarding Bill of Exchange issued in International Trade, Seoul Bar Association, Lawyers—Collection of Research Papers of Members—Vol. 33 (2003)


**United Nations Convention on Contracts for the International Sale of Goods (CISG)**

Several Issues regarding Accession to CISG, Seoul Bar Association, Lawyers—Collection of Research Papers of Members—Vol. 32 (Jan. 2002)

Accession to CISG and Acceptance according to Korean Law, Commercial Law Review, Vol. 21, No. 2 (Jun. 2002)

Fundamental Breach of Contract under the United Nations Convention on Contracts for the International Sale of Goods, Hanyang Law Review, Vol. 23, No. 2 (Oct. 2006)

Commentary on Some Korean Court Cases on the United Nations Convention on Contracts for the International Sale of Goods, Korean Journal of International Trade and Business Law, Vol. 20, No. 1 (Jul. 2011)

UN Convention on Contracts for the International Sale of Goods (CISG) and Private International Act, Seoul Law

Journal, Vol. 50, No. 3 (Total Vol. 152) (Sep. 2009)

Several Issues on Damages under a Sales Agreement governed by the CISG: Scope of Application of Uniform Substantive Law relating to Currency and Standard of Proof and Gap-filling, in Korean Journal of International Trade and Business Law, Vol. 27, No. 1 (Jul. 2018)

**International Credit Transaction**

Legal Status of Banks in Credit Transaction—Legal Relations in Currency Exchange Credit Transaction, Hyo Sun NAM & Jae Hyung Geum (co-authors), Lecture on Financial Transaction Law II (2001)

Purchase and Payment of Deferred Payment Letter of Credit before Maturity, Study of Court Cases, Vol. 17 (last volume) (Seoul Bar Association, Jan. 2004)

Effectiveness of Non-Documentary Conditions in the Letter of Credit, International Commerce & Law Review, Vol. 22 (Feb. 2004)

Brief Study on Principle of International Credit Transaction and Fraud—with a Focus on Legal Principles of Korean Law, Hanyang Law Review, Vol. 21 (Oct. 2004)

Litigation and International Adjudicatory Jurisdiction against Foreign Bank, an Issuing Bank for Credit—Regarding Supreme Court Judgment 98Da35037 dated Jun. 9, 2000, Seoul Bar Association, Lawyers—Collection of Research Papers of Members—Vol. 31(2001)

Applicable Law of Legal Relations in Currency Exchange Credit Transaction, Human Rights and Justice of Korean Bar Association (Total Vol. 218) (Oct. 1994)

**International Antitrust Law**

Extra-territorial Application of Korea Anti-Monopoly and Fair Trade Act, Study of Court Cases, Vol. 21, No. 2 (2007)

The Scope of International Application of Economy Law: With a Focus on Extra-territorial Application of Korea Anti-Monopoly and Fair Trade Act and Consumer Protection in International Transaction, Corporate Law in Era of Globalization, Collection of Commemorative Papers to Mark the Retirement of Scholar Gi Su LEE (2010)

**International Marine Insurance Act**

Issues on Private International Act relating to English Law and Practice Clause under Contract of Marine Cargo Insurance—Case Comments on Supreme Court Judgment 90DAKA25314 dated May. 14, 1991: Including Overview of Supreme Court Judgment 96Da39707 dated Jul. 14, 1998, General Insurance Association of Korea, General Insurance No. 12 (1993)

The Scope of Matters Governed by English Law and Practice Clause under Marine Cargo Insurance Policy—Supreme Court Judgment 96Da39707 dated Jul. 14, 1998, Case Study of Seoul Bar Association, Vol. 15 (last volume) (2001)

**International Maritime Act**

Several Issues on Applicable Laws of Billing of Lading—An Introduction to Contract Act on International Carriage of Goods by Sea, Korean Lawyers Association, No. 4, 1999 (Total Vol. 511)

Issues on International Choice of Court Agreement Law by Billing of Lading — Supreme Court Judgment 96Da20093 dated Sep. 9, 1997, Case Study of Seoul Bar Association Vol. 16 (last volume (2003)

Incorporation of Arbitration Clause under Voyage Charterparty into Charter Party Bill of Lading — Supreme Court Judgment 2000DA70064 dated Jan. 10, 2003, Hanyang Law Review, Vol. 22, No. 1 (Jun. 2005)

Several Issues on Marine Private International Act—with a Focus on Applicable Law, Journal of Korea Maritime Law Association, Vol. 31, No. 2 (Nov. 2009)

Applicable Law of Maritime Lien and Claim Secured (wage bond for sailors), Study of Court Cases, Vol. 22 (1) (Seoul Bar Association, Aug. 2008)

Time Limits for Enforcing Maritime Liens over Foreign Vessels in Korea: Characterization and Applicable Law, Korea Private International Law Journal, Vol. 25, No. 2 (Dec. 2019)


**International Cultural Property Law**

Some Issues on Korea's Accession to the UNIDROIT Convention on Stolen or Illegally Exported Cultural Objects, Korea Private International Law Journal, No. 15 (2009)

The Role of the Private International Act and the Cultural Property Protection Act of Korea as Means of Protecting Cultural Property from International Illicit Transactions and the Proposal for Improvement, Seoul Law Journal, Vol. 56, No. 3 (Sep. 2015)

Comment on the Judgment of the First Instance which ordered Return of the Korean Buddhist Statue stolen from the Tsushima Island: Issues on International Cultural Property Law, Korea Private International Law Journal, Vol. 22, No. 1 (Jun. 2017)

Korea's Efforts and Role in Preventing Illicit Trafficking of Cultural Properties: Including Discussions on the Concept of Cultural Properties and Cultural Heritage, Korea Private International Law Journal, Vol. 26, No. 2 (Dec. 2020)


**International Civil Procedure Act**

Jurisdiction—State Immunity

Exercise of Civil Jurisdiction over Foreign Country and Sovereign Immunity—Comment on Supreme Court Judgment 97Da39216 dated Dec. 17, 1998 that accepted Limited Sovereign Immunity, Korean Lawyers Association, (Total Vol. 531) (Dec. 2000)


**International Adjudicatory Jurisdiction**

Basic Theory of International Adjudicatory Jurisdiction—Implication of Supreme Court Judgment 2002Da59788 dated Jan. 27, 2005 on Domain Name, Hanyang Law Review, Vol. 22, No. 2 (Dec. 2005)

International E-Commerce and Dispute Resolution— with a Focus on International Adjudicatory Jurisdiction, Internet Law Journal, First Issue (Jul. 2000)

Internet and International Adjudicatory Jurisdiction, Studies on Internet Law, No. 2 (Apr. 2003)

International Adjudicatory Jurisdiction of Internet Transactions and Targeted Activities, Internet & Laws (III) (2010)

Japan's Legislative Status and Korea's Legislative Direction on International Adjudicatory Jurisdiction with a Focus on Interim Proposal, in Korea journal of International Litigation and Arbitration, No. 1 (Hanyang University, 2010)

Codification of Rules on International Adjudicatory Jurisdiction in Korea, Korean Journal of International Trade and Business Law, Vol. 21, No. 2 (Dec. 2012)

Review and Prospect of the 20th Anniversary of Foundation of Korea Private International Law Association; Legislation and Precedents concerning Recognition and Enforcement of International Adjudicatory Jurisdictions and Foreign Judgments, Korea Private International Law Journal, Vol. 20, No. 1 (Jun. 2014)

Rules on International Adjudicatory Jurisdiction to Adjudicate under the 2018 Draft of the Amended Private International Act: with a Focus on its General Parts, Dong-A Journal of International Business Transactions Law, No. 21 (Apr. 2018)

Rules on International Adjudicatory Jurisdiction to Adjudicate under the 2018 Draft of the Korean Private International Act Amendment: Focus on the Special Provisions — Dong-A Journal of International Business Transactions Law, No. 23 (Oct. 2018)

Rules on International Adjudicatory Jurisdiction in Maritime Cases under the 2018 Draft Amendment of the Private International Act of Korea, Journal of Korea Maritime Law Association, Vol. 40, No. 2 (Nov. 2018)

Rules on International Adjudicatory Jurisdiction in Family Case under the 2018 Whole Amendment Bill on Private International Act, Korea Private International Law Journal, Vol. 24, No. 2 (Dec. 2018)

Commentary on the 2019 Supreme Court Judgment that correctly applied Article 2(2) of the Private International Act: with a Focus on General Jurisdiction and Special Jurisdiction based upon Location of Property, Dong-A Journal of International Business Transactions Law, No. 29 (Apr. 2020)

**International Civil Procedure**

Foreign Parties in International Litigation, Seoul Bar Association, Lawyers—Collection of Research Papers of Members, Vol. 36 (2006)

Lis Pendens in International Litigation (*lis alibi pendens*), Case Study of Seoul Bar Association, Vol. 19 (2) (2006)

Capacity to Become a Party in Civil Lawsuit of a Plaintiff in a Lawsuit seeking Enforcement Judgment based upon a Judgment of an Australian Court, Hanyang Law Review, Vol. 37, No. 1 (Mar. 2020)

Legality and Capacity for being a Party of Foreign Company doing Main Business in Korea: Supreme Court Judgment on Foreign Corporate with Asset-Backed Securitization, in Advanced Commercial Law Review, No. 90 (Apr. 2020)

**International Judicial Mutual Assistance in Civil Matters**

Several Issues on Accession to Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents

in Civil or Commercial Matters, Korean Branch of the International Law Association, Korean Journal of International Law, Vol. 9 (2000)

The Possible Tripartite Agreements among Korea, Japan and China in the Field of International Judicial Cooperation, Asia Law Studies, No. 2 (Sep. 2004)

Current Status of Judicial Assistance between Korea and China and the Ways of Future Improvement, Korea International Trade Law Association Journal, Vol. 23, No. 2 (Dec. 2014)

**Recognition and Enforcement of Foreign Judgments**

Recognition and Enforcement of Judgment on Foreign Country Money-Judgements, Seoul Bar Association, *Seoul Bar Association Journal* [*beopjo chunchu*] (Total Vol. 146) (Jan. 1998)

Delivery as a Requirement for Recognition of Foreign Judgment—With Commentary on Supreme Court Judgment 92Da2585 dated Jul. 14, 1992, Korea Private International Law Association, Korea Private International Law Journal, No. 2 (1997)

Issues on Recognition and Enforcement of Judgment by US Minnesota Court ordering Compensation for Damages, especially with a Focus on Public Policy and Reciprocity—Commentary on Seoul Eastern District Court Judgment 93GAHAP19069 dated Feb. 10, 1995, Korea Private International Law Journal, No. 2 (1997)

Recognition and Enforcement of Foreign Judgments—Views on Amendment to Civil Procedure Act and Draft of Civil Execution Law, Human Right and Justice No. 271 (Mar. 1999)

Public Policy Exception and Reciprocity in the Recognition of a Foreign Judgment obtained through Fraud, Study on the Civil Law Cases No. XXVIII (Jan. 2006)

Recognition and Enforcement of Foreign Judgments: with a Focus on Judgments dated since 2001, Collection of Commemorative Papers to Mark the Retirement of President Mun Hwan Kim. Vol. 1: Frontiers of International Relations Law (2011)

Recognition of Japanese Judgments concerning Compensation of Damage resulting from Slave Labor, Korea Private International Law Journal, Vol. 19, No. 1 (Jun. 2013)

Whether to Approve Final Judgment by Japanese Court that Dismissed Claims for Compensation and Wages for Koreans Conscripted to Work during Japanese Occupation, Study of Court Cases [XI] (first volume)(Jurisdiction Development Foundation, Nov. 2014)

Reviews of Private International Act on Illegal Actions during Japanese Occupation, Revisiting The 50th Years Of South Korea Japan Agreement V (Historical Space, 2016)

Recognition and Enforcement of Foreign Judgments ordering Payment of Compensation for Damage: With a Focus on the Amendment of Civil Procedure Act in 2014 and Changes of Court Precedents thereafter, Korea Private International Journal. Vol. 23, No. 2 (Dec. 2017)

**International Intellectual Property Law**

Korea's International Adjudicatory Jurisdiction on Disputes over International Intellectual Properties, Lawyers, Vol. 35—Collection of Research Papers of Members (Seoul Bar Association, 2005)

**International Family Law & International Family Litigation Act**

Candid Advice to Korean Lawyers dealing with International Family Cases, Family Law Review, Vol. 30, No. 1 (Mar. 2016)

Private International Act Issues relating to International Adoption with an Emphasis on the Special Adoption Act and the Hague Adoption Convention, Family Law Review, Vol. 26 No. 3 (Nov. 2012)

Suggestion for Legislation of International Jurisdictional Rules on Divorce or Other Marriage related Cases, in Korea Private International Law Journal, Vol. 19, No. 2 (Dec. 2013)

Trends of International Parental Authority and Guardianship Law and Korea's Future Legislation, Seoul Law Journal, Vol. 55, No. 4 (Dec. 2014)

**International Insolvency Law**

Several Issues on International Insolvency Law, Human Right and Justice, (Total Vol. 241) (Sep. 1996)

Studies on International Insolvency Law—with a Focus on Theory of Legislation, International Trade Law, (Total Vol. 39) (Jun. 2001)

Validity of Judgments of US Bankruptcy Court and Territorial Principle of Bankruptcy Act, in Case Study of Seoul Bar Association, Vol. 18(1) (Aug. 2004)

Cross-border Insolvency under the Act on Rehabilitation and Bankruptcy of Debtor (Consolidated Insolvency Act) of Korea, Korean Journal of International Trade and Business Law, Vol. 15, No. 2 (Dec. 2006)

Choice of Law Rules in the Cross-border Insolvency under Korean Law, JURIS, No. 4 (Jun. 2008)

Comparison between the UNCITRAL Model Law and the EU Insolvency Regulation with respect to the Recognition of Foreign Insolvency Proceedings: with an emphasis on the Hanjin Shipping case, Korean Journal of International Trade and Business Law, Vol. 28, No. 2 (Dec. 2019)

**International Commercial Arbitration Act**

Several Issues on Revised Arbitration Act—with a Focus on International Commercial Arbitration, Korea Private International Law Association, Korea Private International Law Journal No. 5 (2000)

Legal Issues on Arbitration Agreement in International Commercial Arbitration—with a Focus on Supreme Court Judgment 2004Da20180 dated Dec. 10, 2004 on Issues arising under New York Convention, Journal of Arbitration Studies, Vol. 15, No. 2 (Aug. 2005)

Applicable Law of Arbitration Agreement in International Commercial Arbitration, Hanyang Law Review, Vol. 24, No. 1 (Jun. 2007)

Law applicable to Substance of Disputes in International Commercial Arbitration—with a Focus on Interpretation of Korea's Arbitration Law, Hanyang Law Review, Vol. 23, No. 1 (Jun. 2006)

Recognition and Enforcement of Foreign Arbitral Awards under New York Convention, Essays on International Commercial Arbitration, Vol. 1 (Parkyoungsa, 2007)

Argument of Grounds of Claim Objection and Execution Judgment based on Foreign Arbitral Awards, Seoul Bar

Association, Study of Court Cases, Vol. 20 (1) (Oct. 2006)

The Role of the Court in Arbitration, Seoul Bar Association, Lawyers—Collection of Research Papers of Members—Vol. 37 (2007)

Setting Aside of Arbitral Award in International Commercial Arbitration under the Korean Arbitration Act, Korean Journal of International Trade and Business Law, Vol. 16, No. 1 (Jul. 2007)

The Rules of International Arbitration for the Korean Commercial Arbitration Board of 2007 and Comments thereon, Seoul Law Journal, Vol. 49, No. 1 (Total Vol. 146) (Mar. 2008)

Arbitration Agreement and Anti-suit Injunction, Advanced Commercial Law Review, (Total Vol. 50) (Apr. 2010)

Recognition of Foreign Arbitral Awards obtained through Fraud and Public Policy Exception, Case Study of Seoul Bar Association, Vol. 24 (2) (2011)

Suggestions to Improve the Current Regime of Recognition and Enforcement of Foreign Arbitral Awards under Korean Law, Korea Private International Law Journal, Vol. 16 (2010)

Proposals for the Revision of the Korean Arbitration Act-with a Focus on International Commercial Arbitration, Seoul Law Journal, (Total Vol. 164) (Vol. 53 No. 3) (Sep. 2012)

Interaction between ICC Arbitration Rules and Korean Arbitration Act in ICC Arbitration Conducted in Korea, Korean Journal of International Litigation and Arbitration (Total Vol. 3) (Nov. 2011)

International Commercial Arbitration from the Viewpoint of International Disputes Settlement, Seoul Law Journal, Vol. 55, No. 2 (Jun. 2014)

Major Contents of Amendment 2016 of Arbitration Act and Evaluation, Legal Research Institute Chonbuk National University, Vol. 53 (Aug. 2017)

Interim Measures of Arbitral Tribunal under the Arbitration Act of 2016 - Including A Question on the Consistency with the Interim Measures of Court under the Civil Execution Act, Korea International Trade Law Association Journal, Vol. 26, No. 1 (Jul. 2017)

Changes of Legal Doctrines on Effect, Setting Aside, Recognition and Enforcement of Arbitral Awards under the Arbitration Act of 2016 of Korea, Hanyang Law Review, Vol. 34, No. 1 (Mar. 2017)

Recognition and Enforcement of an Arbitral Award Confirmed by a Court of the State of California: Focusing on the Subject and the Law Applicable to Arbitration Agreements and Voluntary Agencies Under the New York Convention, JURIS of Jurisdiction Development Foundation, No. 53 (Sep. 2020)

**Summary and Commentary of Supreme Court Cases**

Supreme Court Cases 2004 regarding Private International Act: Summary and Commentary, Korea Private International Law Journal, Vol. 10 (2004)

Supreme Court Cases 2005 regarding Private International Act: Summary and Commentary, Korea Private International Law Journal, No. 11 (Dec. 2005)

Supreme Court Cases 2006 regarding Private International Act: Summary and Commentary, Korea Private International Law Journal, No. 12 (Dec. 2006)

**EU Private International Act**

Convention on the Law applicable to Contractual Obligations (Rome Convention), Korea Private International Law Journal, No. 3 (1998)

EU Regulation on the Law Applicable to Non-contractual Obligations (Rome II), Seoul Law Journal, (Total Vol. 160) (Vol. 52, No. 3) (Sep. 2011)

EU Insolvency Regulations, Korea Private International Law Journal, No. 7 (2002)

EU Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (Brussels Convention), Korea Private International Law Journal, No. 2 (1997)

EU Regulation on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (Brussels Regulation)—With a Focus on Difference from Brussels Convention, Hanyang Law Review, Vol 20, No. 1 (Jun. 2003)

International Jurisdiction in Matters relating to Contract under the Revised Lugano Convention, Seoul Law Journal, Vol. 49, No. 4 (Total Vol. 149) (Dec. 2008)


**Private International Act of Foreign Countries**

Swiss Private International Act, Korea Private International Law Journal, No. 3 (1998)

Review on Swiss Private International Act, Korea Private International Law Journal, Vol. 26, No. 2 (Dec. 2020), Korea Private International Law Journal, Vol. 26, No. 1 (Jun. 2020)


**Conventions of the Hague Conference on Private International Act**

Hague Convention on Recognition and Enforcement of Foreign Judgments and Jurisdiction in Civil and Commercial Matters, Korea Private International Law Journal, No. 2 (1997)

Hague Convention on Recognition and Enforcement of Foreign Judgments and Jurisdiction in Civil and Commercial Matters—Including Report of Participation in Special Committee Meeting held in Jun. 1997, Korea Private International Law Journal, Vol. 2 (Dec. 1997)

Hague Convention on Recognition and Enforcement of Foreign Judgments and Jurisdiction in Civil and Commercial Matters—2nd Report of Participation in Special Committee Meeting held in Mar. 1998, Justice, (Total Vol. 50) (Dec. 1998)

Preliminary Draft Convention on Jurisdiction and Foreign Judgments in Civil and Commercial Matters of the Hague Conference on Private International Act, Korea Private International Law Association, Korea Private International Law Journal, No. 5 (2000)

Draft Convention 2001 on Jurisdiction and Foreign Judgments in Civil and Commercial Matters of the Hague Conference on Private International Act, Hanyang Law Review, Vol. 20, No. 1 (Jun. 2003)

Law Applicable to Certain Rights in respect of Securities—Regarding PRIMA, Korean Journal of Securities Law, Vol. 3, No. 1 (Jun. 2002)

Convention on the Law Applicable to Certain Rights in respect of Securities held with an Intermediary of the Hague Conference on Private International Act, Korean Journal of Securities Law, Vol. 5, No. 1 (2004)

Overview of Hague Choice of Court Convention 2005, Korea Private International Law Journal, No. 11 (2005)

Hague Intercountry Adoption Convention of 1993, Korea Private International Law Journal, No. 15 (2009)

Hague Convention on the Civil Aspects of International Child Abduction and Korea's Accession, Seoul Law Journal, Vol. 54 No. 2 (Jun. 2013)

Hague Principles on Choice of Law in International Commercial Contracts, Collection of Commemorative Papers to Mark the Retirement of Professor Heon Jae SEO (Feb. 2015)

In Commemoration of the 20th Anniversary of Korea's Membership of the Hague Conference on Private International Act: Retrospects, Current Status and Prospects, Dong-A Journal of International Business Transactions Law, No. 19 (Aug. 2017)

Review of the International Adoption Bill 2018 introduced for Korea's Ratification of the Hague Adoption Convention, Family Law Review, Vol. 33, No. 1 (Mar. 2019)

On the Promotion of the IP hub Project by Korean Courts and the Issues in Korea' s Accession to the Hague Choice of Court Convention, Korea Private International Law Journal, Vol. 25, No. 1 (Jun. 2019)

On Several Issues of the Hague Choice of Court Convention by reference to the recent Judgments of the Supreme Court of Korea, Korea Private International Law Journal, Vol. 25, No. 1 (Jun. 2019)

Principal Content and Indirect Jurisdiction Rules of the Hague Judgments Convention of 2019, Korea Private International Law Journal, Vol. 26, No. 2 (Dec. 2020)


**Foreign Act**

Several Chinese Law Issues raised before Korean Courts: With Emphases on Laws on Contract, Tort, Marriage and Recognition and Enforcement of Foreign Judgments, in Seoul Law Journal, (Total Vol. 156) (Vol. 51, No. 3) (Sep. 2010)


**Others**

Regulations on, Jurisdiction and Applicable Law of Cloud Computing, in Law & Technology, Vol. 7, No. 5 (Sep. 2011)

Guidelines on Legislation of UNCITRAL's Securities and Korea's Act on Security over Movable Properties, Claims, etc., International Trade Law (Total Vol. 88) (Aug. 2009)

Regulation of Legal Relationship between South Koreans and North Koreans: with a Focus on Inter-regional Law Rules and Special Substantive Law Rules, Korea Private International Law Journal, Vol. 21, No. 2 (Dec. 2015)

The Task of the Study of International Business Transactions Law of Korea, SungKyunKwan Law Review, Vol. 28, No. 3 (Sep. 2016)

Current Status and Future of East Asian Laws on International Civil and Commercial Dispute Resolution: from the Perspective of Harmonization and Unification, Justice (Total Vol. 158-2) (Feb. 2017, Special Edition I of International Association of Korean Lawyers)

UNCITRAL's Impact on Korean Law and the Tasks of Korean Lawyers, Journal of Comparative Private Law, Vol. 25, No. 4 (Total Vol. 83) (Nov. 2018)

Professor Ho-Chung LEE's Private International Act, Life and Study of Liberalist Ho Jeong LEE, Collection of Commemorative Papers to Mark Late Professor Ho-Chung LEE (Dec. 2019)


**Books**

International Jurisdiction to Adjudicate (Seoul National University Press, 2001)

Private International Act of Korea revised in 2001, 1st edition (2001), 2nd edition (2003)

Law of Contracts for the International Sale of Goods: Commentary on CISG (Parkyoungsa, 2010)

International Civil Procedure Law (Ibid., 2012)

Private International Act and International Litigation, Volumes 1 & 2 (Ibid., 2001), Volume 3 (Ibid., 2004), Volume 4 (Ibid., 2007), Volume 5 (Ibid., 2012), Volume 6 (Ibid., 2019)

Essays on International Commercial Arbitration, Volume 1 (Ibid., 2007), Volume 2 (Ibid., 2019)


**Publications in English**

**English Articles**

The New Conflict of Laws Act of the Republic of Korea, in Yearbook of Private International Act, Volume 5(Swiss. 2003)

Some Observations on the Chinese Private International Act: Korean Law Perspective, Zeitschrift für Chinesisches Recht (Germany. 2011)

Comparative Analyses of the Chinese Private International Act and the Private International Act of Chinese Taipei: Korean Law Perspective, International Law Review (China University of Political Science and Law, 2013)

Recognition and Enforcement of Foreign Judgments in the Republic of Korea, Yearbook of Private International Act, Volume 15(Swiss. 2013/2014)

Korea's Accession to the Hague Child Abduction Convention, Family Law Quarterly, Volume 48, No. 2(U.S.A., 2014)

Harmonization of Private International Act Rules in Northeast Asia, Japanese Society of International Law, Journal of International Law and Diplomacy, Vol. 114(1), (Japan. 2015)

Introduction of Detailed Rules of International Adjudicatory Jurisdiction in Korea: Proposed Amendments of the Private International Act (Japan. 2018), Yearbook of Private International Act of Japan, Vol. 19 (Japan. 2017)

Recognition and Enforcement of Judgments between China, Japan, South Korea in the New Era: South Korean Law Perspective, Frontiers of Law in China, Vol. 13 No. 2 (2018. 6.)

Private International Act Issues on Cross-border Surrogacy Agreement under Korean Law, Nomos No. 43 (Japan. 2018)


**Korea Section in Books**

South Korea Section, in International Secured Transactions edited by Dennis Campbell, Binder 2 (Oceana Publications, Inc., Dobbs Ferry, NY, 2004)

South Korea Section, in Jürgen Basedow et al. (eds.), Encyclopedia of Private International Act Vols. 2 and 4 (Edward Elgar. 2017)

Country Report, in Adeline Chong (ed.), Recognition and Enforcement of Foreign Judgments in Asia (Asian Business Law Institute. 2017)

Law Applicable to Infringement of Foreign Copyright under the Berne Convention and the Korean Act on Private International Act, in LIU Kung-Chung (ed.), Annotated Leading Copyright Cases in Major Asian Jurisdictions (City University of Hong Kong Press. 2019)

## CERTIFICATION

I, the undersigned, declare under penalty of perjury that I am a professional translator and I have a master's degree as a professional interpreter and translator from the Graduate School of Interpretation and Translation at Hankuk University of Foreign Studies.   I am over 18 years of age and not a party to the action *Winifred Wairimu Wamai, et al. v. Industrial Bank of Korea, Case No. 21-cv-325-DLC*, filed with the United States District Court for the Southern District of New York (SDNY) on January 14, 2021.   I am proficient in the Korean and English languages.   I am retained by Tombali Inc. as a translator.   I have prepared and/or reviewed the following translations identified from Korean to English to the best of my ability and knowledge, and hereby declare that each is a true and correct translation of said document.

1.  Expert opinion by Professor Kwang Hyun Suk
2.  Professor Kwang Hyun Suk's CV and list of publications

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 12, 2021 in Seoul, Korea

By:  *HyeIn Jenny Oh*